```
------------------------------------------------------------x
                                                            )
IN RE MARINE HOSE ANTITRUST                                 )
LITIGATION                                                  )
                                                            )
_____                         )
                                                            )
THIS DOCUMENT RELATES TO:                                   )
                                                            )
ALL ACTIONS                                                 )
                                                            )
------------------------------------------------------------x
```

## CONSOLIDATED CLASS ACTION COMPLAINT

## JURY TRIAL DEMANDED

Plaintiffs, by and through their undersigned counsel, bring this action for treble damages and costs of suit under the antitrust laws of the United States against Defendants, and complain and allege upon information and belief, except as to those paragraphs applicable to the named Plaintiffs which are based on personal knowledge, as follows.

## NATURE OF THE CASE

1. This lawsuit is brought as a class action on behalf of direct purchasers (other than the United States Department of Defense) of Marine Hose (defined below) who purchased Marine Hose in the United States from Entity Defendants (defined below) or their predecessors, parents, subsidiaries, or affiliates from January 1, 1985 to the present (the "Class Period").

2. During the Class Period, Defendants and their co-conspirators, manufactured, sold and/or were otherwise involved in the manufacture and/or sale of Marine Hose, and contracted,

combined or conspired to fix, raise, maintain or stabilize prices, rig bids and allocate markets and customers for Marine Hose. Because of Defendants' unlawful conduct, Plaintiffs and the Class (defined below) paid artificially inflated prices for Marine Hose and as a result have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

3.     Plaintiffs bring this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Plaintiffs and the Class as a result of Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged in this Consolidated Class Action Complaint ("Complaint").

4.     This Court has jurisdiction under 28 U.S.C. § § 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

5.     Venue is proper in this Judicial District pursuant to 15 U.S.C. §§ 15(a) and 22 and 28 U.S.C. § 1391(b), (c) and (d) because during the Class Period, Defendants resided, transacted business, were found, or had agents in this District, or because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

6.     This Court has personal jurisdiction over each Defendant because, *inter alia,* each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of Marine Hose throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and/or (d) was engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable and intended effect of causing injury to the business or property of

persons residing in, located in, or doing business throughout the United States, including in this District.

## DEFINITIONS

7.      "Person" means any individual, partnership, corporation, association or other business or legal entity.

8.      "Marine Hose," as the term is used herein, means flexible rubber hose in various diameters and lengths that is primarily used to transport oil between ships, terminals, buoys and tanks, and including ancillary products.

## PLAINTIFFS

9.      At all relevant times, Plaintiff Bayside Rubber & Products, Inc. was an Alabama corporation with its principal place of business in Mobile, Alabama.

10.     At all relevant times, Plaintiff Expro Gulf Limited was a corporation organized under the laws of country of Cyprus.

11.     At all relevant times, Plaintiff Shipyard Supply, LLC was a Louisiana limited liability corporation with its principal place of business in Metairie, Louisiana.

12.     At all relevant times, Plaintiff Weeks Marine, Inc. was a New Jersey corporation with its principal place of business in Cranford, New Jersey.

13.     During the Class Period, Plaintiffs purchased Marine Hose directly from one or more of the Defendants or their predecessors, parents, subsidiaries, or affiliates and suffered antitrust injury to their business or property by reason of the antitrust violations alleged herein.

## DEFENDANTS

14.     Defendant Bridgestone Corporation is a Japanese corporation with its principal place of business in Tokyo, Japan.

15.     Defendant Bridgestone Industrial Products America, Inc. is a Delaware corporation with its principal place of business in Nashville, Tennessee (together with Bridgestone Corporation, "Bridgestone").  It is a subsidiary of BFS Diversified Products LLC, which in turn is a subsidiary of Bridgestone Americas Holding, Inc.  Bridgestone Americas Holding, Inc. is a subsidiary of Defendant Bridgestone Corporation.

16.     Defendant Trelleborg Industrie S.A. ("Trelleborg") is a French corporation with its principal place of business in Clermont-Ferrand, France.

17.     Defendant Dunlop Oil & Marine Ltd. ("Dunlop") is a United Kingdom limited liability company with its principal place of business in Grimsby, England.

