UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MASTER DOCKET NO. 08-MDL-1888-GRAHAM/O'SULLIVAN

_____

IN RE MARINE HOSE ANTITRUST
LITIGATION

_____

THIS DOCUMENT RELATES TO:

BAYSIDE RUBBER & PRODUCTS,
INC., on behalf of itself and all others
similarly situated,

      Plaintiffs,                             Case No. 07-CIV-21784
                                            GRAHAM/O'SULLIVAN

vs.

CHRISTIAN CALECA, et al.

      Defendants.

_____

WEEKS MARINE, INC., individually
and on behalf of a class of all those
similarly situated,

      Plaintiff,                               Case No. 08-20754
                                            GRAHAM/O'SULLIVAN

vs.

BRIDGESTONE CORPORATION, et al.

      Defendants.

_____

## DEFENDANT BRIDGESTONE INDUSTRIAL PRODUCTS OF AMERICA, INC.'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT

      Defendant, BRIDGESTONE INDUSTRIAL PRODUCTS OF AMERICA, INC.

("BIPA"), by and through its undersigned counsel and pursuant to Federal Rule of Civil

Procedure 12(b)(6), hereby moves the Court to dismiss Plaintiffs' Consolidated Class Action Complaint (hereinafter "Consolidated Complaint"), and to deny Plaintiffs' request for class certification.  In support, BIPA states as follows:

<u>**INTRODUCTION**</u>

Pursuant to the Federal Rules of Civil Procedure, every defendant is entitled to a Complaint which alleges a clear and precise cause of action, and upon the failure of a plaintiff to do so, a defendant is entitled to challenge the sufficiency of the pleading by motion to dismiss. Based on the foregoing, BIPA exercises it right, and files this, its motion to dismiss.

This case arises, on behalf of "direct purchasers of Marine Hose," out of what Plaintiffs allege to be the worldwide participation by manufacturers and/or sellers of marine hoses and related products in "a continuing contract, combination or conspiracy in unreasonable restraint of trade to artificially raise, fix, maintain or stabilize prices, rig bids and allocate markets and customers for Marine Hose in the United States in violation of the Sherman Act, 15 U.S.C. §1. <u>See</u> Consolidated Complaint, at ¶49. However, Plaintiffs' Consolidated Complaint against Defendant BIPA should be dismissed because:

***One***, the Consolidated Complaint is devoid of any allegations of specific or direct facts regarding BIPA, and instead asserts wholesale and conclusory allegations against all Defendants, without differentiation, thereby failing to provide BIPA the least minimal notice of the claim, and its purported basis, asserted against it, and further denying BIPA the ability and opportunity to apprise itself of its defenses and formulate an adequate and complete response to Plaintiffs' allegations; and

*Two*, having failed to assert any specific or direct facts regarding BIPA, and although purporting to assert claims on behalf of "direct purchasers," Plaintiffs fail to assert and allege any facts of direct purchases from or sales by BIPA, or any other Defendant, thereby failing to establish a sufficient basis for a conspiracy.

Consequently, as demonstrated herein, Plaintiffs' conclusory Consolidated Class Action Complaint should be dismissed in its entirety, and Plaintiffs' request for class certification should be denied because it fails to sufficiently identify an ascertainable class, and fails to allege sufficient facts establishing commonality or an ability to fairly and adequately protect the interests of the putative class.

## ARGUMENT AND MEMORANDUM OF LAW

### I.    Applicable legal standard

The purpose of a Rule 12(b)(6) motion "is to test the facial sufficiency of the statement of claim for relief." Vernon v. Medical Management Associates of Margate, Inc., 912 F.Supp. 1549, 1553 (S.D. Fla. 1996). Generally, in evaluating a motion to dismiss for "failure to state a claim upon which relief can be granted," the Court "must accept as true all the *factual* allegations in the complaint." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Whether such factual allegations are sufficient to show entitlement to relief pled must be judged in light of the substantive legal standards governing the claim. "[T]he appropriate level of generality for a pleading depends on the

particular issue in question or the substantive context of the case before the court." 5 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1218, at 273 (3d ed. 2004) ("Wright & Miller"). What constitutes adequate allegations of fact depends on what plaintiffs "need to *prove*" to state a claim for relief. Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

Notably, in the more specific context of an antitrust action, the Supreme Court has recently held that Federal Rule of Civil Procedure 8(a)(2) requires an antitrust complaint to contain ***sufficient factual allegation to make out a "plausible" right and not just a conceivable or possible right to relief,*** and the pleading must raise a reasonable expectation that discovery that will produce evidence to support the claim. Bell Atlantic Corp. v. Twombly, --- U.S. --- ,127 S.Ct. 1955, 1965-66, 167 L.Ed.2d 929 (2007) (emphasis added).

