UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MASTER DOCKET No. 08-MDL-1888-GRAHAM/TURNOFF

IN RE MARINE HOSE ANTITRUST
LITIGATION

THIS DOCUMENT RELATES TO:
ALL ACTIONS

**MANULI RUBBER INDUSTRIES S.P.A., MANULI OIL & MARINE (U.S.A.) INC., PARKER ITR S.R.L., AND PARKER HANNIFIN CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

There are two reasons why the motion to certify a class must be denied: (1) the plaintiffs never made a purchase that would give them standing to bring this action; and (2) the requirements of Rule 23 of the Federal Rules of Civil Procedure remain unsatisfied.

### *Lack of Purchase*

This is no ordinary class action motion. Plaintiffs ask the Court to certify that they are proper representatives to speak for a putative class of U.S. purchasers of marine hose. They seek treble damages under the Sherman Act based on allegedly inflated prices paid for marine hose. The key fact here, and the first reason the motion must be denied, is that none of the four named plaintiffs who started this litigation ever bought marine hose from the defendants in the United States. In the absence of qualifying purchases, it is axiomatic that they cannot serve as class representatives. We know of no case, among the hundreds of cases addressing class actions, where class certification was granted in these circumstances.

In a rush to the courthouse, four law firms filed complaints on behalf of four separate plaintiffs in the spring of 2007, each setting out virtually the same allegations and asserting the same claims related to an alleged cartel for the sale of marine hose. As time went on, it became clear that none of the four had purchased marine hose from the defendants in the United States, and three of the four had apparently never purchased it from the defendants anywhere in the world. After more than a year of litigation had passed, two of the four named plaintiffs, Weeks Marine, Inc. ("Weeks") and Shipyard Supply LLC ("Shipyard"), finally responded to pressure from defense counsel and moved for voluntary dismissal of their claims

without prejudice.[1]  Not only are they no longer seeking to serve as class representatives, but they have dropped their claims entirely – an implicit admission that they never purchased the product at issue in this litigation.

The two remaining plaintiffs similarly never purchased marine hose from the defendants in the United States, and thus cannot serve as class representatives in this case.  The first, Bayside Rubber & Products ("Bayside") has not produced a single document suggesting that it ever purchased marine hose from the defendants anywhere in the world.  While it claims that it did so, it offers nothing more than this uncorroborated self-serving statement without any documentation.  This is insufficient for Bayside to pursue a claim on its own, let alone on behalf of others.  The second plaintiff, Expro Gulf Limited ("Expro") is a Cypriot corporation based in South Africa that purchased marine hose in Italy for delivery to Nigeria, received the invoice in Cyprus and likely paid it in the United Kingdom.  Because the Sherman Act, as amended by the Foreign Trade Antitrust Improvements Act, does not permit claims related to essentially foreign transactions, Expro likewise cannot pursue a claim on its own behalf, nor on behalf of an absent class.

### *Rule 23 Requirements Remain Unsatisfied*

The second reason the motion must be denied is that the well-established requirements of Rule 23 are not met.

First, the claims of the proposed class representatives are not typical of those of the class because the proposed representatives have no cognizable claims.  Fed. R. Civ. P. 23(a)(3).

---

[1] Manuli Rubber Industries, S.p.A. and Manuli Oil & Marine (U.S.A.) Inc. have opposed that motion.

Second, plaintiffs fail to show that common issues predominate over individual ones in this case.  Fed. R. Civ. P. 23(b)(3).  Given that most marine hose transactions look like Expro's – a purchase by a national of Country A from a national of Country B, shipped to Country C, and invoiced to Country D – it will be difficult if not impossible to assess whether a given class member's claim is cognizable under the U.S. antitrust laws without an individualized examination of every purchase.  Relatedly, plaintiffs and their economic expert fail to establish that injury or damages can be established by common proof, as the report of their expert is baseless and unreliable.

Third, plaintiffs fail to demonstrate that the number of absent claimants is likely so great that joinder would be impracticable.  Fed. R. Civ. P. 23(a)(1).

Fourth, plaintiffs fail to establish that a class action is a superior mechanism for resolving their claims and those of the absent persons they seek to represent.  Fed. R. Civ. P. 23(b)(3).

Fifth, the conduct of the plaintiffs and the lawyers in this case makes clear that they are inadequate to lead a class of absent plaintiffs.  Fed. R. Civ. P. 23(a)(4).  That they filed suit without first making a good faith inquiry whether they even had viable claims raises serious issues under Rule 11, and the judgment they have exercised in the conduct of this litigation is similarly dubious.  Given these considerations, even if there were some hypothetical group of absent plaintiffs with claims against certain of the defendants, these plaintiffs and these lawyers are not adequate to lead them.

Because plaintiffs did not purchase the product in question, and because their motion papers fail to satisfy the requirements of Rule 23, responding defendants[2] submit that the instant motion for class certification must be denied, along with counsel's motion to be appointed class counsel.

## ARGUMENT

I. **A CLASS MAY NOT BE CERTIFIED BECAUSE NEITHER PROPOSED CLASS REPRESENTATIVE HAS STANDING TO SUE UNDER THE FEDERAL ANTITRUST LAWS.**

The motion for certification must be denied because neither of the potential class representatives bought marine hose from the defendants in the United States. Neither has standing to sue. "To have standing to represent a class, a party must not only satisfy the individual standing prerequisites, but must also be part of the class and possess the same interest and suffer the same injury as the class members. . . . [A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Mills* v. *Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (internal citations and quotations omitted).

In order to assess the viability of the two proposed class representatives – Bayside and Expro – the Court may "look beyond the allegations of the complaint and assess whether record evidence supports a finding that [they have] Article III standing." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 680 (S.D. Fla. 2004) (assessing the standing question at the class certification stage). Moreover, "[t]he party invoking federal jurisdiction,"

---

[2]   For the purposes of this memorandum, "responding defendants" include Manuli Rubber Industries, S.p.A., Manuli Oil & Marine (U.S.A.) Inc., Parker ITR S.r.l., and Parker Hannifin Corporation.

here, the plaintiffs, "bears the burden of proving standing." *Bischoff* v. *Osceola County*, 222 F.3d 874, 878 (11th Cir. 2000).

