UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MASTER DOCKET NO. 08-MDL-1888-GRAHAM/TURNOFF

IN RE MARINE HOSE ANTITRUST
LITIGATION

THIS DOCUMENT RELATES TO:

_____ ALL ACTIONS _____

**PARKER HANNIFIN CORPORATION, PARKER ITR S.R.L., MANULI RUBBER INDUSTRIES, S.P.A., MANULI OIL & MARINE (U.S.A.) INC., AND GIOVANNI SCODEGGIO'S  MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF AUTHORITIES

**Page**

### CASES

*Access Telecom, Inc. v. MCI Telecommc'ns Corp.*,
    197 F.3d 694 (5th Cir. 1999) ..........................................................................10, 11

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)..........................................................................................14, 19

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)................................................................................................14

*CSR Ltd. v. CIGNA Corp.*,
    405 F. Supp. 2d 526 (D.N.J. 2005) ...............................................................6, 7, 8

*de Atucha v. Commodity Exch., Inc.*,
    608 F. Supp. 510 (S.D.N.Y. 1985) ............................................................15, 17

*Den Norske Stats Oljesekskap AS v. Heeremac VOF*,
    241 F.3d 420 (5th Cir. 2001) ............................................6, 7, 8, 9, 15, 16

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    538 F.3d 1107 (9th Cir. 2008) ...................................................................11, 12

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*,
    500 Supp. 2d 437 (D.N.J. 2007) ...........................................................................13

*Empagran S.A. v. F. Hoffmann-La Roche, Ltd.*,
    417 F.3d 1267 (D.C. Cir. 2005)...............................................................11, 12

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004)................................................................................5, 6, 12, 14

*Galavan Supplements, Ltd. v. Archer Daniels Midland Co.*,
    No. C 97-3259 FMS, 1997 WL 732498 (N.D. Cal. Nov. 19, 1997)..................17

*Gross v. New Balance Athletic Shoe, Inc.*,
    955 F. Supp. 242 (S.D.N.Y. 1997) ..............................................................18, 20

*Hahn v. Rifkin/Narragansett S. Fla. CATV Ltd. P'ship*,
    941 F. Supp. 1196 (S.D. Fla. 1996) ...........................................13, 17, 19, 20

*Hames v. City of Miami*,
    479 F. Supp. 2d 1276 (S.D. Fla. 2007), *aff'd*, 281 F. App'x 853 (11th Cir. 2008) .............4

*Ill. Brick Co. v. Illinois*,
    431 U.S. 720 (1977).........................................................................................16, 17

*In re Infant Formula Antitrust Litig.*,
    No. MDL 878, 1991 WL 185116 (N.D. Fla. July 22, 1991) ................16, 19, 20

*'In' Porters, S.A. v. Hanes Printables, Inc.*,
  663 F. Supp. 494 (M.D.N.C. 1987) ...............................................................................10

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  452 F. Supp. 2d 555 (D. Del. 2006)......................................................................4, 6, 7, 15

*Koziara v. City of Casselberry*,
  392 F.3d 1302 (11th Cir. 2004) .....................................................................................5

*Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.*,
  No. 03-10312, 2005 WL 2207017 (S.D.N.Y. Sept. 8, 2005) ...........................................13

*Lawrence v. Dunbar*,
  919 F.2d 1525 (11th Cir. 1990) .....................................................................................4

*In re Monosodium Glutamate Antitrust Litig.*,
  477 F.3d 535 (8th Cir. 2007) ...................................................................................11, 12

*OSI Inc. v. United States*,
  285 F.3d 947 (11th Cir. 2002) .......................................................................................5

*Pierce v. Commercial Warehouse*,
  142 F.R.D. 687 (M.D. Fla. 1992)....................................................................................18

*Pop's Pancakes, Inc. v. NuCO2, Inc.*,
  --- F.R.D. ---, 2008 WL 2901748 (S.D. Fla. July 22, 2008)..............................................4

*Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
  542 F.2d 255 (5th Cir. 1976) .......................................................................................17

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
  993 F.2d 800 (11th Cir. 1993) .......................................................................................4

*Rosenkrantz v. Markopoulos*,
  254 F. Supp. 2d 1250 (M.D. Fla. 2003)......................................................................5, 17

*Sniado v. Bank Austria AG*,
  378 F.3d 210 (2d Cir. 2004)......................................................................................12, 13

*Supermarket of Marlinton, Inc. v. Valley Rich Dairy*,
  161 F.3d 3, 1998 WL 610648 (4th Cir. 1998) ...........................................................17, 18

*Todorov v. DCH Healthcare Auth.*,
  921 F.2d 1438 (11th Cir. 1991) ........................................................................13, 14, 16, 17, 19

*Turicentro, S.A. v. Am. Airlines, Inc.*,
  303 F.3d 293 (3d Cir. 2002)..................................................................................7, 8, 9, 15

*In re Waterfront License Corp.*,
  231 F.R.D. 693 (S.D. Fla. 2005)......................................................................................4

**STATUTES**

15 U.S.C. § 6a (2008) ................................................................................................5, 6, 9, 11, 12

**MISCELLANEOUS**

Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (2006 ed.)..........................................9, 10

H.R. Rep. No. 97-686, *reprinted in* 1982 U.S.C.C.A.N. 2487 ........................................................8

## I.    INTRODUCTION

Defendants Parker Hannifin Corporation, Parker ITR S.r.l., Manuli Rubber Industries,

S.p.A., Manuli Oil & Marine (U.S.A.), Inc., and Giovanni Scodeggio (collectively "Moving

Defendants") respectfully request that the Court dismiss the antitrust claims brought by plaintiffs

Expro Gulf Limited ("Expro") and Bayside Rubber & Products ("Bayside") for lack of subject

matter jurisdiction.[1]  These plaintiffs do not have antitrust standing because they did not

purchase marine hose from the defendants in the United States and, thus, are not the proper

plaintiffs to prosecute the antitrust violation alleged in this case.  Moreover, the Federal Trade

Antitrust Improvements Act ("FTAIA") precludes this Court from exercising jurisdiction over

Expro's claims because the FTAIA bars jurisdiction over claims of foreign injury that are caused

by the foreign effects of anticompetitive conduct.  Plaintiffs bear the burden of establishing

jurisdiction and because they cannot do so, the Court should dismiss their complaint.

