# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF FLORIDA

# MIAMI DIVISION

MASTER DOCKET NO. 08-MDL-1888-GRAHAM/TURNOFF

_____

IN RE MARINE HOSE ANTITRUST

LITIGATION

_____

THIS DOCUMENT RELATES TO:

      **ALL ACTIONS**

**PARKER HANNIFIN CORPORATION, PARKER ITR S.R.L., MANULI RUBBER INDUSTRIES, S.P.A., MANULI OIL & MARINE (U.S.A.) INC., AND GIOVANNI SCODEGGIO'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS <u>FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

## TABLE OF AUTHORITIES

**CASES**                                                                                                                    **Page**

*Access Telecom, Inc. v. MCI Telecommc'ns Corp.*,
    197 F.3d 694 (5th Cir. 1999)..................................................................................................8

*Den Norske Stats Oljeselskap AS v. HeereMac VOF*,
    241 F.3d 420 (5th Cir. 2001)..................................................................................................7

*EMag Solutions LLC v. Toda Kogyo Corp.*,
    No. C-02-1611, 1995 WL 1712084 (N.D. Cal. July 20, 2005)..........................................6, 9

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (20004)..............................................................................................................9

*Gen. Elec. Co. v. Latin Am. Imports, S.A.*,
    187 F. Supp. 2d 749 (W.D. Ky. 2001)....................................................................................8

*'In' Porters, S.A. v. Hanes Printables, Inc.*,
    663 F. Supp. 494 (M.D.N.C. 1987).........................................................................................9

*In re Integrated Health Servs., Inc.*,
    233 F. App'x 115 (3d Cir. 2007).............................................................................................4

*Luria-Akin v. Devonshire at PGA Nat'l, LLC*,
    No. 08-80349, 2008 WL 1745063 (S.D. Fla. Apr. 11, 2008) ................................................4

*Optimum, S.A. v. Legent Corp.*,
    926 F. Supp. 530 (W.D. Pa. 1996)..........................................................................................6

*Rosenkrantz v. Markopoulos*,
    254 F. Supp. 2d 1250 (M.D. Fla. 2003)............................................................................2, 3

*Todorov v. DCH Healthcare Auth.*,
    921 F.2d 1438 (11th Cir. 1991).............................................................................................10

*Turicentro, S.A. v. Am. Airlines, Inc.*,
    303 F.3d 293 (3d Cir. 2002)................................................................................................5, 7

*United States v. Spitzer*,
    245 F. App'x 908 (11th Cir. 2007).........................................................................................4

**STATUTES**

15 U.S.C. § 6a ...............................................................................................................................5, 7

Moving Defendants[1] moved for dismissal of the First Amended Complaint ("Complaint") on the grounds that the Court lacks subject matter jurisdiction over the antitrust claims brought by plaintiffs Expro Gulf Limited ("Expro") and Bayside Rubber & Products ("Bayside"). Bayside lacks standing to prosecute the Complaint because it has not made any actual purchases of marine hose from any of the defendants in the United States. (Moving Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction & Incorporated Memorandum of Law [D.E. 242] ("Defs.' Br.") at 17-19.) With respect to Expro, the Federal Trade Antitrust Improvements Act ("FTAIA") bars this Court from exercising jurisdiction over Expro's claims because the Expro transaction occurred in foreign commerce. (*Id*. at 6-7.) Moreover, neither the domestic commerce nor the export commerce exceptions to the FTAIA jurisdictional bar are applicable. (*Id*. at 7-10.) In their Opposition, Plaintiffs waived all arguments with respect to the domestic commerce exception and they now seek cover solely under the export commerce exception. Because neither proposed class representative has standing, and the FTAIA bars jurisdiction over Expro's claim, the Complaint should be dismissed in its entirety.

## I.     BAYSIDE LACKS STANDING

Bayside does not have standing because it has not carried its burden of proving that it purchased marine hose from the defendants in the United States. (Defs.' Br. at 17-18.) In their opposition brief, Plaintiffs confuse which party has the burden to establish antitrust standing. Plaintiffs complain that "Defendants have failed to present *any contrary evidence* to demonstrate that Bayside lacks standing." (Plaintiffs' Opposition to Certain Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [D.E. 257] ("Pls.' Opp.") at 5.) It is, however, *Plaintiffs*' burden to show, by a preponderance of the evidence, that Bayside purchased marine hose from

---

[1] The Moving Defendants include Parker Hannifin Corporation, Parker ITR S.r.l. ("Parker ITR"), Manuli Rubber Industries, S.p.A., Manuli Oil & Marine (U.S.A.), Inc., and Giovanni Scodeggio.

the defendants in the United States. *Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250, 1252 (M.D. Fla. 2003); Defs.' Br. at 17-18.

