**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**Master Docket No. 08-MDL-1888-Graham/Turnoff**

| | )<br>) |
|---|---|
| IN RE MARINE HOSE ANTITRUST<br>LITIGATION (II) | )<br>)<br>) |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | )<br>)<br>)<br>)<br>) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT CHARLES J. GILLESPIE'S
MOTION TO DISMISS FIRST AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT**

Plaintiffs submit this memorandum in opposition to the Motion ("Motion") of Defendant Charles J. Gillespie ("Gillespie") to Dismiss Plaintiffs' First Amended Consolidated Complaint ("Complaint").[1]

**PRELIMINARY STATEMENT**

Gillespie's Motion does not (and cannot) challenge Plaintiffs' allegations that he was an integral part of a long-running, illegal conspiracy to violate the United States antitrust laws by inflating the price class members paid for Marine Hose.[2] Instead, the Motion generally argues that Plaintiffs do not properly allege the domestic effects of the conspiracy Gillespie admits he was a part of, that Plaintiffs do not allege they were personally affected by those domestic effects, and that Plaintiffs' fraudulent concealment

---

[1] Citations to the Complaint herein are in the form "¶ ___."

[2] As defined in the Complaint, "Marine Hose . . . means a flexible rubber hose in various diameters and lengths that is primarily used to transport oil between ships, terminals, buoys and tanks, and including ancillary products." ¶ 8.

1

allegations are insufficiently particular. For the following reasons – and as discussed more fully herein – Gillespie's arguments must fail.

*First*, Gillespie's contention that subject matter jurisdiction is lacking because Plaintiffs do not allege the "challenged conduct had the requisite effect on U.S. commerce," Motion at 4, does not accord with the fact that Plaintiffs allege that Gillespie *admitted* in a guilty plea that the conspiracy raised Marine Hose prices *in the United States*, ¶ 82, nor with the many allegations of *domestic* effects throughout the Complaint. ¶¶ 6, 47, 56, 57, 57(g) - (j), 70, 76 - 79, 83.

*Second*, Gillespie's contention that the Complaint fails to allege Plaintiffs' standing because the Complaint purportedly does "not allege that [Plaintiffs] purchased marine hose in the United States," Motion at 6, cannot be reconciled with the Complaint's allegation that all Plaintiffs "purchased Marine Hose in the United States directly from the Defendants. . . ." ¶ 47.

*Third*, Gillespie's contention that Plaintiffs' fraudulent concealment allegations are not pled with sufficient specificity ignores the law of this Circuit, under which Plaintiffs are not required to plead "affirmative actions by the defendant constituting concealment" in instances "where the wrong is of such a character as to be self-concealing." *Hill v. Texaco, Inc.*, 825 F.2d 333, 335 & n.2 (11th Cir. 1987). Gillespie also ignores the multiple specific acts of concealment alleged in the Complaint. *See, e.g.* ¶¶ 61, 69, 85, 87.

As such, this Court should deny Gillespie's Motion.

## BACKGROUND

This case is a class action brought against companies and individuals who conspired to fix prices, allocate markets and rig bids for Marine Hose in the United States and elsewhere. ¶ 2. The putative Class is represented by two companies who purchased Marine Hose in the United States from one or more Defendants during the Class Period. ¶¶ 9 - 10, 47.

Gillespie was, at all relevant times, a Fort Lauderdale, Florida based regional manager of the United States operations of Defendants Manuli Rubber Industries S.p.A. and Manuli Oil & Marine (U.S.A.) (together, "Manuli"). ¶¶ 24 - 25, 40. Gillespie and Manuli have both pled guilty to conspiring to violate the U.S. antitrust laws with virtually every international manufacturer of Marine Hose, as well as subsidiaries, affiliates, officers, and employees of these companies. ¶¶ 12 - 44.

Defendants' conspiracy was well-organized and effective. Cartel members would agree on prices to be charged for Marine Hose (as well as the market share to be allocated each member) and would then provide Defendant Peter Whittle, the conspiracy coordinator, information about upcoming bids. ¶ 58. Whittle would designate the conspirator to "win" each bid, and would then communicate the amount that other cartel members should bid to ensure that the so-called "champion" cartel member won the job. *Id.* Cartel members created code names for themselves, their co-conspirators, and the cartel, and used those to conceal the conspiracy from the public. ¶¶ 57(l), 61.

