UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MASTER DOCKET NO. 08-MDL-1888-GRAHAM/TURNOFF

| | |
|---|---|
| IN RE MARINE HOSE ANTITRUST LITIGATION (NO. II) | ) ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| ALL ACTIONS | ) ) |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF LEAD COUNSEL**

Bayside Rubber & Products, Inc. ("Plaintiff" or "Bayside") submits this supplemental memorandum in support of its Motion for Class Certification and Appointment of Lead Counsel and in response to Defendant Manuli Rubber Industries, S.p.A., Manuli Oil & Marine (U.S.A.) Inc. (together, "Manuli"), Francesco Scaglia and Val Northcutt's (collectively, the "Manuli Defendants") Supplemental Memorandum in Opposition to Plaintiff's Motion for Class Certification and Appointment of Lead Counsel ("Supplemental Memorandum").

**PRELIMINARY STATEMENT**

The Manuli Defendants offer *no new evidence* relevant to class certification, as there is none. Instead, they merely re-hash old arguments made in numerous other motions, many of which have already been rejected by the Court. For this reason, as set forth more fully herein, the Manuli Defendants' supplemental briefing should be disregarded and the Class should be certified.

The Manuli Defendants' continued groundless efforts to undermine class certification here – based entirely on factual misrepresentations and omissions, unsubstantiated assertions, illogical arguments and, in several instances, just plain nonsense – should be rejected by this Court once and for all so that the true victims of the illegal cartel to fix prices of Marine Hose in the U.S. for almost 25 years – a cartel in which Manuli has pleaded guilty to participating in[1] – may finally be awarded relief from the harm they have suffered. The direct evidence amassed in this case thus far is more than adequate to support certifying a class of direct purchasers of Marine Hose. Thus, the Court should grant Plaintiff's Motion for Class Certification and Appointment of Lead Counsel.

---

[1] *See* Manuli Rubber Industries, S.p.A. Plea Agreement, attached as Ex. A to the Declaration of Gregory A. Asciolla ("Asciolla Decl."). Unless otherwise specified, all exhibits referenced herein are attached to the Asciolla Decl.

## I.   PLAINTIFF HAS SATISFIED THE REQUIREMENTS OF RULE 23

### A.   The Proposed Class is Sufficiently Numerous

The Manuli Defendants do not dispute settled law that a class consisting of at least 21 members may satisfy numerosity (*id.* at 3; *see also* Plaintiffs' Memorandum of Law in Support of Class Certification (D.E. 175) at 7-8 (collecting cases that have certified classes between 20 and 30 class members).) However, they argue that so-called "new evidence" demonstrates that there is an insufficient number of purchasers of Marine Hose to certify a class. (Supp. Mem. 1-2.) They are wrong. The Manuli Defendants' putative new evidence, upon examination, consists of nothing more than misstatements of law and the speculation of some witnesses at deposition. In contrast, the "hard" evidence proffered by Plaintiff demonstrates that numerosity is satisfied.

### 1.   The Numerosity Requirement Is Satisfied

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

This is more than adequate to support the numerosity requirement.

Plaintiff moves for certification of the following Class: all persons and entities who purchased Marine Hose in the U.S. from January 1, 1985 to March 24, 2008. A direct purchaser, *i.e.*, member of the Class, includes any person that made a "purchase" of Marine Hose from any of the Defendants within that time period. A purchase here is a transaction where the sale of Marine Hose was invoiced in or from the U.S. for payment.[2]

██████████████████████████████████████████████████████████████

---

[2] The Manuli Defendants' attempt to conflate the Court's analysis of the Expro Gulf Ltd. transaction involving subject-matter jurisdiction with that of the U.S. purchases involved here contending that with respect to every purchase where Marine Hose was not imported into the U.S. (even though a company in the U.S. was invoiced for payment for the product at a U.S. price-fixed amount), the Foreign Trade Antitrust Improvements Act ("FTAIA") applies. This argument is a red herring, and the Court should give it no credence. Expro was not invoiced in the United States and involved a foreign entity transacting with a foreign defendant. Thus this Court did not rule on the purchases at hand here and the Manuli Defendants' analogy must fail.

██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

█████████████████████████████ This is because nearly all of

the Defendants were unable to produce complete records of all their Marine Hose transactions for

the entire Class Period, including Manuli.[3] In addition, further support for numerosity can be found

in the "Disclosure Statement of the U.S. concerning Corporate Victims" (Ex. C) filed by the U.S.

Department of Justice ("DOJ") pursuant to F.R.Crim.Pr. 12(b)(4)[4] in connection with the federal

criminal trial of two cartel members. This exhibit lists 73 companies located in the U.S. that the U.S.

government identified as victimized by Manuli and the other cartel members.

The Manuli Defendants' contention that the only purchases affected by the conspiracy were

those where Marine Hose was *used* in the U.S. is a contrived, self-serving definition without any legal

support whatsoever. No other Defendant, all of which are large companies represented by

experienced, sophisticated U.S. counsel well-versed in U.S. antitrust law (*e.g.*, Linklaters, Howrey,

Jones Day and Clifford Chance), has taken this narrow position. Indeed, the many settling

corporate Defendants never would have agreed to pay a total of over $21.7 million to settle claims

that included such purchases if they were not covered by the Sherman Act.

