IN RE MARINE HOSE ANTITRUST
LITIGATION

THIS DOCUMENT RELATES TO:

**ALL ACTIONS**

## ORDER ON CLASS CERTIFICATION AND PRELIMINARY SETTLEMENTS

**THIS CAUSE** comes before the Court upon (i) Plaintiff's Motion for
Class Certification and Appointment of Class Counsel [D.E. 171];
(ii) Plaintiff's Amended Motions for Preliminary Approval of Proposed
Settlements with Certain Defendants [D.E. 307, 452, 505] and
(iii) Loop's Motion to Intervene [D.E. 377].[1]

**THE COURT** has considered the Motions, the pertinent portions of
the record, and is otherwise fully advised in the premises.

---

[1] This Order also rules on the following related motions:
(i) Defendant Vanni Scodeggio's Joinder to Manuli Industries S.p.A.
and its related entities Memorandum in Opposition to Plaintiff's
Motion for Class Certification [D.E. 194]; (ii) Plaintiff's Amended
Motion for Preliminary Approval of Proposed Settlements [D.E. 307];
(iii) Defendants' Joint Motion Requesting Oral Argument for
Plaintiff's Pending Motion for Class Certification and Appointment
of Class Counsel [D.E. 398]; (iv) Defendant's Motion Requesting
Oral Argument on LOOP's Motion to Intervene [D.E. 402];
(v) Plaintiff's Motion for Preliminary Approval of Proposed
Settlements with certain individuals [D.E. 452]; and
(vi) Plaintiff's Motion to Amend Plaintiff's Supplemental
Memorandum in Support of Motion for Class Certification and
Appointment of Lead Counsel [D.E. 503 ].

## I. INTRODUCTION

These actions were initially seven antitrust cases transferred to this District by the MDL Panel. When first filed as a class action, the cases included the claims of four named Plaintiffs. Over the course of the litigation, two named Plaintiffs (*i.e.*, Shipyard Supply, LLC and Weeks Marine, Inc.) voluntarily dismissed their claims without prejudice [see D.E. 345] and the undersigned dismissed a third Plaintiff (Expro Gulf Limited) for lack of subject matter jurisdiction pursuant to the Foreign Trade Antitrust Improvements Act (FTAIA). [See D.E. 346.] Therefore, Bayside Rubber & Products, Inc. ("Bayside") is the sole named Plaintiff seeking to represent a proposed class of Marine Hose[2] purchasers.[3]

Defendants are domestic and foreign manufacturers and corporate executives alleged to be part of a conspiracy in restraint of trade to artificially raise the prices for Marine Hose in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[4] [See Second Amended Consolidated Class Action Complaint, D.E. 490, hereinafter the "Second Amended Complaint," at ¶ 54.] According to the Second Amended

---

[2] Marine Hose is a flexible rubber hose used primarily to transport oil between ships, terminals, buoys and tanks.

[3] LOOP, LLC has filed a motion to intervene as a named plaintiff in this class action [D.E. 377]. That matter is discussed further below.

[4] Section 1 of the Sherman Act provides, in pertinent part, that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

Complaint, since 1985, Defendants engaged in anticompetitive activities that included, _inter alia_, attending meetings in the United States to discuss the sale of Marine Hose and to fix Marine Hose prices through extensive arrangements among various international corporations and their respective corporate officers. Plaintiff further alleges that as a result of the global conspiracy, the proposed class paid artificially inflated prices for Marine Hose and, consequently, suffered antitrust injury to their business or property. [See Second Amended Complaint ¶ 2.]

The Court bifurcated class and merits discovery. [See D.E. 117, 143]. The Court also previously ruled on Defendants' motions to dismiss the First Amended Complaint and permitted Plaintiff to file a Second Consolidated Amended Complaint. [See D.E. 346, 363]. The Court has also ruled on motions to dismiss the Second Amended Complaint. [See D.E. 463.] The Court has deferred ruling on the motion to certify a class as well as the motions seeking preliminary approval of class settlements under Rule 23(e) and determines that now is the appropriate time for disposition of these matters. See Fed. R. Civ. Pro. 23(c)(1)(A) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").

LOOP, LLC has also filed a motion to intervene [D.E. 377] and, as further discussed herein, that request is pending. Ultimately, Plaintiff Bayside stands alone in seeking to have this litigation certified as a class action.

Section II of this Order addresses class certification. A class ruling pursuant to Rule 23(a) and (b) necessarily impacts any proposed settlements under Rule 23(e). Therefore, Section III of this Order, discusses Plaintiff's Amended Motion for Preliminary Approval of Proposed Settlements with several Defendants. Lastly, Section IV briefly addresses LOOP, LLC's Motion to Intervene [D.E. 377]. In connection therewith, after considering the Court's ruling on class certification and the Settlement Agreements, LOOP may wish to revisit its request to intervene.

## II. MOTION FOR CLASS CERTIFICATION

### A. Bayside and Standing for Purposes of Class Certification

Bayside purports to satisfy the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). Defendant Manuli Industries S.p.A. Manuli Oil & Marine (U.S.A.) Inc., Parker ITR S.r.L. and Parker Hannifin Corporation (the "Manuli Defendants") have filed Opposition to the Motion asserting that Plaintiff Bayside lacks standing and fails to meet the requirements for class certification under the applicable Federal Rules.[5] [See D.E. 198]. Plaintiff filed a Reply [D.E. 210]. Based on the posture of the case, the Court granted the parties' request to file supplemental pleadings. [See D.E. 220, 252 and 464.] The Manuli Defendants also filed a motion for oral argument [D.E. 398].