18.     Defendant Parker ITR s.l.r. is an Italian corporation with its principal place of business in Veniano, Italy.

19.     Defendant Parker-Hannifin Corporation is an Ohio corporation with its principal place of business in Cleveland, Ohio.  Defendant Parker ITR S.l.r. is a subsidiary of Parker-Hannifin Corporation (together, "Parker").

20.     Defendant Manuli Rubber Industries SpA is an Italian corporation with its principal place of business in Milan, Italy.

21.     Defendant Manuli Oil & Marine (U.S.A.) Inc. was a Delaware corporation with its principal place of business in Fort Lauderdale, Florida.  It was a wholly-owned subsidiary of Manuli Rubber Industries SpA (together, "Manuli").

22.     Defendant Yokohama Rubber Co., Ltd. ("Yokohama") is a Japanese corporation with its principal place of business in Tokyo, Japan.

4

23.     Defendant PW Consulting (Oil and Marine) Ltd. ("PW Consulting") is a United Kingdom company with its principal place of business in Surrey, United Kingdom.

24.     Defendant Peter Whittle ("Whittle") was the principal of defendant PW Consulting during the Class Period.

25.     Defendant David Brammar ("Brammar") was the Sales and Marketing Director of Defendant Dunlop during the Class Period.

26.     Defendant Bryan Allison ("Allison") was the Managing Director of the Marine Hose business for Defendant Dunlop during the Class Period.

27.     Defendant Jacques Cognard ("Cognard") was the Oil & Marine Manager of Defendant Trelleborg during the Class Period.

28.     Defendant Christian Caleca ("Caleca") was the President of the industrial hose business unit of Defendant Trelleborg during the Class Period.

29.     Defendant Misao Hioki ("Hioki") was an executive involved in the Marine Hose business of Defendant Bridgestone during the Class Period.

30.     Defendant Francesco Scaglia ("Scaglia") was a Product Manager for the Marine Hose business at Defendant Manuli during the Class Period.

31.     Defendant Vanni Scodeggio ("Scodeggio") was the Business Unit Manager for Marine Hose with Defendant Parker ITR during the Class Period.

32.     Defendant Val Northcutt ("Northcutt") was an executive at Defendant Manuli Rubber Industries during the Class Period.

33.     Defendant Uwe Bangert ("Bangert") was an executive at a German company during the Class Period which had acquired a Marine Hose manufacturer based in Grimsby, England.

34.     Defendants Bridgestone, Trelleborg, Dunlop, Manuli, Parker, Yokohama and PW Consulting are collectively referred to herein as "Entity Defendants."

## CO-CONSPIRATORS

35.     Wherever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

36.     The acts alleged in this Complaint engaged in by the Entity Defendants were performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of the Entity Defendants' business affairs.

37.     Various other persons, firms and corporations not named as Defendants herein have participated as co-conspirators in the violations alleged herein and have aided, abetted and performed acts and made statements in furtherance thereof.

## INTERSTATE TRADE AND COMMERCE

38.     The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of and substantially affected interstate commerce.

39.     During the Class Period, the Entity Defendants sold and shipped substantial quantities of Marine Hose in a continuous and uninterrupted flow of interstate and foreign commerce to customers located in states other than the states or countries in which the Entity Defendants produced Marine Hose.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action against Defendants under Rule 23(a) and (b)(3) of the

Federal Rules of Civil Procedure on behalf of all members of the following Class:

> All persons and entities (excluding Defendants, their predecessors,
> parents, subsidiaries, affiliates, and co-conspirators and the United
> States Department of Defense) who purchased Marine Hose in the
> United States directly from the Defendants or any of their
> predecessors, parents, subsidiaries, or affiliates, at any time during
> the period from January 1, 1985 to the present.

41.     Plaintiffs do not know the exact number of Class members because such

information is in the exclusive control of Defendants or their co-conspirators due to the nature of

the trade and commerce involved, however, Plaintiffs believe that Class members are sufficiently

numerous and geographically dispersed so that joinder of all Class members is impracticable.