## II.   Plaintiffs' conclusory allegations, directed to all Defendants without specificity, fail to state a claim for relief for antitrust violations under § 1 of the Sherman Act

The Plaintiffs have not alleged sufficient facts to support a claim under the Sherman Act against BIPA and none of the various conclusions which appear within the complaint sufficiently state a claim upon which relief can be granted. Plaintiffs purport to represent a putative class consisting of all persons or entities who purchased marine hoses in the United States from the Entity Defendants (defined as Defendants

Bridgestone, Trelleborg, Dunlop, Manuli, Parker, Yokohama and PW Consulting). See Consolidated Class Action Complaint, at ¶34.[1]

Plaintiffs allege generally that "[d]uring the Class Period, Plaintiffs purchased Marine Hose directly from one or more of the Defendants or their predecessors, parents, subsidiaries, or affiliates and suffered antitrust injury to their business or property by reason of the antitrust violations alleged herein," and that "[b]eginning at least as early as 1985, Defendants and their co-conspirators participated in a continuing contract, combination or conspiracy in unreasonable restraint of trade to artificially raise, fix, maintain or stabilize prices, rig bids and allocate markets and customers for Marine Hose in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. §1 Id., at ¶¶ 13, 49, and 75. However, because § 1 of the Sherman Act prohibits "only restraints effected by a contract, combination, or conspiracy. . . [t]he crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement." Twombly, 127 S.Ct. at 1955.

As such, a complaint under § 1 of the Sherman Act must include sufficient *factual* allegations to support the conclusion that the defendant conspired. This requirement may be satisfied either by (a) making "direct allegations" sufficient to support a claim of conspiracy or (b) making "allegations from which an inference fairly may be drawn by the district court that evidence on these material points will be available and introduced at trial." 5 Wright & Miller § 1216, at 220-27. A bare assertion that the defendant conspired, however, is not enough. See DM Research, Inc. v. College of Am.

---

[1]     BIPA is a domestic corporation and is engaged in the sale of marine hoses in the United States.  BIPA is a Delaware corporation doing business in Nashville, Tennessee and a wholly owned subsidiary of alleged "Entity Defendant" Bridgestone Corporation, a Japanese corporation.

Pathologists, 170 F.3d 53, 55, 56 (1st Cir. 1999); see also Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 528 n.17, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) ("[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

Plaintiffs' Consolidated Class Action Complaint is devoid of any specific or direct allegations against BIPA and thereby fails to assert a sufficient factual basis for any alleged conspiracy.  The paucity of facts alleged fail to establish even a minimal "...inference [that] fairly may be drawn by the district court that evidence on these material points will be available and introduced at trial." The law requires that the Plaintiffs allege facts sufficient to support the conclusion that the conduct alleged (artificial inflation of marine hose prices affecting "direct purchasers") was the result of a conspiracy involving BIPA.  The existence of a conspiracy, the element of agreement, is a critical element in distinguishing between lawful and potentially unlawful conduct.  In claims involving antitrust allegations, the federal courts have rightly insisted that plaintiffs do more than make "bare bones" averments of conspiracy. Lombard's, Inc. v. Prince Manufacturing, Inc., 753 F.2d 974, 975 (11th Cir. 1985); see also Heart Disease Research Found. v. General Motors Corp., 463 F.2d 98, 100 (2d Cir. 1972); Tal v. Hogan, 453 F.3d 1244, 1261 (10th Cir. 2006); Estate Constr. Co. v. Miller &Smith Holding Co., 14 F.3d 213, 221 (4th Cir. 1994); see also Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal").

A pleading of conspiracy requires factual allegations that directly support the existence of an agreement or, failing that, facts that support an inference that BIPA conspired as alleged.  See 5 Wright & Miller § 1216, at 220-27. As the First Circuit held in affirming dismissal of a Section 1 claim, terms like "conspiracy," or even "agreement," are border-line: they may be sufficient in conjunction with a more specific allegation (for instance identification of a written agreement or even a basis for inferring a tacit agreement) but courts are not required to accept such conclusory terms as a sufficient basis for a complaint. DM Research Inc. v. College of American Pathologists, 170 F.3d 53, 56 (1st Cir. 1999) (citation omitted).

Drawing the line between a conclusory allegation and a factual allegation requires exercise of sound judicial judgment.  Federal Rules of Civil Procedure 8 and 12 preserve the courts' power "to insist upon some specificity in pleading." Associated Gen. Contractors, 459 U.S. at 528 n.17;  see also Broudo, 544 U.S. at 347  (not requiring adequate factual allegations "would permit a plaintiff 'with a largely groundless claim to simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence'") (quotations omitted).