          **1.**      **Bayside Lacks Standing to Sue.**

      It is too fundamental for words that a plaintiff seeking to act for a class of purchasers has the burden of satisfying the Court that it purchased the product in question. To date, Bayside has been unable to produce a single sheet of paper in this litigation suggesting that it ever purchased marine hose from the defendants *anywhere*, let alone in the United States. This is notwithstanding the Court's very clear Order of May 16, 2008, which required Bayside – and all of the other plaintiffs – to produce evidence of such purchases with their Rule 26(a) initial disclosures.[3] Without proof of its own qualifying purchases, Bayside lacks standing to sue and cannot serve as a class representative in this litigation. *Mills*, 511 F.3d at 1307.

      In their opening papers, plaintiffs offer a single, unsupported statement that Bayside purchased marine hose during the class period: "Bayside states under oath that it made multiple purchases of Marine Hose during the Class Period as alleged in the Complaint." (Pls.' Memo. of Law in Supp. of Mot. for Class Cert. ("Pls.' Mot.") 11.) In support of this proposition, plaintiffs cite to Bayside's responses to defendants' interrogatories, dated July 18, 2008, which similarly state, without any detail or support, that Bayside purchased marine hose. Plaintiffs fail to specify the type of marine hose purchased, when or where it was purchased, the quantity ordered or price paid, or from which defendant the purchase was made. The bare assertion that Bayside made purchases would be insufficient for Bayside even to participate in any recovery as

---

[3]     This Order was issued over the plaintiffs' formal objection to producing such basic information about their claims. (*See* Joint Pre-Trial Scheduling Submission 7, filed Apr. 30, 2008, Dkt. Entry 101.)

a class member. (*See* Plaintiffs' Proposed Claim Form, attached as Ex. A[4] (stating in Sections III and IV that a claimant must have records of its purchases or records from other years or from similar purchases from which it can extrapolate relevant sales during the class period).) *A fortiori*, Bayside's single uncorroborated statement is not enough to establish its fitness to lead a class in this case. *Cf. Feder* v. *Electronic Data Systems Corp.*, 248 Fed. Appx. 579, 581 (5th Cir. 2007) (because plaintiff produced no evidence other than unsupported claim of ownership of stock at issue, plaintiff had no interest in settlement fund, was not member of class, and lacked standing to challenge settlement).

The documents that Bayside has produced in this litigation show that Bayside purchased other types of rubber hose, but not marine hose, from certain of the defendants. Marine hose is highly specialized product made according to standards issued by the Oil Companies International Marine Forum (OCIMF). (*See* Report on Marine Hoses Prepared by Minoo Patel ("Patel Report") ¶ 4, attached as Ex. A to Pls.' Mot.; Deposition of Minoo Patel ("Patel Depo.") 68-70, attached as Ex. B; Deposition of John C. Beyer ("Beyer Depo.") 137-139, attached as Ex. C.) The documents produced by Bayside in this case show that Bayside never purchased marine hose from the defendants. (Declaration of Paulo Seghi ("Seghi Decl.") ¶¶ 15-16, attached as Ex. D; Declaration of Kevin Wojciechowski ("Wojciechowski Decl.") ¶¶ 4-5, attached as Ex. E.)

Because Bayside cannot sustain its burden of satisfying the Court that it purchased marine hose, the Court is not in a position to anoint Bayside as a proper class representative on this motion for certification.

---

[4]    All exhibits cited herein are appended to the Declaration of Daniel A. Goldschmidt filed together with this memorandum of law.

**2.      Expro Lacks Standing to Sue.**

Expro likewise may not serve as a class representative in this litigation because plaintiffs have offered no evidence that Expro ever purchased marine hose from any defendant in the United States.  Expro's only purchase of marine hose was a foreign transaction that cannot, as a matter of law, give rise to a federal antitrust claim.  A foreign purchase does not qualify for recognition in this Court.  To recognize it would be contrary to settled law and principles of international comity.

The Foreign Trade Antitrust Improvements Act ("FTAIA"), 15 U.S.C. § 6a (2008), sets the scope of federal subject matter jurisdiction for antitrust claims involving foreign trade in goods that are not imported into the U.S.[5] As the Supreme Court explained in *F. Hoffman-La Roche Ltd.* v. *Empagran S.A.*, 542 U.S. 155, 158 (2004), the FTAIA generally excludes price-fixing activity "involving trade or commerce . . . with foreign nations" from the reach of the Sherman Act.  It then creates an exception to the general rule and makes the Sherman Act applicable to conduct that "(1) has a 'direct, substantial, and reasonably foreseeable effect' on domestic commerce, and [where] (2) 'such effect gives rise to a [Sherman Act] claim.'" *Id.* at 159 (*citing* 15 U.S.C. §§ 6a(1)(A), (2)).  As the FTAIA is dispositive of Expro's claim, plaintiffs bury it in a footnote in their opening papers. (Pls.' Mot. 11, n.5.)[6]

---

[5]     The FTAIA is applicable to cases, like this one, involving commerce between companies located in foreign nations.  *See Den Norske Stats Oljeselskap As* v. *HeereMac v.o.f.*, 241 F.3d 420, 426 (5th Cir. 2001) (applying the FTAIA to a case involving commerce between foreign corporations); *Turicentro* v. *Am. Airlines, Inc.*, 303 F.3d 293, 301-302 (3d Cir. 2002) ("The phrase 'trade or commerce with foreign nations' includes transactions between foreign and domestic commercial entities, not just transactions involving a foreign sovereign.")

[6]     Ignoring the FTAIA standard, plaintiffs instead cite cases that articulate the jurisdictional test for entirely domestic antitrust cases with no foreign component.  These cases involve questions as to whether the alleged conduct affected *interstate* commerce because much of the conduct occurred in one state within the United States; they do not relate to *international* commerce in any way.  *See Shahawy* v. *Harrison*, 778 F.2d 636, 641 (11th Cir. 1985) (involving a dispute among doctors practicing in Florida hospital who treated a substantial number of out-of-state patients and who receive a substantial portion of their revenues

The *Empagran* Court noted that "application of [U.S. antitrust] laws [to foreign conduct] creates a serious risk of interference with a foreign nation's ability independently to regulate its own commercial affairs." *Empagran*, 542 U.S. at 165. For this reason, the FTAIA extends jurisdiction under the Sherman Act only to foreign conduct that causes a direct and substantial domestic injury. Expro should be pursuing a remedy for any injury it allegedly sustained as a result of its purchase of marine hose in the country where such injury accrued. Notably, the United Kingdom – where Expro apparently paid for the marine hose at issue – provides a legal mechanism for seeking private antitrust damages. *See* Competition Act, 1998, c. 4, § 47A (Eng.).