## II.    BACKGROUND

On March 24, 2008, plaintiffs filed a consolidated class action complaint in this Court

alleging that defendants had "conspired to fix . . . prices of marine hose in the United States"

(Consol. Class Action Compl. ¶ 75.) [D.E. 79] and seeking to certify a class whose membership

was "[a]ll persons and entities . . . who purchased Marine Hose in the United States directly from

the Defendants."  (*Id.* ¶ 40.)  As representatives of this putative class, plaintiffs' counsel

proffered four entities: Weeks Marine, Inc. ("Weeks"), Shipyard Supply LLC ("Shipyard"),

Bayside, and Expro.  (*Id.* ¶¶ 9-12.)

On May 16, 2008, the Court ordered that all "documents relating to U.S. sales and

purchases of Marine Hose must be exchanged as part of initial disclosures" by May 30, 2008.

---

[1]  Moving Defendants originally filed this Motion under seal on October 15, 2008, but none of the parties have advised that the Motion or its exhibits should remain under seal.  Further, Exhibit D to the Motion that was filed under seal was incomplete.  A complete copy of Exhibit D is being filed with this Motion.

(Order at 3-4.) [D.E. 116]. Plaintiffs' disclosures revealed that none of the proposed class representatives had purchased marine hose from defendants in the United States. Likewise, defendants' disclosures showed that they had not sold marine hose to the proposed class representatives in the United States. Counsel for plaintiffs subsequently filed a motion for leave to voluntarily dismiss the claims of Weeks and Shipyard (Pls.' Memo. of Law in Support of Mot. to Amend at 2) [D.E. 173], and a first amended consolidated class action complaint naming only Bayside and Expro as putative class representatives. (First Am. Consol. Class Action Compl. ("Compl.") ¶¶ 9-10.) [D.E. 180]. Yet Bayside and Expro's claims suffer the same defect as Weeks and Shipyard: they cannot prove that they purchased marine hose from defendants in the United States.

### *Expro*

Expro produced evidence of one purchase of marine hose from defendant Parker ITR S.r.l. ("Parker ITR"), but that purchase was not made in the United States. Expro is a corporation organized under the laws of Cyprus, with its principal place of business in South Africa. (*See* Compl. ¶ 10; Expro's Purchase Orders, attached as Ex. A; Expro's Invoice, attached as Ex. B; One Source Report for Expro Gulf Ltd. ("One Source Report"), attached as Ex. C). Its parent, Expro International Group PLC, is incorporated under the laws of England and Wales, and is domiciled in the United Kingdom. (*See* One Source Report; Expro International Group Annual Report 36, attached as Ex. D.) With respect to Expro's single purchase of marine hose, Expro sent purchase orders from Cyprus to Parker ITR, an Italian corporation located in Italy. (*See* Compl. ¶ 22; Expro's Purchase Orders.) Parker ITR manufactured the marine hose in Italy. (*See* Declaration of Craig Anderson ("Anderson Decl.") ¶ 10, attached as Ex. E.) Expro took possession of the marine hose in Italy and hired a contractor to ship it to Nigeria for use in that

2

country. (*See* Deposition of Kevin Galvin ("Galvin Depo.") 150-160, 165-167, attached as Ex. F; Expro's Purchase Orders and Invoice.)  Parker ITR sent an invoice to Expro from Italy to Cyprus (*See id.* at 162-165; Expro's Invoice) and, according to Expro's corporate representative, Expro most likely paid for the purchase from the United Kingdom. (*See* Galvin Depo. 167-68.)

### *Bayside*

Plaintiffs have not produced a single purchase order, invoice, piece of correspondence, or other document to show that Bayside purchased marine hose from the defendants anywhere in the world. As plaintiffs' own experts recognize, marine hose is a highly specialized product made in compliance with standards issued by the Oil Companies International Marine Forum (OCIMF). (*See* Report on Marine Hose Prepared by Minoo Patel ("Patel Report") ¶ 4, attached as Ex. G; Deposition of Minoo Patel ("Patel Depo.") 68-70, attached as Ex. H; Deposition of John C. Beyer ("Beyer Depo.") 137-139, attached as Ex. I.)  Bayside did produce documents related to purchases of hoses from certain of the defendants, but these documents do not show any purchase of marine hose. (Declaration of Paulo Seghi ("Seghi Decl.") ¶¶ 15-16, attached as Ex. J; Declaration of Kevin Wojciechowski ("Wojciechowski Decl.") ¶¶ 4-5, attached as Ex. K; *see also* Beyer Depo. at 145, 183; Report of John C. Beyer, Ph.D. ¶ 32, attached as Ex. L.) Bayside initially asserted that the hose described in those documents was marine hose (Bayside's Response to Corp. Defs.' First Set of Interrogs. Relating to Class Cert. dated July 15, 2008 Response #1 ("Bayside Interrogs. Response") attached as Ex. M), but has subsequently conceded that it is not. (*See* Pls.' Reply in Support of Mot. for Class Cert. 3-4 ("Pls.' Reply")) [D.E. 210]. Bayside now rests its claim solely on the unsupported assertion in its interrogatory responses that it "made multiple purchases of Marine Hose during the Class Period" and an equally vague affidavit attached to its class certification reply. (*See* Bayside Interrogs. Response ¶ 1; Gatlin

3

Affidavit ¶ 4 ("Gatlin Aff.").)  Both assertions come from the same Bayside employee who seemingly incorrectly attested that the documents produced reflected purchases of marine hose.

Given these facts, neither Bayside nor Expro has antitrust standing to prosecute this case, and Expro's claim is barred by the FTAIA.

## III.    STANDARD OF REVIEW AND BURDEN OF PROOF

"[A] motion to dismiss for lack of standing" and an "attack[] on] the district court's subject matter jurisdiction . . . is brought pursuant to Rule 12(b)(1)" of the Federal Rules of Civil Procedure."  *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.8 (11th Cir. 1993); *see also In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555 (D. Del. 2006) (granting 12(b)(1) motion because FTAIA precluded foreign antitrust plaintiff's claims and plaintiff also lacked standing).  Because a jurisdictional challenge goes to the court's very power to hear a case, the court has "the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."  *Pop's Pancakes, Inc. v. NuCO2, Inc.*, ---F.R.D.---, 2008 WL 2901748, at *11 (S.D. Fla. July 22, 2008) (Graham, J.).