Plaintiffs appear to believe that they can satisfy their burden through three contradictory statements—an interrogatory response and two affidavits—all sworn to by a single person, Steve Gatlin, the Vice President of Bayside. These three statements are not trustworthy and, even if they were, they are plainly insufficient.[2]

Bayside was required by the Court to disclose *any and all* information regarding its U.S. purchases of marine hose in May 2008.[3] (May 16, 2008 Order [D.E. 116] ("Order").) Bayside produced a series of documents, but did not disclose that it had made any purchases not addressed in those documents. (Pls.' Rule 26(a)(1) Initial Disclosures dated June 16, 2008, attached as Ex. A). In response to an interrogatory requesting the same information, Bayside merely directed the defendants to certain of the documents it had produced as part of its initial disclosures, and Mr. Gatlin swore to the truthfulness of Bayside's response. (*See* Bayside's Interrogs. Response No. 1 attached as Ex. M to Defs.' Br.) As Moving Defendants subsequently pointed out (Defs.' Br. at 18) and Plaintiffs appear to have conceded (Pls.' Class Cert. Reply at 3-4 [D.E. 210] ("Pls.' Reply")), none of the purchases referenced in those documents are for marine hose. As the produced documents no longer provided evidence of Bayside's purchases of marine hose, Mr. Gatlin (who Bayside claims is "[t]he employee with principal knowledge of [Bayside's] marine hose purchases") submitted a sworn affidavit, with no documentary evidence

---

[2] Plaintiffs allege that defendants "do not dispute the sufficiency of Bayside's evidence" showing that it bought marine hose (Pls.' Opp. at 7); in fact, Moving Defendants are contesting that very point by highlighting the deficiencies and inconsistencies in the limited, self-serving information put forth by Plaintiffs to support their claims.

[3] Plaintiffs argue that they should be entitled to discovery before the Court rules on Moving Defendants' Rule 12(b)(1) motion. Pursuant to this Court's order of May 16, 2008, all "documents relating to U.S. sales and purchases of Marine Hose [were to] be exchanged as part of initial disclosures" due on May 30, 2008. (Order at 3-4.) Accordingly, Plaintiffs have already had their opportunity to prove that they made the requisite purchases, and no discovery is necessary on this point.

or details to support it, that Bayside had purchased marine hose in the "mid-to-late 1980s." (9/15/08 Gatlin Aff. ¶ 4.)  Because Plaintiffs' initial disclosures provided no evidentiary support for purchases of marine hose and thus Mr. Gatlin's first sworn statement to this Court is false, Mr. Gatlin's trustworthiness has been severely damaged.

Now, in a transparent attempt to revive Mr. Gatlin's credibility, Plaintiffs try to cure the contradictions between Mr. Gatlin's sworn statements by taking the position that the documents referenced by the interrogatory response *actually do* show purchases of marine hose.  (Pls.' Opp. at 7.)  Plaintiffs do so despite the fact that this is contrary to the position they took in their class certification briefing.  (Pls.' Reply at 3-4.)  The inconsistencies in Plaintiffs' position completely undermine their assertions that Bayside made any actionable purchases of marine hose.

Hoping to "put to rest" the issue, Mr. Gatlin provided a third, equally conclusory sworn statement that does little more than add that every one of the purchases mentioned in his second statement was "invoiced and paid for in United States."  (10/31/08 Gatlin Aff. ¶ 3.)  While Mr. Gatlin is apparently able to recall that Bayside's "marine hose" purchases[4] were invoiced and paid for in the United States, he is seemingly unable to provide any specificity regarding even a single one of those purchases which would actually provide support for Bayside's claims, much less how many purchases there were.  Mr. Gatlin cannot provide a year in which any of these purchases were made, how much was paid, from whom the hose was bought, or what type or quantity of hose was purchased.[5]  Instead, Mr. Gatlin effectively says "trust me."  Such trust is unwarranted given that Mr. Gatlin does not appear able to identify what is or is not marine hose.