These efforts to conceal the conspiracy were successful. Plaintiffs, class members and the public only learned of the conspiracy on May 2, 2007, when U.S. antitrust authorities announced they had arrested seven marine hose industry executives for

criminal violations of Sherman Act § 1. ¶ 70. Around that time, American, European, and Japanese antitrust authorities also executed coordinated searches of the offices of the cartel members. ¶ 73. As the antitrust authorities' investigation continued, many of those arrested were indicted and subsequently pleaded guilty to criminal antitrust violations.

Gillespie and his employer, Manuli, were two of these. On July 28, 2008, the United States Department of Justice announced that Manuli Rubber Industries pleaded guilty to participating in the conspiracy, and agreed to pay a criminal fine of $2 million. ¶ 83. For his part, on April 8, 2008, Gillespie signed a plea agreement in which he detailed his participation in the conspiracy and the effect that conspiracy had on United States commerce. Plea Agreement, *United States v. Gillespie*, 08-cr-00234 (S.D. Tex. May 8, 2008) ("Plea Agreement") (attached hereto as Exhibit A). In that Plea Agreement, Gillespie admitted that his illegal conduct "and [that of] his co-conspirators in connection with the manufacture and/or sale of marine hose affected by [the] conspiracy [was] within the flow of, and substantially affected, interstate and foreign trade and commerce." *Id.* at ¶ 4(c); *see also* ¶ 82 (noting Gillespie had pled guilty to antitrust violations for sales of Marine Hose "in the United States.").

Pursuant to the Plea Agreement, Gillespie offered testimony in a recent criminal trial of two of his co-conspirators in the Southern District of Florida. In that testimony, Gillespie candidly admitted that he and his co-conspirators fraudulently concealed the conspiracy by "misrepresent[ing] the fact that [the co-conspirators] were competing." Transcript, *United States v. Northcutt*, 1027:12 - 1028:2 ("Northcutt Transcript") (relevant pages attached hereto as Exhibit B). In that same testimony, Gillespie also

agreed these misrepresentations meant that he lied to his customers (*i.e.,* class members) to conceal his criminal activities. *Id.*

Gillespie's guilty plea carries with it an agreement to serve 12 months and one day in jail, to pay a $20,000 criminal fine, and to participate fully in the ongoing investigation into the conspiracy.

## **STANDARD OF REVIEW**

Gillespie's Motion is brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

A Rule 12(b)(1) motion – aimed at challenging this Court's jurisdiction to hear the case – can be either a "facial" or a "factual" challenge. *CFTC v. Liberty Mut. Group, Inc.*, No. 07-21267, 2008 WL 60498, at *2 (S.D. Fla. Jan. 3, 2008). A "facial" challenge occurs when a motion challenges subject matter jurisdiction based solely on the allegations in the complaint, while a "factual" challenge addresses the underlying merits of the case. Insofar as Gillespie solely challenges the allegations in Plaintiffs' Complaint, Gillespie's motion makes a facial attack.[3] Accordingly, the standards for deciding Gillespie's 12(b)(1) motion are the same as the standards used for determining his 12(b)(6) motion. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Thus, the allegations in Plaintiffs' Complaint must be taken as true for both Gillespie's 12(b)(1) and his 12(b)(6) motions. In accordance with the simple notice pleading standard set out in F.R.C.P. 8, those allegations are sufficient so long as the

---

[3] Gillespie makes a facial attack because his motion strictly limits itself to attacking the allegations in Plaintiffs' Complaint. Motion at 3 - 5 (arguing plaintiffs have failed to "plead sufficient facts" to demonstrate subject matter jurisdiction, arguing "[t]he FAC contains only a conclusory assertion that Defendants' challenged conduct had the requisite effect on U.S. commerce," arguing "[t]he FAC states no sufficient facts supporting the bare allegation that the effects of the alleged conspiracy were felt in the United States," and arguing that "Plaintiffs' allegations of effects upon U.S. commerce are merely conclusory." ).