With respect to determining what constitutes a U.S. purchase subject to the Sherman Act, it

is immaterial what the purchaser does with the product once it is purchased. *See United States v.*

*Aluminum Co. of Am. ("Alcoa")*, 148 F.2d 416, 443-44 (2d Cir. 1945) (Hand, J.) (focus of determining

---

[3] Plaintiff still has not received any document production from Defendants Comital/SAIAG SpA, SAIAG SpA and Sumitomo Rubber Industries Ltd., which will likely increase the number of class members. ████████████████████████

[4] Federal Rule of Criminal Procedure 12(b)(4) states in pertinent part: "(a) Who Must File... (2) Organizational Victim. If an organization is a victim of the alleged criminal activities the government must file a statement identifying the victim."

whether the antitrust laws govern conduct is the conduct's effect on the domestic market rather than on the situs of the conduct itself).  The *Alcoa* effects test was affirmed in *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 796 (1993).  *See also Caribbean Broad. Sys. v. Cable & Wireless Plc*, 148 F.3d 1080, 1087 (D.C. Cir. 1998).  Clearly, the place of delivery of the purchased product is not relevant to a Sherman Act analysis.[5]

### 2.   The FTAIA Does Not Apply to Purchases At Issue in This Case

The FTAIA does not apply to any of the purchases involved here, as it is black letter law that the FTAIA does not apply to purchases made in U.S. commerce. *In re Graphite Electrodes Antitrust Litig.*, No. 10-md-1244, 2007 U.S. Dist. LEXIS 3349, at *13 (E.D. Pa. Jan. 16, 2007) (Purchases made in the U.S. market are not subject to scrutiny under the FTAIA).  Purchases made pursuant to *a U.S. conspiracy* to fix price *in the U.S.* specifically do not fall into the category of transactions subject to the FTAIA – they are typical Sherman Act claims.

### 3.   The Manuli Defendants' Reliance on Speculative Testimony of Laypersons Does not Militate Against a Finding of Numerosity

The question of what constitutes a U.S. purchase is a legal question, as described above. Accordingly, the out-of-context testimony of layperson deponents unfamiliar with law as to whether specific transactions were U.S. purchases cannot be used to support the Manuli Defendants' efforts

---

[5]  Importantly, in enacting the FTAIA, Congress made clear that *the place of delivery is irrelevant* if the U.S. customers feel the effect of the unlawful conduct within the United States:

> The intent of the Sherman and FTC Act amendments in H.R. 5235 [the FTAIA] is to exempt from the antitrust laws *conduct* that does not have the requisite domestic effects. *This test, however, does not exclude all persons injured abroad from recovering under the antitrust laws of the United States.* A course of conduct in the United States – *e.g.* price fixing not limited to the export market – would affect all purchasers of the target products or services whether the purchaser is foreign or domestic.  The *conduct* has the requisite effects within the United States, *even if some purchasers take title abroad or suffer economic injury abroad.*

H.R.Rep. 97-686, at 10 (emphasis added); *see also Transnor (Bermuda) Ltd. v. BP North Am.Petroleum*, 666 F. Supp. 581, 583-84 (S.D.N.Y. 1987) (the fact that plaintiff was a foreign corporation which suffered its injury on a contract made, and calling for delivery, outside the United States does not deny its standing under the antitrust laws; the more significant factor is the location of the trading market, not the production center or delivery point for the oil).

to limit the Class.  Moreover, when placed in its proper context, the testimony cited by the Manuli Defendants does not support their arguments.



As shown *supra*, the cherry-picked testimony of these deponents is taken out of context and lacks a proper foundation to contradict the supported determination of a qualified expert that has the benefit of analyzing all of the documents produced by the parties in this case.

**B.**    **The Rule 23(b)(3) Predominance Requirement is Met**

The Manuli Defendants repeat two arguments in support of their contention that the Court should not certify the proposed class because common questions of law or fact do not predominate over questions affecting individual issues.  (Supp. Mem. at 3-5 (citing Fed. R. Civ. P. 23(b)(3)).)  Both are without merit and should be rejected by the Court.

First, the Manuli Defendants rely on their incorrect (and, unsurprisingly, narrow) definition of a U.S. purchase and suggest that the Court would need to conduct separate mini-trials in order to

determine whether a purchase of Marine Hose constitutes a U.S. purchase.  However, an

"identifiable class exists if its members can be ascertained by reference to objective criteria." *In re*

*MTBE Prods. Liab..*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002).  *Accord In re Linerboard Antitrust Litig.*, 203

F.R.D. 197, 221 (E.D. Pa. 2001) ("objective terms should be used in defining persons to be excluded

from the class").  Class definitions should avoid subjective criteria, such as a plaintiff's state of mind,

or criteria that depend on the merits.  *See, e.g., Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D.

Pa. 1995) (proposed class definition untenable because it required the court to address the claim's

"central issue of liability").  Here, the Class is clearly ascertainable.  Moreover, this requirement is

not stringent.  "Rather, at this preliminary stage of the case [class certification], the plaintiffs merely

have an obligation to define the class in a way that enables the court to determine whether a

particular individual is a class member so as to ensure protection of the interests of all potential class

members." *Safran v. United Steelworkers of Am., AFL-CIO*, 132 F.R.D. 397, 400-01 (W.D. Pa. 1989).