---

[5] Defendant Vanni Scodeggio has joined in the Manuli Defendants's opposition to class certification. [See D.E. 194.]

-4-

Before reaching the issue of whether the Plaintiff has met the class certification requirements of Rule 23(a), the Court must address the procedural posture of the cases. As noted above, when the motion for class certification was fist filed, there were two named Plaintiffs, Bayside and Expro. Expro has since been dismissed on separate grounds. Therefore, for purposes of the motion to certify the class, the only entity considered by the Court is Bayside and the class certification analysis focuses on whether Bayside satisfies the requirements of Rule 23.

It is well settled that a representative must be part of the class and posses the same interests and suffer the same injury as the class members. Prado-Steiman v. Bush, 221 F.3d 1266, 1278-79 (11th Cir. 2000); In re Terazosin Hydrochloride Antitrust Litig., 220 F.R.D. 672, 679 (S.D. Fla. 2004). Prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has the requisite standing. Prado-Steinman, 221 F.3d at 1279. Only after the court determines the issues for which the named plaintiffs have standing should it address the question of whether the named plaintiffs have representative capacity, as defined by Rule 23(a). Id. at 1280. In these MDL cases, Bayside is the only named Plaintiff and the Manuli Defendants argue that Bayside cannot serve as a class representative because it never purchased Marine Hose from any of the Defendants. The Court

rejected similar arguments at the motion to dismiss stage. Notably, at that earlier stage, the undersigned concluded that:

> [w]hile the Manuli Defendants attempt to undermine the evidence submitted concerning the alleged purchases by Bayside of Marine Hose, the Court finds that Bayside has met its burden on standing. First, the Court considers the First Amended Complaint, which expressly alleges that Plaintiffs are "all persons . . . who purchased Marine Hose in the United States from Defendants." [See D.E. 180 ¶ 47.] Taking the allegations of the First Amended Complaint as true, Bayside has alleged antitrust standing. The Court also considers persuasive the sworn statements as Mr. Gatlin who unequivocally states that, despite the inability to locate invoices for the purchases, Bayside purchased Marine Hose during the relevant period.[6] [See D.E. 257 at Exhs. B and C.] There is no basis for this Court to disbelieve such evidence.

[See Omnibus Order, D.E. 346 at 18.] The Court now revisits the standing issue at this class certification stage and concludes that the evidence as to Bayside's standing remains sufficient. Specifically, on at least four separate occasions under oath, Bayside has unequivocally stated that it made purchases of Marine Hose during the class period. First, in response to interrogatories, Bayside stated that "[it] made multiple purchases of marine hose during the Class Period of Marine Hose as set forth in the Consolidated Complaint." [D.E. 474, Ex. P at 4.]

Additionally, in two affidavits, Bayside's Vice President, Steve Gatlin, stated that "in the mid-to-late 1980s Bayside purchased marine

---

[6] While a trier of fact may later conclude otherwise with respect to Mr. Gatlin's statements, at this stage of the litigation, this Court has no reason to doubt Mr. Gatlin's submissions and declines to do so solely because Bayside has been unable to locate invoices for transactions going back more than twenty years.

hose of up to 10 inches and greater in diameter from one or more or the named Defendants in this litigation. [September 15, 2008 Gatlin Aff, D.E. 474, composite Ex. O.] Mr. Gatlin further affirmed that "everyone of these purchases of marine hose was invoiced and paid for in the United States. [Id. October 31, 2008 Gatlin Aff.]

Most recently, in the 30(B)(6) deposition of Bayside, Mr. Gatlin testified that Bayside made purchases of Marine Hose during the class period and specifically recalled that Bayside purchased Marine Hose from Defendant Dunlop and possibly Defendant ITR. [See, Gatlin Tr. 110:21-111:8, D.E. 474 at Ex. M.] When examined further Mr. Gatlin testified as follows:

> Q: Okay. How sure are you that Bayside purchased marine hose at some point in the mid-to-late 1980s?
>
> A: Very sure.
>
> Q: Is it possible that you could be remembering a different type of hose?
>
> A: I don't see how I could - I don't see how I could possibly remember differently.

[Gatlin Tr. 161:7-18, D.E. 474, Ex. M..]

The Manuli Defendants insist that lack of documentary evidence is fatal to Bayside's request to be appointed as class representative. Significantly, however, Bayside is not required to provide documentary proof of purchase in order to be a class representative. See, e.g., In re Pharm. Indus. Average Wholesale Price Litig., 2008 U.S. Dist. LEXIS 73687, *106 (D. Mass. Sept. 26, 2008) (finding class representative adequate when it submitted affidavit indicating

-7-

that it made purchase from defendants); <u>In Re Compact Disc Minimum Advertised Price Antitrust Litig.</u>, 216 F.R.D. 197, 213 (D. Me. July 13, 2003) (rejecting the requirement that class members be required to provide proof of purchase where it was unlikely that records would be kept years after the purchase).

Here, while it is true that invoices and similar evidence of purchase would be preferred, under the facts as alleged, these matters occurred over a twenty-year period. There is evidence that even Defendants may not have maintained records over so many years and Plaintiff persuasively argued that purported class members should not be penalized for lack of documents when the absence of documentation may be partly due to Defendants' extensive concealment of the alleged conspiracy. Admittedly, each class member would ultimately have to prove its claim to a trier of fact. Given the current procedural posture of these cases, however, Bayside's sworn affidavits and deposition testimony are sufficient for it to meet its burden on standing.