42.     Plaintiffs are members of the Class.  Plaintiffs' claims are typical of the claims of

the Class members and Plaintiffs will fairly and adequately protect the interests of the Class.

Plaintiffs are direct purchasers of Marine Hose and their interests are consistent with and not

antagonistic to those of the other members of the Class.  In addition, Plaintiffs are represented by

counsel who are competent and experienced in the prosecution of antitrust and class action

litigation.

43.     There are questions of law or fact common to the Class:

        (a)     Whether Defendants and their co-conspirators engaged in a contract,

combination, or conspiracy to fix, raise, maintain or stabilize prices of Marine Hose, rig bids or

allocate markets or customers for Marine Hose;

        (b)     Whether Defendants' contract, combination or conspiracy as alleged in

this Complaint violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

(c)     Whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiffs and the other members of the Class;

(d)     The effect of Defendants' conspiracy on the prices of Marine Hose sold to purchasers in the United States during the Class Period; and

(e)     The appropriate measure of damages sustained by Plaintiffs and other members of the Class.

44.     These questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

45.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This Class action presents no difficulties in management that would preclude maintenance as a class action.

46.     Finally, the Class is readily definable and is one for which records likely exist in the files of Defendants and their co-conspirators.

## THE MARINE HOSE INDUSTRY

47.     The Marine Hose industry is highly concentrated, with just a handful of major producers manufacturing the Marine Hose sold to purchasers in the United States and the rest of the world.

48. Much of the technology used in manufacturing Marine Hose was developed in the tire industry, including steel reinforcement of flexible rubber.

## VIOLATIONS ALLEGED

49. Beginning at least as early as 1985, Defendants and their co-conspirators participated in a continuing contract, combination or conspiracy in unreasonable restraint of trade to artificially raise, fix, maintain or stabilize prices, rig bids and allocate markets and customers for Marine Hose in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

50. In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain or stabilize the price of Marine Hose in the United States. These activities included:

(a) Attending meetings or otherwise engaging in discussions in the United States and elsewhere by telephone, facsimile and electronic mail regarding the sale of Marine Hose;

(b) Agreeing during those meetings and discussions to allocate shares of the Marine Hose market among the Defendants and their co-conspirators;

(c) Agreeing during those meetings and discussions to a price list for Marine Hose in order to implement and monitor the conspiracy;

(d) Agreeing during those meetings and discussions not to compete for one another's customers by not submitting prices or bids to certain customers or by submitting intentionally high prices or bids to certain customers;

(e)     Agreeing to charge prices for Marine Hose at specified levels and to allocate customers and markets and otherwise fixing, increasing, maintaining or stabilizing the prices of Marine Hose sold to purchasers in the United States;

(f)     Submitting bids in accordance with the agreements reached;

(g)     Providing information received from customers in the United States and elsewhere about upcoming Marine Hose jobs to Peter Whittle, who served between 1999 and 2007 as the coordinator of the conspiracy and acted as clearinghouse for information to be shared among the Defendants and their co-conspirators;

(h)     Receiving Marine Hose prices for customers in the United States and elsewhere from Whittle;

(i)     Selling Marine Hose to customers in the United States and elsewhere at collusive and non-competitive prices pursuant to the agreements reached;

(j)     Accepting payment for Marine Hose sold in the United States and elsewhere at collusive and non-competitive prices;

(k)     Authorizing or consenting to the participation of employees in the conspiracy;

(l)     Concealing the conspiracy and conspiratorial contacts through various means, including code names and private e-mail accounts and telephone numbers; and

(m)     Communicating with one another to discuss the prices, customers, markets, market shares and price levels of Marine Hose sold in the United States.

51.     In furtherance of their conspiracy, in 1999 the Defendants and their co-conspirators authorized and directed PW Consulting and Whittle to coordinate the Defendants' conspiratorial activities, paying them approximately $300,000 per year. They provided Whittle

with information about upcoming Marine Hose contract bids, and Whittle then designated which entity conspirator would "win" the contract, referring to the winning entity conspirator as the "champion." Whittle maintained the market share allocations agreed to by the Defendants and their co-conspirators when designating which entity conspirator would be the champion. The Defendants and their co-conspirators periodically adjusted these market share allocations. After designating the champion, Whittle calculated how much the other Defendants should bid to ensure that the designated champion would win the contract.