As previously represented, in Twombly, 127 S.Ct. at 1955, the Supreme Court adopted a higher pleading standard for antitrust litigation, requiring factual allegations sufficient to "raise a right to relief above the speculative level." Id. at 1965-66. The Court held that Federal Rule of Civil Procedure 8(a)(2) requires an antitrust complaint to contain sufficient factual allegation to make out a "plausible" right and not just a conceivable or possible right to relief, and the pleading must raise a reasonable

expectation that discovery that will produce evidence to support the claim. <u>Id.</u> at 1965-66. In <u>Twombly</u>, the complaint alleged that the defendants conspired to restrain trade by inhibiting the growth of their competitors and by agreement to refrain from competing against one another, as indicated by their common failure to pursue attractive business opportunities. The only facts alleged to support the key elements of conspiracy were facts showing "parallel" behavior. There were no facts alleged demonstrating actual concerted action. The <u>Twombly</u> Court found that the complaint must be dismissed "[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible." <u>Id</u>. At 1974.

As the decision in <u>Twombly</u> illustrates, Plaintiffs can no longer rely upon bare bone conclusory pleadings to survive a motion to dismiss and to delve into the discovery process with the hopes of developing facts to support their claim. The <u>Twombly</u> Court, concerned about the ever spiraling cost of discovery and its burden on the parties, crafted a stricter standard of review for motion to dismiss. Heretofore, plaintiffs have been able to rely upon notice pleading to survive a motion to dismiss, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.". <u>See</u> Fed.R.Civ.P. 12(b)(6). That standard adopted by <u>Conley vs. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), was rejected by <u>Twombly</u>: "after puzzling the profession for 50 years, this famous observation has earned it retirement." <u>Twombly</u>, 127 S.Ct. at 1969. The Court further declared that <u>Conley's</u> fair notice/no-set-of-facts formulation was "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Although detailed factual allegations may not be necessary, showing entitlement to relief "requires more than labels and conclusions, and a

formulaic recitation of elements of a cause of action will not do" <u>Twombly</u>, 127 S.Ct. at 1964-65.  The pleadings must do more than create a "suspicion [of] a legally cognizable right of action." <u>Id</u>. (citations omitted). The Court further noted that the trial court "must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." <u>Id</u>. at 1967.

In sum, the Supreme Court's decision in <u>Twombly</u> established two fundamental pleading rules that bear decisively on this case: (1) Plaintiff's complaint must allege facts, not merely conclusions, that show entitlement to relief under the governing substantive antitrust law and (2) it is the facts alleged in Plaintiff's complaint, not *un-alleged* facts that might later be proved, that must support the claim to relief.  <u>See also</u> <u>Associated Gen.</u> <u>Contractors</u>, 459 U.S. at 526 ("It is not . . . proper to assume that the [plaintiff] can prove facts that it has not alleged or that defendants have violated the antitrust laws in ways not alleged"); that defendants have violated the antitrust laws in ways not alleged.").

Plaintiffs' Consolidated Complaint could potentially state a claim under § 1 of the Sherman Act if there was enough "factual matter" (taken as true) asserted to allege direct purchases from BIPA, and to suggest that an agreement or conspiracy by BIPA existed which caused the purportedly anti-competitive effects alleged by Plaintiffs.  When the conclusory allegations of the Consolidated Complaint are disregarded, Plaintiffs fail to meet the pleading standard enunciated in <u>Twombly</u>. Throughout their Consolidated Complaint, Plaintiffs assert numerous conclusory allegations against the named "Defendants" alleging that each one participated in activities pursuant to a global conspiracy by engaging in unlawful antitrust violations.  Upon careful examination, the

Consolidated Complaint alleges no facts, either directly or from which an inference fairly may be drawn, that BIPA acted to conspire.

For example, the Plaintiffs' "factual" allegations regarding Defendants alleged conduct are contained in paragraphs 51, and 53 through 74 of the Consolidated Complaint; none of which contain a reference, fact or allegation, either direct of from which an inference fairly may be drawn that: (1) BIPA either conspired or acted as alleged; (2) that any of the Plaintiffs made any direct purchases from BIPA; (3) that any "plausible" cause of action is alleged against BIPA; (4) that an agreement or conspiracy by BIPA existed which caused the purportedly anticompetitive effects alleged; (5) that BIPA was one of the cartel participants; (6) that any of the criminal complaints or arrest warrants pertained to BIPA; (7) that BIPA participated in any meetings; and (8) that BIPA reviewed and/or agreed to any market share allocation and price list.

When the conclusory assertions of other paragraphs in the Consolidated Complaint are disregarded, as they must be, and reduced to the factual allegations actually pleaded, the Consolidated Complaint fails to state any claim against BIPA. Plaintiffs alleged no direct facts of any agreement by BIPA with the other named defendants or with the any unnamed entity co-conspirators.  It further fails to identify a single occasion on which any relevant agreement by BIPA was reached with any co-conspirators, the mechanism for enforcing any such agreement, or any individual parties connected with BIPA who were involved in making, enforcing, or carrying out any such agreement.