It is difficult to fathom that Expro suffered any injury in the United States. Expro is a corporation organized under the laws of Cyprus, with its apparent principal place of business in South Africa. (*See* Consol. Class Action Compl. ("Compl.") ¶ 10; One Source Report for Expro Gulf Ltd. ("One Source Report"), attached as Ex. F.) Its parent, Expro International Group PLC, is incorporated under the laws of England and Wales and is domiciled in the United Kingdom. (*See* One Source Report; Expro International Group Annual Report 36, attached as Ex. G.) The transaction on which Expro predicates its claim is a purchase of marine hose from defendant Parker ITR, an Italian corporation with its principal place of business in Italy. (Pls.' Mot. 10; Compl. ¶ 18.) ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

from out-of-state insurance companies); *Construction Aggregate Transport, Inc.* v. *Florida Rock Industries, Inc.,* 710 F.2d 752, 766 (11th Cir. 1983) (suit by one Florida corporation against two other Florida corporations, relating to conduct that occurred in Florida).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ In

no sense did this transaction have a "direct, substantial, and reasonably foreseeable effect" on

U.S. commerce, and plaintiffs' efforts to prove the contrary are in vain.

First, it is irrelevant that the corporate parent of the defendant that sold marine

hose to Expro is located in the U.S. (Pls.' Mot. 10.) *See Liamuiga Tours* v. *Travel Impressions,*

*Ltd.*, 617 F. Supp. 920, 924 (E.D.N.Y. 1985) (finding that the court does not have jurisdiction

under the FTAIA, even though Defendant was a U.S. corporation and noting that "[i]t matters

not if there was anti-competitive conduct in the United States or by domestic corporations"

because the effects of the conduct were felt abroad); *Eurim-Pharm GmbH* v. *Pfizer, Inc.*, 593 F.

Supp. 1102, 1106 (S.D.N.Y. 1984) ("The [FTAIA] clearly was intended to exempt from United

States antitrust law conduct that lacks the requisite domestic effect, even where such conduct

originates in the United States or involves American-owned entities operating abroad.")

Second, it is of no legal consequence that Expro made this purchase of marine

hose "in connection with work it was performing for Chevron Corporation, a U.S. corporation."

(Pls.' Mot. 10.) As Expro's client, Chevron is essentially an indirect purchaser lacking standing

to seek damages under the federal antitrust laws. *See In re Terazosin Hydrochloride Antitrust*

*Litig.*, 220 F.R.D. at 678 n.5 (*citing Illinois Brick Co* v. *Illinois*, 431 U.S. 720 (1977); *Hanover*

*Shoe* v. *United Shoe Machinery Corp.*, 392 U.S. 481 (1968)). Accordingly, it is Expro's injury,

not Chevron's, that is relevant to the analysis of Expro's standing.

Third, the fact this transaction may have involved Expro employees located in U.S. (Pls.' Mot. 10.) is, by itself, insufficient to establish that the transaction had a *direct* and *substantial* effect on U.S. commerce. *See Turicentro,* 303 F.3d at 305 ("That certain activities might have taken place in the United States is irrelevant if the economic consequences are not felt in the United States economy.") ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Just because a foreign corporation maintains a representative office in Houston does not mean that its legal injury is felt there.

Finally, it is irrelevant that the sale agreement between Expro and Parker ITR was governed by Texas law. (Pls.' Mot. 11.) The fact that the parties chose Texas law to govern their contract is not relevant to where the injury resulting from the transaction was felt.

In arguing that limited communications concerning this transaction took place in the United States, plaintiffs seem to confuse the standard for extraterritorial application of the federal antitrust laws with the sort of analysis used to assess jurisdiction in, for example, a wire fraud case. Under the antitrust laws, federal subject matter jurisdiction is not created simply by the fact that a fax passed through the U.S. in connection with a complicated, global transaction. The correct analysis turns on whether the product was imported into the U.S. or whether direct and substantial injury was felt here. Having failed to establish either of these facts, Expro lacks the qualifications to represent a class of absent plaintiffs.

## II.   CLASS CERTIFICATION MUST BE DENIED BECAUSE THE REQUIREMENTS OF RULE 23 ARE NOT SATISFIED.

In addition to their failure to establish that either Bayside or Expro may sue the defendants in this Court, plaintiffs fail to satisfy the stringent requirements of Rule 23. In order

to certify a plaintiff class under that Rule, the Court must find that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  In addition, because plaintiffs have made their motion under Rule 23(b)(3), they must also show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  As is the case here, a plaintiff's failure to establish any one of the four factors under Rule 23(a) or the requirements under Rule 23(b)(3) precludes certification of a litigation class. *See Valley Drug Co.* v. *Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003).

As this Court has noted previously, when evaluating whether plaintiffs have satisfied the requirements of Rule 23, the Court's "inquiry is not limited to the face of the Plaintiffs' Complaint or Motion for Class Certification.  Rather, as stated by the Eleventh Circuit, '[w]hile it is true that a trial court may not properly reach the merits of a claim when determining whether class certification is warranted, this principle should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." *Pop's Pancakes, Inc.* v. *NuCO2, Inc.*, No. 07-14157, 2008 U.S. Dist. LEXIS 63515, at *8-9 (S.D. Fla. July 21, 2008) (Graham, J.) (citations omitted); *see also Valley Drug*, 350 F.3d at 1188 n.15 ("Although the trial court should not *determine* the merits of the plaintiffs' claim at the class certification stage, the trial court can and should *consider* the merits

of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied") (emphasis added).

### A.      Class Certification Must Be Denied Because the Claims of the Proposed Class Representatives Are Not Typical of Those of the Proposed Class.