This motion presents a factual challenge to the court's subject matter jurisdiction to bring this case "based on the actual substantive facts of the case."  *Hames v. City of Miami*, 479 F. Supp. 2d 1276, 1284 (S.D. Fla. 2007), *aff'd*, 281 F. App'x 853 (11th Cir. 2008).  In a factual attack, the "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotation marks omitted).  In so doing, the court may consider "matters outside the pleadings, such as testimony and affidavits."  *Id.* (internal quotation marks omitted); *see also In re Waterfront License Corp.*, 231 F.R.D. 693, 698 (S.D. Fla. 2005) ("Court is [] free to consider the extrinsic evidence" in factual attack on jurisdiction.).  Moreover, "there is no presumption of truthfulness in favor of the plaintiff's allegations and the governing standard is more akin to that of a Rule 56

motion." *Hames*, 479 F. Supp. 2d at 1284; *see also Lawrence*, 919 F.2d at 1529 (noting that factual attacks "differ substantially" from a facial attack, where under the latter a court considers the allegations of the complaint to be true).

Plaintiffs must establish that this Court has jurisdiction over their claims. *OSI Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).   To do so, they must prove that they have standing by a preponderance of the evidence, *Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004); *Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250, 1252 (M.D. Fla. 2003), and their claims are not barred by the FTAIA.  Plaintiffs cannot sustain this burden.

## IV.   ARGUMENT

### A.   Plaintiffs Have Failed To Establish That The Court Has Subject Matter Jurisdiction Over Expro's Claim

Expro's claim must be dismissed for lack of subject matter jurisdiction because it is barred by the FTAIA.  15 U.S.C. § 6a (2008).  The FTAIA "remove[s] from the Sherman Act's reach...commercial activities taking place abroad" unless certain statutory requirements are met. *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161 (2004) ("*Empagran I*"). Specifically, Section 6a of the Sherman Act provides:

> Sections 1 to 7 of this title [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—
>
> (1) such conduct has a direct, substantial and reasonably foreseeable effect—
>
>> (A) on trade or commerce which is not trade or commerce with foreign nations or on import trade or import commerce with foreign nations; (hereinafter "Subsection 1A") or
>>
>> (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; (hereinafter "Subsection 1B") and
>
> (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title . . . . (hereinafter "Subsection 2").

15 U.S.C. § 6a.  Based on the structure of the statutory provision, an FTAIA analysis proceeds in

three parts. At the outset, this Court must determine (pursuant to the introductory clause to Section 6a) whether the conduct involves trade with foreign nations. If so, the FTAIA applies, and the court must then examine whether Subsection 1 is satisfied, *i.e.*, does the conduct "sufficiently affect[] American commerce, *i.e.*, it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce." *Empagran I*, 542 U.S. at 162 (quoting 15 U.S.C. § 6a(1)). If there is such an effect, the court must address, under Subsection 2, whether the "effect . . . give[s] rise to a [Sherman Act] claim" *id.*, of the individual plaintiff in the case. *Id.* at 174. If an antitrust plaintiff cannot demonstrate that both Subsections 1 and 2 are satisfied, then the FTAIA precludes the court from exercising jurisdiction over the claim. Because Expro cannot satisfy these requirements, this Court should dismiss the Complaint as it relates to Expro.

*1.      The FTAIA Applies To Expro's Claim Because It Involves Foreign Commerce*

This Court must determine as a threshold matter whether the conduct implicated by Expro's claim involves foreign commerce that is not import trade or commerce and thus falls within the ambit of the FTAIA. *See CSR Ltd. v. CIGNA Corp.*, 405 F. Supp. 2d 526, 538 n.8 (D.N.J. 2005) ("[W]holly foreign transactions qualify as 'conduct involving trade or commerce . . . with foreign nations.") (citation omitted); *see also Den Norske Stats Oljesekskap AS v. Heeremac VOF*, 241 F.3d 420, 426 (5th Cir. 2001) (concluding that FTAIA applied to "foreign commercial transactions between foreign entities in foreign waters"); *In re Intel Corp. Microprocessor*, 452 F. Supp. 2d at 559 (holding that FTAIA applied to defendant's sale of microprocessors "to foreign companies located in foreign countries"). Expro's claim against the defendants involved foreign commerce that was not import trade or commerce. Expro is a foreign corporation, organized under the laws of Cyprus with its principal place of business in South Africa. (*See* Compl. ¶ 10; One Source Report.) The transaction that underlies Expro's

claim was a purchase of marine hose from defendant Parker ITR, an Italian corporation located in Italy. (*See* Pls.' Memo. of Law in Support of Mot. for Class Cert. at 10 [D.E. 171]; Compl. ¶ 18.) Expro sent purchase orders from Cyprus to Parker ITR in Italy where the marine hose was manufactured. (Expro's Purchase Orders.) The marine hose was shipped from Italy to Nigeria for use in Nigeria. (Galvin Depo. at 165-167; Expro's Invoice.) Parker ITR sent an invoice from its office in Italy to Expro in Cyprus (Expro's Invoice), and the marine hose was most likely paid for by Expro's parent corporation, which is based in the United Kingdom. (Galvin Depo. at 164-168.) Given these facts, Expro's claim plainly involves foreign commerce. *See Den Norske*, 241 F.3d at 426; *In re Intel Corp. Microprocessor*, 452 F. Supp. 2d at 559.

The fact that some discussions regarding this transaction took place in the United States does not transform this patently foreign transaction into a domestic one. *See CSR Ltd.*, 405 F. Supp. 2d at 539 (concluding that antitrust boycott involved foreign commerce even though "some of the alleged actions have at least some connection to activities in the United States"). Finally, the Expro transaction was clearly not import trade because it was imported *into Nigeria* and import trade "generally denotes that a product (or perhaps a service) has been brought *into the United States* from abroad." *Turicentro, S.A. v. Am. Airlines, Inc.*, 303 F.3d 293, 303 (3d Cir. 2002) (emphasis added).[2] Accordingly, the FTAIA is applicable to Expro's claim.