---

[4] This is assuming, notwithstanding the clear error in Mr. Gatlin's verified interrogatory response, that he is recalling purchases of marine hose and not another type of hose.

[5] Plaintiffs claim that the Moving Defendants should have deposed Mr. Gatlin to prove that Bayside did not purchase marine hose.  (Pls.' Opp. at 6.)  Again, Plaintiffs miss the mark.  The burden is on Plaintiffs to prove that the purchases were made.  *Rosenkrantz*, 254 F. Supp. 2d at 1252.  Given that Mr. Gatlin's statements and Plaintiffs' initial disclosures, as discussed *supra*, provided no evidentiary basis for believing that Bayside made any marine

3

Finally, with no specific information or documentation about these alleged purchases, Bayside ultimately relies on nothing more than affidavits stating a legal conclusion.[6] This is patently insufficient to support Plaintiffs' claim. *See United States v. Spitzer*, 245 F. App'x 908, 912 (11th Cir. 2007) (finding that "evidence" consisting of two personal affidavits stating legal conclusions "was plainly insufficient" to defeat a motion for summary judgment); *see also In re Integrated Health Servs., Inc.*, 233 F. App'x 115, 199 n.5 (3d Cir. 2007) (finding no error in the lower court's determination that plaintiff's affidavit was irrelevant because "his testimony as to a legal conclusion … is [not] proper[] evidence on that point and was, regardless, not compelling") (internal quotation marks omitted; alterations in original); *Luria-Akin v. Devonshire at PGA Nat'l, LLC*, No. 08-80349, 2008 WL 1745063, at *1 (S.D. Fla. Apr. 11, 2008) (dismissing complaint for lack of jurisdiction because "affidavit, while sworn under penalty of perjury, amounts to little more than a conclusory allegation without support"). That Bayside's unsupported assertion is insufficient is obvious from the fact that the information that Bayside has provided to the Court would not satisfy a claim for recovery using the very criteria proposed by Plaintiffs. (*See* Plaintiffs' Proposed Claim Form, attached as Ex. B, stating in Sections III and IV that a claimant must have records of its purchases or records from other years or from similar purchases from which it can extrapolate relevant sales during the class period.)  Because Bayside has failed to demonstrate, by a preponderance of the evidence, that it made any marine hose purchases from any defendant in the United States, it must be dismissed from this action.

---

(continued…)

hose purchases in the United States from the defendants, the Moving Defendants determined that a deposition would have been a waste of time and resources.

[6] Further, there is no way to make a valid damages calculation related to those purchases. Bayside has put forth no substantive information related to the most fundamental aspects of its purchases, such as number of purchases, price paid or quantity of hose purchased.  Because Bayside is unable to provide sufficient information for even a single purchase, it is difficult to see how it could even estimate damages for multiple claimed purchases.

## II.　THE FTAIA BARS JURISDICTION OVER EXPRO'S CLAIM

### A.　The FTAIA Applies To The Expro Transaction

The FTAIA applies to Expro's claim because it is self-evident that Expro's purchase of marine hose occurred in foreign commerce. (Defs.' Br. at 6-7.) Expro, a foreign corporation, purchased marine hose that was manufactured in Italy from Parker ITR, an Italian corporation, and that marine hose was shipped from Italy for use in Nigeria. (*Id*.)

Plaintiffs nevertheless insist that the Expro transaction occurred in U.S. commerce because individuals in Expro's Houston office helped "develop the specifications for the request for proposals" for the marine hose purchase, to which a Parker ITR representative in California submitted a bid. (Pls.' Opp. at 11.) Plaintiffs also place heavy reliance on the choice-of-law provision in the contract for the marine hose purchase. (*Id*. at 11-13.) Because neither of these factors can turn a foreign transaction into a domestic one, the FTAIA applies to the Expro claim.

First, whether the "conduct involv[es] trade or commerce . . . with foreign nations," 15 U.S.C. § 6a, is an "inquiry [that] focuses on *defendants*' conduct." *Turicentro, S.A. v. Am. Airlines, Inc.*, 303 F.3d 293, 301 (3d Cir. 2002) (emphasis added).[7] In this case, defendant Parker ITR in Italy received the order for the marine hose from another foreign office, Expro in Cyprus, and manufactured the marine hose in Italy, and sent its invoice from its office in Italy to Expro in Cyprus. Aside from the submission of a bid by a Parker ITR representative in California (Pls.' Opp. at 11), defendant Parker ITR's conduct with respect to the Expro transaction occurred solely in foreign commerce.