Complaint gives Gillespie "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 1965 (2007). This occurs when Plaintiffs' complaint is "enough to raise [Plaintiffs'] right to relief above the speculative level." *Id.* at 1965. In other words, for each element Gillespie challenges, *Twombly* merely requires "'a complaint with enough factual matter (taken as true) to suggest' the required element." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1965). This standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.* at 1295 - 96. Thus, "[i]t is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] *plausible*.'" *Id.* at 1296 (emphasis added).

As is set forth below, each element Gillespie challenged is "plausibly" alleged – indeed, they have often been *admitted* by Gillespie. For that reason, Gillespie's Motion must fail.

## I. PLAINTIFFS INCORPORATE THEIR EARLIER-FILED OPPOSITIONS

Gillespie's Motion adopts the Motion to Dismiss filed by Parker Hannifin Corporation, Parker ITR S.R.L., Manuli Rubber Industries S.P.A., Manuli Oil & Marine (U.S.A.) Inc., and Giovanni Scodeggio. Motion at 1 – 2. In response, Plaintiffs respectfully request this Court consider the arguments made in Plaintiffs' Opposition to Certain Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed November 3, 2008.

## II. THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS

Gillespie's Motion challenges this Court's subject matter jurisdiction to hear this case. Motion at 6 - 7. Under *Twombly*, this motion must be denied unless Plaintiffs' "complaint, when considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101, 1108 (N.D. Cal. 2007). As set forth below, Plaintiffs' Complaint easily surpasses this low standard.

### a. The Complaint Properly Alleges Domestic Effects of Defendants' Anticompetitive Conduct

#### i. The FTAIA Does Not Preclude Plaintiffs' Action

Plaintiffs' Complaint alleges Gillespie was a resident of Florida, ¶ 40, was responsible for managing Manuli's operations in the United States, *id.*, and has admitted and pleaded guilty to a conspiracy to "fix, raise, maintain or stabilize prices, rig bids, and allocate markets and customers for sales of Marine Hose, *including in the United States*." ¶ 82 (emphasis added).[4] Nevertheless, Gillespie now relies on *Twombly* and the Foreign Trade Antitrust Improvements Act ("FTAIA") to argue that Plaintiffs do not properly allege the domestic effects of Defendants' conspiracy.

Gillespie's argument is without merit. The FTAIA operates to strip American courts of jurisdiction over antitrust claims based on conduct that causes only foreign injury. 15 U.S.C. § 6a. It does this by barring United States courts from hearing certain

---

[4] Plaintiffs' Complaint also alleges that Manuli *itself*, along with its former president, admitted it sold Marine Hose in the United States, the price of which was artificially inflated by the conspiracy. ¶ 83.

7

antitrust claims based solely on export[5] trade or wholly foreign conduct. *Sun Microsystems*, 534 F. Supp. 2d at 1109. Here, the FTAIA is not applicable. This Court has subject matter jurisdiction over Plaintiffs' Sherman Act claims because the Complaint clearly alleges a conspiracy in the United States to fix the price of Marine Hose in the United States, adversely affecting U.S. commerce.

*First*, this Court has jurisdiction over all Sherman Act claims based on purchases made in the United States. *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 159 (2004) (noting "a purchaser in the United States could bring a Sherman Act claim under the FTAIA based on domestic injury.")[6] *Id.* Thus, when an antitrust complaint alleges that the plaintiff has paid artificially inflated prices for goods sold in the United States, American courts have subject-matter jurisdiction over claims against that defendant. *Id.* *Second*, even when the claims are based on non-import trade or commerce with foreign nations, the FTAIA nevertheless permits American courts to hear such claims when the challenged conduct has a "'direct, substantial, and reasonably foreseeable effect' on domestic commerce [or American exporters] and '[when that] effect gives rise to a Sherman Act claim.'" *Id.* (quoting 15 U.S.C. §§ 6a(1)(A), (2)).

---

[5] FTAIA has no application whatsoever to foreign *import* commerce. *Dee-K Enters., Inc. v. Heveafil Sdn. Bhd*, 299 F.3d 281, 287 (4th Cir. 2002) ("Because this case involves importation of foreign-made goods, however-conduct Congress *expressly exempted* from FTAIA coverage as 'involving ... import trade or import commerce ... with foreign nations,' the FTAIA standard obviously does not directly govern this case."). Thus, to the extent Gillespie seeks to assert that claims based on class members' United States purchases of Marine Hose are barred by FTAIA because that hose may have been manufactured elsewhere, that argument must fail.