      Second, the Manuli Defendants argue that injury and damages cannot be established through

common proof because each purchaser negotiated and purchased Marine Hose using different

methods and thus was affected by the conspiracy in different ways.  In support of this argument, the

Manuli Defendants rely almost exclusively on the purchases of LOOP, lifting wholesale the

arguments raised in their Supplemental Memorandum in Opposition to LOOP's Motion to

Intervene ("Supplemental Opposition to Intervention").  As Plaintiff amply demonstrates in its

Response to Supplemental Intervention Opposition ("Supp. Resp."), LOOP and every other

purchaser of Marine Hose was injured when it bought Marine Hose from Defendants at supra-

competitive prices, *irrespective* of how they purchased.  (Supp. Resp. 9-23.)  Moreover, Plaintiff has

proffered an uncontraverted expert report, which includes common methods of determining class-

wide damages and injury.

**C.**   **Bayside's Claims are Sufficiently Typical of the Claims of the Putative Class**

"'[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.'" *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (internal quotations omitted). It is well-established that "'[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members.'" *Appelyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). Thus, "[i]f the party advancing the class can establish that the same unlawful conduct was directed at or affected both the class representatives and the class itself, then the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004)

**1.**   **Bayside Purchased Marine Hose During the Class Period**

There is ample direct evidence of Bayside's Marine Hose purchases during the Class Period. For the Manuli Defendants to contend otherwise is wholly disingenuous. Indeed, *all* of the evidence the Court may rely upon was sworn to under oath. The Court has already found the Bayside Affidavits "persuasive," Omnibus Order on Motions to Dismiss [D.E. 346] ("Omnibus Order"). First, Steve Gatlin, Vice President of Bayside, testified under oath in two affidavits that Bayside purchased Marine Hose during the Class Period:

> In the mid-to-late 1980s Bayside purchased marine hose of up to 10 inches and greater in diameter from one or more of the named Defendants in this litigation.

(September 15, 2008 Affidavit of Steve Gatlin, ¶ 4 ("First Gatlin Aff."), Ex. F.)  He further testified:

> In my Class Action Affidavit I stated that in the mid-to-late 1980s Bayside purchased marine hose of up to 10 inches and greater in diameter and used to transport petroleum products from one or more of the named Defendants in this litigation.  Every one of these purchases of marine hose was invoiced and paid for in the U.S.

(October 31, 2008 Affidavit of Steve Gatlin, ¶ 3 ("Second Gatlin Aff."), Ex. G.)  In addition, in

Bayside's July 15, 2008 Response to Corporate Defendants' First Set of Interrogatories Relating to

Class Certification ("Interrogatory Response"), Mr. Gatlin swore to the truthfulness of Bayside's

Interrogatory that:

> Plaintiff [Bayside] made multiple purchases during the Class Period
> of Marine Hose as set forth in the Consolidated Complaint.

(Exhibit P to the Declaration of Fern Melchowitz ("Melchowitz Decl.").)

Finally, during the recent 30(b)(6) deposition of Bayside, Mr. Gatlin directly testified again

under oath on cross examination by counsel for Manuli that Bayside purchased Marine Hose during

the Class Period, thus *further bolstering* his previous testimony on the same.  (*See* April 29, 2009

30(b)(6) Deposition of Bayside ("Bayside Tr.", excerpts of which are attached to Ex. H, 101:5-11,

110:18-111:8 157:22-23, 161:7-10 .)  Indeed, Mr. Gatlin recalled additional facts during his

deposition demonstrating Bayside's purchases of Marine Hose – *i.e.*, Bayside purchased from

Defendant Dunlop and possibly from Defendant ITR.  (*Id.*, 110:21-111:8, 112:6-112:7.)   As if that

were not enough, when re-asked pointedly as to Bayside's Marine Hose purchases, he testified

unequivocally as follows:

> Q.   Okay.  How sure are you that Bayside purchased marine hose at some
>       point in the mid-to-late 1980s?
> A.   *Very sure.*
> Q.   Is it possible that you could be remembering a different type of hose?
> A.   I don't see how I could – *I don't see how I could possibly remember differently.*

(Gatlin Tr., 161:7-18.)  This direct evidence, all under oath, is more than sufficient to demonstrate

Bayside's purchases of Marine Hose.  Manuli offers no evidence to the contrary.

### 2.    The Court Already Found Such Evidence Persuasive

The Manuli Defendants already tried to discredit the evidence described above, and the

Court rejected it.  In their Motion to Dismiss for Lack of Subject Matter Jurisdiction [D.E. 242], the

Manuli Defendants argued that such evidence was insufficient as to Bayside's standing, and that

invoices were required.  This Court properly held otherwise.