Bayside's standing is further supported by the evidence in the record concerning the alleged conduct. Specifically, according to the Second Amended Complaint [D.E. 490], the Defendants and their co-conspirators participated in a continuing conspiracy in restraint of trade to artificially raise and maintain prices for Marine Hose in the United States. [<u>See</u> D.E. 490 ¶ 54.] Plaintiff Bayside has affirmed that it made purchases. Additionally, in connection with its plea agreement to the criminal charges, Defendant Manuli admitted to

substantially similar relevant conduct. For instance, Manuli admitted that "it engaged in a conspiracy, the primary purpose of which was to suppress and eliminate competition by rigging bids, fixing prices and allocating market shares for the sale of marine hose in the United States and elsewhere. [See Plea Proceeding Tr. 20:16-21, D.E. 483 at Ex. D.] The evidence taken together, leads the Court to conclude that there is sufficient evidence to substantiate Bayside's standing in order to be considered an appropriate class representative.

**D.    Rule 23. Class Actions**

The Court next considers the requirements under Federal Rule of Civil Procedure 23(a), which governs class actions in federal court. Rule 23 provides, in relevant part,

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23.  These four requirements are commonly referred to as the numerosity, commonality, typicality and adequacy factors and are designed to effectively limit class claims to those fairly encompassed by the named plaintiffs' individual claims. Prado-Steiman, 221 F.3d at 1278 (citations and quotations omitted).

In addition, Rule 23(b) provides, <u>inter alia</u>,

> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> ...
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Thus, pursuant to Rule 23, "[a] class action may be maintained only when it satisfies all the requirements of Fed.R.Civ.P. 23(a) and at least one of the alternative requirements of Rule 23(b)." <u>Jackson v. Motel 6 Multipurpose, Inc.</u>, 130 F.3d 999, 1005 (11th Cir. 1997). Plaintiff asserts that all four elements, under Rule 23(a), numerosity, commonality, typicality and adequacy are met in these actions and further submits that it has satisfied rule 23(b), as there are common questions of law or fact that predominate in this antitrust action.

A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. <u>Vega v. T-Mobile USA, Inc.</u>, 2009 WL 910411, *4 (11th Cir. April 7, 2009). Nevertheless, the Court's inquiry for purposes of Rule 23 is not limited to the face of the complaint or the motion for class certification. <u>See Love v. Turlington</u>, 733 F.2d 1562, 1564 (11th Cir. 1986) ("[while it is true that a trial court may not properly reach the merits of a claim when determining whether class certification is warranted, this principle should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether [a plaintiff] has met her burden of establishing each of the Rule 23 class requirements.") (internal citations omitted). In <u>Huff v. N.D. Cass Company of Alabama</u>, 485 F.2d 710, 713 (5th Cir. 1973), the Court refused to "accept the idea that to avoid infringing the plaintiff's and the class's right to jury trial district judges must be barred from making any evidentiary inquiry," and further "reject [ed] ... the argument that the judge is inextricably bound by the face of the pleadings. (citations omitted). With these standards in mind, the Court examines the Rule 23 factors.

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that less than twenty-one plaintiffs is inadequate, and more than forty class plaintiffs is generally enough

to satisfy the rule. See Cox v. Amer. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986); see also Marecek v. BellSouth Telecomms., Inc., 49 F.3d 702, 707 (11th Cir. 1995) (rejecting challenge to 22-member class); Moreno-Spinosa v. J & J Ag. Prods., 247 F.R.D. 686, 688 (S.D. Fla. 2007) (certifying 38-member class). In order to satisfy this prerequisite, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members. See Walco Invests., Inc. v. Thenen, 168 F.R.D. 315, 324 (S.D. Fla. 1996)(citations omitted).

In this case, Plaintiff's expert, John C. Breyer, initially estimated a minimum of 50 distinct United States customers that purchased Marine Hose during the Class Period." [D.E. 176 at 7.] In supplemental pleadings [D.E. 483, Ex. L], Plaintiff's expert submits that additional transaction data produced in the litigation leads him to conclude there are at least 66 class members. [Breyer Aff. ¶ 4, D.E. 483, Ex. L.] The Manuli Defendants initially argued that Plaintiff's expert "grossly overstate[d] the number of actual U.S. purchasers" insofar as the expert's estimate is based on data of who has been billed for marine hose at a U.S. address. [D.E. 198 at 20.] According to the Manuli Defendants, "simply sending an invoice to a mail drop in Houston does not constitute a direct, substantial and reasonable U.S. transaction within the scope of the FTAIA" and the parties have agreed to disagree as to what constitutes a U.S. purchase. [See D.E. 198 at 20.] Based on this analysis, the Manuli

Defendants conclude that Plaintiff's expert has grossly overstated the number of actual U.S. purchasers.