52.     As part of the conspiracy, the Defendants and their co-conspirators reviewed and agreed to market share allocations and price lists for Marine Hose.

53.     The Defendants and their co-conspirators held and attended meetings in the United States and elsewhere in which they would discuss and agree to the rules for implementing their price-fixing, bid-rigging and market allocation scheme. They also kept agendas and detailed "minutes" of cartel meetings.

54.     The Defendants and their co-conspirators devised code names to conceal their involvement in the conspiracy and their communications with each other. In written communications, the Defendants and their co-conspirators referred to the cartel as "the club" or the "Technical Committee - Marine Hose." The Defendants also devised code designations to refer to each other in written communications. For example, Dunlop was designated as "B1" and Trelleborg was designated as "B2."

55.     There were numerous cartel meetings held during the Class period. Agendas and detailed minutes of several of the meetings were prepared contemporaneously with or at the meetings.

56. The Defendants and their co-conspirators met in Bangkok, Thailand in December, 2000. The meeting was attended by Whittle, Allison, Brammar, Cognard and others. At this meeting, the Defendants reviewed and agreed to market share allocations and price lists for Marine Hose.

57. A June, 2001 meeting in Key Largo, Florida was attended by Caleca, Whittle, Allison, Brammar, Cognard and others. Caleca informed those present that the cartel had caused Marine Hose pricing to increase since the tough business years of 1998 and 1999. At this meeting, the Defendants also agreed to market share allocations and price lists for Marine Hose.

58. A July, 2002 meeting in London, England was attended by Whittle, Allison, Brammar, Cognard and others. At this meeting, the Defendants agreed to market share allocations for each of the Entity Defendants.

59. From January 2007 through April 2007, there were numerous phone calls and e-mails exchanged between and among the Defendants continuing the efforts of the cartel to manage the conspiracy through instructions on making bids, fixing prices and allocating customers.

60. An e-mail from mid-April 2007 outlined Whittle's agenda for a May 2007 meeting of the conspirators in Houston, Texas. The purpose of the meeting was to exchange among Defendants information regarding upcoming Marine Hose contracts, decide upon pricing strategies for Marine Hose, and discuss proposals for future cooperation, including new arrangements and understandings.

61. The May 1, 2007 meeting was attended by Whittle, Caleca, Hioki, Scaglia, Scodeggio and others for the purpose of carrying out the conspiracy. The meeting, held in a hotel room in Houston, Texas, was planned to coincide with the Defendants' attendance at the

Offshore Technology Conference in Houston, being held from April 30 - May 3, 2007, which was used as a cover for the conspirators.

62.     Whittle led the cartel meeting and introduced topics of discussion, including how to keep market prices high for Marine Hose.  Whittle also highlighted how much higher Marine Hose prices had been since the conspiracy began as compared to the lower prices immediately before the conspiracy.  During the meeting, the Defendants discussed improving communications among themselves and better, more secure ways to communicate in the future. The Defendants also discussed rules for implementing their price-fixing, bid-rigging and allocation scheme, including not bidding against a conspirator who was designated by the coordinator to win a contract.

63.     On May 2, 2007, the U.S. Department of Justice ("DOJ") announced that Defendants Allison, Brammar, Caleca, Cognard, Hioki, Scaglia and Scodeggio were arrested in Houston and San Francisco and charged for their role in a conspiracy to fix, raise, maintain or stabilize prices, rig bids, and allocate markets and customers for sales of Marine Hose, including in the United States.  The arrests were made as the Defendants were meeting in furtherance of the conspiracy.

64.     Also on May 2, 2007, the DOJ unsealed one criminal complaint in U.S. District Court for the Southern District of Florida in Miami against four executives named as Defendants herein: Whittle, Allison, Brammar and Cognard.  The DOJ also filed a second unsealed criminal complaint in the same Court in Fort Lauderdale against four additional executives named as Defendants herein: Caleca, Scodeggio, Scaglia and Hioki.