Plaintiffs' failure to allege any facts demonstrating a concrete role by BIPA in the complained-of conduct is particularly striking in the context of the antitrust claims, which are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b):

> (b)     Fraud, Mistake, Condition of the Mind.  In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Pleadings alleging fraud must be stated with particularity. Ambrosia Coal and Construction Co. v. Pages Morales, 482 F.3d 1309, 1316, n.10 (11th Cir. 2007).  Again, the wholesale allegations of fraudulent concealment in Plaintiffs Consolidated Complaint against all Defendants are insufficient and fail to allege any factual basis for or an inference of fraudulent conduct on the part of BIPA.

Plaintiffs' Consolidated Complaint is analytically identical to that in Twombly.  It uses labels and conclusions, and a formulaic recitation of the elements of a cause of action, without alleging any facts that would suggest a genuine conspiracy between BIPA and any other defendant or unnamed entity or person to engage in the acts alleged. Plaintiffs' conclusory allegations fail to provide any factual support for any of them. In short, the Consolidated Complaint against BIPA is woefully insufficient under the pleading standards enunciated in Twombly.

### III.     BIPA's relationship to alleged "Entity Defendant" Bridgestone Corporation, Japan, provides no basis for its inclusion as a defendant in the Complaint.

When all "factual" allegations are analyzed and those unrelated to BIPA sifted through and disregarded, it becomes apparent that the Consolidated Complaint includes BIPA solely because of its corporate relationship to the alleged "Entity Defendant"

Bridgestone Corporation of Japan.  As noted above, Plaintiff alleges a corporate relationship between BIPA and its parent company.  In this regard, Plaintiff has alleged:

> 13.    During the Class Period, Plaintiffs purchased Marine Hose directly from one or more of the Defendants or their predecessors, parents, subsidiaries, or affiliates and suffered antitrust injury to their business or property by reason of the antitrust violations alleged herein.

***

> 15.    Defendant Bridgestone Industrial Products America, Inc. is a Delaware corporation with its principal place of business in Nashville, Tennessee (together with Bridgestone Corporation, "Bridgestone").  It is a subsidiary of BFS Diversified Products LLC, which in turn is a subsidiary of Bridgestone Americas Holding, Inc.  Bridgestone Americas Holding, Inc. is a subsidiary of Defendant Bridgestone Corporation.

See Complaint, at ¶¶ 13, 15. Paragraph 15 contains no reference, fact, or allegation, either directly or from which an inference fairly may be drawn that BIPA acted to conspire as alleged.  Furthermore, Plaintiffs fail to factually allege any purchase of marine hose products from BIPA, only that BIPA is a *subsidiary* of alleged Entity Defendant Bridgestone Corporation.  These  paragraphs allege no facts that BIPA purchased marine hose products from anyone.

The aforementioned further buttresses BIPA's argument that there is no sufficient factual basis alleged in the Complaint that BIPA or its employees or agents participated in or independently acted to further any alleged antitrust scheme.  Stated differently, other than the fact that BIPA is a wholly owned domestic subsidiary of an alleged Entity Defendant and is engaged in the sale of marine hose products, there are no allegations of any fact that alleges a direct sale or any conduct by BIPA that would support an agreement by BIPA to conspire with anyone.

A.   **The Consolidated Complaint fails to state a claim under any alter ego theory of liability**

Plaintiffs seemingly attempt to justify the inclusion of BIPA as a named defendant through a "guilt by association" or "alter ego liability" argument, to wit: BIPA is a participant in the marine hose industry in the United States and is a subsidiary of the "Entity Defendant" Bridgestone Corporation and, thus, should be liable, for a wrongful act which may have been committed by its parent company.   However, § 1 of the Sherman Act deals with federal antitrust policies, while the alter ego doctrine is governed by state corporation law. The two legal principles have different purposes and policy considerations. For instance, a parent corporation creates a subsidiary to shield it from liability rather than for reasons of business efficiency.

BIPA and Bridgestone Corporation cannot be vicariously liable for the other under an alter ego theory, because the corporations are separate entities engaging in separate activities.  See e.g. United States v. Bestfoods, 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) ("[i]t is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation ... is not liable for the acts of its subsidiaries"). In and of itself, a parent company's ownership of all its subsidiary's stock has been held an insufficient reason to disregard distinct corporate entities. See Williams v. McAllister Bros., Inc., 534 F.2d 19, 21 (2d. Cir. 1976) (dismissal of claim appropriate). Even a "bald allegation that a corporation exerts control over the decisions of its wholly owned subsidiary is not sufficient to sustain a claim against the parent corporation." Kashfi v. PhibroSalomon, Inc., 628 F. Supp. 727, 733-34 (S.D.N.Y. 1986).