Plaintiffs' motion for class certification must be denied because Bayside and Expro's claims are not typical of those of the proposed class. *See* Fed. R. Civ. P. 23(a)(3) ("the claims. . . of the representative parties [must be] typical of the claims. . . of the class.")

To satisfy the typicality requirement set forth in Rule 23(a)(3), plaintiffs must show "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg* v. *Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). As set forth in detail, *supra*, neither Bayside nor Expro purchased marine hose from any of the defendants in the United States. Because Bayside and Expro's claims are facially inadequate, they are *per force* atypical of the claims of absent persons who might actually have purchased marine hose from one of the defendants in the United States.

Because plaintiffs fail to satisfy the typicality requirement set forth in Rule 23(a)(3), their motion for class certification must be denied.

### B.      Class Certification Must Be Denied Because Common Issues of Fact and Law Do Not Predominate Over Individual Ones.

A class cannot be certified in this case because common issues of law or fact do not predominate over individual issues. *See* Fed. R. Civ. P. 23(b)(3) (". . . questions of law or fact [must] predominate over any questions affecting only individual members. . . .") Here, while there may be questions of law or fact that are common to the class, such issues do not predominate over individualized issues.

1.   **Whether Each Class Member Purchased Marine Hose in the United States is a Critical Legal Issue that Must Be Determined on an Individualized Basis.**

As discussed *supra*, this Court lacks subject matter jurisdiction to hear the claims of persons who purchased marine hose *outside* the United States.  Because individualized mini-trials would be required to determine whether each purchase of marine hose may give rise to a claim under the U.S. antitrust laws, issues of fact and law particular to each purchase eclipse those common to the putative class, and class certification is not appropriate here.  *See Klay* v. *Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) ("Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)."); *Pop's Pancakes*, 2008 U.S. Dist. LEXIS 63515, at *19 (same); *see also Alabama* v. *Blue Bird Body Co.*, 573 F.2d 309, 328 (5th Cir. 1978) ("[I]f the effect of class certification is to bring in thousands of possible claimants whose presence will in actuality require a multitude of mini-trials (a procedure which will be tremendously time consuming and costly), then the justification for class certification is absent.").

Plaintiffs purport to represent a class of persons who "purchased Marine Hose in the United States." (Pls.' Mot. 2.)  This class definition is inadequate insofar as it fails to specify with any clarity what constitutes a U.S. purchase.  However, plaintiffs have suggested outside the pleadings that they would interpret this term to include any purchase of marine hose: contracted in the U.S.; invoiced to or from the U.S.; requisitioned in the U.S.; negotiated in the U.S.; shipped to the U.S.; purchased by an individual or entity located in the U.S.; or paid for in, or

from, the U.S.[7]  And plaintiffs clearly contend that foreign purchasers like Expro – which is

incorporated and based abroad, which ordered hose from a company located abroad, and which

had the product shipped and invoiced abroad – may not only be in the class, but may lead it.

It is undisputed that marine hose is a product that is manufactured outside the

United States, shipped to locations around the world, and bought and sold by companies located

all over the globe.  (Seghi Decl. ¶¶ 8-10; Declaration of Craig Anderson ("Anderson Decl.") ¶¶

10, 14, attached as Ex. K.)  Accordingly, if a class were certified, for each prospective class

member and each individual purchase, the Court would be faced with an individualized inquiry

as to where the purchase occurred and whether the class member may seek relief in this

American Court under the U.S. antitrust laws.  Then, the Court would be called upon to

determine whether, based on these factors, such a transaction had a direct, substantial, and

reasonably foreseeable effect on U.S. commerce as to fall within the reach of the Sherman Act

and within its own jurisdiction.  The question of whether a transaction has a *substantial* effect is

a particularly individualized and highly fact-dependent inquiry.  It must be emphasized that these

are critical questions, as they go to the heart of the Court's jurisdiction to hear the claims.

The individualized questions overwhelm the allegations of price-fixing in this

case.  As the court stated in *Perez* v. *Metabolife Int'l, Inc.*, 218 F.R.D. 262, 273 (S.D. Fla. 2003),

"any efficiency gained by deciding the common elements will be lost when separate trials are

required for each class member in order to determine each member's entitlement to the requested

relief."  *See also Jim Moore Ins. Agency, Inc.* v. *State Farm Mut. Auto. Ins. Co.*, No. 02-80381,

2003 U.S. Dist. LEXIS 25550, at *31 (S.D. Fla. May 6, 2003) ("In sum, the large number of

---

[7]       *See* July 7, 2008 letter from Jan Bartelli to David Cook, Walter Berger, and Daniel Goldschmidt (attached
as Ex. L) and August 4, 2008 letter from Gregory Hansel, Hollis Saltzman, and Jan Bartelli to Robert
Osgood (attached as Ex. M.)

individualized factual determinations as to liability and as to damages would overwhelm those matters amendable to generalized proof, would result in a series of time consuming mini-trials, and would defeat the purposes of class certification.").

### 2. Plaintiffs Have Not Sustained Their Burden to Demonstrate that Injury and Damages Can Be Established by Common Proof.

Plaintiffs submit the report of John C. Beyer, Ph.D. ("Beyer Report," attached as Ex. B to Pls.' Mot.) in an effort to establish that antitrust injury can be shown using common proof for all members of the proposed class and that class-wide damages can be calculated using a common model. Because the Beyer Report is poorly reasoned and thinly supported, the Court cannot rely on it to conclude that injury and damages can be established by common proof.