### 2. The Expro Transaction Did Not Have A Direct, Substantial, or Reasonably Foreseeable Effect on Domestic Commerce

Given that the FTAIA applies to the Expro transaction, in order for the court to have jurisdiction, Expro must demonstrate that the conduct in question had a direct, substantial, and reasonably foreseeable effect on *domestic* import or export commerce. *See* Subsection 1 of § 6a,

---

[2] The Fifth Circuit's decision in *Den Norske*, and the Third Circuit's decision in *Turicentro* were decided before the Supreme Court's seminal decision interpreting the FTAIA in *Empagran*. However, in *Empagran* the Supreme Court resolved a circuit split that had developed with respect to interpretation of the FTAIA, and adopted the view of the Third Circuit and the Fifth Circuit, and thus these courts of appeals' decisions remain good law.

*supra.* Expro cannot meet this burden.

>    a.    *The Expro Transaction Had No Direct, Substantial, or Reasonably Foreseeable Effect on Domestic Commerce*

The courts have explained that the FTAIA's focus on geographical effects is necessary because "[t]he Sherman Act only applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States." *CSR Ltd.*, 405 F. Supp. 2d at 546 (internal quotation marks omitted). Moreover, "[t]hat certain activities might have taken place in the United States is *irrelevant* if the economic consequences are not felt in the United States economy." *Turicentro*, 303 F.3d at 305 (emphasis added). In this case, the Expro transaction did not have a direct, substantial, and reasonably foreseeable effect on the United States market. Assuming for the sake of argument that the price charged by Parker ITR was non-competitive, the *effect* of that price was felt in Cyprus, the United Kingdom, and/or Nigeria, from where Expro purchased, paid for, and used the marine hose, not in the United States. *See Den Norske*, 241 F.3d at 428 (no jurisdiction exists "where the situs of the injury is overseas").

It does not matter if the parties to the transaction had related entities located in the United States, made decisions with respect to the transaction in the United States, or attended meetings in the United States, because the focus is on the "location of the *effects* of Defendants' alleged decisions and actions." *CSR Ltd.*, 405 F. Supp. 2d at 546 (emphasis in original) (rejecting plaintiffs' argument that effects were felt in the United States simply because defendants were U.S. corporate entities who coordinated anticompetitive boycott from the United States); *Turicentro*, 303 F.3d at 305 (finding the occurrence of activities "in the United States is irrelevant if the economic consequences are not felt in the United States economy"); *see also* H.R. Rep. No. 97-686 at 9, *reprinted in* 1982 U.S.C.C.A.N. 2487, 2494 ("A transaction between two foreign firms, even if American-owned, should not, merely by virtue of American

8

ownership, come within the reach of our antitrust laws."). Finally, no court has held that a choice-of-law provision in a sales contract is relevant to the FTAIA analysis; indeed it could not, as such a provision has no bearing on where the effects of defendants' conduct are felt.[3] Even if one were to assume that this foreign transaction had some slight effect on United States commerce, Expro certainly has not proven that such effect was direct, substantial, and reasonably foreseeable, as required by the FTAIA. Because the effects of the Expro transaction were felt abroad, rather than the United States, the Sherman Act cannot apply to Expro's claim. *See Turicentro*, 303 F.3d at 305 ("[F]ederal antitrust laws do not extend to protect foreign markets from anticompetitive effects.").

        b.     *The Expro Transaction Had No Direct, Substantial, or Reasonably Foreseeable Effect on Export Commerce*

      In Plaintiffs' Reply in Support of their Motion for Class Certification, they seek to escape the FTAIA jurisdictional bar by alleging that the Expro "transaction was part of the U.S. export market for offshore oil and gas production services." (*See* Pls.' Reply at 9.) In so doing, Plaintiffs invoke Subsection 1B of the FTAIA, *supra* at 5, which provides that the Sherman Act will apply to anticompetitive conduct that has a direct, substantial, and reasonably foreseeable effect "on export trade or export commerce with foreign nations." 15 U.S.C. § 6a(1)(B). "[E]xport trade or export commerce" is understood to mean "transactions in which the buyer is located abroad while the seller is domestic and the goods flow from the United States to a foreign country." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 272i, at 290 (2006 ed.). Accordingly, in order to fall within the scope of Subsection 1B, an antitrust plaintiff must establish that: "(1) the defendant's conduct . . . ha[d] a direct, substantial, and reasonably

---

[3] In Plaintiffs' Reply in Support of their Motion for Class Certification, they repeatedly note that Expro's purchase was governed by U.S., specifically Texas, law. (*See* Pls.' Reply at 7-8.) Plaintiffs misleadingly cite *Den Norske* for support. The Fifth Circuit's analysis in *Den Norske* focused only on whether the domestic effects of the anticompetitive conduct gave rise to the specific foreign injury. *See Den Norske*, 241 F.3d at 428.

foreseeable effect on (2) *plaintiff's* continuing ability to export products (3) *from the United States*." '*In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 499-500 (M.D.N.C. 1987) (emphasis in original).  Expro does not satisfy this test.

First, the Expro transaction involved the flow of goods from Italy to Nigeria, not from the United States to a foreign country.  The buyer, Expro, ordered and paid for the marine hose from its offices in Cyprus and the United Kingdom, respectively.  The seller, Parker ITR, manufactured the marine hose in Italy and delivered it to an Expro agent in Italy, who then sent it on to Nigeria.  Clearly, the exporter in this transaction is Parker ITR, not Expro, and the marine hose was exported from Italy, not the United States.  Thus, the transaction was not "export trade or export commerce" for the purposes of the FTAIA.  *See* Areeda & Hovenkamp, *supra*.

Second, the Complaint contains not a *single allegation* that defendants' conduct had a direct, substantial, and reasonably foreseeable effect on Expro's ability to export *its products* from the United States.   Indeed, the word "export" does not appear anywhere on the face of the Complaint.  As noted *supra* at 1, the Complaint is exclusively focused on the alleged conspiracy's effect on raising prices for marine hose in the United States.  *See* Compl. ¶¶ 50(d), 56-57, 83.  Because the Expro transaction was not an export transaction, and Plaintiffs neither allege nor proffer any support for their newfound theory that defendants' conduct had a significant effect on their exports from the United States, the FTAIA exception for American export commerce is not applicable.  *See 'In' Porters, S.A.*, 663 F. Supp. at 499.