The courts are clear that this negligible involvement by a Parker ITR representative in California cannot remove the Expro transaction from the scope of the FTAIA. For example, the

---

[7] For this reason, the involvement of Expro's Houston office in pre-purchase solicitation activities is "extraneous" to the question of whether the Expro transaction occurred in foreign commerce because the "focus remains on the conduct of defendants, not plaintiffs." *Turicentro*, 303 F.3d at 304.

5

plaintiffs in *EMag Solutions LLC v. Toda Kogyo Corp.*, No. C-02-1611, 1995 WL 1712084 (N.D. Cal. July 20, 2005), who, like Plaintiffs here, were incorporated and had their principal places of business abroad, argued that because they bought the product at issue in the United States—where it was manufactured—and they initially took possession of the product *in the United States*, that the transaction constituted domestic commerce.  The *EMag* court disagreed, holding that the product was ultimately delivered to a destination abroad, and thus the flow of commerce was foreign, not domestic, and the FTAIA precluded jurisdiction.  *Id*. at *9-10.  *See also Optimum, S.A. v. Legent Corp.*, 926 F. Supp. 530, 532 (W.D. Pa. 1996) (finding that the FTAIA "applies even where the anti-trust conduct originates in the United States or involves American-owned entities operating abroad").  Here, it is even more evident that the Expro transaction was wholly foreign because the marine hose purchased by Expro was *not* manufactured in the United States and never touched U.S. soil.  The flow of commerce was demonstrably foreign as Expro's marine hose order flowed from Cyprus to Italy to Nigeria.  *EMag*, 1995 WL 1712084, at *10.  Accordingly, the FTAIA applies and bars jurisdiction here.

   Plaintiffs' second argument is that the Expro transaction occurred within U.S. commerce by virtue of the choice-of-law provision in the Expro contract.  Plaintiffs repeatedly note that the Expro contract would be governed by U.S. law.  (*See* Pls.' Opp. at 11, 12 & 13.) Plaintiffs have cited no case that found the choice-of-law provision to be a factor, much less a dispositive factor, in determining that a particular transaction was a domestic transaction. Plaintiffs' contention hangs flimsily on a footnote in the *Den Norske* opinion in which the Fifth Circuit was *describing* the allegations in the Complaint, and noted that, among other things, the contracts did not include an agreement to apply United States law.  (*Id.* at 11.)  However, Plaintiffs drastically overreach when they state that "[t]he clear implication of the Fifth Circuit's

analysis is that anticompetitive injury that *does* result from purchases . . . governed by U.S. law . . . *would* in fact give rise to claims under the Sherman Act." (*Id*.)  The Fifth Circuit's actual analysis of whether the transactions in *Den Norske* were foreign transactions focused on defendants' conduct, and concluded that the foreign corporate defendants' provision of heavy barge lifting services to the plaintiff in foreign waters was "foreign conduct that falls within the general parameters of the FTAIA."  *Den Norske Stats Oljeselskap AS  v. HeereMac VOF*, 241 F.3d 420, 426 (5th Cir. 2001).  The Fifth Circuit made no mention of the choice-of-law provision in the agreements at issue.  Moreover, as Plaintiffs themselves explain, the insistence on Texas law for the contract related to plaintiff Expro's conduct, not defendant Parker's.  (Pls.' Opp. at 11-12.)  Because as discussed *supra* at note 7, Plaintiffs' conduct is "extraneous" to whether a transaction is foreign, Expro's reliance on its own standard terms and conditions does not make the Expro transaction a domestic one.  *Turicentro*, 303 F.3d at 304.

> **B.     The FTAIA's Export Commerce Exception Does Not Apply To The Expro Claim**

As a fallback argument, Plaintiffs contend that even if the Expro transaction occurred in foreign commerce, the Court nonetheless retains jurisdiction over the Complaint under the export commerce exception to the FTAIA.  That exception provides that the Sherman Act will extend to foreign anticompetitive conduct that "has a direct, substantial and reasonably foreseeable effect . . . on export trade or export commerce . . . of a person engaged in such trade or commerce in the United States." 15 U.S.C. § 6a(1)(B).  Plaintiffs effectively concede that Expro did not export marine hose.  Instead they claim that Expro exported "engineering and other services" to other companies in the offshore oil and gas production sector, and that Expro purchased the marine hose as part of providing such services to Chevron.  (Pls.' Opp. at 17.) This argument does not pass muster.