[6] *Empagran* was a class action alleging price-fixing of vitamins. *Empagran S.A.*, 542 U.S. at 159-60. In *Empagran*, the Court held that an American court had no subject matter to hear claims brought by a class of wholly foreign purchasers who had never purchased vitamins in the United States. *Id.* The Court premised this holding on a finding by the lower court that the harm suffered by the foreign plaintiffs was entirely independent of any harm that may have been suffered by domestic purchasers. *Id.*

Under *Twombly,* Plaintiffs' allegations of these domestic effects need only be "plausible" to survive Gillespie's Motion. *Twombly*, 127 S. Ct. at 1964. Here, since Plaintiffs' purchases of price-fixed Marine Hose were made in the United States, it is certainly "plausible" that there was an anticompetitive domestic effect. Thus, the FTAIA would not bar Plaintiffs' claims and, accordingly, Gillespie's Motion should be denied. And – at any rate – the direct effects the conspiracy had on United States commerce is well demonstrated throughout the Complaint.

### ii. Gillespie's Admissions That He Manipulated Marine Hose Prices In The United States Mandates Denial Of His Motion

Plaintiffs' Complaint alleges that Gillespie's guilty plea to participation in the conspiracy carried with it an *admission* that the conspiracy intentionally and successfully distorted pricing in the United States market for Marine Hose. ¶ 82. As such, the effects of the conspiracy on both United States purchasers and on United States commerce more than adequately meets *Twombly's* "plausibility" standard – indeed, those effects are not just plausible, but are an admitted fact.

This, without more, warrants denial of Gillespie's motion. Unsurprisingly, courts applying *Twombly* presume that criminal guilty pleas render the facts admitted therein "plausible." *See, e.g. In re Korean Air Co., Ltd. Antitrust Litigation*, No. 07-1891, Order Granting in Part and Denying in Part Defendants' Motions to Dismiss at 16 (C.D. Cal. June 25, 2008) ("Korean Air") (attached hereto as Exhibit C) ("Unlike in *Twombly* . . . where mere parallel conduct was insufficient to support the existence of a price-fixing conspiracy, the existence of such a conspiracy is beyond doubt in the present case given [defendants'] guilty plea"); *see also In re Graphics Processing Units Antitrust Litig.*, No. 06-7417, 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007) (noting it is "almost certain

9

that [a] complaint is viable" when "guilty pleas have already been entered in a parallel criminal case."). For that reason, Plaintiffs' Complaint sufficiently alleges domestic effects in line with the standard set forth in *Empagran S.A.*, 542 U.S. at 159.

To the extent Gillespie seeks to require additional allegations containing particularized detail, *Twombly* reaffirms that Plaintiffs' Complaint "does not need detailed factual allegations." *Twombly*, 127 S. Ct. at 1964. Having admitted the conspiracy directly affected commerce in the United States, Gillespie has certainly received "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* For that reason, even if Plaintiffs' Complaint made no other allegations concerning the domestic affects of the conspiracy other than those contained in ¶ 82, Gillespie's Motion would still fail. Indeed, Plaintiffs would likely to be able to establish Gillespie's liability based on this guilty plea alone. *See State Farm Fire & Cas. Co. v. Cooper*, No. 00-5538, 2001 WL 1287574, at *5 (E.D. Pa. Oct. 24, 2001) ("[S]ummary judgment may be granted based upon a guilty plea in a criminal case, the operative facts of which are identical to those which would be litigated in the civil case, and which, if proved, would establish the civil liability.").

Moreover, the admissions in Gillespie's judicially-noticeable Plea Agreement[7] further buttress this conclusion. In that Plea Agreement, Gillespie admitted that "[t]he business activities of [Gillespie] and co-conspirators in connection with the manufacture and/or sale of marine hose affected by this conspiracy *were within the flow of, and substantially affected, interstate . . . trade and commerce*." (*See* Ex. A at ¶ 4(c))

---

[7] It is well-settled that this Court may take judicial notice of a plea agreement when considering Gillespie's Motion. *Baker v. Henderson*, 150 F. Supp. 2d 13, 15 (D.D.C. 2001) ("[T]he court may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment.").