In its Omnibus Order, the Court found that Bayside had standing and that its "antitrust injury cannot be more direct." [6] (Omnibus Order at 19.)  In so holding, the Court found "persuasive" the two sworn affidavits submitted by Mr. Gatlin. (*Id.* (citing First Gatlin Aff, ¶ 4 ); Second Gatlin Aff, ¶ 3).)  In crediting Mr. Gatlin's affidavits, the Court explicitly held that there was "no basis for the Court to disbelieve such evidence." (*Id.*)  Importantly, the Court reached this conclusion with the sworn interrogatory responses before it (which Manuli now questions).  The only additional evidence since the Court's prior holding is Mr. Gatlin's sworn deposition testimony which, as shown above, provides further evidence in support of Bayside's Marine Hose purchases.

### 3.   A Class Representative Is Not Required to Have Invoices Demonstrating Purchases in Order to Adequately Represent the Class

The Manuli Defendants again contend, as they unsuccessfully tried to do in their Motion to Dismiss, that Bayside would be an inadequate class representative because it does not have documentary evidence, such as an invoice, demonstrating that it purchased Marine Hose.  This contention has no basis in law.

Tellingly, in their *four* separate submissions opposing class certification, the Manuli Defendants have *failed to cite any authority* for the proposition that a plaintiff must produce documentary proof for it to be considered an adequate class representative, particularly *documentary evidence in the nature of a receipt*.  Nor can they.  Indeed, courts have certified classes consisting of class representatives who have not furnished documentary proof of purchases similar to here.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-12257, 2008 U.S. Dist. LEXIS 73687, at *106 (D. Mass. Sept. 26, 2008) (certifying class and finding class representative adequate where plaintiff "has represented, by affidavit…, that [its] participants and beneficiaries made purchases of defendants'

---

[6]   For this reason, the Manuli Defendants' attempt to re-litigate the issue of Bayside's standing (Supp. Mem. at 20), which has previously been decided by this Court and has nothing to do with the Plaintiff's motion for class certification, should be barred by the law of the case.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

drugs [in certain states]"); *Tesauro v. Quigley Corp.*, No. 051340, slip op. at 2 ¶ 2  (Pa. Jan. 25, 2002) (Ex. I) (certifying class where class representative did not have receipt of purchases).

In fact, Defendants themselves, including Manuli, were unable to produce invoices of their Marine Hose sales during the early years of the cartel.  That Bayside should be held to a higher standard is unreasonable and baseless.  As Bayside made clear in its affidavits and deposition testimony, extensive efforts were made to search for invoices reflecting Bayside's purchases of Marine Hose, including making all documents available for counsel's review.  Not surprisingly, none were to be found as they likely were discarded in the ordinary course of business. (First Gatlin Aff., ¶ 4.)

As a matter of fundamental fairness, the Manuli Defendants should not be permitted to use to their advantage in this litigation *their very success in concealing the conspiracy for over two decades*, during which time Bayside and other potential plaintiffs typically would have lost or discarded documents in the ordinary course of business, having no reason to anticipate needing them 25 years down the road.  *See, e.g.*, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 , 213 (D. Me. 2003) (affirming class action settlement allowing for recovery without proof of purchase because most people do not routinely keep records of such purchases for years after they occurred).

Moreover, notwithstanding Manuli's protestations to the contrary, Bayside's production of documents in connection with its initial disclosures does not undermine Bayside's consistent and truthful statements that it purchased Marine Hose during the Class Period.  All of Bayside's discovery responses made during its document production are consistent with the definition of Marine Hose as set forth in Plaintiff's Amended Complaint, which Defendants adopted in their request for documents and interrogatories. (See Consolidated Class Action Complaint [D.E. 79], ¶ 8 (defining Marine Hose as "flexible rubber hose in various diameters and lengths that is primarily used to transport oil between ships, terminals, buoys and tanks, and including ancillary products").)[7]

---

[7]   The Complaint defines Marine Hose in broader terms than that of the Department of

### 4.  Steve Gatlin, Vice President of Bayside, is a Credible Witness

The Manuli Defendants vitriolic attack on the credibility of Mr. Gatlin is unwarranted, meritless and just plain shameful.  There are a number of reasons why this Court should find Bayside to be an adequate class representative based on ample, reliable evidence supported by the credibility and integrity of Mr. Gatlin.

First and most importantly, Mr. Gatlin has *sworn under oath on four separate occasions* that he unequivocally purchased Marine Hose in the United States during the Class Period.  (See First Gatlin Aff., ¶ 4; Second Gatlin Aff. ¶ 3; Interrogatory Response; Gatlin Tr., 101:5-11, 110:18-111:8 157:22-23, 161:7-10.)  His testimony as to his Marine Hose purchases, particularly in his deposition, has been clear, consistent and truthful.[8]  This Court, having already found Mr. Gatlin's sworn testimony in his affidavits and interrogatory responses persuasive, *see supra*, has no reason not to find his additional sworn deposition testimony also sufficient and persuasive since it is consistent with his earlier testimony.  Second, Bayside has succeeded in the business of selling Marine Hose to customers for over 25 years. (Gatlin Tr., 28:20-22, 31:1-8.)  To question his credibility and knowledge of the industry at this juncture strains credulity.[9]

There is no reason to believe that Mr. Gatlin is not being truthful about his purchases of Marine Hose.  He has been an incredibly responsive and responsible proposed class representative.  He cleared his schedule from his family-owned business, in which he runs and manages its daily

---

Justice.