The Court finds that the numerosity requirement is met. Plaintiff has estimated between 50 and 66 minimum purchasers based on records produced by Defendants. At least 44 of the companies identified by Plaintiff's expert were identified based on Defendants' invoice records and the remaining 12 companies were identified by other types of business records, including sales summaries and sales ledgers. [See D.E. 483, Ex. 2.] The law does not require that plaintiff establish the exact number of class members. A court may make good faith estimate of the number of class members and it may consider circumstantial evidence in doing so. Dahlgren's Nursery, Inc. v. E.I. du Pont de Nemours & Co., 1994 U.S. Dist. LEXIS 17918, *11 (S.D. Fla. 1994) (internal citations and quotations omitted). Moreover, at least one court has recognized that where the numerosity question is a close one, a balance should be struck in favor of finding numerosity, since the court has the option to decertify pursuant to Rule 23(c). Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983). At this stage, Plaintiff has met its burden on estimating a potential number of class members. The Court also finds that given the number of estimated class members and their likely geographic dispersion, joinder of all members is impracticable. Thus, Plaintiff has met its burden on the numerosity element under Rule 23(a)(1).

## 2.    Commonality

Rule 23(a)(2) also requires that "there are questions of law or fact common to the class." Traditionally, commonality refers to the group characteristics of the class as a whole. <u>Prado-Steinman</u>, 221 F.3d at 1279. However, this prerequisite does not mandate that all questions of law or fact are common; a single common question of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike. <u>See</u> <u>In re Terazosin</u>, 220 F.R.D. at 685. "The threshold for commonality is not high." <u>Cheney v. Cyberguard Corp.</u>, 213 F.R.D. 484, 490 (S.D. Fla. 2003)(citations omitted). Rather, "[c]ommonality may be established where there are allegations of common conduct or standardized conduct by the defendant directed toward members of the proposed class." <u>Strube v. Am. Equity Inv. Life Inc. Co.</u>, 226 F.R.D. 688, 695 (M.D. Fla. 2005). Indeed, courts in the Eleventh Circuit have consistently held that allegations of price-fixing, monopolization and conspiracy by their very nature involve common questions of law or fact. <u>In re Terazosin</u>, 220 F.R.D. at 685-86 (internal citations and quotations omitted).

Plaintiff asserts that the commonality requirement is easily met in this antitrust conspiracy action and sets forth the following as examples of questions of law and fact common to the class:

(a) whether Defendants engaged in a conspiracy to fix, maintain or stabilize the price of Marine Hose of to allocate the markets for Marine Hose;

-14-

(b) whether Defendants' conduct violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

(c) whether Defendants' conduct caused injury to the business or property of Class members;

(d) the effect of Defendants' conspiracy on the price of Marine Hose in the United States; and

(e) the appropriate measure of damages sustained by Plaintiffs and other members of the Class.

[See D.E. 171 at 8-9.] The Manuli Defendants do not directly challenge the commonality requirement under Rule 23(a)(2), but rather focus their arguments on the more stringent test of whether common issues predominate over individual issues as required under Rule 23(b)(3). Significantly, the predominance inquiry under Rule 23(b)(3) focuses on the legal and factual questions that qualify each member's case as a genuine controversy and is far more demanding than a Rule 23(a)'s commonality requirement. In re Terazosin, 220 F.R.D. at 694.

In this case, the Court finds that Plaintiff has met its burden in demonstrating that, for purposes of Rule 23(a)(2)'s analysis, common questions of law and fact are applicable to the claims of all class members. As listed above, Plaintiff has sufficiently presented several common questions of law and fact that all stem from the Defendants' alleged engagement in the same antitrust conspiracy. Therefore, the Court finds that the commonality element is met.

### 3. Typicality

Closely related to the element of commonality is the third prerequisite for class certification that the representative plaintiff's claims "are typical of the claims . . . of the class."

Fed. R. Civ. P. 23(a)(3). The focus of typicality is whether the class representative's interest is aligned enough with the proposed class members to stand in their shoes for purposes of the litigation and bind them in a judgment on the merits. General Tel. Co. v. Falcon, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (citation omitted); Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir.1984); Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1323 (11th Cir. 2008) ("[typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large"). Thus, typicality is often met when, in proving her case, the representative plaintiff establishes the elements needed to prove the class members' case. See Brooks v. Southern Bell Tel. & Tel. Co., 133 F.R.D. 54, 58 (S.D. Fla. 1990). If the party advancing the class can establish the same unlawful conduct was directed at or affected both the class representative and the class itself, then the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims. In re Terazosin, 220 F.R.D at 686.

In these cases, the Manuli Defendants argue that Bayside's claims are atypical because, inter alia, the last purchase alleged by Bayside may have occurred no less than nineteen years ago. [See D.E. 475 at 9, 502 at 9.] The Manuli Defendants further maintain that given the "vast temporal scope" and "complex nature" of the alleged conspiracy, Bayside's claims cannot be considered typical. Id. The Court disagrees.

It is undisputed that the class period spans more than twenty years. Bayside has affirmed that it made purchases of Marine Hose During the class period. Bayside has also alleged that it and other class members were all forced to pay supra competitive prices for Marine Hose as a result of Defendants' alleged illegal conduct. [See D.E. 490 ¶ 10.] Here, the alleged claims arise from the same event or pattern and are based on the same legal theory. In re Terazosin, 220 F.R.D. at 686 (internal citations and quotations omitted). Consequently, this Court concludes the element of typicality under Rule 23(a)(3) is met.

### 4. Named Plaintiffs as Adequate Class Representatives

The fourth element of the Rule 23(a) analysis requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "involves questions [1] of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and [2] of whether plaintiffs have interests antagonistic to those of the rest of the class." Griffin v. Carlin, 755 F.2d 1516, 1533 (11th Cir. 1985); accord In re Terazosin, 220 F.R.D. at 689; Valley Drug v. Geneva Pharms. Inc., 350 F.3d 1181, 1189 (11th Cir. 2003). Because all members of the class are bound by the res judicata effect of the judgment, a principal factor in determining the appropriateness of the class certification is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class. In re Terazosin, 220 F.R.D.