65.     According to the affidavits filed in support of the criminal complaints, the charged executives participated in a conspiracy to fix, raise, stabilize or maintain prices, rig bids

and allocate markets for the sale of Marine Hose from 1999 through May 1, 2007, in violation of Section 1 of the Sherman Act.

66.     Simultaneous with the May 2 arrests, search warrants were executed during "dawn raids" at locations across the United States and in Europe.  Agents of the Defense Criminal Investigative Service (DCIS) of the Department of Defense's Office of Inspector General executed search warrants at locations across the U.S.  Competition authorities abroad, including the Office of Fair Trading in the U.K., the European Commission, and the Japanese Fair Trade Commission, also raided Defendants' offices in Europe and Japan.

67.     Thomas O. Barnett, Assistant Attorney General in charge of the Department's Antitrust Division, was quoted as saying, "Today's arrests, combined with the raids in the U.S. and Europe, demonstrate our ability to work effectively with foreign competition authorities to shut down international cartels.  The Antitrust Division will hold accountable executives who engage in illegal cartels, the supreme evil of antitrust."

68.     In addition, in or around 2006, Defendant Yokohama struck a deal with the DOJ under DOJ's corporate leniency program in order to receive amnesty and admitted its involvement in the Marine Hose conspiracy alleged herein.  As a participant in the leniency program, Yokohama is cooperating with the DOJ's investigation and criminal cases and has produced numerous documents and other information detailing the conspiracy, including emails and facsimiles.

69.     On July 19, 2007, a federal grand jury sitting in the Southern District of Florida indicted Defendant Bangert for conspiring to suppress and eliminate competition for Marine Hose in the United States and elsewhere by fixing, raising, stabilizing or maintaining prices for Marine Hose.

70.     On September 13, 2007, a Florida grand jury indicted Defendants Scaglia and Northcutt, both affiliated with Defendant Manuli.  Scaglia and Northcutt were charged with conspiring to suppress and eliminate competition for Marine Hoses by fixing, raising, stabilizing or maintaining prices, rigging bids and allocating markets for sales of Marine Hose in the United States and elsewhere.

71.     On November 15, 2007, Defendants Caleca and Cognard, both affiliated with Defendant Trelleborg, pleaded guilty to charges brought by the DOJ for conspiring to suppress and eliminate competition for the sales of Marine Hose in the United States and elsewhere. Under the terms of their respective plea agreements, Caleca will serve 14 months in prison and pay a $75,000 fine, while Cognard will serve 14 months in jail and pay a $100,000 fine.

72.     On December 3, 2007, Defendants Allison and Brammar, both affiliated with Defendant Dunlop, and Defendant Whittle pleaded guilty to conspiring to fix, raise, stabilize or maintain prices, rig bids and allocate markets for sales of Marine Hose in the United States. Under the terms of their respective plea agreements, Whittle will serve 30 months in jail and pay a $100,000 fine, Allison will serve 24 months in jail and pay $100,000 fine, and Brammar will serve 20 months in prison and pay a $75,000 fine.  According to the DOJ, these are the longest prison sentences ever given to a foreign national charged with antitrust offenses in the United States.

73.     Additionally, these three executives face the United Kingdom's first-ever criminal prosecution for price-fixing, brought under a new British law, the Enterprise Act, which went into effect in 2003.  On December 19, 2007, the U.K. Office of Fair Trading filed criminal charges against Allison, Brammar and Whittle for participating in a cartel and conspiring to fix prices and rig bids in the Marine Hose industry.

74.     On February 2008, the Japan Fair Trade Commission issued a cease and desist order against Defendants Bridgestone, Dunlop, Trelleborg, Manuli and Parker to halt anti-competitive practices regarding Marine Hose.  Bridgestone was also fined a 2.38 million yen for its involvement in the cartel.