In order to pierce the corporate veil, "it must be shown not only that the wholly-owned subsidiary is a mere  instrumentality of the parent corporation but also that the

subsidiary was organized or used by the parent to mislead creditors or to perpetrate a fraud upon them." Whetstone Candy Company, Inc. v. Kraft Foods, Inc., 351 F.3d 1067, 1079 (11th Cir. 2003) (quoting USP Real Estate Inv. Trust v. Discount Auto Parts, Inc., 570 So.2d 386, 390 (Fla. 1st DCA 1990)); Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1320-21 (11th Cir. 1998) ("[a] party seeking to pierce the corporate veil and hold a parent corporation liable for the actions of its subsidiary must prove: (1) that the subsidiary was a 'mere instrumentality' of the parent, and (2) that the parent engaged in 'improper conduct' through its organization or use of the subsidiary") (citing Dania Jail-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1117-21 (Fla. 1984)).; see also Williams, 534 F.2d at 21-22 (To overcome "the 'presumption of separateness' afforded to related corporations," plaintiffs must identify facts that justify piercing the corporate veil: "[a]ctual domination, rather than the opportunity to exercise control." (quoting American Renaissance Lines, Inc. v. Saxis S.S. Co., 502 F.2d 674, 677 (2d Cir.1974)); Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood, 752 A.2d 1175, 1184 (Del.Ch.,1999) ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud"). For instance, in De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 69 (2d. Cir. 1996) the court held the defendant parent corporation was not a proper party to Plaintiff's RICO claims and dismissal was appropriate where the complaint failed to allege facts from which it may be inferred the parent company either dominated its subsidiary's activities or that the parent company's employees themselves acted to defraud Plaintiff.

Plaintiffs make no allegation that BIPA's corporate existence was a mere sham operation of its parent company and asserts no grounds that would justify piercing the

corporate veil to hold BIPA liable for the alleged actions of its parent. Moreover, Plaintiffs fail to assert any specific fact or circumstances supporting the possibility, much less probability, that the alleged antitrust actions of Bridgestone Corporation were in any respect caused by, known to, or ratified by BIPA, or that BIPA or any of its employees engaged in fraudulent concealment or participated in any alleged conspiracy. Consequently, the dismissal of Plaintiffs' claims against BIPA is warranted.

> **B.**     <u>**In the context of antitrust laws, Plaintiffs' claim must be dismissed because it fails to show any independent action by BIPA.**</u>

The principles and policies underlying §1 of the Sherman Act, and federal antitrust policies in general, diverge with state corporation law.  A primary concern of the antitrust laws has been to preserve and encourage competition among firms in the same industry, placing limits on collaboration among competing firms.  Generally speaking conspiracies condemned by the antitrust laws are those between or among separate economic entities, a corporation cannot conspire with itself or its employees without the presence of independent parties. Actionable antitrust conspiracies must involve separate and unrelated entities, not closely held affiliates. <u>See</u> <u>Copperweld Corp. v. Independence Tube Corp.</u>, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984) (holding in the context of antitrust statutes that because a parent company and its wholly-owned subsidiary are one and the same and incapable of conspiring together; thus, no justification for §1 scrutiny exists).

As a matter of law, a controlling entity is not liable for the antitrust violations of one it controls, absent its own independent anti-competitive conduct, or a reason for disregarding the corporate form. <u>See e.g.</u>, <u>Invamed, Inc. v. Barr Labs., Inc.</u>, 22 F.Supp. 2d 210, 219 (S.D.N.Y. 1998) (corporation not liable for actions of affiliate, notwithstanding

its ownership and control, absent basis for piercing the corporate veil or independent anti-competitive action by the corporation); Whetstone Candy Company, 351 F.3d at 1074 ("[c]orporations are separate legal entities and contracts made by a parent corporation do not bind a subsidiary merely because one corporation owns all of the stock of the other corporation"). In United National Records, Inc. v. MCA, Inc., 616 F.Supp. 1429 (N.D.Ill.1985) the court discredited an attempt to find an alter ego relationship between companies simply because they are legally incapable of conspiring for antitrust purposes, holding that a parent is not liable for the wrongful acts of its subsidiary simply because the parent wholly owns the subsidiary.  Id. at 1432-3; See also Drinkwine v. Federated Publications, Inc., 780 F.2d 735, 741 (9th Cir. 1985), cert. denied, 475 U.S. 1087 (1986) (a parent corporation is not, without the proffer of a basis for piercing the corporate veil, liable for antitrust violations of its subsidiary).  Where a complaint "cannot fairly be read to allege independent action on the part of the [parent]," or to allege "facts" suggesting that the subsidiary "is a 'mere instrumentality' of the parent," "there is no basis for holding the [parent] liable for the alleged antitrust violations of [its] subsidiary." Gemco Latinoamerica, Inc. v. Seiko Time Corp., 685 F. Supp. 400, 403 (S.D.N.Y. 1988) (granting motion to dismiss); accord MCI Telecomm. Corp. v. Graphnet, Inc., 881 F.Supp. 126, 131 (D.N.J.1995) (dismissing a §2 claim against the defendant because allegations of monopolistic conduct in the complaint related only conduct by defendant's affiliate);  Okeelanta Power Ltd. Partnership v. Florida Power & Light Co., 766 So.2d 264, fn. 8 (Fla. 4th DCA 2000) (in order to hold a parent corporation liable for the alleged antitrust violations of its subsidiary, an independent act on the part of the parent to affect the relevant market or a basis to pierce the corporate veil must exist). No facts even

remotely suggesting such a relationship between BIPA and Bridgestone Corporation have been alleged in this case.