Dr. Beyer is no stranger to the federal courts, having been criticized repeatedly by several courts for his less than rigorous "expert" work in cases like the one at bar. *See, e.g.,* *Allied Orthopedic Appliances, Inc.* v. *Tyco Healthcare Group L.P.*, 247 F.R.D. 156, 165-176 (C.D. Cal. 2007) (heavily criticizing Dr. Beyer's methodology, noting that it was flawed in many respects, and denying class certification because plaintiffs failed to show how common evidence could be used to prove antitrust injury); *Lantec, Inc.* v. *Novell, Inc.*, No. 2:95-CV-97-ST, slip op. at 17 (D. Utah Feb. 13, 2001) (excluding Dr. Beyer's testimony and noting that Dr. Beyer's "opinions lack all indicia of reliability and as such can only confuse and mislead the jury"), *aff'd Lantec, Inc.* v. *Novell, Inc.*, 306 F.3d 1003, 1025 (10th Cir. 2002) (agreeing that Dr. Beyer's testimony "lacked foundation, was unreliable, and should be excluded in its entirety."); *Blue Cross & Blue Shield United of Wisconsin* v. *Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998) (Posner, J.) (referring to Dr. Beyer's two expert reports as "worthless"); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 498 (N.D. Miss. 1996) (approving class settlement and stating "it is sufficient to note that the court had serious concerns about the admissibility of Dr. Beyer's

testimony because of the apparent novelty of his economic theories in light of the dictates of *Daubert*. . . ."); *In re Agric. Chems. Antitrust Litig.,* No. 94-40216-MMP, 1995 WL 787538, at *4 (N.D. Fla. Oct. 23, 1995) (finding that Dr. Beyer's analysis "does not establish the common, class-wide proof required for class action treatment"). In addition, academic commentators have questioned the rigor of Dr. Beyer's work.[8]



---

[8]   *See* Franklin M. Fisher, *Statisticians, Econometricians, and Adversary Proceedings,* 81 Journal of the Amer. Statistical Assn. 277, 282-85 (June 1986) (describing Dr. Beyer's work as an example of "poor statistical and econometric testimony masquerading as serious science"), attached as Ex. N; Michael O. Finklestein & Hans Levenbach, *Regression Estimates of Damages in Price-Fixing Cases,* 46 Law & Contemporary Problems 145 (1983), attached as Ex. O.





*Cf. Allied,* 247 F.R.D. at 172 ("Dr. Beyer has not sufficiently interviewed purchasers of pulse oximetry products, generic sensor manufacturers, or even employees of the seven named plaintiffs. In the relevant time frame, Dr. Beyer has shown no basis to believe that all customers choose vendors based on price alone, sufficient to drive Tyco prices down to the level of generics, because, beyond any other deficiency, he simply never asked.")

_____

[9]

-18-

 *See Allied*, 247

F.R.D. at 166 ("In this case, Dr. Beyer merely recites statements pulled from predictive internal

Tyco documents without meaningful further investigation."); *Lantec*, slip. op. at 16 ("'[T]he court

cannot find that reliance on internal documents from a company are 'of a type reasonably relied

upon by experts in the particular field. . . .'").

      Because the Beyer Report is wholly inadequate and purely results-driven, the

Court should reject it, just as several other federal courts across the country have rejected Dr.

Beyer's work.  Plaintiffs have not established a common method of establishing injury and

damages.  The real possibility for the need of individualized proof leads to the conclusion that no

class should be certified.

**C.     Class Certification Must Be Denied Because the Purported Class Is Not So Numerous that Joinder Would Be Impracticable.**

Plaintiffs have failed to satisfy their burden of proving that the class is so numerous that joinder would be impracticable or that "these [entities] cannot be joined without inconvenience or difficulty." *Jones* v. *Roy*, 202 F.R.D. 658, 666 (M.D. Ala. 2001); *see also* Fed. R. Civ. P. 23 (a)(1). ███████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Simply sending an invoice to a mail drop in Houston does not constitute a direct, substantial and reasonably foreseeable U.S. transaction within the scope of the FTAIA. More importantly, the parties agreed during class discovery to disagree about what constituted a U.S. purchase, and in this spirit defendants committed to produce invoices and sales data for transactions invoiced to U.S. addresses without prejudice to their position that these were not U.S. sales. (Goldschmidt Decl. ¶ 2.) █████████

████████████████████████████████████████████

██████████ Because plaintiffs have not established sufficient numerosity to warrant certification of a class, their motion should be denied.

**D.     Class Certification Must Be Denied Because the Class Action Mechanism Is Not the Superior Method of Adjudication of this Dispute.**

Plaintiffs have failed to demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The class action is particularly appropriate where those who have allegedly been injured are in a poor position to seek legal redress, either because they do not know enough or such redress is disproportionately expensive. Its historic mission has been to take care of the

smaller guy." *Dahlgren's Nursery, Inc.* v. *E.I. du Pont de Nemours and Co., Inc.*, No. 91-8709-CIV, 1994 U.S. Dist. LEXIS 17918, at *25-26 (S.D. Fla. June 9, 1994) (citations omitted).  Such concerns are not present in this case.  ███████████████████████████████

████████████████████████████████████████████████████████████

███████████████  If these oil companies wished to pursue a claim, they have the means to do so.

     **E.**     **Class Certification Must Be Denied Because the Proposed Class Representatives and their Counsel Are Inadequate to Lead the Proposed Class.**

        **1.**     **Bayside and Expro Are Not Adequate to Lead the Proposed Class.**

Bayside and Expro cannot adequately represent the interests of the class because there are substantial conflicts of interest that exist between them and absent members of the proposed class. *See Valley Drug*, 350 F.3d at 1189 (adequacy requires dual showing as to "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.").  Chief among these conflicts is that Bayside has produced no evidence that it has ever purchased marine hose (Seghi Decl. ¶¶ 15-16; Wojciechowski Decl. ¶¶ 4-5; Anderson Decl. ¶¶ 5-8.) and, as explained above, Expro has not purchased marine hose in the United States.  The two proposed class representatives are therefore in conflict with members of the class who have purchased marine hose and theoretically could state Sherman Act claims against certain of the defendants.  Were Bayside and Expro to recover from the defendants even though they did not make qualifying purchases, it would work injury to potential legitimate plaintiffs participating in the class.

     Because of the irreconcilable conflict between the proposed class representatives and absent class members, Bayside and Expro are inadequate to lead the proposed class.

**2.      Proposed Class Counsel Are Not Adequate to Lead the
          Proposed Class and Should Not Be Appointed Class Counsel.**

Because plaintiffs' lawyers are inadequate to represent the proposed class, the

Court should deny both the class certification motion and the branch of plaintiffs' motion that

seeks the appointment of three law firms as class counsel pursuant to Rule 23(g).  While

plaintiffs' counsel have certainly appeared in a number of cases, this alone does not qualify them

for the job.  In this case, plaintiffs' counsel have either indulged misbehavior by their clients or

failed to make a good faith investigation of the facts before filing suit.  Accordingly, they cannot

be relied upon to discharge their obligations to absent litigants responsibly and should not be

appointed class counsel.  *See, e.g., Armstrong* v. *Chicago Park Dist.*, 117 F.R.D. 623, 634 (N.D.