Third, plaintiffs' lengthy discussion of Houston being a regional center of oil and gas production services is wholly irrelevant.  (*See* Pls.' Reply at 9-11.)  The Expro transaction does not morph into an American export merely because Expro has an office in Houston from which it provides services.  Plaintiffs' citation to *Access Telecom, Inc. v. MCI Telecommunications Corp.*,

197 F.3d 694 (5th Cir. 1999), provides no support. In *Access Telecom*, the plaintiff was a Texas corporation that exported a service from the United States to another country, Mexico. Here, the product in question is marine hose exported from Italy, not the United States. Because Expro fails to prove that this transaction had a direct, substantial, and reasonably foreseeable impact on export commerce, the Sherman Act cannot apply to Expro's claim.

3.       *Expro's Foreign Injury Was Not Proximately Caused By The Domestic Effects Of Defendants' Alleged Anticompetitive Conduct*

An additional reason why the Court does not have jurisdiction over Expro's claim is because Expro cannot demonstrate that the domestic effects of the alleged anticompetitive activity were the proximate cause of Expro's foreign injury. *See* Subsection 2 of 15 U.S.C. § 6a, *supra*. Notwithstanding the fact that the Expro transaction and its effects transpired abroad, plaintiffs allege that defendants "engaged in anticompetitive activities, the purpose and effect of which were to artificially raise, fix, maintain or stabilize the prices of Marine Hose in the United States." (Compl. ¶ 57.) Even assuming this to be true, every federal court of appeals that has analyzed the issue has concluded that a plaintiff must still prove that its own foreign injury was proximately caused by the domestic effects of a defendant's anticompetitive conduct. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 538 F.3d 1107 (9th Cir. 2008); *In re Monosodium Glutamate Antitrust Litig.*, 477 F.3d 535 (8th Cir. 2007); *Empagran S.A. v. F. Hoffmann-La Roche, Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005) ("*Empagran II*"). In this case, plaintiffs fail to explain how the domestic effect of the alleged anticompetitive conduct described in the Complaint was the proximate cause of Expro's alleged foreign injury. To be sure, the Complaint makes the generic allegation that "[a]s a direct and proximate result of the unlawful conduct of Defendants . . . Plaintiffs . . . have been injured in their business and property in that they paid more during the Class Period for Marine Hose than they otherwise would have."

11

(Compl. ¶ 84.) But the Complaint's allegations go *solely* to the defendants' conduct as it impacted purchases and had effects *in the United States*, it fails entirely to assert any causal link to Expro's alleged foreign injury. (*See id.* ¶ 1 ("This lawsuit is brought as a class action on behalf of direct purchasers . . . who purchased Marine Hose in the United States."); ¶ 47 (class defined as U.S. purchasers); ¶ 50(d) (discussing "effect of Defendants' conspiracy on the prices of Marine Hose sold to purchasers in the United States"); ¶¶ 56-57 (defendants engaged in conspiracy the effect of which was to raise Marine Hose prices "in the United States").)

On remand from the Supreme Court, the United States Court of Appeals for the District of Columbia considered in *Empagran II* whether foreign antitrust plaintiffs could avoid the FTAIA jurisdictional bar by alleging that "but for" the adverse domestic effect of defendants' anticompetitive conduct, plaintiffs would not have suffered their foreign harm. *See Empagran I*, 542 U.S. at 175. The D.C. Circuit concluded that "'but for' causation between the domestic effects and the foreign injury claim is simply not sufficient" for the court to have jurisdiction over the foreign injury claim. *Empagran II*, 417 F.3d at 1270. The court of appeals explained that "[t]he statutory language—'gives rise to'—indicates a direct causal relationship, that is, proximate causation." *Id.* at 1271. A "but for" standard would run afoul of the statute's principles of prescriptive comity because it would "open the door to . . . interference with other nations' prerogative to safeguard their own citizens from anti-competitive activity within their own borders." *Id.* The other circuits have agreed, and further noted that this is consistent with general antitrust principles which typically require a direct causal link between the defendants' conduct and the antitrust injury. *See In re Monosodium Glutamate*, 477 F.3d at 539; *In re Dynamic Random Access Memory*, 538 F.3d at 1113-14 (same). Because Expro fails to show that it suffered a foreign injury proximately caused by the domestic effects of defendants' alleged

misconduct, it cannot satisfy Subsection 2 of the FTAIA.[4]  *Sniado*, 378 F.3d at 213 (in facial

attack on jurisdiction, dismissing complaint because it "lack[ed] the factual predicate to support

[causation] theory").

     In sum, the FTAIA applies to Expro's claim because the transaction involves nonimport

or nonexport foreign commerce.  Because Expro fails to demonstrate that there is a direct,

substantial, and reasonably foreseeable effect on U.S. import or export commerce from the

foreign transaction at issue (Subsection 1) or that any effect on U.S. domestic or export

commerce by alleged anticompetitive conduct was the proximate cause of its alleged injury

(Subsection 2), this Court lacks subject matter jurisdiction over Expro's claims.

### B.   This Court Lacks Jurisdiction over Expro's Claim Because Expro Does Not Have Standing

     Expro likewise does not have antitrust standing to bring the claims asserted against the

defendants.  The Eleventh Circuit has explained that "[a]ntitrust standing is best understood . . .

as a search for the proper plaintiff to enforce the antitrust laws" and has developed a two-

pronged approach to "examine whether a plaintiff is a proper party and [] should be afforded

antitrust standing."  *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1448-49 (11th Cir.

1991); *see also Hahn v. Rifkin/Narragansett S. Fla. CATV Ltd. P'ship*, 941 F. Supp. 1196 (S.D.

Fla. 1996) (summarizing *Todorov* approach).   Because Expro has not purchased marine hose

from defendants in the United States, Expro has no antitrust standing and is not an efficient

enforcer of the antitrust laws.