7

First, Plaintiffs' argument fails because even if Expro was an American company that exported oil and gas services,[8] oil and gas services are not the subject of the alleged price-fixing conspiracy in the Complaint. Here, the product at issue is marine hose, not "engineering or other services." (*Id*.) When a complaint alleges anticompetitive conduct directed at a particular product, there is simply no precedent for applying the export commerce exception to anything other than exports of that very product. *See, e.g.*, *Gen. Elec. Co. v. Latin Am. Imports, S.A.*, 187 F. Supp. 2d 749 (W.D. Ky. 2001) (export commerce exception applies where complaint alleges interference with export of appliances and plaintiff adequately alleged that it was exporter of appliances). Indeed, Plaintiffs sole authority (Pls.' Opp. at 14), *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694 (5th Cir. 1999), stands for precisely this point. In *Access Telecom*, the Fifth Circuit found that the court had jurisdiction over a complaint alleging anticompetitive conduct targeted at a product that was exported by a corporation based in Texas to consumers in Mexico. *Id*. at 712. That product was *phone services*, namely, a service by which Mexican customers could make calls to the United States at cheaper rates than those set by the national telecommunications utility in Mexico. *Id*. at 701. In this case, the relevant product is marine hose, not engineering services. *Access Telecom* therefore supports Moving Defendants' position that the export commerce exception only applies where the anticompetitive conduct alleged in the complaint has a direct, substantial, and reasonably foreseeable effect on U.S. exports of the product at issue.

---

[8] Plaintiffs' own depiction of Expro's activities indicates that Expro does not "export" oil and gas services. Plaintiffs' lengthy description of Expro's Houston office and the oil and gas services market in Houston (Pls.' Opp. at 15-17) makes it clear that Expro provides services to U.S. oil companies that are based in Houston, *i.e.*, services within domestic commerce. (*See id*. at 11 ("Expro's purchase of Marine Hose was undertaken from its offices in Houston, Texas, where it worked with its U.S. client Chevron.").) In other words, the Expro Houston office was providing services within domestic commerce. Moreover, Plaintiffs' claim that the Expro transaction "occurred within U.S. domestic commerce" (*id*. at 10) completely undermines their theory that Expro is an exporter.

8

Second, Plaintiffs cannot get around the FTAIA jurisdictional bar by asserting an impact in a market that is not the subject of the complaint.  It is not enough to allege that Expro "participated in export commerce" (Pls.' Opp. at 18) or was involved in the oil and gas services market when the relevant export market is the market for marine hose.  The FTAIA export commerce exception is intended to protect American exporters of particular products.  *See F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 158 (2004) (exception applies where "conduct significantly harms . . . American exporters"); *'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 499 n.5 (M.D.N.C. 1987) (Act "requires a qualifying effect . . . on a qualifying party . . . *i.e.*, an exporter from the United States.").  Here, it is undisputed that Expro is not an American entity and that it exported no products from American shores.  Moreover, when foreign plaintiffs, like Expro, seek to invoke the protection of the export commerce exception, they must be "American export competitors."  *EMag Solutions LLC*, 2005 WL 1712084, at *11 (holding that foreign plaintiffs must be "American export competitors" of product at issue in order to benefit from export commerce exception).  Again, Expro is not an American export competitor with the defendant marine hose manufacturers.  Because Plaintiffs know full well that Expro is not an American exporter or an American export competitor of marine hose, they have tried to recast the issue as one of "participation in export commerce" and "export" of oil and gas by virtue of their involvement in the oil and gas services sector.  The Court should not permit Plaintiffs to manipulate the export commerce exception in this manner.