(emphasis added).⁸  In light of these admissions, Gillespie's contention that the domestic affects of the conspiracy are implausible is simply wrong.  Indeed, the assertions in his Motion are squarely contradicted by his admissions in his Plea Agreement.

### iii. The Complaint Properly Alleges The Direct Domestic Effects of Defendants' Conspiracy.

Even if Gillespie had not admitted that the conspiracy directly and adversely affected prices for Marine Hose in the United States, his motion would nevertheless fail. Plaintiffs' Complaint is replete with allegations plausibly demonstrating that the conspiracy affected United States purchasers of Marine Hose and, indeed is brought on behalf of a putative class who purchased Marine Hose *in the United States*. ¶ 47.  For example, Plaintiffs allege that each Defendant "engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including in this District" ¶ 6; that Plaintiffs are members of a Class "who purchased Marine Hose in the United States directly from the Defendants…," ¶¶ 47, 49; and that Defendants engaged in anticompetitive activity designed to artificially inflate the prices for "Marine Hose in the United States," ¶¶ 56, 57, provided information received from "customers in the United States" to the conspiracy's coordinator, ¶ 57(g), received "Marine Hose prices for customers in the United States" from that coordinator, ¶ 57(h), sold Marine Hose at artificially inflated prices to "customers in the United States," ¶

---

⁸ Gillespie's Plea Agreement additionally indicates his intent to make a factual admission of guilt to the effect that Manuli was "engaged in the sale of marine hose in the *United States*," that the primary purpose of the Marine Hose conspiracy was to "suppress and eliminate competition by rigging bids, fixing prices and allocating market shares for sales of marine hose sold in the *United States* and elsewhere," that Gillespie and his "co-conspirators agreed to rig bids, fix prices and allocate market shares for the sale of marine hose in the *United States* and elsewhere."  (*See* Ex. A at ¶ 4(a) & (b)) (emphasis added).

11

57(i), and accepted payment for Marine Hose "sold in the United States . . . at collusive and non-competitive prices." ¶ 57(j). Plaintiffs further allege that Defendants held meetings in the United States ¶ 62, 64, 67 - 69, that multiple individuals have been arrested in connection with conspiring to violate the U.S. antitrust laws with respect to Marine Hose, including in the United States, ¶ 70, and that several of those individuals have been indicted for those same activities. ¶¶ 76 - 79, 83.

Notably, these – again – are direct allegations of domestic effects felt by domestic purchasers and, accordingly, the FTAIA simply is not applicable. *Empagran S.A.*, 542 U.S. at 159. Gillespie's arguments to the contrary appear to primarily rest on his assertion that "Plaintiffs conspicuously do not allege where they purchased or used marine hose." Motion at 5. This assertion is wrong. Plaintiffs' Complaint alleges that all Plaintiffs and all class members "purchased Marine Hose in the United States directly from the Defendants." ¶ 47. This alone removes Plaintiffs' Complaint entirely from the reach of the FTAIA. *Cf. Empagran S.A.*, 542 U.S. at 159-60 (finding FTAIA applicable because "[r]espondents have never asserted that they purchased any vitamins in the United States or in transactions in United States commerce").[9]

As such, the domestic effects of the conspiracy are well-pled and, accordingly, Gillespie's Motion must fail.

---

[9] Because Gillespie's 12(b)(1) challenge is a facial challenge, this Court is required to accept the allegations in the Complaint as true. *Lawrence,* 919 F.2d at 1529. To the extent this Court views Gillespie's Motion as a factual challenge, Plaintiffs respectfully request this Court consider the arguments made in Plaintiffs' Opposition to Certain Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed November 3, 2008. That Opposition looked beyond the pleadings and adequately demonstrated both United States purchases of Marine Hose and the effects of the conspiracy on United States commerce.

## III. THE COMPLAINT PROPERLY ALLEGES PLAINTIFFS' STANDING

Gillespie next asserts that Plaintiffs fail to allege they were individually injured by the domestic effects of Defendants' conspiracy. From this flawed premise, Gillespie concludes Plaintiffs must therefore lack antitrust standing to pursue this claim. This, simply put, is wrong.