[8]   This likely explains Manuli's bizarre course of action of refusing to depose Mr. Gatlin *on three separate occasions on the issue of class certification*.  By refusing to depose Mr. Gatlin during class certification discovery, Manuli apparently believed that it could attack the credibility of Bayside because it would not have to address sworn deposition testimony which would clearly contradict Manuli's position.  This tactic, however, fell short when Manuli finally took Bayside's 30(b)(6) deposition, and Mr. Gatlin testified to what Manuli so strenuously sought to avoid – that Bayside purchased Marine Hose during the Class Period.  There is no way Manuli can avoid this direct testimony now.

[9]   In addition, Mr. Gatlin more than explains the intricacies of his marine hose business during his deposition. (Gatlin Tr., 30-34, 39-41, 115:5-11.)

operations, on numerous occasions to have his deposition taken, only to have the deposition

cancelled by Manuli time and time again.  He has actively participated in every stage of the litigation.

He has assumed great risk in bringing this litigation.  Fearing possible retaliation, not only did he

step forward to file a complaint against major international companies, several of which currently

supply hose to Bayside, but he also agreed to act as a representative on behalf of the injured Class.

Thus, he subjected himself to depositions, affidavits, document production and interrogatories.  It

strains logic to think that a person would willfully choose to disrupt his business and personal life,

assume risk and expend innumerable resources and time, if he were not telling the truth.

Manuli nonetheless has embarked on a personal smear campaign to characterize Mr. Gatlin

as untrustworthy.  Such conduct is, quite honestly, unseemly, particularly where Manuli *and* several

of its employees have admitted to committing the crime as alleged by Bayside.

None of the Manuli Defendants' baseless denunciations of Mr. Gatlin's credibility or

integrity should be countenanced by this Court.  For example, Defendants contend that Mr. Gatlin's

testimony is somehow unreliable because in Bayside's supplementary interrogatory response, Bayside

did not identify the name of the manufacturer(s) from which it purchased Marine Hose (*see* Supp.

Mem. at 7 (citing March 9, 2009 Letter from Hollis L. Salzman to Robert M. Osgood, Interrogatory

No, 3, attached as Ex. R to the Melchowitz Decl.), yet in his subsequent deposition, Mr. Gatlin

recalled purchasing Marine Hose from Defendant Dunlop.

Not surprisingly, the Manuli Defendants conveniently fail to note that Bayside's

supplemental interrogatory response also states that Bayside expressly "reserves the right to revise,

correct or clarify this response should it discover or recollect any additional, responsive

information." (*Id.* )  Indeed, Federal Rule of Civil Procedure 26(e)(1)(A) provides that a party who

has responded to an interrogatory request may supplement its response.  Thus, Mr. Gatlin's

deposition testimony that Bayside purchased Marine Hose from Dunlop does not contradict

Bayside's earlier interrogatory response that it purchased Marine Hose from Defendants, but merely supplements it based upon Mr. Gatlin's recollection during the deposition.  (Gatlin Tr. 110:24-111:4.)

Next, the Manuli Defendants misleadingly posit that Mr. Gatlin's testimony concerning Bayside's purchase of Marine Hose must be false because none of the corporate Defendants in this litigation have confirmed that they have evidence of sales of Marine Hose to Bayside.  (Supp. Mem. at 7.)  The Manuli Defendants' only support for this proposition is certain Defendants' responses to Manuli's First Set of Requests for Admission (Merits) to Corporate Defendants, dated February 9, 2009 ("RFAs").  (*Id.* (citing Ex. S to the Declaration of Fern Melchowitz ("Melchowitz Decl.")).) The Manuli Defendants conveniently neglect to tell the Court that virtually all of the Defendants who submitted responses to Manuli's RFAs, *including Dunlop from whom Bayside purchased*, have conceded that they did not have records dating back to the mid-to-late 1980s, the period in which Bayside purchased Marine Hose.[10]

Congress intended by providing for treble damages in antitrust actions that entities and individuals such as Bayside and Mr. Gatlin would step forward to act against unlawful activity on behalf of a class to compensate victims of antitrust crimes.  They have done that here with great success to date, securing settlements for the Class totaling almost $22 million.  For their efforts, however, they have been subjected to unfounded personal attacks by Manuli, who has pleaded guilty to the very conduct complained of by Bayside.  Scuttling nearly $22 million for the Class based on the Manuli Defendants' misguided diatribes would be highly prejudicial.  Remarkably, even after

---

[10]   *See, e.g.*, March 10, 2009 Response of Bridgestone Corporation ("Bridgestone") and Bridgestone Industrial Products, America, Inc. ("BIPA") (conceding that documents for BIPA exist only for the period after 1999 and that documents for Bridgestone are incomplete for the period prior to 1999); March 11, 2009 Response of Dunlop Oil & Marine, Ltd. (stating that "it lacks sufficient information to admit or deny any sales of Marine Hose to Bayside Rubber & Products, Inc."); In addition, virtually none of the Defendants in this litigation have been able to produce documents dating back to the mid-to-late 1980s.

admitting to price-fixing in the U.S., senior executives at Manuli still brazenly (and ignominiously) refuse to acknowledge that anyone has been injured by Manuli's unlawful conduct. (*See* May 7, 2009 Deposition of Dardanio Manuli, excerpts of which are attached to Ex. I, 151:17-152:6; March 24, 2009 Deposition of Luca Coccioli, excerpts of which are attached to Ex. J, 183:22-185:18.) The Court should feel confident that it has a solid legal and factual basis for certifying the proposed class. While Manuli has every right to evade its corporate responsibility toward its victims and litigate this case through trial, it has no sound basis for hijacking the settlements reached thus far. Nor does it have standing to do so.