688 (internal citations and quotations omitted); <u>Kirkpatrick v. J.C.</u>
<u>Bradford & Co.</u>, 827 F.2d 718, 726 (11th Cir. 1987).

Here, the Manuli Defendants have vigorously challenged Bayside's
adequacy to represent the interests of the class. The Manuli
Defendants initially maintained that Bayside's claim conflicted with
the interests of other members insofar as Bayside has not produced
documentary evidence that it purchased Marine Hose. [<u>See</u> D.E. 198 at
21.] The Court has already rejected that argument above. The Manuli
Defendants further submit that Bayside lacks the requisite knowledge
and forthrightness to be class representative. [D.E. 484 at 9-11, 502
at 9-11.] Significantly, however,

> adequate class representation generally does not require
> that the named plaintiffs demonstrate to any particular
> degree that individually they will pursue vigor the legals
> claims of the class. Although the interests of the
> plaintiff class certainly would be better served if the
> named plaintiffs fully participated in the litigation, the
> economics of the class action suit often are such that
> counsel have a greater financial incentive for obtaining a
> successful class resolution of a class suite than do the
> individual class members.

<u>Kirkpatrick</u>, 827 F.2d at 727. Mr. Gatlin's deposition testimony
demonstrates that he was specifically questioned concerning Bayside's
involvement in this litigation. [<u>See</u> D.E. 474, Ex. M.] Mr. Gatlin
testified that he reviewed and approved the complaints, [<u>see</u> Gatlin
Tr. 84:10-66] and that when it learned of the cases, Bayside decided
to join [Gatlin Tr. 89:9-13]. The record also reflects that Bayside
has been actively involved in the matter ever since its inception.
Based on the record and careful review of Mr. Gatlin's testimony, the

-18-

Court finds that Bayside has provided sufficient evidence of its adequate representation.

The Court similarly rejects the Manuli Defendants' arguments that proposed lead counsel is inadequate. While there were initially four named class representatives and there remains only one, this Court appointed three law firms to acts as Co-Lead Counsel [see D.E. 4] such that counsel represented the interests of all named plaintiffs, including Bayside. In connection therewith, Bayside and counsel have actively litigated these cases throughout. The Manuli Defendants' protestations about Plaintiff's counsel litigating the case without a client are without merit. The Court also finds that there is sufficient evidence in the record concerning the qualifications and expertise of Plaintiff's counsel. [See D.E. 176 at 18-19.] Based on the record, the Court finds that proposed class counsel can adequately represent this class action.

### E. Whether Common Questions of Law and Fact Predominate under Rule 23(b)(3)

Having found that Plaintiff has met its burden under Rule 23(a), the Court next considers the additional requirements under Rule 23(b). Specifically, Rule 23(b) imposes two additional requirements: (i) that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (ii) that a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b).

Under Rule 23(b)(3), "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions," Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004) (citing In re Theragenics Corp. Secs. Litig., 205 F.R.D. 687, 697 (N.D. Ga. 2002). The predominance inquiry is far more demanding than Rule 23(a)'s commonality requirement. Jackson, 130 F.3d 1005 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 2249-50, 138 L.Ed.2d 689 (1997)). "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action. Common issues of fact predominate if they have direct impact on every class member's effort to establish liability and on every class members entitlement to relief. Klay, 382 F.3d at 1255 (internal citations and quotations omitted). Furthermore, that common questions of law or fact predominate over individualized questions means that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." Kerr v. City of West Palm Beach, 875 F.2d 1546, 1558 (11th Cir.1989) (quoting Nichols v. Mobile Bd. of Realtors, 675 F.2d 671, 676 (5th Cir. Unit B 1982)).

Plaintiff has asserted that the elements of Rule 23(b)(3) are met. The Manuli Defendants counter that Plaintiff is unable to satisfy the requirements as, after any class wide issues are resolved,

the class plaintiffs would still be required to present a great deal of individualized proof in order to prevail on their individual claims. Upon examining the antitrust claims as alleged in the Second Amended Complaint [D.E. 490], the Court concludes that common issues of law and fact predominate over individual issues in these cases.

First, the claims of the class are based on the same alleged violation of the domestic antitrust laws. On behalf of the class, Plaintiff has alleged a horizontal price-fixing conspiracy among the Defendants that spanned more than twenty years and was international in scope. It is undisputed that the class members will rely on the same evidence to prove the existence of the conspiracy, including without limitation, the guilty pleas to criminal charges entered into by approximately a dozen Defendants.[7] The antitrust claims are not individual allegations that each class member overpaid for Marine Hose during the relevant period. Rather, the antitrust conspiracy will be at the heart of every claim and would have to be re-proven if the class are tried separately. See, e.g., Klay, 382 F.3d at 1257 (concluding that common questions of law and fact predominated over RICO claims concerning a national conspiracy and a pattern of racketeering).