## COUNT I

## Violation of Section 1 of the Sherman Act -- 15 U.S.C. §  1

75.     Beginning at least as early as January 1, 1985 and continuing thereafter through at least May 2, 2007, the exact dates being unknown to Plaintiffs, Defendants contracted, combined or conspired to fix, raise, maintain and stabilize prices of Marine Hose in the United States at artificially high and inflated levels, rig bids and allocate markets and customers, all in violation of 15 U.S.C. § 1.

76.     As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, as alleged in this Complaint, Defendants have restrained competition in the sale of Marine Hose, and Plaintiffs and the other members of the Class have been injured in their business and property in that they paid more during the Class Period for Marine Hose than they otherwise would have paid in the absence of the unlawful conduct of Defendants and their co-conspirators.

## EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

77.     Plaintiffs had no knowledge of Defendants' unlawful, continuing, self-concealing conspiracy and could not have discovered the contract, combination, or conspiracy before May 2, 2007, by the exercise of due diligence because of the deceptive practices and techniques of secrecy employed by Defendants to avoid detection of, and fraudulently conceal, their contract,

combination, or conspiracy. Defendants publicly held themselves out to the world as competitors during the Class Period.

78. Because the contract, combination, or conspiracy was kept secret by Defendants, Plaintiffs were unaware of the fact that prices of Marine Hose were secretly raised, fixed, maintained or stabilized, bids were rigged and markets and customers were allocated as alleged herein.

79. Indeed, Defendant Northcutt even made false statements to a federal law enforcement agent when questioned about his role and the role of others employed at Defendant Manuli in carrying out the conspiracy.

80. As a result of the concealment of the conspiracy, Plaintiffs assert the tolling of the applicable statute of limitations affecting the right of action by Plaintiffs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class proposed in this Complaint, respectfully request:

A. That the Court certify the Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), and adjudge Plaintiffs to be adequate representatives thereof;

B. That Defendants' unlawful combination, contract, or conspiracy as alleged in this Complaint be adjudicated and decreed *a per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C. That Plaintiffs and the Class recover damages against Defendants and their co-conspirators, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. § 15(a);

D. That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

    (1) continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

    (2) communicating or causing to be communicated to any other person engaged in the manufacture, distribution or sale of Marine Hose information concerning prices, customers, markets or other terms or conditions of sale of any such product except to the extent necessary in connection with *bona fide* sales transactions between the parties to such communications.

E. That Plaintiffs and the Class be awarded expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law;

F. That Plaintiffs and the Class be awarded pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G. That Plaintiffs be awarded such additional relief as the Court may deem proper.

## JURY TRIAL DEMAND

Pursuant to Fed.R.Civ. P. 38(b), Plaintiffs demand a trial by jury of all claims in this

Complaint so triable.

Dated: March 24, 2008                           Respectfully submitted:


    /s/ Hollis L. Salzman
Hollis L. Salzman
Florida Bar No. 947751
Gregory S. Asciolla
Vicky Ku
LABATON SUCHAROW LLP
140 Broadway
New York, NY  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
hsalzman@labaton.com
gasciolla@labaton.com

Gregory P. Hansel
Florida Bar No. 607101
Randall B. Weill
PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000
Facsimile: (207) 791-3111
ghansel@preti.com
rweill@preti.com

Bruce Gerstein
Kevin Landau
Jan Bartelli
GARWIN GERSTEIN & FISHER L.L.P.
1501 Broadway, Suite 1416
New York, NY  10036
Telephone:  (212) 398-0055
Facsimile:  (212) 764-6620
bgerstein@garwingerstein.com
klandau@garwingerstein.com
jbartelli@garwingerstein.com

*Co-Lead Counsel for Plaintiffs*

19

Adam Moskowitz
Florida Bar No. 984280
Tucker Ronzetti
Florida Bar No. 965723
Gail A. McQuilkin
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce DeLeon-9th Floor
Coral Gables, FL 33134
Telephone: 305-372-1800
Facsimile: 305-372-3508
amm@kttlaw.com
gam@kttlaw.com

Brent B. Barriere
Susie Morgan
PHELPS DUNBAR LLP
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
barrierb@phelps.com
morgans@phelps.com

John Gregory Odom
Stuart E. Des Roches
ODOM & DESROCHES
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
Telephone: (504) 522-0077
Facsimile: (540) 522-0078
jodom@odrlaw.com