An antitrust "piercing" issue was also raised in <u>BellSouth Advertising & Publishing Corp. v. BellSouth Corp</u>, 719 F.Supp. 1551 (S.D. Fla. 1993), <u>rev'd on other grounds</u>, 999 F.2d 1436 (11th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 943 (1994). The counter-claimant relied on <u>Copperweld</u> to argue that a parent corporation should be liable automatically for its subsidiary's alleged violation of §2 of the Sherman Act. The counter-claimant had argued that such liability would be merely the "'flip side' of abolishing the intra-enterprise conspiracy doctrine." <u>Id.</u> at 1567. The Eleventh Circuit, however, strongly rejected the suggestion and refused to apply <u>Copperweld</u> in reverse, holding that the parent corporation must participate affirmatively in the violation to be liable. <u>Id</u>. at 1569 ("[n]o court has yet to interpret the dicta in <u>Copperweld</u> in this manner; and this Court declines to be the first.). In <u>United National Records, Inc.</u>, 616 F.Supp. at 1429, the Court also rejected such an argument. There, the court granted summary judgment to a parent corporation who never competed in the relevant market but was sued by plaintiff for its subsidiaries' alleged misconduct in the relevant market. The court, in analyzing the question of whether the parent could be liable for its subsidiaries' conduct under state law of piercing the corporate veil, held that <u>Copperweld</u> does not overrule state corporate law which provides for limited liability of a parent corporation. <u>Id</u>. at 1433.

## IV.    **Plaintiffs' request for class-certification is insufficient and should be denied**

Plaintiffs' Consolidated Complaint asserts class action allegations in an effort to seek class certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3). However, the preliminary allegations and request for class certification should be denied

for at least three reasons: ***First***, the factual allegations are insufficient to permit the Court to rule upon or otherwise certify this matter as a class action; ***Two***, Plaintiffs have failed to allege sufficient commonality with the members of their purported class; and ***Third***, Plaintiffs have failed demonstrate that they "fairly and adequately protect the interests of the class."

The Supreme Court has characterized "[c]lass relief" as "'peculiarly appropriate' when the issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" <u>General Telephone Company of the Southwest v. Falcon</u>, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (emphasis added).  However, "a class action does not exist merely because it is so designated by the pleadings." <u>Rossin v. Southern Union Gas Company</u>, 472 F.2d 707, 712 (10th Cir. 1973).  Therefore, "[m]ere repetition of the language of Rule 23(a) is not sufficient . . . [and] ordinarily the determination should be predicated on more information than the pleadings will provide." <u>Weathers v. Peters Realty Corporation</u>, 499 F.2d 1197, 1200 (6th Cir. 1974); <u>Colburn v. Roto-Rooter Corporation</u>, 78 F.R.D. 679, 681 (N.D. Ca. 1978) ("plaintiffs may not rely solely on the allegations of the complaint, but must provide information sufficient for the court to make a reasonable judgment"). "The named representative must demonstrate that all the requirements of Rule 23(a) have been satisfied, and that one of the categories in Rule 23(b) has been met." <u>Blumenthal v. Great American Mortgage Investors</u>, 74 F.R.D. 508, 511 (N.D. Ga. 1976).  Rule 23 specifically provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or

defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 613-14, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); <u>Hudson v. Delta Airlines, Inc</u>., 90 F.3d 451, 456 (11th Cir. 1996). The aforementioned prerequisites "are mandatory and the failure to establish any one is fatal to a motion for class certification." <u>Neumont v. Monroe County, Florida</u>, 198 F.R.D. 554, 556 (S.D. Fla. 2000). Notably, "[t]he requirement of Rule 23(a)(2) that there exist questions of law or fact common to the class as a whole is closely related to the further requirement of Rule 23(b)(3) that the common legal or factual questions predominate over those affecting the individual members of the class." <u>Id</u>. "When a person sues or is sued as a representative of a class, the court must – at an early practicable time – determine by order whether to certify the action as a class action." <u>Id</u>. at (c)(1)(A).