Ill. 1987) (finding that plaintiffs failed to fulfill the Rule 23 adequacy factor because "counsel's

conduct – both in prior litigation and, even more importantly, in the initial phases of this

litigation – has been such as to compel an adverse determination.")

Specifically, the Court must consider "the work counsel has done in identifying or

investigating potential claims in the action" in determining whether to appoint these three firms

as class counsel.  Fed. R. Civ. P. 23(g)(1)(A)(i).  Someone failed to conduct a proper

investigation before filing suit in this litigation and for over a year thereafter.  Three of the

original named plaintiffs – Shipyard, Bayside and Weeks Marine – never purchased marine hose

from the defendants, and the fourth plaintiff, Expro, never purchased marine hose from the

defendants in the U.S.  (Seghi Decl. ¶¶ 15-18; Wojciechowski Decl. ¶¶ 4-5.)  Despite this lack of

purchases and defendants' efforts to warn plaintiffs' counsel that Weeks Marine and Bayside

should be dismissed from the litigation,[10] only on September 4, 2008, did Weeks Marine and

---

[10]      Counsel for defendant Trelleborg wrote a letter on July 17, 2008 to Plaintiffs' counsel, stating: "It has
become apparent through their own document productions that neither Weeks Marine nor Bayside Rubber

Shipyard seek to be dismissed.  However, plaintiffs' counsel continue to propose Bayside as a class representative, and have asked that Weeks and Shipyard be dismissed *without* prejudice.

In addition, it appears that one of the firms seeking to serve as co-lead counsel for plaintiffs in this litigation, Preti, Flaherty, Beliveau & Pachios LLP ("Preti"), has essentially been litigating this case *without a client* for some months.  Counsel for Shipyard Supply represented to counsel for Manuli in August that he was unable to reach his client and suggested that this had been true for some time.  (Goldschmidt Decl. ¶ 3.)  Now Shipyard Supply wishes to be dismissed from the case without prejudice.  Despite Shipyard's withdrawal from the litigation, Preti continues to be active in the case, appearing at depositions and even purporting to speak for the plaintiffs during the September 10, 2008 status conference with the Court.  Given that the Court has not certified a litigation class and has never appointed Preti as class counsel (except on an interim basis, premised on its representation of Shipyard), Preti's continued involvement on behalf of clients it has no authority to represent raises issues relevant to its adequacy to represent an absent class.[11]

One of the other two firms seeking to be appointed as co-lead counsel, Labaton Sucharow LLP, has recently been admonished by Judge Jed S. Rakoff in the Southern District of New York for litigating a case through a class representative who had virtually no knowledge of

---

and Products have made any purchases of marine oil hoses.  We assume you will dismiss them immediately as plaintiffs. . . ." (Letter from Roxanne Henry to Hollis Salzman, Gregory Hansel, and Bruce Gerstein, attached as Ex. P).  Counsel for the Manuli defendants wrote a letter on July 30, 2008 to Plaintiffs' counsel requesting that plaintiff Weeks Marine dismiss its complaint against the defendants and withdraw as a class representative.  (Letter from Daniel Goldschmidt to Hollis Salzman, Jan Bartelli, Gregory Hansel, and Joseph Barton, attached as Ex. Q).

[11]  At the September 19, 2008 deposition of plaintiffs' industry expert, Dr. Minoo Patel, Manuel J. Dominguez of the firm of Berman DeValerio Pease Tabacco Burt & Pucillo appeared alongside Randall Weill of the Preti firm.  Mr. Dominguez entered a presumptuous appearance on the record for "the plaintiffs."  When asked off the record which plaintiff he represented, he indicated that he represented the class.  Reminded that there is no such class, he said that he – like the Preti firm – was counsel for Shipyard Supply.  (Goldschmidt Decl. ¶ 4.)  Mr. Dominguez's appearance on the docket sheet reflects the same.  Mr. Dominguez, too, is litigating this case without a client.

the litigation. *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-2237, 2008 U.S. Dist. LEXIS 53466 (S.D.N.Y. July 14, 2008) (ultimately approving a different investor as named plaintiff). In criticizing the Labaton firm, Judge Rakoff wrote, "The Court will not be a party to this sham. The foregoing events establish beyond a doubt that [the proposed class representative] . . . is simply the willing pawn of counsel. . . . Indeed, the entire set of events discussed above leaves the Court with the distinct impression that plaintiffs' counsel may not have fulfilled their professional responsibilities in proposing [the named plaintiff] as class representative." *Id.* at *12. Plaintiffs' counsel should not be permitted to shirk their professional responsibilities again in this litigation. In this case, Labaton filed suit on behalf of Bayside, a company that never purchased marine hose. To this date, it has refused to acknowledge the lack of evidence of Bayside's purchases, continuing to litigate this action on behalf of a party with no claims and serious Rule 11 issues hanging in the balance. Given Labaton's conduct on behalf of Bayside and its recent conduct in the Southern District of New York, it should not be permitted to represent the absent class.

Because none of the three firms that have nominated themselves to be co-lead counsel for the absent class conducted an adequate investigation before filing suit, and for the additional reasons set forth against the Preti and Labaton firms, defendants urge that none of these firms is adequate under Rule 23(g) to represent the absent class.

## CONCLUSION

Over a year ago plaintiffs' counsel rushed to the courthouse and precipitously filed this litigation, without regard to whether their "clients" had legitimate claims. Rather than withdraw at the many opportunities presented by defendants to correct this central deficiency, plaintiffs' counsel marched onward, ignoring the absence of facts and in some cases their lack of

clients.  Plaintiffs' counsel are not adequate within the meaning of Rule 23(g) and should not be rewarded with the certification of a class that would pressure defendants toward settlement of a sham litigation.