---

[4] Expro may not save its Sherman Act claim on the basis that some as yet unidentified member of the putative class was injured as a result of the domestic effects of Defendants' alleged anticompetitive conduct.  In *Empagran I*, the Supreme Court endorsed the view that under § 6(a)(2) of the FTAIA, a plaintiff must allege that the anticompetitive conduct's effect on domestic commerce must give rise to his own claim.  *Sniado v. Bank Austria AG*, 378 F.3d 210, 212 (2d Cir. 2004).  "[I]t is not sufficient that a theoretical plaintiff injured in the United States by the conduct at issue might have a Sherman Act claim," the effects must give rise to "*Plaintiffs*' Sherman Act claim raised in the instant case." *Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 500 F. Supp. 2d 437, 444 (D.N.J. 2007) (emphasis in original); *see also Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.*, No. 03-10312, 2005 WL 2207017, at *8 (S.D.N.Y. Sept. 8, 2005) ("[T]he 'claim' must not be a hypothetical domestic claim that could have been raised by others, but rather must be the *plaintiff's* claim, *i.e.*, the claim at issue in the case.") (emphasis in original).

1.      *Expro Has Not Suffered an Antitrust Injury And, As Such, Does Not Have Standing*

"First, a court should determine whether the plaintiff suffered 'antitrust injury.'"

*Todorov*, 921 F.2d at 1449. Antitrust injury is defined as 'injury of the type the antitrust laws

were intended to prevent and that flows from that which makes the defendants' acts unlawful.'

*Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). In other

words, "plaintiffs must plead and prove that the injury they have suffered derives from some

anticompetitive conduct and is the type the antitrust laws were intended to prevent." *Id.* at 1450.

This limitation ensures that the private antitrust plaintiff's injury "coincides with the public

detriment" thus ensuring that both "public and private enforcement of antitrust laws . . .

further[s] the same goal." *Id.* (internal quotation marks omitted). This showing of personal

injury coincident with the public injury is vital because "Congress did not intend to allow every

person tangentially affected by an antitrust violation to maintain an action to recover threefold

damages." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

U.S. 519, 535 (1983) (internal quotation marks omitted).

When the plaintiff's injury underlying its antitrust claim is a foreign injury, whether this

injury is of the kind that the antitrust laws were intended to prevent depends on application of the

FTAIA. As discussed *supra*, pursuant to the enactment of the FTAIA, the Sherman Act does not

extend to protect "foreign injury [that] is *independent* of domestic effects." *Empagran I*, 542

U.S. at 169 (emphasis added). Not surprisingly then, when courts have held that the FTAIA

precluded jurisdiction over a foreign purchaser's claim because the plaintiff failed to establish

that the domestic effects flowing from the antitrust violation proximately caused the foreign

purchaser's injury, these courts have necessarily found that the injury is not the kind that the

antitrust laws are intended to prevent, and hence, the plaintiff lacks antitrust standing. For

example, in *Den Norske*, the Fifth Circuit held that the FTAIA barred jurisdiction over a foreign plaintiff's antitrust claim "where the situs of the injury [was] overseas" and the injury did not "arise from the alleged effect on United States commerce" from the price-fixing conduct at issue. 241 F.3d at 428 & n.26.  In so holding, the court of appeals noted that it had "perforce found that [plaintiff's] injury is not of the type that the antitrust statute was intended to forestall" and thus affirmed the district court's finding that the plaintiff "lacked standing to bring its claims." *Id.* at 431 n.32; *see also Turicentro*, 303 F.3d at 307 (holding that FTAIA barred plaintiff's claim, and plaintiff did not have standing because "injuries occur[ing] exclusively in foreign markets . . . are not the type Congress intended to prevent"); *In re Intel Corp. Microprocessor*, 452 F. Supp. 2d at 563 (concluding that FTAIA precluded jurisdiction over plaintiff's claim and plaintiff lacked standing, "[b]ecause foreign injuries are not the type of injury Congress intended to prevent through the FTAIA or the Sherman Act"); *de Atucha v. Commodity Exch., Inc.*, 608 F. Supp. 510, 518 (S.D.N.Y. 1985) ("We conclude that Congress did not contemplate recovery under the antitrust laws by an individual who traded, and was injured entirely outside of U.S. commerce.").

In this case, Expro's alleged injury is a foreign injury that is independent of any purported domestic effects of the alleged anticompetitive conduct. *Supra*, at 6-13.  Expro thus lacks the necessary antitrust injury to maintain standing to pursue its claim.  Expro, a foreign entity based in Cyprus, ordered marine hose from defendant Parker ITR, a foreign company located in Italy, and sent it on for use in Nigeria. *Supra*, at 2-3, 10.  Any "effect" from paying a non-competitive price for marine hose in this transaction was a result of the conduct "occur[ring] exclusively in foreign markets," *Turicentro*, 303 F.3d at 307, and thus Expro was "injured entirely outside of U.S. commerce." *de Atucha*, 608 F. Supp. at 518.  Expro's alleged foreign injury did not "arise from the alleged effect on United States commerce" of the conduct at issue

and therefore is "not of the type that the antitrust statute was intended to forestall." *Den Norske*, 241 F.3d at 428 n.26, 431 n.32. Expro, therefore, does not satisfy the first prong of the standing test asserted by the Eleventh Circuit because Expro does not have the requisite antitrust injury.

### 2.      *Expro Is Not An Efficient Enforcer of The Antitrust Laws*

The second step in the Eleventh Circuit's standing test is to "determine whether the plaintiff is an efficient enforcer of the antitrust laws, which requires some analysis of the directness or remoteness of the plaintiff's injury." *Todorov*, 921 F.2d at 1449. As a general rule, only direct purchasers of the product that is the subject of the anticompetitive conduct have standing to bring an antitrust claim. *See, e.g.*, *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977) (holding that Congress intended that "direct purchasers" would be the "private attorneys general" for enforcing the Sherman Act). The reason for this rule is that if there is an "identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement" then there is diminished "justification for allowing a more remote party (*i.e.*, one who suffered an indirect injury) . . . to enforce the antitrust laws." *Todorov*, 921 F.2d at 1451 (internal quotation marks omitted); *see also In re Infant Formula Antitrust Litig.*, No. MDL 878, 1991 WL 185116, at *2 (N.D. Fla. July 22, 1991) (finding that "actual direct wholesale buyers of the formula" were better situated to pursue antitrust violation, not Florida's Department of Health and Rehabilitative Services, which was not a direct purchaser of product).