Third, even assuming for the sake of argument that Plaintiffs could rely on the purported impact of defendants' conduct on the oil and gas services sector as a basis to evade the FTAIA jurisdictional bar, Expro must still be dismissed from this action for lack of standing.  It is one of the Eleventh Circuit's cardinal principles of standing in the antitrust context that the plaintiff

9

must be an "efficient enforcer of the antitrust laws." *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1448-49 (11th Cir. 1991).  Here, the Complaint addresses the effect of the alleged price-fixing conspiracy on the prices of marine hose sold in the United States.  But Plaintiffs' new theory revolves around purported effects on the export of oil and gas services.  Because there is now a complete disconnect between the allegations of the Complaint and Plaintiffs' current characterization of the Expro transaction, Expro is not the proper plaintiff to prosecute the complaint.  *Id.* at 1451 (if direct purchasers of product at issue exist, there is no "justification for allowing a more remote party . . . to enforce the antitrust laws").

Finally, Plaintiffs have already admitted that whatever Expro did with the marine hose after purchasing it from defendants is irrelevant to this litigation.  In response to document requests propounded by defendants, Plaintiffs previously refused to provide any known information with respect to the resale or other uses of marine hose.  (Pls.' Objections & Responses to Corp. Defs.' First Req. for Prod. of Docs. Related to Class Cert. dated 7/14/08 Nos. 6 and 9, at 7-8, attached as Ex. C.)  Plaintiffs expressly stated that any information "relating to Plaintiffs' . . . sale, resale or other use of Marine Hose" is "irrelevant to the subject matter of this action and is not relevant to any claims or defenses." (*Id.*)  In their opposition brief, Plaintiffs belatedly assert as the sole basis for the Court's exercise of jurisdiction over the Expro transaction that Chevron, the ultimate customer of the marine hose in the Dibi project in Nigeria, is purportedly in the export sector.  Since Plaintiffs have previously conceded that any use of the product after purchase is "irrelevant," they cannot rely on that as the basis for their claim now.

## CONCLUSION

For all of the reasons set forth above, and for the reasons stated in the Moving Defendants' opening brief, this Court should grant this Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction.

November 13, 2008                    Respectfully submitted:


                                                */s/ Jeffrey A. Sudduth*
                                                Jeffrey A. Sudduth
                                                Florida Bar No. 169950
                                                jsudduth@lpflaw.com
                                                LEGON PONCE & FODIMAN P A
                                                1111 Brickell Avenue, Suite 2150
                                                Miami, Florida 33131
                                                Telephone: (305) 444-9991
                                                Facsimile: (305) 444-9937
                                                *Attorney for Defendants*
                                                *Parker ITR S.r.l.*
                                                *Parker Hannifin Corporation*

*/s/ Jeffrey A. Sudduth*
Alan G. Greer (Florida Bar No. 123294)
agreer@richmangreer.com
Lyle E. Shapiro (Florida Bar No. 0120324)
lshapiro@richmangreer.com
RICHMAN GREER, P.A.
Miami Center – Suite 1000
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 373-4000
Facsimile: (305) 373-4099


Robert M. Osgood
E-mail: osgoodr@sullcrom.com
Fern Mechlowitz
E-mail: mechlowitzf@sullcrom.com
Sullivan & Cromwell
1 New Fetter Lane
London EC4A 1AN, England
Telephone: 44-20-7959-8900
Facsimile: 44-20-7959-8950

*Attorneys for Defendants*
*Manuli Oil & Marine (USA) Inc.*
*Manuli Rubber Industries S.p.A.*

*/s/ Jeffrey A. Sudduth*
John M. Majoras
E-mail: jmmajoras@jonesday.com
Carmen G. McLean
E-mail: cgmclean@jonesday.com
Michelle L. Marks
E-mail: smarks@jonesday.com
Jones Day
51 Louisiana Avenue N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

*Attorneys for Defendants*
*Parker ITR S.r.l.*
*Parker Hannifin Corporation*

 */s/ Jeffrey A. Sudduth*
Kevin R. Sullivan
E-mail: krsullivan@kslaw.com
James M. Griffin
E-mail: jgriffin@kslaw.com
King & Spalding
1700 Pennsylvania Avenue N.W.
Suite 200
Washington, D.C. 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

*Attorneys for Defendant*
*Giovanni Scodeggio*

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on November 13, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record or *pro se* parties identified on the Mailing Information for Case 08-MDL-1888.  Counsel of record currently identified on the Mailing Information System list to receive e-mail notices for this case are served via Notices of Electronic filing generated by CM/ECF.  Counsel of record who are not on the Mailing Information list to receive e-mail notices for this case have been served via U.S. mail.

*/s/ Jeffrey A. Sudduth*
Jeffrey A. Sudduth