As set forth above, Plaintiffs allege – in allegations that must be taken as true – that all Plaintiffs "purchased Marine Hose in the United States directly from the Defendants" during the Class Period.[10] ¶ 47. And – as demonstrated in the previous section – Plaintiffs properly allege Defendants artificially inflated the price of Marine Hose in the United States throughout the Class Period. This suffices to defeat Gillespie's argument.

Indeed, Gillespie's own cases point out that Plaintiffs are merely required to make allegations "plausibly suggesting" Plaintiffs suffered injury in the United States. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 451 (6th Cir. 2007). Plaintiffs' allegations that they made purchases in the United States more than adequately meet this low standard and, accordingly, Gillespie's Motion should be denied.

---

[10] Gillespie's challenge is explicitly based on a purported lack of antitrust standing, not on a purported lack of Article III standing. *See* Motion at 6. This, no doubt, is why he chose to proceed under Rule 12(b)(6) instead of Rule 12(b)(1). *See id.*; *see also Byers v. Intuit, Inc.*, 564 F. Supp. 2d 385, 419 n.77 (E.D. Pa. 2008) ("[A] plaintiff's failure to establish antitrust standing results in dismissal under Rule 12(b)(6), not Rule 12(b)(1)."). For that reason, even if this Court construes Gillespie's 12(b)(1) attack as a "factual" attack – and it should not – this Court should nevertheless judge Gillespie's antitrust standing challenge by assuming all facts in the complaint are true. *Twombly*, 127 S. Ct. at 1965. If this Court chooses to look beyond the four corners of the Complaint to determine Plaintiffs' standing, Plaintiffs again respectfully request the Court look to the arguments made in Plaintiffs' Opposition to Certain Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed November 3, 2008.

## IV. PLAINTIFFS' COMPLAINT PROPERLY ALLEGES FRAUDULENT CONCEALMENT

Gillespie finally argues that Plaintiffs' fraudulent concealment allegations are insufficiently particular to toll the statute of limitations for class members purchasing Marine Hose more than four years prior to the filing of the Complaint.[11] This argument fundamentally misstates Eleventh Circuit law governing fraudulent concealment.

In this Circuit, a plaintiff relying on the equitable doctrine of fraudulent concealment to toll the statute of limitations need not allege "affirmative actions by the defendant constituting concealment" in instances "where the wrong is of such a character as to be self-concealing." *Hill*, 825 F.2d at 335 & n.2. Rather "[w]here, as in this case, concealment is inherent in the nature of the wrong done, all that is necessary to toll the statute is a plaintiff's due diligence in seeking to discover the fraud." *Osterneck v. E.T. Barwick Indus., Inc.,* 825 F.2d 1521, 1535 n.28 (11th Cir. 1987) (citations omitted). As such, Plaintiffs need not allege their allegations of fraudulent concealment with particularity – indeed, Plaintiffs need not allege *any* acts of affirmative concealment *at all*. Rather, by alleging due diligence – an allegation Gillespie does not challenge – Plaintiffs have properly pled fraudulent concealment.[12] ¶ 85.

---

[11] The tolling of the statute of limitations due to "fraudulent concealment" is an "equitable doctrine [that] is read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). It allows a plaintiff to file his claims after the statute of limitations has expired if he can establish that he was prevented from filing his claims within the statutory period because the defendant fraudulently concealed its actions such that the plaintiff could not know of his injury during the limitations period. *Rotella v. Wood*, 528 U.S. 549, 561 (2000).

[12] Nor could he – Plaintiffs promptly filed suit when the conspiracy came to light (*i.e.*, when the conspirators were arrested) and could not have known of the conspiracy prior to that time. *See Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832 (11th Cir. 1999); *In re Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 487, 498 (C.D. Cal. 1991) ("Plaintiffs are not under a duty continually to scout around to uncover claims which they have no reason to suspect they might have.").