### 5.     The Manuli Defendants Should not be Permitted to Benefit from their Concealment of their Participation in a Conspiracy

Incredibly, the Manuli Defendants seek to benefit from their concealment of a conspiracy in which they and their co-conspirators have participated for over 25 years by arguing that the timing of Bayside's purchases render its claims atypical.[11]

First, the Manuli Defendants posit that the evidentiary record is "paper-thin with regards to the composition, operation and even the existence of a conspiracy in the marine hose industry for the time period during which Bayside claims to have purchased marine hose." (Supp. Mem. at 9.) While Plaintiff disagrees with this bald assertion, this issue goes to the merits of Plaintiff's claim and is not appropriately raised on a motion for class certification. If the Manuli Defendants were correct, a defendant could avoid class certification merely by issuing blanket denials of its liability

---

[11]   The Manuli Defendants' lone citation to *Insolia v. Phillip Morris Inc.*, 186 F.R.D. 535, 544 (W.D. Wis. 1998) is wholly inapposite. Indeed, nothing in *Insolia* suggests that a plaintiff's claim is somehow less typical because it took place in year twenty of a conspiracy versus year one. *Insolia* involved allegations by smokers against tobacco companies concerning a conspiracy to conceal the dangers of cigarette smoking. The court held that typicality was not met because "all members of the proposed class were not subject to the same allegedly unlawful statements and these statements did not affect class members equally." *Id.* at 545. Accordingly, the court concluded that "[i]n light of the complexities associated with determining who is addicted and why, this is too thin a reed on which to hang the fortunes of hundreds of other claimants." *Id.* Unlike the plaintiffs in *Insolia*, Bayside's Sherman Act claim does not require individual proof of reliance. Each class member here was subject to the same unlawful conduct of being overcharged for purchases of Marine Hose.

during the alleged class period.

Second, the Manuli Defendants argue that Bayside's claims are atypical because any cartel that existed during the time that Bayside purchased Marine Hose was distinct and severable from the scheme orchestrated by Peter Whittle in the late 1990s. (*Id.*) First, the Manuli Defendants ignore the allegations in the Amended Complaint which clearly allege a single conspiracy *from 1985 to 2007*. Manuli did not move to dismiss the allegations, and, the Court denied the motions of those that did so move. Next, the Manuli Defendants ignore the fact that Peter Whittle joined an *existing cartel* in 1993. In addition, the Manuli Defendants fail to explain why the operation of the cartel was distinct at any point in time *from 1985-2007*, nor can they.

### D.      Bayside Adequately Represents the Interests of the Class

#### 1.      Bayside Possesses the Requisite Knowledge

In addition to their unfounded attack on Mr. Gatlin's character, the Manuli Defendants also argue that Mr. Gatlin's failure to understand the nuances of the Marine Hose market renders Bayside an inadequate class representative. Again, their contention is unsupported.

It is well-settled that in order to meet the adequacy requirement, a class representative need only exhibit "a basic understanding about the nature of the suit" and is not required to be an expert on the facts surrounding the case, particularly in a complex matter such as this. *See Stuart v. RadioShack Corp.*, No. 07-4499, 2009 WL 281941 (N.D. Cal. Feb. 5, 2009) (collecting cases); *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 327(S.D. Fla. 1996).

Bayside easily exceeds this minimum threshold. Mr. Gatlin testified that Bayside's primary business is selling hose to marine customers. (Gatlin Tr., 30:23-31:8l 48:9.) He was able to describe Marine Hose in detail. (Gatlin Tr. 19:23-20:11, 71:18-72:22; 75:5-12; 115:5-11.) Most importantly, as discussed *supra*, Mr. Gatlin testified in two affidavits and confirmed during Bayside's 30(b)(6) deposition the specifics of Bayside's Marine Hose purchases. Indeed, this is not an example of a

doughnut maker pontificating on nuclear physics as Manuli would suggest.  For the past 25 years, Bayside's "primary business" has been the sale of  hose (Gatlin Tr., 27:6, 30:23-31:8) to "industrial and marine" customers (*id.*, 48:19.)  Accordingly, Bayside is well-positioned and exceeds the threshold necessary to represent a class of Marine Hose purchasers.