Secondly, it is evident from the record that the Plaintiff class will rely on common proof of impact and or damages. Numerous courts

---

[7] For example, the record reveals that the following Defendants have pleaded guilty to antitrust violations: Trelleborg, Dunlop, Bridgestone, Manuli, Bryan Allison, David Brammar, Christian Caleca, Jacques Cognard and Peter Whittle.

have recognized that the presence of individualized damages issues does not prevent a finding that common issues of fact predominate. Allapath Servs., 333 F.3d at 1260 (internal citations and quotations omitted). Moreover, Plaintiff's expert has opined that he is prepared to calculate class wide damages using a particular methodology. [See D.E. 175, Ex. B at 16.] The Manuli Defendants challenge Plaintiff's expert as "poorly reasoned" and unreliable. Significantly, however, plaintiffs do not need to supply a precise damage formula at the certification stage of an antitrust action. In assessing whether to certify a class, the court's inquiry is limited to whether or not the proposed methods are so insubstantial as to amount to no methods at all. See, e.g., Klay, 382 F.3d at 1259 (internal citations and quotations omitted); In re Terazosin, 220 F.R.D. at 698. Plaintiffs need only come forward with a plausible statistical or economic methodologies to demonstrate impact on a class-wide basis. In re Klay, 382 F.3d at 1259; In re Terazosin, 220 F.R.D. at 698. Where damages can be computed according to some formula, the fact that damages must be calculated on an indivdual basis is no impediment to class certification. In re Klay, 382 F.3d at 1259-60.

Here, Plaintiff's expert, John. C. Breyer, Ph.D., has proposed certain methodologies that, in his opinion, are feasible to assess damages, [see D.E. 171, Ex. B at 16.].[8]  While the Manuli Defendants

---

[8] Plaintiff's expert opines that there are at least three different methodologies to assess class-wide damages, including (i) comparing profits during the cartel and non-cartel period; (ii) using multiple regression analysis to compare prices during a conspiracy

argue that such methodologies are imprecise for class certification, it is also significant that at the class certification stage it is sufficient that a methodology be available. Ultimately, the validity of any methodology may be evaluated at trial. _See_, _e.g._, _In re Terazosin_, 220 F.R.D. at 699 (finding the methodologies sufficient even where defendant contended that the expert's methods were too imprecise). Accordingly, based on the foregoing, the Court finds that Plaintiff has met its burden to show that common issues of law and fact predominate.

The second element of Rule 23(b)(3) requires the Court to consider whether the class action is a superior mechanism to resolution of the disputes. Defendants argue that the relevant companies are wealthy enough to commence individual actions. [See D.E. 474 at 15-16, 502 at 15-16.] Significantly, however, "while [class members] may be financially able to assert their own claims in separate actions, the fact that the same allegedly anticompetitive conduct gives rise to each class member's economic injury makes it highly desirable to concentrate litigation of their claims in this forum." _In re Terazosin_, 220 F.R.D. 700. Consequently, based on Plaintiff's allegation that the class suffered antitrust injury resulting from Defendants' allegedly conduct, this Court finds the class mechanism to be superior and proper under Rule 23(b)(3).

─────────────

and non-conspiracy period; and (iii) doing a comparison of price and performance in a comparable industry. [See D.E. 171 Ex. B at 16-18.]

In sum, the Court finds that Plaintiff has met its burden for class certification under Rule 23(a) and (b)(3). Therefore, the class is certified with Bayside as the class representative.

### III. MOTIONS FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS

During the course of the litigation, Plaintiff filed four separate motions requesting preliminary approval of proposed settlements with various Defendants. [See D.E. 152, 307, 452 and 505.] Because the earlier motions were superceded by the most recent filing [see D.E. 505 n. 4], the only motion currently relevant is Plaintiff's Amended Motion for Preliminary Approval of the Prosed Settlements with (1) Dunlop Oil & Marine, Ltd., Bryan Allison and David Brammar; (2) Trelleborg Industrie, S.A., and Jacques Cognard; (3) The Yokohama Rubber Co., Ldt.; (4) Parker ITR S.r.L, Parker Hannifin Corporation and Giovanni Scodeggio and (5) Bridgestone Corporation, Bridgestone Industrial Products America, Inc., Misao Hioki; (6) Robert Furness; (7) Charles Gillespie; and (8) Peter Whittle and PW Consulting Ltd. [D.E. 505]. As with all prior motions to approve the settlements, the Manuli Defendants filed opposition [D.E. 507] and Plaintiff filed a reply [D.E. 508].

As discussed above, the Court has granted class certification under Rule 23(a) and (b)(3). Therefore, the issues regarding the preliminary settlements are now ripe for disposition. As an initial matter, the Settling Defendants[9] all stipulate that the requirements

---

[9] The Court incorporates Plaintiff's definition of Settling Defendants as it appears at Docket Entry 505, note 2.

of Rule 23(a) and 23(b) are satisfied. [See D.E 505 at 11.] It is also apparent that the Settlement Agreements[10] consistently define the Settlement Class. [See D.E. 505 at 111]. Additionally, the Settlement Class definition is substantially the same as the Class Definition in the Second Amended Complaint. [Compare D.E. 490 ¶ 45 with D.E. 505 at 11.][11] The consistent definition for Settlement Class in the most recent iteration of the Settlement Agreements resolves the Court's initial concerns as to the settlements.

The Court is also mindful that preliminary approval of the Settlement Agreements has been vigorously opposed by the Manuli Defendants. [See D.E. 159, 319, 479 and 507.] Signficantly, however, a non-settling defendant has no standing to complain about a settlement. In re Beef Industy Antitrust Lit., 607 F.2d 167, 172 (5th Cir. 1979); see also Feder v. Electronic Data Systems Corp., 248 Fed Appx. 579, 580 (5th Cir. 2007). Therefore, because the Manuli Defendants are not settling their claims, they have no standing to object to the preliminary approval of the Settlement Agreements.