David P. Smith
W. Ross Foote
PERCY, SMITH & FOOTE, L.L.P.
720 Murray Street
P. O. Box 1632
Alexandria, LA 71309
Telephone: (318) 445-4480
Facsimile: (318) 487-1741
dpsmith@psfllp.com
rfoote@psfllp.com

Linda Nussbaum
KAPLAN, FOX & KILSHERMER, LLP
805 Third Avenue, 22nd Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
lnussbaum@kaplanfox.com

H. Laddie Montague, Jr.
BERGER MONTAGUE
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215-875-3010
Facsimile: 215-875-4671
hlmontague@bm.net

Robert C. Josefsberg
Florida Bar No. 040856
Katherine W. Ezell
Florida Bar No. 114771
Alexander Rundlet
Florida Bar No. 0692301
PODHURST ORSECK
City National Bank Building
25 West Flagler Street, Suite 800
Miami, FL 33130
Telephone: (305) 358-2800
Facsimile: (305) 358-2382
RJosefsberg@podhurst.com
KEzell@podhurst.com
ARundlet@podhurst.com

Joseph C. Kohn
Douglas A. Abrahams
William E. Hoese
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3389
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
JKohn@kohnswift.com
DAbrahams@kohnswift.com
WHoese@kohnswift.com

Bruce H. Fleisher
Florida Bar No. 166952
BRUCE H. FLEISHER, P.A.
3225 Aviation Avenue
Bayview Plaza, Suite 300
Coconut Grove, FL  33133
Telephone: (305) 859-7999
Facsimile: (305) 285-0699
bfleisher@bellsouth.net

M. Stephen Dampier
LAW OFFICE OF M. STEPHEN DAMPIER, P.C.
14 S. Section Street
P.O. Box 161
Fairhope, AL  36533
Telephone: (251) 928-9160
Facsimile: (251) 928-2834
stevedampier@cs.com

Gaines C. McCorquodale
MCCORQUODALE & MCCORQUODALE
226 Commerce Street
P.O. Drawer 1137
Jackson, AL  36545
Telephone: (251) 246-9015
Facsimile: (251) 246-3247
tmiddletonmcc@birch.net

Patrick Barrett
Alfred H. Davidson IV
BARRETT LAW OFFICE, P.A.
One Burton Hills Blvd., Suite 380
Nashville, TN  37215
Telephone:  (615) 665-9990
Facsimile:  (615) 665-9998
pmbarrett3@barrettlawoffice.com
ahdavidson@barrettlawoffice.com

Joseph G. Sauder
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA  19041
Telephone:  (610) 642-8500
Facsimile:  (610) 649-3633
josephsauder@chimicles.com

Marvin A. Miller
Lori A. Fanning
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  (312) 332-3400
Facsimile:  (312) 676-2667
mmiller@millerlawllc.com
lfanning@millerlawllc.com

Mila F. Bartos
Michael McLellan
FINKELSTEIN THOMPSON LLP
The Duvall Foundry
1050 30th Street, N.W.
Washington, D.C.  20007
Telephone:  (202) 337-8000
Facsimile:  (202) 337-8090
mbartos@finkelsteinthompson.com
mmclellan@finkelsteinthompson.com

Robert G. Eisler
Seth R. Gassman
COHEN MILSTEIN HAUSFELD & TOLL PLLC
150 East 52nd Street
Thirtieth Floor
New York, NY  10022
Telephone:  (212) 838-7797
Facsimile:  (212) 838-7745
reisler@cmht.com
sgassman@cmht.com

Michael D. Hausfeld
COHEN MILSTEIN HAUSFELD & TOLL PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699
hausfeld@cmht.com

Steven O. Sidener
Joseph M. Barton
GOLD BENNETT CERA & SIDENER LLP
595 Market Street, Suite 2300
San Francisco, CA  94105
Telephone:  (415) 777-2230
Facsimile:  (415) 777-5189
ssidener@gbcslaw.com
jbarton@gbcslaw.com
*Additional Counsel for Plaintiffs*