In this matter, Plaintiffs have attempted to identify the putative class  as comprised of  "[a]ll persons and entities (excluding Defendants, their predecessors, parents, subsidiaries, affiliates, and co-conspirators and the United States Department of Defense) who purchased Marine Hose in the United States directly from the Defendants or any of their predecessors, parents, subsidiaries, or affiliates, at any time during the period from January 1, 1985 to the present." Consolidated Complaint, at ¶40. It is axiomatic that "for a class definition to be viable, class membership must be 'capable of ascertainment under some objective standard.'" <u>Neumont</u>, 198 F.R.D. at 557 (citing  5 MOORE'S FEDERAL PRACTICE §§23.20-21 (3d ed. 1999)); <u>see e.g.</u>, <u>Boggs v. Alto Trailer Sales, Inc</u>., 511 F.2d 114, 117 (5th Cir. 1975) (the discretion "of the district court in determining whether a class action may be maintained is to be exercised within the

parameters of the criteria of Rule 23 as applied to the appertaining facts *once the facts are adduced to the point that the determination may be made*")  (emphasis added).   A proposed class "is permissible under Rule 23 so long as it is *not too amorphous or incapable of a reasonably precise definition*." Neumont, 198 F.R.D. at 557 (quoting Newton v. Southern Wood Piedmont Co., 163 F.R.D. 625, 631 (S.D. Ga. 1995), aff'd, 95 F.3d 59 (11th Cir. 1996)) (emphasis added).  Therefore, "it is 'elementary that in order to maintain a class action, the class sought to be represented *must be adequately defined and clearly ascertainable*.'" Neumont, 198 F.R.D. at  556-57 (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)) (emphasis added).  Therefore, "'a class will be found to exist if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member [ ].'" Id. Plaintiffs in this matter have failed to assert adequate facts regarding direct purchasing of Marine Hose products to sufficiently define a class that can be ascertained in any reasonable and/or consistent manner.

Furthermore, Plaintiffs' Consolidated Complaint fails to allege sufficient commonality with the members of their purported class, as required by Rule 23, as evidenced by the paucity of facts alleged regarding any direct purchasing by Plaintiffs and from whom.  Plaintiffs have also failed to sufficiently identify and allege facts demonstrating that the representative parties "fairly and adequately protect the interests of the class." The "[a]dequacy of representation is a critical factor in determining class maintainability because of the potential binding effect of such judgment on absent class members by virtue of the doctrine of res judicata." Blumenthal, 74 F.R.D. at 513. Consequently, "adequate representation depends upon the coalescence of two factors: (1)

the plaintiff's attorney must be qualified, experienced, and capable of conducting the proposed class action litigation, and (2) the plaintiffs must not have interests antagonistic to those of the class." <u>Id</u>.  No facts have been alleged to demonstrate the qualifications of Plaintiffs' attorneys.

## <u>CONCLUSION</u>

Based upon the arguments presented and the authorities cited herein, BIPA respectfully requests the Court dismiss Plaintiffs' Consolidated Class Action Complaint, in its entirety, and deny Plaintiffs' request for class certification.

Date:   April 23, 2008                                    Respectfully submitted,
        Fort Lauderdale, FL

                                        _____s/Alain E. Boileau_____
                                        ROBERT H. SCHWARTZ (301167)
                                        rhs@adorno.com
                                        ALAIN E. BOILEAU (0148598)
                                        aeb@adorno.com
                                        ADORNO & YOSS LLP
                                        888 SE Third Ave., Suite 500
                                        Fort Lauderdale, FL 33316
                                        Telephone:    (954) 523-5885
                                        Facsimile:     (954) 760-9531
                                        Counsel for BIPA

                                        HAL HARDIN, ESQUIRE
                                        HalHardin@aol.com
                                        (Pro Hac Vice Motion pending)
                                        HAROLD DONNELLY, ESQUIRE
                                        Donnelly77@comcast.net
                                        (Pro Hac Vice Motion pending)
                                        211 Union Street, Suite 200
                                        Nashville, TN 37201
                                        Telephone:    (615) 369-3377
                                        Counsel for BIPA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on   April 23, 2008 , I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


\_\_\_\_s/Alain E. Boileau_____

ALAIN E. BOILEAU

IN RE MARINE HOSE ANTITRUST LITIGATION
MASTER DOCKET NO. 08-MDL-1888-GRAHAM/O'SULLIVAN

### Service List

**INTERIM PLAINTIFFS'
CO-LEAD COUNSEL**

**Petri, Flaherty, Beliveau & Pachios, LLP**
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone:     9207) 791-3000

**Garwin, Gerstain & Fisher, LLP**
1501 Broadway, Suite 1416
New York, NY 10036
Telephone:     (212) 398-0055

**Labaton Sucharow, LLP**
200 Park Avenue
New York, NY 10017
Telephone:     (212) 907-0700

**PLAINTIFF'S COUNSEL**

**Michael Abram Rosen, Esquire**
mrosen@frc-law.com
Fowler Rodriguez LLP
355 Alhambra Circle, Suite 801
Coral Gables, FL 33134
Telephone:     (786) 364-8400
Facsimile:     (786) 364-8401
**Counsel for Christian Caleca**