In addition to the questionable way in which this litigation has been conducted, plaintiffs have no standing to sue, and their claims do not meet the requirements of Rule 23. Plaintiffs' claims are not typical of claims of absent purchasers who might actually have such standing.  The typical marine hose transaction is multinational and complex, and unscrambling the omelet to determine whether any legal injury is cognizable under the U.S. antitrust laws and within this Court's subject matter jurisdiction will require an individualized analysis of each purchase, thus overwhelming any common issues that may be present in this case.  Plaintiffs likewise fail to demonstrate that impact and damages can be proven through a common method, relying on a deeply flawed economic analysis.  Finally, there is no reason to believe that potential class members are so numerous as to preclude joinder, nor that the large companies that would be class members cannot litigate without the help of current plaintiffs' counsel.

For all of the foregoing reasons, defendants respectfully request that the Court deny plaintiffs' motion for class certification.

Dated:  September 25, 2008          Respectfully submitted,

> __ /s/  Lyle E. Shapiro _____
> Alan G. Greer (Florida Bar No. 123294)
> agreer@richmangreer.com
> Lyle E. Shapiro (Florida Bar No. 0120324)
> lshapiro@richmangreer.com
> RICHMAN GREER, P.A.
> Miami Center – Suite 1000
> 201 South Biscayne Boulevard
> Miami, Florida 33131
> Telephone: (305) 373-4000
> Facsimile: (305) 373-4099

Robert M. Osgood (admitted *pro hac vice*)
Daniel A. Goldschmidt (admitted *pro hac vice*)
Fern Mechlowitz (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
One New Fetter Lane
London EC4A 1AN, England
Telephone: +44 (0) 20 7959 8900
Facsimile: +44 (0) 20 7959 8950

   -and-

125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel for Defendants Manuli Rubber Industries
S.p.A. and Manuli Oil & Marine (U.S.A.) Inc.*

Jeffrey Allan Sudduth
LEGON PONCE & FODIMAN PA
1111 Brickell Avenue
Suite 2150
Miami, FL 33131
Telephone: (305) 444-9991
Facsimile: (305) 444-9937
Email: jsudduth@lpflaw.com

John M. Majoras (admitted *pro hac vice*)
Carmen G. McLean (admitted *pro hac vice*)
Michelle L. Marks (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001-2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

*Counsel for Defendants Parker ITR S.r.l. and Parker
Hannifin Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


_____/s/Lyle E. Shapiro_____
LYLE E. SHAPIRO

## Service List

| | |
|---|---|
| **Gregory P. Hansel, Esq.**<br>ghansel@preti.com<br>**James C. Bush, Esq.**<br>jbush@preti.com<br>**Patrick N. Strawbridge, Esq.**<br>pstrawbridge@preti.com<br>**Randall B. Weill, Esq.**<br>rweill@preti.com<br>Preti, Flaherty, Beliveau & Pachios, LLP<br>One City Center, P.O. Box 9546<br>Portland, ME 04112-9546<br>Telephone: (207) 791-3000<br><br>**Bruce Gerstein, Esq.**<br>bgerstein@garwingerstein.com<br>**Barry Taus, Esq.**<br>btaus@garwingerstein.com<br>**Noah H. Silverman, Esq.**<br>nsilverman@garwingerstein.com<br>Garwin, Gerstain & Fisher, LLP<br>1501 Broadway, Suite 1416<br>New York, NY 10036<br>Telephone: (212) 398-0055<br><br>**Hollis Lee Salzman, Esq.**<br>hsalzman@labaton.com<br>Labaton Sucharow, LLP<br>140 Broadway<br>New York, NY 10005<br>Telephone: (212) 907-0717<br>Fax: (212) 883-7017<br><br>**Richard Aldo Serafini, Esq.**<br>serafinir@gtlaw.com<br>Greenberg Traurig<br>401 E. Las Olas Blvd., Suite 2000<br>Ft. Lauderdale, FL 33301<br>Telephone: (954) 768-8256<br>Fax: (954) 765-1477<br>**Counsel for Dunlop Oil & Marine LTD** | **Jeffrey Bruce Crockett, Esq.**<br>jcrockett@coffeyburlington.com<br>Coffey Burlington<br>Penthouse<br>2699 South Bayshore Drive<br>Miami, FL 33133<br>Telephone (305) 858-2900<br>Fax: (305) 858-5261<br>**Counsel for Misao Hioki**<br><br>**Christopher T. Casamassima, Esq.**<br>ccasamassima@kirkland.com<br>Kirkland & Ellis<br>777 S. Figueroa Street, Suite 3700<br>Los Angeles, CA 90017<br>Telephone: (213) 680-8400<br>**Counsel for Misao Hioki**<br><br>**James H. Mutchnik, Esq.**<br>mutchnick@kirkland.com<br>Kirkland & Ellis<br>200 E. Randolph Drive, Suite 6048<br>Chicago, IL 60601<br>Telephone: 312 861-2350<br>Fax: 312 861-2200<br>**Counsel for Misao Hioki**<br><br>**John M. Marjoras, Esq.**<br>jmmajoras@jonesday.com<br>**Carmen G. McLean, Esq.**<br>cgmclean@jonesday.com<br>Jones Day<br>51 Louisiana Avenue NW<br>Washington, DC 20001-2113<br>Telephone: (202) 879-3939<br>Fax: (202) 626-1700<br>**Counsel for Parker-Hannifin Corporation**<br><br>**Jennifer Seraphine, Esq.**<br>jseraphine@jonesday.com<br>Jones Day<br>555 California Street, 26th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 626-3939 |

**Alan G. Greer, Esq.**
agreer@richmangreer.com
**Lyle E. Shapiro, Esq.**
lshapiro@richmangreer.com
Richman Greer, PA
201 S. Biscayne Blvd., Suite 1000
Miami, FL 33131
Telephone: (305) 373-4000
Fax: (305) 373-4099
**Counsel for Manuli Rubber Industries**
**S.p.A. and Manuli Oil & Marine**
**(U.S.A.)**

**Robert M. Osgood, Esq.**
osgoodrm@sullcrom.com
**Daniel A. Goldschmidt, Esq.**
Goldschmidt@sullcrom.com
**Fern Mechlowitz, Esq.**
mechlowitz@sullcrom.com
Sullivan & Cromwell LLP
1 New Fetter Lane
London EC4A 1AN
England
Telephone: 020 7959 8550
Fax: 020 7959 8950
**Counsel for Manuli Oil & Marine**
**(USA)**