Expro also fails this prong of the *Todorov* test. In this case, plaintiffs repeatedly allege that they seek to represent direct purchasers of marine hose in the United States (Compl. ¶¶ 1, 47), in order to remedy the "effect of Defendants' conspiracy on the prices of Marine Hose sold ….in the United States." (*Id.* ¶¶ 50(d), 83.) But Expro is plainly not the proper plaintiff for such a suit given that Expro neither purchased marine hose in the United States, nor suffered any direct, substantial, and reasonably foreseeable effect from the alleged conspiracy in the United

States. Expro is not an appropriate enforcer of the antitrust laws with respect to the domestic market in the United States, when to the extent Expro was injured at all it was in foreign markets. *See Galavan Supplements, Ltd. v. Archer Daniels Midland Co.*, No. C 97-3259 FMS, 1997 WL 732498, at *4 (N.D. Cal. Nov. 19, 1997). Entities that purchased marine hose in the United States and suffered injury there would undoubtedly better "vindicate the public interest" than Expro.[5] *See de Atucha*, 608 F. Supp. at 518. Thus, the remoteness of Expro's injury to the theory of the Complaint is an additional reason that Expro does not have standing to pursue the antitrust claim alleged here.

## C. This Court Should Dismiss The Complaint Because Bayside Has No Standing To Bring An Antitrust Claim Against Defendants

This Court should dismiss Bayside as a plaintiff in this case because Bayside has not proven by a preponderance of the evidence that it purchased marine hose from any of the defendants in the United States.[6] *Rosenkrantz*, 254 F. Supp. 2d at 1252; *Supermarket of Marlinton*, 1998 WL 610648, at *5. As discussed, *supra*, Congress envisioned that only direct purchasers of the product that is the subject of the anticompetitive activity would be able to enforce the antitrust laws. *See Ill. Brick*, 431 U.S. at 746. Accordingly, courts routinely dismiss

---

[5] Even if a plaintiff was a direct purchaser of the product at issue, he still may not be an efficient enforcer of the antitrust laws. For example, when "the relevant market" that the plaintiff seeks to protect "is the United States domestic market, the more appropriate plaintiffs to bring suit against defendants are the consumers injured by defendants' actions in the United States." *Galavan Supplements*, 1997 WL 732498 at *4 (holding that plaintiff lacked standing to prosecute claim regarding elevated prices of citric acid in the United States because "plaintiff was neither a competitor nor a consumer in the United States domestic market"); *see also de Atucha*, 608 F. Supp. at 518 (finding that "individuals who traded in the United States . . . and who may have suffered injury resulting from defendants (alleged) manipulation of the [] market [there]" would better "vindicate the public interest" than foreign trader who was injured abroad). These limitations on standing are necessary because awarding damages to a remotely-injured party "can lead to a duplicative recovery and thereby foster inefficient enforcement of the antitrust laws." *Hahn*, 941 F. Supp. at 1200.

[6] In the alternative, Moving Defendants move for summary judgment on Bayside's claim. Because Bayside has not purchased marine hose from any of the defendants, Bayside has suffered no antitrust injury and hence has no claim. *See, e.g., Todorov*, 921 F.2d at 1446 (affirming summary judgment where plaintiff suffered no antitrust injury); *Supermarket of Marlinton, Inc. v. Valley Rich Dairy*, 161 F.3d 3, 1998 WL 610648, at *1 (4th Cir. 1998) (table) (finding summary judgment proper where plaintiffs failed to produce sufficient evidence that they had purchased product affected by anticompetitive conduct). Mr. Galvin's bare allegation is insufficient to raise a triable issue of fact about whether Bayside purchased any marine hose. *See Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 542 F.2d 255, 257 (5th Cir. 1976) (affirming summary judgment on monopolization claim where plaintiff's "affidavits lack[ed] the requisite evidentiary value").

antitrust complaints where plaintiffs lack standing based on the fact that they did not purchase the product in question from the named defendants. *See Supermarket of Marlinton*, 1998 WL 610648, at \*5 (dismissing putative class action where plaintiff "ha[d] not produced sufficient evidence that it purchased products that were affected by the alleged price fixing conspiracy . . . and therefore lack[ed] antitrust standing"); *Gross v. New Balance Athletic Shoe, Inc.*, 955 F. Supp. 242, 246 (S.D.N.Y. 1997) (dismissing complaint because plaintiffs had not demonstrated that they purchased shoes from conspiring retailers). Indeed, district courts in this state have been known to sanction plaintiffs for bringing antitrust actions when they did not purchase the product in question. *See Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 691 (M.D. Fla. 1992) (finding plaintiffs and counsel liable for Rule 11 sanctions where plaintiff's "standing was untenable because it did not buy or sell automotive parts" that were the subject of a price fixing conspiracy among defendants).

Plaintiffs rely on two sworn statements by the Vice President of Bayside, Steve Gatlin, for their assertion that Bayside purchased marine hose from the defendants. This Court should reject these statements because they are unsupported and untrustworthy. Initially, in an interrogatory response, Mr. Gatlin attested that "[Bayside] made multiple purchases during the Class Period of Marine Hose as set forth in the Consolidated Complaint. *See, e.g.*, BRP-000007 through BRP-000141." (*See* Bayside Interrogs. Response.) This sworn statement misleadingly suggests that documents produced by Bayside evidence multiple purchases of marine hose. (*See* Seghi Decl. ¶¶ 15-16; *see* Wojciechowski Decl. ¶¶ 4-5.) Plaintiffs now appear to admit that these documents do not reflect purchases of marine hose and that Bayside has *no documents reflecting purchases of marine hose from defendants in the United States*. (Pls.' Reply 3-4.) Bayside is therefore left with Mr. Galvin's second statement that Bayside purchased marine hose

"[i]n the mid-to-late 1980s . . . from one or more of the named Defendants in this litigation."
(Gatlin Aff. ¶ 4.) This unsupported allegation - made by the man whom plaintiffs now
apparently concede was wrong in his first sworn statement in this case - is insufficient for
Bayside to sustain its burden to prove that it has an antitrust injury and, therefore, standing in this
case.[7] *See Hahn*, 941 F. Supp. at 1199.