And there can be no doubt that the conspiracy Plaintiffs allege is self-concealing. Indeed, "[a]t the heart of [Plaintiffs'] claims regarding fraudulent concealment is an allegation that any price-fixing was kept secret. This secrecy forms the basis of the claim, and cannot be used as a way to defeat the claim." *In re Infant Formula Antitrust Litig.*, No. MDL 878, 1992 WL 503465, at *2 (N.D. Fla. Jan. 13, 1992). This is why the courts considering bid-rigging and price-fixing conspiracies like the ones alleged here generally find such conspiracies to be self-concealing. *See, e.g. State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1085 (2d Cir. 1988) (holding defendant's "bid-rigging was self-concealing").[13] Given Gillespie's admission that he participated in this self-concealing conspiracy, ¶ 82, he cannot now rely on any purported lack of particularity in Plaintiffs' fraudulent concealment allegations to avoid liability. *Hill*, 825 F.2d at 3335 n.2; *Osterneck,* 825 F.2d at 1535 n.28. Holding otherwise would, in effect, reward Gillespie and his co-conspirators for successfully concealing their conspiracy from its victims. *Aspartame*, 2007 WL 5215231, at *6 ("Plaintiffs were unable, and thus not required, to provide the inner workings of the conspiracy because, according to the complaint, that information was deliberately concealed from plaintiffs and the public.").

Indeed, when a plaintiff alleges price-fixing, this Circuit places the burden on *Defendants* moving to dismiss fraudulent concealment claims to point to public facts that would reveal the price-fixing. *See Morton's Mkt.*, 198 F.3d at 832 (noting price-fixing defendant moving for summary judgment against fraudulent concealment has "the burden

---

[13] *See also In re Issuer Plaintiff Initial Public Offering Antitrust Litig.,* No. 00-7804, 2004 WL 487222, at *4 (S.D.N.Y. Mar. 12, 2004) ("Price-fixing schemes, as explained by the Second Circuit, are inherently self-concealing."); *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000) ("[S]ince bid-rigging and price-fixing conspiracies are deemed self-concealing, a plaintiff is not required to show defendants took independent affirmative steps to conceal their conduct."); *In re Aspartame Antitrust Litig.*, No. 06-1732, 2007 WL 5215231, at *6 (E.D. Pa. Jan. 18, 2007) (noting "the majority of courts examining price-fixing conspiracies have deemed such conspiracies self-concealing" and citing cases).

. . . to point to undisputed facts in the record which demonstrate conclusively that plaintiffs had notice of their claims, and, that, had they exercised reasonable diligence, they would have discovered adequate grounds for filing this antitrust lawsuit during the limitations period."). Gillespie points to no such facts and, accordingly, his Motion must fail.[14]

Even if Plaintiffs were required to make affirmative allegations of concealment – which they are not – they have more than adequately done so. Plaintiffs' Complaint alleges that Gillespie and his co-conspirators (1) held secret meetings to fix prices and rig bids, ¶ 85, (2) falsely held themselves out to the public as true competitors, *id.*, (3) created code words for themselves, their co-conspirators, and the cartel, and used those code names to ensure the cartel would remain concealed from the public ¶ 61, and lied to law enforcement officials to ensure the conspiracy was not revealed to the public. ¶ 87. Indeed, Plaintiffs allege that as late as May 1, 2007, Defendants met in Houston and discussed "better, more secure ways to communicate in the future" so as to ensure the conspiracy would remain concealed from class members. ¶ 68 - 69. And, Gillespie's judicially-noticeable sworn testimony indicates he attended this meeting. (*See* Ex. B at 387:1 - 4). This is more than sufficient to establish fraudulent concealment. Moreover, if even one of Gillespie's admitted co-conspirators committed an affirmative act of fraudulent concealment, that act is ascribed to Gillespie as well. *In re Mercedes-Benz*

---

[14] It bears mention that Gillespie significantly misstates the holding of *Morton's Mkt.* in his Motion by arguing it stands for the proposition that a plaintiff alleging fraudulent concealment "bear[s] the burden to *plead* and prove that the Defendants fraudulently concealed the allegedly illegal conduct and that Plaintiffs failed, despite the exercise of diligence, to discover the facts that form the basis of their claim." Motion at 7 (emphasis added). In reality, *Morton's Mkt.* noted that a plaintiffs relying on fraudulent concealment has "the burden of proving at trial" that defendants concealed the conduct and that plaintiffs were reasonably diligent in their efforts to discover it, but goes on to hold that, at the pleading stage, *defendants* bear the burden of pointing to information in the public sphere that would defeat a plaintiffs' fraudulent concealment allegations. *Morton's Mkt.*, 198 F.3d at 823.