## 2.   Bayside Has Sufficiently Participated in the Litigation

Similarly, the Manuli Defendants' attempt to characterize Bayside as a disinterested plaintiff that conducted no investigation into its claim and "has done little more than lend its name to counsel" (Supp. Mem. 11) must fail.  In *Kirpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 728 (11th Cir. 1987), the Eleventh Circuit held that in complex class actions "where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *See also Morris v. Transouth Fin. Corp.*, 175 F.R.D. 694, 698 (M.D. Ala. 1997) ("[I]n a complex case such as this one, the plaintiff need not be intimately familiar with every factual and legal aspect of the case. *He may rely on counsel to investigate and litigate the case and his reliance does not make him an inadequate representative.*") (emphasis added).

Here, Mr. Gatlin testified that Bayside has reviewed and approved complaints in this action. (Gatlin Tr. 84:10-66.)  Mr. Gatlin further testified that Bayside purchased Marine Hose early on in its business from which it suffered harm and that when it learned of a potential class action, it elected to participate.  (*id.* at 89:9-13); *see also Gibbs Props. Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 436 (M.D. Fla. 2000) (finding class representative adequate despite lack of knowledge of certain aspects of the case where "[p]laintiffs understand the basis for the suit and stated in their depositions that they were outraged at [Defendant's] purported misconduct and, thus, wished to pursue their claims against [Defendant].").  Accordingly, the understandable reliance of Bayside – a Plaintiff that

indisputably comprehends the nature of its claims – on its counsel in this litigation does not render it an inadequate class representative.[12]

### 3.   No Conflict Exists Between the Interests of Bayside and the Class

Contrary to the Manuli Defendants' contention, there is no conflict of interest between Bayside and other members of the Class.  Because Bayside purchased Marine Hose: (i) during the Class Period; (ii) in the U.S.; and (iii) at an artificially inflated price, it has the same interest as each Class member in establishing Defendants' liability, and it seeks the same kind of damages (overcharges) for the same type of injury (overpayment for Marine Hose).  It is not relevant, and contrary to the law, that Plaintiff and Class members may have purchased different quantities of Marine Hose, and thus may have sustained damages to a greater or lesser degree, because their incentive to produce evidence as to the entire conspiracy is the same.  *See In re Terazosin*, 220 F.R.D. at 687; *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 381 (S.D.N.Y. 1996).

Moreover, nothing in Plaintiff's proposed settlement claim form prevents Bayside from recovering money on behalf of the Class it seeks to represent as the Manuli Defendants erroneously suggest. (Supp. Mem. at 12.)  To the contrary, Plaintiff's proposed claim form includes instructions for how to submit a claim *"when records are not available . . . based on estimates."*  (Plaintiff's Amended Motion for Preliminary Approval of Proposed Settlements, Ex. I [D.E. 30] (emphasis added).)  This issue is fully briefed in Plaintiff's Reply in Support of Motion for Class Certification [D.E. 261] at 5.

### 4.   Proposed Class Counsel are Adequate to Lead the Proposed Class

The Manuli Defendants' contention that proposed class counsel are inadequate because certain former plaintiffs (Shipyard LLC ("Shipyard") and Weeks Marine, Inc. ("Weeks")) sought to end their participation in the case is wholly without merit.  Contrary to the Manuli Defendants' suggestion, Shipyard and Weeks may well have claims against Defendants; they have simply decided

---

[12]   Further, had counsel for Manuli probed Mr. Gatlin as to documents he had analyzed in this case, Manuli would have learned that Mr. Gatlin is familiar with virtually all of the filings.

not to continue to serve as class representatives, a decision that does not constitute a concession that they do not have valid claims.  Similarly, the Court's dismissal of Expro on subject matter jurisdiction grounds does not in any way suggest that Class Co-Lead Counsel failed to conduct an adequate investigation into its claims.[13]

As for the suggestion that Preti and Garwin "have been litigating this case without clients" (Supp. Mem. at 14), the Court in its March 5, 2008 Pretrial Order No.1 [D.E. 4] appointed Preti, Garwin and Labaton as Co-Lead Counsel.  Preti, Garwin and Labaton therefore represent *all* named Plaintiffs, including Bayside.  It is therefore Preti, Garwin and Labaton's obligation to proceed with this litigation on behalf of Bayside and the proposed Class.  Finally, the Manuli Defendants' charge that Labaton failed to conduct a reasonable investigation into whether Bayside purchased Marine Hose is entirely baseless for the reasons discussed *supra*, not the least of which is that Bayside did indeed purchase Marine Hose during Class Period and therefore has a meritorious claim.

### E.     The Rule 23(b)(3) Superiority Requirement is Met

Because common issues of fact and law predominate, and it would be inefficient (indeed largely cost-prohibitive) for Class members to pursue separate lawsuits, a class action is superior to any other mechanism for the resolution of this dispute.  *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 351 (E.D. Mich. 2001) (superiority requirement met because "[m]ultiple lawsuits by the large number of class members allegedly injured by Defendants' antitrust violations would be costly and inefficient.").  The Manuli Defendants challenge superiority on two separate grounds:  (1) that the companies that purchased Marine Hose are all "undeniably wealthy companies that can certainly afford to bring an individual action." (Supp. Mem at 16); and (2) that the cost of Marine Hose coupled with the treble damages provision of the antitrust laws provides these companies with the

---

[13]   Garwin's previous representation of Expro does not pose any conflict of interest to the Class as Garwin no longer represents Expro and Expro has explicitly waived any potential conflicts in connection with Garwin's representation of the Class. (Ex. L.)

incentive to bring individual actions. Both of these arguments are meritless.