The above notwithstanding, the Court has independently reviewed the preliminary settlements. Pursuant to Rule 23(e), the Court must

---

[10] The Court incorporates the definition of Settlement Agreementas contained in Docket Entry 505.

[11] There is a minor distinction in that the Second Amended Complaint refers to purchases "from the Defendants" and the Settlement Agreements refer to purchases "from one or more of the Defendants." In these cases, this minor difference in language is inconsequential for purposes of preliminary approval of the settlements.

review any settlement, voluntary dismissal or compromise of the claims, issues or defenses of a certified class and further determine that a settlement, is fair, reasonable and adequate. Fed. R. Civ. Pro. 23(e). The Supreme Court has stated that "[t]his prescription was designed to function as an additional requirement, not a superceding direction, for the "class action" to which Rule 23(e) refers is one qualified for certification under Rule 23(a) and (b). Amchem Prods. v. Windsor, 521 U.S. 591, 620-21(1997).

Courts have repeatedly recognized that settlements are "highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." Bennett v. Behring Corp., 96 F.R.D. 343, 348 (S.D. Fla. 1982) (internal citations and quotations omitted). Moreover,

> [w]hen exercising its discretion, a court should always review the proposed settlement in light of the strong judicial policy that favors settlements. Litigants should be encouraged to determine their respective rights between themselves. This policy has special importance in class actions with their notable uncertain, difficulties of proof and length. Settlement of complex cases contribute greatly to the efficient utilization of scarce judicial resources and achieve a speedy resolution of justice, for a 'just result is often no more than an arbitrary point between competing notions of reasonableness.'

Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 538 (S.D. Fla. 1988) (internal citations and quotations omitted).

In this case, the most vigorous opposition to the proposed Settlement Agreements comes from the Manuli Defendants who, as noted above, do not have standing to challenge the proposed settlements. Interestingly, Manuli itself has pleaded guilty to criminal charges

and agreed to pay more than $2 million in fines. In contrast to Manuli's posture in these cases, most of the other Defendants have preliminarily settled. Plaintiff has entered into preliminary Settlement Agreements with five corporate Defendants and eight individual Defendants. [See D.E. 483 at 19, 505.] The preliminary Settlement Agreements total approximately $22 million with each Settling Entity Defendant agreeing to a cash payment ranging from 8% to 25% of its estimated United States sales during the Settlement Class Period. [See D.E. 505 at 2.][12] Moreover, the Individual Settling Defendants have agreed to extensive cooperation with Plaintiff in order to continue prosecution of this litigation. Id. There is no evidence in the record that the proposed Settlement Agreements are not fair, reasonable and adequate.

While the Settlement Agreements do appear to contain certain distinctions concerning, for example, opt-put provisions and most favored nation clauses, these differences are not fatal to preliminary approval of the Settlement Agreements. Moreover, the Court considers the terms of the proposed settlements given the pubic policy consideration favoring settlements and the posture of these cases where most of the Defendants have agreed to settle for significant sums.

---

[12] The corporate Defendant have settled for, inter alia, a cash payment in the following approximate amounts: Dunlop - $6.5 million; Trelleborg - $1.9 million; Yokohama - $1.95 million; Parker -$2.9 million and Bridgestone - $8.5 million. The individual Defendants have agreed to, inter alia, extensive cooperation with Plaintiff i prosecuting these actions.

Accordingly, the Court finds that the proposed Settlement Agreements are fair, reasonable and adequate and should be approved. Because the class has been certified and the Settlement Agreements are approved on a preliminary basis, Plaintiff shall submit a proposed approval order, amended notice and related materials concerning both (i) the granting of class certification and (ii) the approval of the Settlement Agreements in one combined notice to class members. Consequently, within ten (10) days from the date of the entry of this Order, Plaintiff shall submit proposed materials similar to exhibits I thought M of its motion [D.E. 505] to reflect the current posture of the cases.

## IV. LOOP, LLC'S MOTION TO INTERVENE

Louisiana Offshore Oil Port ("LOOP") has moved to intervene in the action as a class representative on behalf of the putative class of Marine Hose Purchasers. [See D.E. 377 at 1]. LOOP maintains that its request is "as a result of the reduction in the number of proposed class representatives from four to one, [Defendants'] continuing challenge to Bayside's adequacy as a class representative, and in an effort to expedite the Court's approval of the substantial settlements that Plaintiffs have reached with five manufacturer Defendants." Id. at 2. The Manuli Defendants oppose the motion arguing that it is untimely.[13] [See D.E. 401, 475, 496.] The Manuli Defendants further contend that, even if timely, LOOP is not an

---

[13] Sumitomo Rubber Industries, Ltd. joined and adopted the arguments of the Manuli Defendants [D.E. 403].

adequate class representative. The Manuli Defendants also filed a motion for leave to file a supplemental memorandum in opposition to LOOP's motion to intervene [D.E 417] and an unopposed motion for oral argument [D.E. 402]. The Court permitted supplemental pleadings [D.E. 464]. Therefore, the Manuli Defendants filed a Supplemental Memorandum [D.E. 475, 496] to which LOOP filed a Response [D.E. 482, 495].

Federal Rule of Civil Procedure 24(b) governs permissive joinder and provides, in pertinent part, that "on a timely motion, the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1). Moreover, in exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24()b)(3).