**Bruce H. Fleisher, Esquire**
bfleisher@bellsouth.net
Bruce H. Fleisher, P.A.
3225 Aviation Avenue
Bayview Plaza, Suite 300
Coconut Grove, FL 33133
Telephone:     (305) 859-7999
Facsimile:     (305) 285-0699
**Counsel for Bayside Rubber**

**Hollis L. Salzman, Esquire**
bsalzman@labaton.com
Labaton Sucharow & Rudoff, LLP
110 Park Avenue
New York, NY 10017
Telephone:     (212) 907-0700
Facsimile:     (212) 883-7017
**Counsel for Bayside Rubber**

**M. Stephen Dampier, Esquire**
Law Office of M. Stephen Dampier, PC
14 S. Section Street
P.O. Box 161
Fairhops, AL 36533
Telephone:     (251) 928-9160
Facsimile:     (251) 928-2834
**Counsel for Bayside Rubber**

**Gaines C. McCorquodale, Esquire**
tmiddletonmcc@birch.net
McCorquodale & McCorquodale
226 Commerce Street
P.O. Drawer 1137
Jackson, AL 36545
Telephone:     (251) 246-9015
**Counsel for Bayside Rubber**

**James R. Malone, Jr., Esquire**
jamesmalone@chimicles.com
**Daniel B. Scott, Esquire**
danielscott@chimicles.com
Chimicles & Ticellis, LLP
361 West Lancaster Avenue
Haverford, PA 19041
Telephone:     (610) 642-8500
**Counsel for Bayside Rubber**

**<u>DEFENDANTS' COUNSEL</u>**

**Marc David Seitles, Esquire**
mseitles@seitleslaw.com
169 E. Flagler Street
Suite 1200
Miami, FL 33131
Telephone:     (305) 379-6667
Facsimile:     (305) 379-6668
**Counsel for Vanni Scodeggio**

**Diana J. Pomeranz, Esquire**
dpomeranz@kslaw.com
**James M. Griffin, Esquire**
jgriffin@kslaw.com
**Kevin R. Sullivan, Esquire**
ksullivan@kslaw.com
**Susan D. Inman, Esquire**
sinman@kslaw.com
King & Spalding LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
Telephone:     (202) 626-5440
**Counsel for Vanni Scodeggio**

**David Oscar Markus, Esquire**
dmarkus@markuslaw.com
169 E. Flagler Street
Suite 1200
Miami, FL 33131
Telephone:     (305) 379-6667
Facsimile:     (305) 379-6668
**Counsel for Francesco Scaglia**

**Gerald Edward Greenberg, Esquire**
ggreenberg@swmwas.com
**Jay Brian Shapiro, Esquire**
jshapiro@swmwas.com
Stearns Weaver Miller Weissler, et al.
Museum Tower
150 West Flagler Street
Suite 2200
Miami, FL 33130
Telephone:     (305) 789-3200
Facsimile:     (305) 789-3395
**Counsel for Francesco Scaglia**

**Jeffrey Bruce Crockett, Esquire**
jcrockett@coffeyburlington.com
Coffey Burlington
Penthouse
2699 South Bayshore Drive
Miami, FL 33133
Telephone:     (305) 858-2900
Facsimile:     (305) 858-5261
**Counsel for Misao Hioki**

**Richard Aldo Serafini, Esquire**
serafinir@gtlaw.com
Greenberg Traurig
401 E. Las Olas Blvd.
Suite 2000
Fort Lauderdale, FL 33301
Telephone:     (954) 768-8256
Facsimile:     (954) 765-1477
**Counsel for Bryan Allison**
**and David Brammar**

**Alan Graham Greer, Esquire**
agreer@richmangreer.com
**Lyle Eric Shapiro, Esquire**
lshapiro@richmangreer.com
Richman Greer Weil Brumbaugh, et al.
201 S. Biscayne Blvd., Suite 1000
Miami, FL 33131
Telephone:     (305) 373-4000
Facsimile:     (305) 373-4099
**Counsel for Manuli Oil & Marine (USA)**

**Daniel A. Goldschmidt, Esquire**
goldschmidt@sullcrom.com
**Fern Mechlowitz, Esquire**
mechlowitzf@sullcrom.com
**Robert M. Osgood, Esquire**
osgoodrm@sullcrom.com
Sullivan & Cromwell LLP
1 New Fetter Lane
London EC4A 1AN
England
**Counsel for Manuli Oil & Marine (USA)**

**Carmen G. McLean, Esquire**
cgmclean@jonesday.com
**John M. Marjoras, Esquire**
jmmajoras@jonesday.com
Jones Day
51 Louisiana Avenue NW
Washington, DC 20001-2113
Telephone:     (202) 879-3939
Facsimile:     (202) 626-1700
**Counsel for Parker-Hannifin Corporation**