**Alain E. Boileau, Esq.**
aeb@adorno.com
**Robert Hunt Schwartz, Esq.**
rhs@adorno.com
Adorno & Yoss
888 SE 3rd Avenue, Suite 500
Ft. Lauderdale, FL 33335-9002
Telephone: (954)523-5885
Fax: (954) 760-9531
**Counsel for Bridgestone Industrial**
**Products America, Inc.**

**Harold Donnelly, Esq.**
donnelly77@comcast.net
**Hal D. Hardin, Esq.**
halhardin@aol.com
211 Union Street, Suite 200
Nashville, TN 37201

Fax: (415) 875-5700
**Counsel for Parker-Hannifin Corporation**

**Paul M. Alfieri, Esq.**
paul.alfieri@linklaters.com
**Joseph P. Armao, Esq.**
joseph.armao@linklaters.com
**Robert H. Bell, Esq.**
robert.bell@linklaters.com
**Danielle Randazzo, Esq.**
danielle.randazzo@linklaters.com
**Benjamin D. Singer, Esq.**
Ben.singer@linklaters.com
Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
Telephone: (212) 903-9000
Fax: (212) 903-9100
**Counsel for Yokohama Rubber Co., LTD**

**Bryan Robert Cleveland, Esq.**
beleveland@ghblaw.com
Gilbride Heller & Brown
2 South Biscayne Blvd.
One Biscayne Tower, 15th Floor
Miami, FL 33131
Telephone: (305) 358-3580
Fax: (305) 374-1756
**Counsel for Yokohama Rubber Co., LTD**

**Walter M. Berger, Esq.**
bergerc@howrey.com
Howrey LLP
111 Louisiana, 25th Floor
Houston, TX 77002-5242
Telephone: (202) 333-6517
**Counsel for Trelleborg Industrie SA**

**James G. Kress, Esq.**
kressj@howrey.com
**Roxann E. Henry, Esq.**
henryr@howrey.com
**Richard E. DiZinno, Esq.**
dizinno@howrey.com
**Christina Guerola Sarchio, Esq.**
sarchiochristina@howrey.com

Telephone: (615) 620-3277
Fax: (615) 369-3344
**Counsel for Bridgestone Industrial
Products America, Inc.**

**Gregory J. Trask, Esq.**
gtrask@homerbonnerlaw.com
Homer Bonner, PA
1441 Brickell Avenue
Four Seasons Tower, Suite 1200
Miami, FL 33131
Telephone: (305) 350-5100
Fax: (305) 372-2738
**Counsel for Bridgestone Corporation**

**Jennifer Marie Driscoll, Esq.**
jdriscoll@mayerbrown.com
**Donald C. Klawiter**
dklawiter@mayerbrown.com
Mayer Brown LLP
1909 K. Street NW
Washington, DC 20006
Telephone: (202) 263-3860
Fax: (202) 762-4252
**Counsel for Christian Caleca**

**Michael Abram Rosen, Esq.**
mrosen@frc-law.com
Fowler Rodriguez LLP
355 Alhambra Circle, Suite 801
Coral Gables, FL 33134
Fax: Telephone: (786) 364-8400
Fax: (786) 364-8401
**Counsel for Christian Caleca**

**Robert Mark Brochin, Esq.**
rbrochin@morganlewis.com
Morgan Lewis & Bockius
200 S. Biscayne Blvd.
Suite 5300
Miami, FL 33131-2339
Telephone: (305) 415 3456
Fax: (305) 415-3001
**Counsel for Christian Caleca**
**Diana J. Pomeranz, Esq.**
dpomeranz@kslaw.com

Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
**Counsel for Trelleborg Industrie SA**

**Benedict P. Kuehne, Esq.**
ben.kuehne@kuehnelaw.com
**Susan Dmitrovshy, Esq.**
dmitrovsky@sk-lawyers.com
Benedict P. Kuehne, PA
100 SE 2nd Street, Suite 3550
Miami, FL 33131-2154
Telephone: (305) 789-5989
Fax: (305) 789-5987
**Counsel for Trelleborg Industrie SA**

**R. Bruce Holcomb, Esq.**
holcombb@dicksteinshapiro.com
**James R. Martin, Esq.**
martinj@dicksteinshapiro.com
**Christopher Fitzgerald Branch, Esq.**
branchc@dicksteinshapiro.com
Dickstein Shapiro, LLP
1825 Eye Street NW
Washington, DC 20006-5403
Telephone: (202) 420-2200
**Counsel for Dunlop Oil & Marine**

**Marc David Seitles, Esq.**
mseitles@seitleslaw.com
169 E. Flagler Street, Suite 1200
Miami, FL 33131
Telephone: (305) 379- 6667
Fax: (305) 379-6668
**Counsel for Vanni Scodeggio**

**Jeffrey Allan Sudduth, Esq.**
jsudduth@lpflaw.com
Legon Ponce & Fodiman, PA
1111 Brickell Avenue, Suite 2150
Miami, FL 33131
Telephone: (305) 444-9991
Fax: (305) 444-9937
**Counsel for Parker Hannafin Corp**

| | |
|---|---|
| **James M. Griffin, Esq.**<br>jgriffin@kslaw.com<br>**Kevin R. Sullivan, Esq.**<br>ksullivan@kslaw.com<br>**Susan D. Inman, Esq.**<br>sinman@kslaw.com<br>King & Spalding LLP<br>1700 Pennsylvania Avenue NW<br>Washington, DC 20006<br>Telephone: (202) 626-5540<br>**Counsel for Vanni Scodeggio**<br><br>**David Oscar Markus, Esq.**<br>dmarkus@markuslaw.com<br>169 E. Flagler Street, Suite 1200<br>Miami, FL 33131<br>Telephone: (305) 379-6667<br>Fax: 305-379-6668<br>**Counsel for Francesco Scaglia** | **Gerald Edward Greenberg, Esq.**<br>ggreenberg@swmwas.com<br>**Jay Brian Shapiro, Esq.**<br>jshapiro@swmwas.com<br>Stearns Weaver Miller Weissler, et al.<br>Museum Tower<br>150 West Flagler Street, Suite 2200<br>Miami, FL 33130<br>Telephone: (305) 789-3200<br>Fax: (305) 789-3395<br>**Counsel for Francesco Scaglia** |