Moreover, the "public detriment" that is implicated by the Complaint is the harm to the
public from the alleged anticompetitive conduct related to purchases of marine hose from
defendants in the United States. Because Bayside did not purchase marine hose, its injury is not
coincident with that of the public's injury in this case. *Todorov*, 921 F.2d at 1450. Indeed, a
finding that Bayside had antitrust standing would fly in the face of the admonishment that
individuals "tangentially affected" by an antitrust violation should not be permitted to maintain
an antitrust action, because Bayside is not even tangentially affected by the alleged violation
given that it did not purchase the product *at all*. *Assoc. Gen. Contractors*, 459 U.S. at 535.

Bayside also fails the second prong of the *Todorov* standing test, namely that it is not "an
efficient enforcer of the nation's antitrust laws" in this case. 921 F.2d at 1450. Bayside is not a
member of "an identifiable class of persons whose self-interest would normally motivate them to
vindicate the public interest in antitrust enforcement," *i.e.*, companies who are able to show that
they *did* in fact purchase marine hose from defendants in the United States. *See In re Infant
Formula Antitrust Litig.*, 1991 WL 185116, at *2. Where there is such an identifiable class, a
plaintiff must be a part of that class in order to have standing to bring the claim. *See id.* (direct
purchasers were appropriate plaintiffs, not state agency that had tenuous connection to

---

[7] Mr. Gatlin fails to state that he worked at Bayside in the mid-to-late 1980s when the company allegedly
purchased marine hose. The Court may wonder whether there is any basis for Mr. Gatlin's statement that he has
"personal knowledge of Bayside's operations since its inception" if he was not working there at the time. (Gatlin
Aff. ¶ 1.) Moreover, Mr. Gatlin does not state in his affidavit that the marine hose Bayside purportedly purchased
was purchased *in the United States*.

purchases); *see also Gross*, 955 F. Supp. at 245 (holding that where plaintiffs had not purchased shoes from a conspiring retailer "the causal link between the putative antitrust violation and any injury sustained by Plaintiffs is too remote to be justiciable under § 4" of the Sherman Act"). If the Court were to allow Bayside to proceed as a plaintiff in this case it would not lead to efficient enforcement of the antitrust laws because, if Bayside were to prevail, it would result in duplicative recovery or the displacement of damages due to another claimant. *See Hahn*, 941 F. Supp. at 1200; *see also In re Infant Formula Antitrust Litig.*, 1991 WL 185116, at *2 (granting motion to dismiss for lack of standing where "there exists a great number of direct purchaser/litigants[] and there is a high risk of duplicative recovery"). This is true because Bayside has not purchased marine hose from the defendants in the United States, and thus any recovery obtained by Bayside would have to be paid to a rightful United States claimant or such claimant would be deprived of its claim. Plaintiffs must prove standing to prevent just this type of inequity. Because Bayside has not purchased marine hose from defendants in the United States, Bayside does not have standing to prosecute this case. Since there is no proper plaintiff before the Court, the complaint should be dismissed.

**CONCLUSION**

Plaintiffs Bayside and Expro cannot invoke the jurisdiction of this Court because they do not have standing to seek treble damages for the antitrust violations alleged in the Complaint. In addition, the FTAIA precludes the Court from exercising jurisdiction over Expro's claim, because Expro's foreign injury was not proximately caused by the domestic effects of anticompetitive conduct in the United States. Plaintiffs bear the burden of establishing jurisdiction and standing and because they have not, and cannot, Moving Defendants respectfully request that the Court grant this Motion to Dismiss for Lack of Subject Matter Jurisdiction.

20

October 23, 2008

Respectfully submitted:

Jeffrey A. Sudduth
Florida Bar No. 169950
jsudduth@lpflaw.com
LEGON PONCE & FODIMAN P A
1111 Brickell Avenue, Suite 2150
Miami, Florida 33131
Telephone: (305) 444-9991
Facsimile: (305) 444-9937
*Attorney for Defendants*
*Parker ITR S.r.l.*
*Parker Hannifin Corporation*

FL-BAR #
169950

/s/ for

Alan G. Greer (Florida Bar No. 123294)
agreer@richmangreer.com
Lyle E. Shapiro (Florida Bar No. 0120324)
lshapiro@richmangreer.com
RICHMAN GREER, P.A.
Miami Center – Suite 1000
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-4000
Facsimile: (305) 373-4099

Robert M. Osgood
E-mail: osgoodr@sullcrom.com
Fern Mechlowitz
E-mail: mechlowitzf@sullcrom.com
Sullivan & Cromwell
1 New Fetter Lane
London EC4A 1AN, England
Telephone: 44-20-7959-8900
Facsimile: 44-20-7959-8950

*Attorneys for Defendants*
*Manuli Oil & Marine (USA) Inc.*
*Manuli Rubber Industries S.p.A.*

FL BAR #
169950

/s/ for

John M. Majoras
E-mail: jmmajoras@jonesday.com
Carmen G. McLean
E-mail: cgmclean@jonesday.com
Michelle L. Marks
E-mail: smarks@jonesday.com
Jones Day
51 Louisiana Avenue N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

*Attorneys for Defendants*
*Parker ITR S.r.l.*
*Parker Hannifin Corporation*

FL·BAR #
169950

/s/ for

Kevin R. Sullivan
E-mail: krsullivan@kslaw.com
James M. Griffin
E-mail: jgriffin@kslaw.com
King & Spalding
1700 Pennsylvania Avenue N.W.
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Attorneys for Defendant*
*Giovanni Scodeggio*

## CERTIFICATE OF SERVICE

I HEREBY certify that on October 23, 2008 I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record or *pro se* parties identified on the Mailing Information for Case 08-MDL-1888.  Counsel of record currently identified on the Mailing Information System list to receive e-mail notices for this case are served via Notices of Electronic filing generated by CM/ECF.  Counsel of record who are not on the Mailing Information list to receive e-mail notices for this case have been served via U.S. mail.

_____
Jeffrey A. Sudduth