16

*Anti-Trust Litig.*, 157 F. Supp. 2d 355, 372 (D.N.J. 2001) ("As a co-conspirator, [co-defendant] acted as the agent of all the other alleged conspirators, and [co-defendant's] alleged affirmative act of concealment is chargeable to each of them.").

In any event, Gillespie has admitted – under oath – that he fraudulently concealed the Marine Hose conspiracy. At the recent criminal trial of co-defendants Val Northcutt and Francesco Scaglia, Gillespie testified as follow:

> Q. Now, back to where we were when we left this factual basis. What you really told us is that you lied in your business to your customers, correct?
>
> A. In a manner of speaking, but I don't know any business person who doesn't lie at some point, whether they can make deliveries, or giving the best prices. So, yes, we are not entirely honest with our customers, but I don't know what business person is completely honest with their customers.
>
> Q. And was there any different kind of lie that you told to your customers than just what everybody does?
>
> A. Yes. We told them -- well, only one customer specifically did I say we weren't in the cartel. *We did misrepresent the fact that we were competing.*
>
> Q. Is that a lie?
>
> A. *Yes.*

(Ex. B at 1027:12 - 1028:2) (emphasis added); *see also Baker*, 150 F. Supp. 2d at 15 (noting court records are appropriate subjects for judicial notice on Motion to Dismiss). Gillespie also testified in the course of those same proceedings that he had destroyed evidence of the conspiracy by shredding faxes related to the conspiracy. (*See* Ex. B at 379:20 - 380:19).

As such, Gillespie has openly admitted that he fraudulently concealed the conspiracy, meaning – quite naturally – that he cannot now argue otherwise. As such, even if the conspiracy were not self-concealing (which it is) and even if Plaintiffs had not

17

properly asserted affirmative concealment (which they have), Plaintiffs would nevertheless be able to sustain their fraudulent concealment allegations based on Gillespie's admissions. For those reasons, Gillespie's Motion should be denied.[15] *See In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007) ( "[I]t is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly where the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators.").

## CONCLUSION

For the reasons set forth herein, Gillespie's Motion should be denied. In the event this Court grants Gillespie's Motion, Plaintiffs respectfully request leave to amend. F.R.C.P. 15(a) (noting leave to amend "shall be freely given").

Dated: November 26, 2008

Respectfully submitted,

  */s/ Hollis L. Salzman*
Hollis L. Salzman
Florida Bar No. 947751
hsalzman@labaton.com
Gregory S. Asciolla
gasciolla@labaton.com
William Reiss
wreiss@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

Gregory P. Hansel
Florida Bar No. 607101
ghansel@preti.com
Randall B. Weill

---

[15] Even if Plaintiffs' fraudulent concealment allegations were insufficiently detailed – which they are not – this would only preclude recovery for putative class members whose purchases occurred prior to May 17, 2003 – four years before the first complaint in this case was filed. *Morton's Mkt.*, 198 F.3d at 832.

rweill@preti.com
PRETI, FLAHERTY, BELIVEAU
& PACHIOS, LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Tel.: (207) 791-3000
Fax: (207) 791-3111

Bruce Gerstein
bgerstein@garwingerstein.com
Jan Bartelli
jbartelli@garwingerstein.com
GARWIN, GERSTEIN & FISHER,
L.L.P
1501 Broadway, Suite 1416
New York, NY 10036
Tel.: (212)398-0055
Fax: (212) 764-6620

**Plaintiffs' Co-Lead Counsel**

# CERTIFICATE OF SERVICE

I, Hollis L. Salzman, hereby certify that on November 26, 2008, I caused a true and correct copy of the foregoing Plaintiffs' Opposition to Defendant Charles J. Gillespie's Motion to Dismiss First Amended Consolidated Class Action Complaint to be served via the Court's ECF system on all parties registered for electronic filing in *In re Marine Hose Antitrust Litigation (No. II)*, Master Docket No. 08-MD-1888(DLG)(WT).

                                                         */s/ Hollis L. Salzman*
                                                         Hollis L. Salzman