███████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

Moreover, this Court has explicitly held that even where "class members may be financially able to assert their own claims in separate actions, the fact that that the same allegedly anticompetitive conduct gives rise to each class member's economic injury makes it highly desirable to concentrate litigation of their claims in this forum." *In re Terazosin*, 220 F.R.D. at 70; *see also In re Revco Sec. Litig.*, 42 F.R.D. 659, 669 (N.D. Ohio 1992) (quoting *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988)) (rejecting defendants claim that class action not superior because plaintiffs are wealthy and therefore capable of bringing individual actions because "'[t]he procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense'"). Accordingly, the fact that certain purchasers of Marine Hose *may* have the potential to proceed individually does not militate against granting class certification. Without the class action vehicle, individual companies do not have the same bargaining power against major corporations as does the Class. Further, it is time-consuming and expensive to negotiate with each and every defendant and obtain cooperation to prosecute those defendants who do not desire to settle.

## II.    BAYSIDE HAS SET FORTH A DEFINITE AND CLEARLY ASCERTAINABLE CLASS DEFINITION

The Manuli Defendants assert that Plaintiff has failed to set forth a clearly ascertainable class definition on the sole ground that the class definitions and other terms in the settlement agreements that Plaintiff has negotiated with five corporate Defendants and 8 Individual Defendants (the "Settling Defendants") are not identical. This argument is baseless.

The pending settlements were negotiated over time with different counsel representing

different Defendants.  Not surprisingly, there are some differences in the language of the various agreements.  Even if the differences were significant (and they are not), as long as the material terms of each settlement are set forth in the notice in understandable language (like the proposed notice in this case), the differences do not constitute any grounds to reject approval of any of the settlements, provided the Court finds the terms of each settlement to be fair, reasonable and adequate to the class members. *Georgine v. Amchem Prods.*, 157 F.R.D. 246, 329 (E.D. Pa. 1994) ("The relevant question is not whether the terms of the [one] settlement are identical to the terms of [other] settlements . . ., but whether, given all the circumstances, the terms . . . are fair and reasonable."); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 824 (D. Mass. 1987) (Finding that settlements may differ, as long as differences is fully disclosed" in the notice and are reasonable).

Notwithstanding that the settlements are fair and reasonable, Plaintiff and all but one of the Settling Entity Defendants have agreed in principle to conform their settlement agreements to respond to the Court's comments at the status conference, and will, in the next few days, be filing an Amended Motion for Preliminary Approval.[14]  For example, there will be a unified class definition. The class definition, with respect to all settling Defendants, will be, without qualification, "[a]ll persons and entities (excluding Defendants, their predecessors, parents, subsidiaries, affiliates, and co-conspirators and the U.S. Department of Defense) who purchased Marine Hose in the U.S. directly from one or more of the Defendants or any of their predecessors, parents, subsidiaries, or affiliates at any time during the period from and including January 1, 1985 to and including March 24, 2008."  Further, the conforming settlements will be identical with respect to Marine Hose exceptions, by excluding dredge, hydraulic and industrial hose.  Finally, the settlements will unilaterally provide for the release of non-U.S., non-class claims, and notice to both *Wall Street Journal* and *Offshore Magazine*.

---

[14] Counsel for Yokohama has expressed a willingness to consider these changes and will consult further with its client within the next few days.

DATED: June 8, 2009

Respectfully submitted,

/s/ Hollis Salzman
Hollis Salzman
Florida Bar No. 947751
hsalzman@labaton.com
Gregory Asciolla
gasciolla@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 907-0717

Gregory P. Hansel
Florida Bar No. 607101
ghansel@preti.com
Randall B. Weill
Maine Bar No. 2836
rweill@preti.com
PRETI, FLAHERTY, BELIEVEAU
   & PACHIOS, LLP
One City Center, P.O. Box 9546
Portland, ME 04112-9546
Telephone: (207) 791-3000
Fax: (207) 791-3111

Bruce Gerstein
bgerstein@garwingerstein.com
Jan Bartelli
jbartelli@garwingerstein.com
GARWIN, GERSTEIN & FISHER, L.L.P.
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Fax: (212) 764-6620

*Interim Co-Lead Counsel for Plaintiff Bayside
Rubber and Products, Inc. and the Proposed Class
and Counsel for LOOP, LLC*

## CERTIFICATE OF SERVICE

I, William V. Reiss, hereby certify that on June 8, 2009, I caused a true and correct copy of the foregoing:

- **Plaintiff's Supplemental Memorandum in Support of its Motion for Class Certification and Appointment of Lead Counsel;**

- **Declaration of Gregory S. Asciolla in Support of Plaintiff's Supplemental Memorandum in Support of its Motion for Class Certification and Appointment of Lead Counsel; and**

- **Declaration of John Beyer in Further Support of Class Certification**

to be served via the Court's ECF system on all parties registered for electronic filing in *In re Marine Hose Antitrust Litigation (No. II)*, Master Docket No. 08-MD-1888 (DLG)(WT).


_____
        */s/ William V. Reiss*
        William V. Reiss