In <u>Chiles v. Thornburgh</u>, 865 F.2d 1197, 1213 (11th Cir. 1989), the Eleventh Circuit instructed that "[a] party seeking to intervene under Rule 24(b)(2) must show that: (1) his application to intervene is timely and (2) his claim or defense and the main action have a question of fact or law in common. <u>Chiles</u>, 865 F.2d at 1213. A district court has the discretion to deny intervention even if both of those requirements are met. <u>Id.</u> (<u>citing</u> <u>Sellers v. United States</u>, 709 F.2d 1469, 1471 (11th Cir. 1983).

Additionally, in determining whether the motion is timely a court must consider (i) the length of time during which the intervenor knew

-29-

those requirements are met. Id. (citing Sellers v. United States, 709 F.2d 1469, 1471 (11th Cir. 1983).

Additionally, in determining whether the motion is timely a court must consider (i) the length of time during which the intervenor knew of should have known of the interest in the case before moving to intervene; (ii) the extent of prejudice to the existing parties as a result of the intervenor's failure to move for intervention as soon as they knew or reasonably should have known it its interest; (iii) the extent of prejudice to the intervenor if its motion is denied and (iv) the existence of unusual circumstances militating either for or against a determination that its motion was timely. Id. at 1213. "[T]imeliness is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is successfully employed to regulate intervention in the interest of justice." Id. The Court herein applies the factors set forth above.

Based on the governing principles and the balance of factors in these cases, the Court is inclined to grant LOOP's request for intervention. However, the Court is significantly concerned about LOOP's substantial delay in seeking to intervene. LOOP does not dispute that it knew of the claims and the pending actions for approximately two years. Instead, LOOP argues that its decision not to intervene was based on "sound reasons." Because of the obvious delay by LOOP and the potential for prejudice to the Defendants, the Court is considering fashioning an appropriate remedy.

Specifically, if the Court were to grant LOOP authority to intervene in these proceedings, it is likely to require that LOOP pay for the cost of future discovery incurred by the Defendants directly as a result of LOOP's late intervention. In other words, future discovery associated with LOOP's intervention would be at LOOP's expense. Given the Court's concern and inclination, it will reserve ruling on the motion to intervene to allow LOOP an opportunity to determine if it wishes to pursue its request for intervention. Consequently, within ten (10) days from the date of the entry of this Order, LOOP shall indicate whether it continues to seek intervention. Within five (5) days of the date of LOOP's supplemental filing indicating its decision, the parties shall jointly file a proposed schedule for future proceedings in this litigation, including without limitation (i) the schedule for any additional discovery; (ii) the schedule for distribution of notice concerning class certification and preliminary approval of the Settlement Agreements and (iii) any other matters that are relevant to the administration of these cases. The Court will consider the submissions and schedule this matter for a status conference as appropriate.

## V. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Class Certification [D.E. 171] is **GRANTED**. In connection therewith, within ten (10) days from the date of the entry of this Order, Plaintiff

shall file a proposed order approving both the (i) certification of the class and (ii) granting preliminary approval of the Settlement Agreements as noted herein. It is further

**ORDERED AND ADJUDGED** that Defendant Vanni Scodeggio's Joinder to Manuli Industries S.p.A. and its related entities Memorandum in Opposition to Plaintiff's Motion for Class Certification [D.E. 194] is **GRANTED**. It is further

**ORDERED AND ADJUDGED** that Plaintiffs' Amended Motion for Preliminary Approval of Proposed Settlements with several Defendants [D.E. 307] is **DENIED AS MOOT**. It is further

**ORDERED AND ADJUDGED** that Defendants' Joint Motion Requesting Oral Argument for Plaintiff's Pending Motion for Class Certification and Appointment of Class Counsel [D.E. 398] is **DENIED**. It is further

**ORDERED AND ADJUDGED** that Defendant's Motion Requesting Oral Argument on LOOP's Motion to Intervene [D.E. 402] is **DENIED WITHOUT PREJUDICE**. It is further

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Approval of Proposed Settlements with (1) Charles Gillespie; (2) Peter Whittle and PW Consulting (Oil Marine) Ltd.; and (3) Robert Furness [D.E. 452] is **DENIED AS MOOT**. It is further

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Amend Plaintiff's Supplemental Memorandum in Support of Motion for Class Certification and Appointment of Lead Counsel [D.E. 503] is **GRANTED**. It is further

**ORDERED AND ADJUDGED** that Plaintiff's Amended Motion for Preliminary Approval of Proposed Settlements with various Defendants [D.E. 505] is **GRANTED**. In connection therewith, within ten (10) days

from the date of the entry of this Order, Plaintiff shall file a proposed order concerning both (i) the certification of the class and (ii) the preliminary approval of the Settlement Agreements. It is further

**ORDERED AND ADJUDGED** that the Court reserves ruling on Loop's Motion to Intervene [D.E. 377]. In connection therewith, within ten (10) days from the date of the entry of this Order, LOOP shall indicate whether it continues to seek intervention given the Court's discussion herein. It is further

**ORDERED AND ADJUDGED** that within five (5) days of the date of LOOP's supplemental filing, the parties shall jointly file a proposed schedule for future proceedings in this litigation, including without limitation (i) the schedule for any additional discovery; (ii) the schedule for distribution of notice concerning class certification and preliminary approval of the Settlement Agreements and (iii) any other matters that are relevant to the continuing administration of these cases. Upon the submissions, the Court will schedule these cases for a status conference as appropriate and accordingly set the cases for trial.

**DONE AND ORDERED** in Chambers at Miami, Florida, this _31st_ day of July, 2009.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record

-33-