**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
MASTER DOCKET NO. 08-MDL-1888-GRAHAM/TURNOFF

_____

IN RE MARINE HOSE ANTITRUST
LITIGATION

_____

THIS DOCUMENT RELATES TO:

**ALL ACTIONS**

_____


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR**
**AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND**
**INCENTIVE AWARD FOR CLASS REPRESENTATIVE**


Dated: November 27th, 2009


Adam M. Moskowitz
Fla. Bar No. 984280
KOZYAK TROPIN &
THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
305.372.1800 - main
305.372.3508 - facsimile
amm@kttlaw.com


Co-Counsel for the Class on the Brief

Gregory P. Hansel
Florida Bar No. 607101
Randall B. Weill
PRETI, FLAHERTY, BELIVEAU
  & PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112


Hollis L. Salzman
Fla. Bar No. 947751
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005


Bruce E. Gerstein
GARWIN, GERSTEIN & FISHER, LLP
1501 Broadway
Suite 1416
New York, NY 10036


Co-Lead Counsel for the Class

## TABLE OF CONTENTS

INTRODUCTION AND OVERVIEW ........................................................................... 1

    The Relevant Eleventh Circuit factors ........................................................ 2

HISTORY OF THE LITIGATION ............................................................................... 5

    A.    The nature of the claims ............................................................... 5

    B.    Class Counsel's Litigation Efforts ............................................... 6

        1.    Discovery ......................................................................... 7

        2.    Motion practice ............................................................... 8

ARGUMENT………. ..................................................................................................... 10

    I.    The fee request is reasonable ...................................................... 10

        A.    The percentage-of-the-fund method is the appropriate method for calculating attorneys' fees in this case ................... 10

        B.    Application of the Eleventh Circuit's reasonableness factors supports the requested fee ........................................... 11

            1.    The amount involved and the result obtained .............. 12

            2.    The settlement's non-monetary benefits ...................... 13

            3.    The absence of objections and the Class support .......... 14

            4.    The economics involved in prosecuting a class action and the risk of nonpayment ................................ 15

            5.    The time required to reach settlement, and the labor required to prosecute the case ...................................... 17

            6.    The novelty, difficulty, complexity, and duration of the litigation ................................................................... 18

            7.    Class Counsel's experience, reputation, and ability, and the skill and efficiency with which they prosecuted this action .......... 19

8.      Awards in similar cases and in the private market for complex, contingent litigation .......................................................... 20

C.      A lodestar cross-check confirms the reasonableness of the requested fee ...................................................................................... 22

II.     Class Counsel's expenses were reasonable and were necessarily incurred to achieve the benefit obtained ............................................... 23

III.    Incentive awards for the named plaintiff(s) are appropriate and reasonable….. ........................................................................................ 24

CONCLUSION…….. ................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

*In re Agent Orange Product Liab. Litig.,*
   818 F.2d 226 (2d Cir. 1987)......................................................................................... 23

*Allapattah Services Inc. v. Exxon Corp.,*
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................. 20, 24

*In re Automotive Refinishing Paint Antitrust Litig.,*
   617 F. Supp. 2d 336 (E.D. Pa. 2007) ......................................................................... 12

*Bakalor v. Integrated Communication Network, Inc.,*
   96-2021-CIV-KING (S.D. Fla. 1997) ......................................................................... 20

*Behrens v. Wometco Enterprises, Inc.,*
   118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)................................. 12, 23

*Bello v. Integrated Resources, Inc.,*
   No. 88 Civ. 1214 (CSH), 1990 WL 200670 (S.D.N.Y. Dec. 4, 1990) ................................... 21

*Blanchard v. Bergeron,*
   489 U.S. 87 (1989) ..................................................................................................... 11

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) ................................................................................................... 10

*Bogosian v. Gulf Oil Corp.,*
   621 F. Supp. 27 (E.D. Pa. 1985) ................................................................................ 25

*Camden I Condominium Ass'n v. Dunkle,*
   946 F.2d 768 (11th Cir. 1991)........................................................................... 2, 11, 19, 20

*Cimarron Pipeline Construction, Inc. v. Nat'l Council on Compensation Ins.,*
   Nos. CIV 89-822-T, CIV 89-1186-T, 1993 WL 355466 (W.D. Ok. June 8, 1993).................. 15

*Cosgrove v. Sullivan,*
   759 F. Supp. 166 (S.D.N.Y. 1991) .............................................................................. 23

*In re Dun & Bradstreet Credit Services Customer Litig.,*
   130 F.R.D. 366 (S.D. Ohio 1990) ............................................................................... 24

*Eisen v. Carlisle & Jacquelin,*
   479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974) ...................... 17

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
  137 F.R.D. 240 (S.D. Ohio 1991) .......................................................................... 25

*Fisher Bros., Inc. v. Mueller Brass Co.*,
  630 F. Supp. 493 (E.D. Pa. 1985) ......................................................................... 13

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000) .................................................................................... 15

*Gutter v. E.I. Dupont De Nemours & Co.*,
  95-2152-CIV-GOLD (S.D. Fla. May 30, 2003) ...................................................... 20

*Hainey v. Parrott*,
  No. 1:02-CV-733, 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007) ............................ 24

*Harris v. Marhofer*,
  24 F.3d 16 (9th Cir. 1994) ..................................................................................... 23

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................... 12

*In re Home Shopping Network Sec. Litig.*,
  Case No. 87-428-T-13(A) (M.D. Fla. 1991) ........................................................... 20

*Howes v. Atkins*,
  668 F. Supp. 1021 (E.D. Ky. 1987) ....................................................................... 21

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................ 19

*International Woodworkers of Am. v. Champion Intern. Corp.*,
  790 F.2d 1174 (5th Cir. 1986) ............................................................................... 16

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ........................................................................... 11, 19

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981) ............................................................................... 15

*In re King Resources Co. Securities Litig.*,
  420 F. Supp. 610 (D. Colo. 1976) ......................................................................... 12

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ................................................................................. 22

*Lawlor v. National Screen Serv. Corp.*,
   349 U.S. 322 (1955) ................................................................................. 10

*In re Linerboard Antitrust Litig.*,
   296 F. Supp. 2d 568 (E.D. Pa. 2003) .................................................... 4, 18

*In re Linerboard Antitrust Litig.*,
   321 F. Supp. 2d 619 (E.D. Pa. 2004) ...................................................... 12

*MCI Communications Corp. v. American Tel. & Tel. Co.*,
   708 F.2d 1081 (7th Cir. 1983)................................................................... 17

*In re M.D.C. Holdings Securities Litig.*,
   No. CV89-0090 E (M), 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ...................................... 15

*In re Managed Care Litig. (Aetna)*,
   Master File No. 00-1334-MD-Moreno, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003)........... 20

*In re Managed Care Litig. (Cigna)*,
   No. 00-1334-MDL-MORENO (S.D. Fla. Feb. 2, 2004)...................................... 20

*Mashburn v. National Healthcare, Inc.*,
   684 F. Supp. 679 (M.D. Ala. 1988) .......................................................... 10

*Meijer, Inc. v. 3M*,
   Civ. A. No. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006)......................... 12

*In re Motorsports Merchandise Antitrust Litig.*,
   112 F. Supp. 2d 1329 (N.D. Ga. 2000) ...................................................... 4

*Muehler v. Land O'Lakes, Inc.*,
   617 F. Supp. 1370 (D. Minn. 1985) .......................................................... 18

*Oh v. AT&T Corp.*,
   225 F.R.D. 142 (D.N.J. 2004) ................................................................. 24

*P.D.Q. Inc. of Miami v. Nissan Motor Corp. in USA*,
   61 F.R.D. 372 (S.D. Fla. 1973) ............................................................... 10

*Phemister v. Harcourt Brace Jovanovich, Inc.*,
   No. 77 C 39, 1984 WL 21981 (N.D. Ill. Sept. 14, 1984)................................... 21

*Pillsbury Co. v. Conboy*,
   459 U.S. 248 (1983) ................................................................................. 10

*Pinto v. Princess Cruise Lines, Ltd.*,
　513 F. Supp. 2d 1334 (S.D. Fla. 2007) ............................................................ 12, 15, 21, 22, 24

*In re Plastic Tableware Antitrust Litig.*,
　Civ. A. No. 94-CV-3564, 1995 WL 723175 (E.D. Pa. Dec. 4, 1995) ...................................... 12

*Ressler v. Jacobson*,
　149 F.R.D. 651 (M.D. Fla. 1992) .......................................................................................... 16, 20

*In re Rite Aid Corp. Sec. Litig.*,
　146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................................................... 23

*In re Rite Aid Corp. Securities Litig.*,
　396 F.3d 294 (3d Cir. 2005) ......................................................................................................... 14

*In re Sequoia Systems, Inc. Sec. Litig.*,
　Civ. A. No. 93-11331-WD, 1993 WL 616694 (D. Mass. Sept.10, 1993) .................................... 15

*In re Shopping Carts Antitrust Litig.*,
　MDL No. 451, 1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) ........................................................... 18

*In re SmithKline Beckman Corp. Sec. Litig.*,
　751 F. Supp. 525 (E.D. Pa. 1990) ................................................................................................ 24

*In re Sunbeam Sec Litig.,*
　176 F. Supp. 2d 1323 (S.D. Fla. 2001) ................................................................................... 11, 16

*Tapken v. Brown,*
　Case No. 90-0691-CIV-Marcus (S.D. Fla. 1995) ........................................................................ 20

*United States Football League v. National Football League,*
　644 F. Supp. 1040 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335 (2d Cir. 1988) ............................... 17

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
　226 F.R.D. 207 (D.N.J. 2005) ...................................................................................................... 17

*See In re Warfarin Sodium Antitrust Litig.*,
　212 F.R.D. 231 (D. Del. 2002) ..................................................................................................... 19

*Waters v. Intern. Precious Metals Corp.*,
　190 F.3d 1291 (11th Cir. 1999) ................................................................................. 11, 20, 22, 23

*West Virginia v. Chas. Pfizer & Co.*,
　314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) .................................. 17

*York v. Alabama State Bd. of Education*,
   631 F. Supp. 78 (M.D. Ala. 1986) ........................................................  16

*Zinman v. Avemco Corp.*,
   No. 75-1254, 1978 WL 5686 (E.D. Pa. Jan. 18, 1978) ............................ 20


*Fed. R. Civ. P. 23(h)............................................................................... 1
.
*Fed. R. Civ. P. 54(d)............................................................................... 1


*Empirical Study of Class Actions in Four Federal District Courts: Final Report
   to the Advisory Committee on Civil Rules* at 69 (Federal Judicial Center 1996) ...................... 21

*Recent Trends IV: What Explains Filings and Settlements in Shareholder Class
   Actions?* at 12-13 (NERA Nov. 1996) ............................................... 21

## INTRODUCTION AND OVERVIEW

Upon this Court's final approval of the now-pending Partial Settlement,[1] Class Members will receive distributions from the nearly $22 million common fund negotiated by their attorneys[2] on their behalf.  These distributions culminate over two years of effort—effort measured in tens of thousands of hours of work, some 1.5 million pages of documents reviewed and coded, and in hundreds of thousands of dollars incurred in costs and expenses.  The attorneys' fees and expenses sought for Class Counsel are *less* than their actual lodestar.

This Court's preliminary approval of the Partial Settlement recognizes the value for the Class that these years of uncompensated effort have now brought forth, especially in its relation to the ancillary criminal proceedings.  As Judge Hurley explained during the sentencing hearing of defendant Manuli Rubber Industries S.p.A., "if there is going to be ultimate justice in this case, it is going to come in the civil courts not in the criminal court."[3]  In recognition of this outcome, and pursuant to Federal Rules of Civil Procedure 23(h) and 54(d), Direct Purchaser Class Plaintiff Bayside Rubber and Products, Inc. ("Bayside") and the Class[4] (collectively,

---

[1]      "Partial Settlement" means collectively the settlements with Defendants (1) Dunlop Oil & Marine Ltd., Bryan Allison, and David Brammar; (2) Trelleborg Industrie S.A. and Jacques Cognard; (3) the Yokohama Rubber Co., Ltd; (4) Parker ITR S.r.l., Parker-Hannifin Corporation, and Giovanni Scodeggio; (5) Bridgestone Corporation, Bridgestone Industrial Products America, Inc., and Misao Hioki; (6) Robert Furness; (7) Charles Gillespie; and (8) Peter Whittle and PW Consulting Ltd. preliminarily approved by this Court. See *Second Amended Order Granting Class Certification and Appointment of Class Counsel* (D.E. 547) at ¶ 1, October 16, 2009.

[2]      The Court appointed Preti, Flaherty, Beliveau & Pachios, LLP; Garwin, Gerstein & Fisher, L.L.P.; and Labaton Sucharow LLP as Class Counsel.  *Id* .at ¶ 10.

[3]      *United States of America v. Manuli Rubber Industries S.p.A* ., Transcript of Sentencing at 14:12-16, Dec. 5, 2008.  Exh. 2 to Gerstein Aff.

[4]      The certified class consists of "All persons and entities (excluding Defendants, their predecessors, parents, subsidiaries, affiliates, and co-conspirators and the United States

"Plaintiffs") respectfully submit this memorandum in support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Award for the Class Representative.[5]

As detailed below, the relevant, applicable factors identified by the Eleventh Circuit in *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 772 n.3, 775 (11th Cir. 1991), support this request.

**The Relevant Eleventh Circuit factors.**

<u>First</u>, the size of the Partial Settlement fund—nearly $22 million in cash, plus interest, to be paid immediately—is substantial and provides a significant recovery for the Class.[6]  This amount represents between 8 and 25% of each Settling Entity Defendant's[7] estimated gross United States sales during the Settlement Class Period.[8]  This recovery is especially important

---

Department of Defense) who purchased Marine Hose in the United States directly from one or more of the Defendants or any of their predecessors, parents, subsidiaries, or affiliates at any time during the period from and including January 1, 1985 to and including March 24, 2008." *Second Amended Order Granting Class Certification and Appointment of Class Counsel* (D.E. 547) at ¶ 3, October 16, 2009.

[5]    In support of this Memorandum and Motion, Plaintiffs submit the Affidavit of Bruce E. Gerstein (the "Gerstein Aff.") (Exh. A) and, pursuant to S.D. Fla. L.R 7.3.B(vii), the Affidavit of Sarah Engel (the "Engel Aff.") (Exh. B).

[6]    As the Court stated, "most of the Defendants have agreed to settle for significant sums."  *Amended Order on Class Certification and Preliminary Settlements* (D.E. 513) at 27, Aug. 10, 2009.

[7]    "Settling Entity Defendants" means Dunlop Oil & Marine Ltd.; Trelleborg Industrie S.A.; Yokohama Rubber Co., Ltd.; Parker ITR S.r.l.; Parker-Hannifin Corporation; Bridgestone Corporation; and Bridgestone Industrial Products America, Inc.

[8]    "Settlement Class Period" means the period of time running from and including January 1, 1985 to and including March 24, 2008.

because the United States Department of Justice explicitly forewent restitution for the cartel's victims in light of this action's pendency.[9]

Second, the Partial Settlement also provides substantial non-monetary benefits in the form of cooperation agreements with the Settling Defendants.[10]  These cooperation agreements will make evidence of the conspiracy and its effects available more quickly and efficiently than would otherwise be the case, considering that most Settling Defendants are foreign nationals or foreign entities who are not subject to the same discovery processes as United States persons or entities.  *See id.* at 772 n.3, 775.

Third, the Class' response to the Partial Settlement, and the requested attorneys' fees, expenses, and incentive awards has been uniformly supportive to date.[11]  This is particularly important given that the class consists of sophisticated businesses who have the incentive and knowledge to lodge objections if warranted.  *Id.* at 775.

Fourth, Class Counsel incurred the risk of nonpayment and sustained the economic hit involved in prosecuting a class action.  Class Counsel achieved the nearly $22 million Partial Settlement despite facing significant risks that they would receive no payment for their work and

---

[9]     "In light of the availability of civil causes of actions, which potentially provide for a recovery of a multiple of actual damages, the United States agrees that it will not seek a restitution order for the offense charged in this information." *United States of America v. Manuli Rubber Industries S.p.A.*, Transcript of Plea Proceedings at 33:13-17, Oct. 21, 2008.  Exh. 1 to Gerstein Aff.

[10]     "Settling Defendants" means (1) Dunlop Oil & Marine Ltd., Bryan Allison, and David Brammar; (2) Trelleborg Industrie S.A. and Jacques Cognard; (3) the Yokohama Rubber Co., Ltd; (4) Parker ITR S.r.l., Parker-Hannifin Corporation, and Giovanni Scodeggio; (5) Bridgestone Corporation, Bridgestone Industrial Products America, Inc., and Misao Hioki; (6) Robert Furness; (7) Charles Gillespie; and (8) Peter Whittle and PW Consulting Ltd.

[11]     Although the deadlines for opt-outs and objections to the Partial Settlement are December 3 and December 15, 2009, respectively, to date only one Class Member has elected to opt out of the settlement.

the cash outlays expended in prosecuting this action.  The total lodestar expended in this case through October 31, 2009, is over $12.5 million; Class Counsel also incurred, through October 31, 2009, out-of-pocket expenses, including expert witness fees, in excess of $1.1 million.  Class Counsel's compensation for fees and reimbursement for expenses was wholly contingent upon obtaining a successful result for the Class.

Fifth, Plaintiffs filed the case in May 2007, over two and one-half years ago.  Class Counsel have worked since that time to achieve the Partial Settlement.  *Id.*  That the settlement did not happen sooner reflects the case's legal, factual, and procedural complexity, including the novelty and difficulty of the questions involved.  *Id.* at 772 n.3.

Sixth, the litigation was novel, difficult, and complex.  An antitrust class action is "arguably the most complex action to prosecute.  The legal and factual issues involved are always numerous and uncertain in outcome."  *In re Linerboard Antitrust Litig.,* 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003) (quoting *In re Motorsports Merchandise Antitrust Litig.,* 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000)).  And in this case, the legal and factual uncertainties were compounded by the procedural complications caused by the "numerous international defendants with an equally large number of defense counsel," *Order re: Plaintiff's Unopposed Motion Requesting Pretrial Planning and Scheduling Conference* (D.E. 116) at 2, May 16, 2008, and the pendency of criminal investigations and charges.  In addition to the labors of the Court itself, these complexities led the Court to appoint both a Special Master and defense liaison counsel, not to mention the involvement of U.S. Magistrate Judge William C. Turnoff in the resolution of numerous discovery disputes.

Seventh, Class Counsel's experience and ability allowed them to prosecute this action with skill and efficiency. Class Counsel include some of the preeminent antitrust firms in the

country, with decades of experience in prosecuting and trying complex actions.

Eighth, the 33% fee request of the Partial Settlement Fund is consistent with fee awards in similar cases (particularly antitrust cases brought on behalf on similar classes of direct purchasers) and in the private market for complex, contingent litigation.

And last, the lodestar cross-check confirms the requested fee's reasonableness.

For these reasons, and as detailed below and in the Gerstein and Engel Affidavits, Plaintiffs respectfully request that the Court approve their request for attorneys' fees of 33% of the Partial Settlement Fund (including interest), reimbursement of expenses, and an incentive award of $50,000.00 for Class Representative Bayside Rubber & Products, Inc.

## HISTORY OF THE LITIGATION

**A.     The nature of the claims.**

This litigation began in May 2007, when the first of five direct purchasers filed a class action alleging that numerous defendants violated Section 1 of the Sherman Act by conspiring to fix, raise, maintain, and/or stabilize the price of Marine Hose purchased in the United States from at least 1985 to 2007.  Those five actions (and two other later-filed actions) were transferred by the Judicial Panel on Multidistrict Litigation to this Court and consolidated into this docket for pretrial purposes.  *Pretrial Order No.1* (D.E. 4) at 3, March 4, 2008.

Contemporaneously with these proceedings, the United States Department of Justice investigated, arrested, and prosecuted numerous entities and their current and former executives from the United Kingdom, France, Italy, and Japan.  Since May 2007, twelve conspirators have pleaded or agreed to plead guilty to participating in a Marine Hose antitrust conspiracy and violating Section 1 of the Sherman Act, including the following defendants in this case: Trelleborg Industrie, S.A.; Dunlop Oil & Marine Ltd.; Manuli Rubber Industries S.p.A.; Robert

Furness; Charles Gillespie; Bryan Allison; David Brammar; Peter Whittle; Christian Caleca; Jacques Cognard; and Misao Hioki.  Defendant Yokohama entered the DOJ's amnesty program. While those proceedings alerted Plaintiffs to the conspiracy's existence and helped them understand the conspiracy's broad outlines, it fell upon Class Counsel to fully discover and develop the necessary evidence to support the claims asserted here, and to provide for the Class' recovery,[12] especially given that some criminal cases faltered when tested at trial.[13]

## B.    Class Counsel's Litigation Efforts.

From the time when the actions were consolidated until now, these proceedings have been defined by three constants: first, by the practical and logistical difficulties inherent in managing a case involving dozens of parties from around the world, who spoke different languages, who operated under differing legal regimes, and many of whom were the subject of criminal or quasi-criminal investigations;[14] second, by the need to manage multiple and overlapping processes of pleading, discovery, and settlement with multiple parties at different times; and third, by the Manuli Defendants' persistent and carefully directed oppositional

---

[12]    "So it is my view that if there is going to be ultimate justice in this case, it is going to come in the civil courts not in the criminal court. . . .  There are undoubtedly multiple customers out there who paid tremendous amounts of money for marine hose and I suppose discovered now that was at a higher price than they should have paid and obviously that matter is left to be resolved somewhere down the road."  *United States of America v. Manuli Rubber Industries S.p.A.*, No. 08-60198-CR-HURLEY (S.D. Fla.), Transcript Sentence at 14:12-16, Dec. 5, 2008;  Exh. 2 to Gerstein Aff.

[13]    Following a four-week jury trial in the West Palm Beach Division of the United States District Court for the Southern District of Florida, Val Northcutt and Francesco Scaglia (both former Manuli employees) were acquitted on November 10, 2008 from charges of price-fixing, bid-rigging, and allocating market share in the market for Marine Hose.

[14]    As this Court explained when it appointed a Special Master, "[t]hese matters involve numerous interests, international in scope, including several civil and ancillary criminal proceedings."  *Order re: Joint Pre-Trial Scheduling Submission* (D.E. 116) at 1-2, May 16, 2008.

strategy.[15]   These constants combined to make the prosecution of this litigation longer, more

uncertain, and much more expensive than it would otherwise have been.

Indeed, Manuli, after being the first corporate entity to plead guilty to the criminal

charges brought by the United States Department of Justice for the conduct at issue here,

proceeded to use its superior knowledge of the industry and the conspiracy to identify and

repeatedly attack what it portrayed, thus far without success, as this case's greatest procedural,

factual, and legal vulnerabilities.  In other words, after rushing to confess its criminal liability,

Manuli has fought without pause the victims of its crimes to avoid providing them restitution.  In

the face of these difficulties, Class Counsel and the team they assembled, used their particular

areas of strength and expertise to litigate this case efficiently and effectively.

### 1.   Discovery.

During the two and one-half years of hotly contested litigation, Class Counsel, among

other things: (a) identified and interviewed cooperating witnesses, and obtained proffers of the

conspiracy from counsel for the settling defendants; (b) drafted and litigated comprehensive

document requests and interrogatories; (c) obtained and analyzed over one and a half million

pages of documents received from Defendants; (d) identified the need to understand the

conspiracy's internal workings from an insider's perspective, and reached an early settlement

which included cooperation, with Dunlop, in part, to obtain the information necessary to fully

prosecute this action against the remaining defendants; (e) participated in the depositions of

thirteen witnesses, including five in foreign countries; (f) retained and worked closely with

---

[15]      Or, as this Court once put it, Manuli's "vigorous representation." *Order re:
Plaintiff's Motion for Leave to Amend the Complaint* (D.E. 345) at 2, Jan. 28, 2009.

experts in antitrust economics and damages, and in the Marine Hose industry; and (g) litigated and argued multiple discovery disputes before the Court.  *See* Gerstein Aff. at ¶ 45.

### 2.    Motion practice.

Class Counsel also engaged in substantial motion practice regarding (a) the Court's jurisdiction over certain Class claims, and (b) Bayside's adequacy as a class representative and its standing to bring certain claims in the absence of written purchase records.  This motion practice included two rounds of briefing motions to dismiss the class complaints.  Earlier this year, the Court granted in part and denied in part the motions to dismiss the First Amended Consolidated Class Action Complaint on jurisdictional grounds and for failing to state a claim as to several defendants.  The Court found that the Foreign Trade Antitrust Improvements Act barred the claims brought by named plaintiff Expro Gulf Limited, which left Bayside as the only named plaintiff, and rejected Manuli's challenge to Bayside's standing.  The Court also dismissed the claims against certain defendants for lack of particularized allegations, but allowed Plaintiffs to replead.  *Omnibus Order on Motions to Dismiss* (D.E. 346) at 32-33, Jan. 29, 2009.  Class Counsel took the lead in researching and developing factual and legal responses to these challenges and filed the Second Amended Consolidated Class Action Complaint.  In May, the Court ruled on the renewed motions to dismiss, and denied them in their entirety.  *Order on Motions to Dismiss Second Amended Class Action Complaint* (D.E. 463) at 14, May 21, 2009.

Class Counsel also succeeded in obtaining class certification.  Working closely with Dr. John C. Beyer, Class Counsel comprehensively reviewed the record evidence that Dr. Beyer then used to analyze the conspiracy's impact on direct purchasers/members of the Class, and to determine feasible approaches for assessing damages on a class-wide basis.  Dr. Beyer concluded that the conspiracy impacted all direct purchasers of Marine Hose, and that the direct purchasers

8

paid higher prices than they would have paid absent the conspiracy.  Also, based on the incomplete records that Defendants had provided at the time he issued his initial report, Dr. Beyer identified a minimum of 50 distinct United States customers who purchased marine hose and accessories during the Class period.  Based upon his review of additional records, Dr. Beyer found that there were at least 66 such customers.  *Declaration of John Beyer in Further Support of Class Certification* (D.E. 483),  June 6, 2009.  This Court relied upon Dr. Beyer's conclusions to conclude that Plaintiffs satisfied Rule 23(a)(1)'s numerosity requirement.  *Amended Order on Class Certification and Preliminary Settlements* (D.E. 513) at 12-13, Aug. 10, 2009.

Similarly, Class Counsel worked with Dr. Minoo Patel to define the Marine Hose at issue in this litigation, and explain their history, use, and construction.  Dr. Patel also described for the Court the commercial environment in which Marine Hose is sourced and procured through regional centers around the world, including Houston, Texas.  Dr. Patel's report supported the Motion for Class Certification.

Class Counsel also prevailed on the Motion of LOOP, LLC to intervene in the litigation, providing Plaintiffs a second class representative, over Manuli's heavily briefed objections.

Finally, Class Counsel succeeded in obtaining preliminary approval of the Partial Settlement Agreements.  They did so even though that approval was "vigorously opposed by the Manuli Defendants." *Id*. at 25.[16]  Notably, Manuli "vigorously opposed" the Partial Settlements despite, as the Court held, its lack of standing to object to them.  *Id*.  Manuli's opposition notwithstanding, the Court concluded that that there was "no evidence in the record that the

---

[16]     Ultimately obtaining preliminary approval required five rounds of briefing in the face of Manuli's opposition.

proposed Settlement Agreements are not fair, reasonable and adequate." *Id.* at 27.  Class Counsel

then successfully opposed Manuli's petition to appeal the decision granting class certification.

## ARGUMENT

**I.      The fee request is reasonable.**

Plaintiffs respectfully request that the Court award attorneys' fees of 33% of the principal

amount of the Settlement Fund of $21,724,000.00[17] plus accrued  interest.

> **A.      The percentage-of-the-fund method is the appropriate method for calculating
> attorneys' fees in this case.**

Lawyers who recover a "common fund" are entitled to reasonable attorneys' fees

from the fund they created.  *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)

("[T]his Court has recognized consistently that a litigant or a lawyer who recovers a

common fund for the benefit of persons other than himself or his client is entitled to a

reasonable attorney's fee from the fund as a whole.").[18]  In this circuit, attorneys' fees

---

[17]      The principal amount of the Settlement Fund is subject to adjustment before the
January 13, 2010 Fairness Hearing based on potential requests for exclusion, as provided in the
settlement agreement between Plaintiffs and the Parker Defendants ("the Parker Settlement
Agreement").  Pursuant to ¶ 19 of the Parker Settlement Agreement, requests for exclusion may
result in a refund of a portion of the Parker settlement amount.  The deadline for class members
to request to exclude themselves from the settlement is December 3, 2009.  Plaintiffs will file
supplemental papers with the Court prior to the January 13, 2010 hearing to apprise the Court of
the final principal amount of the Settlement Fund.

[18]      One rationale for such awards is that "persons who obtain the benefit of a lawsuit
without contributing to its cost are unjustly enriched." *Boeing Co.,* 444 U.S. at 478.  The
common fund approach is also grounded on a policy of encouraging counsel to act as "private
attorneys general" to vindicate the rights of class members.  *See Mashburn v. National
Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988).  The Supreme Court has repeatedly
recognized the importance of private litigation in the enforcement of the antitrust laws, and the
significance of class actions to this process.  *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63
(1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 334 (1979); *Lawlor v. National Screen Serv.
Corp.*, 349 U.S. 322, 329 (1955).  So has this Court.  *See P.D.Q. Inc. of Miami v. Nissan Motor
Corp. in USA*, 61 F.R.D. 372, 379-80 (S.D. Fla. 1973) (private civil suits are an important tool in
enforcing antitrust laws).

awarded from a common fund are based upon a reasonable percentage of the fund
established for the benefit of the class: "[h]enceforth in this circuit, attorneys' fees
awarded from a common fund shall be based upon a reasonable percentage of the fund
established for the benefit of the class." *Camden I Condominium Ass'n*, 946 F.2d 768,
774 (11th Cir. 1991); *In re Sunbeam Sec Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla.
2001).

**B.      Application of the Eleventh Circuit's reasonableness factors supports the
          requested fee.**

There is no "hard and fast rule" that mandates a certain percentage of a common
fund which may reasonably be awarded as a fee because the amount of any fee "must be
determined upon the facts of each case." *Camden I*, 946 F.2d at 774.  To guide trial
courts in the process of evaluating fee requests, the Eleventh Circuit has listed some of
the "pertinent" factors that, beginning from a benchmark of 20% to 30% of the fund, up
to 50%, will impact upon the appropriate percentage.  *Id.*  Those factors include (1) the
amount involved and the results obtained; (2) the non-monetary benefits of the
settlement;  (3) whether there were substantial objections from class members; (4) the
economics involved in prosecuting a class action; (5) the time and labor required; (6) the
novelty and difficulty of the questions involved; (7) the experience, reputation, and
ability of the attorneys; and (8) awards in similar cases.  *Id.* at 772 n.3, 775;[19] *see also
Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999)

---

[19]      In addition to naming several relevant factors, the *Camden I* Court indicated that
the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.
1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 90-96 (1989),
"continue to be appropriately used."  *Camden I*, 946 F.2d at 775.

(approving fee award where the district court determined that the benchmark should be

30% and then adjusted the fee award higher based on the circumstances of the case).

>    1.    *The amount involved and the result obtained.*[20]

The Class, which is comprised of at least 60 distinct business entities, will share in the

nearly $22 million cash Partial Settlement, net of attorneys' fees, expenses and incentive award.

This amount represents between 8 and 25% of each Settling Entity Defendant's estimated gross

United States sales of Marine Hose during the Settlement Class Period.  *Amended Order on*

*Class Certification and Preliminary Settlements* (D.E. 513) at 27.  These percentages fall within

a range of reasonableness when viewed in the context of other percentages in antitrust class

action settlements.  *See e.g.*, *In re Automotive Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d

336, 344 (E.D. Pa. 2007) (approving settlement fund equal to approximately 1.5% of defendants

Sherwin-Williams and PPG's sales of automotive refinishing paint for the four years during the

Class Period in which it had its highest sales totals); *Meijer, Inc. v. 3M*, Civ. A. No. 04-5871,

2006 WL 2382718, at *16 (E.D. Pa. Aug. 14, 2006) (approving settlement fund equal to

approximately 2% of defendant 3M's sales to the settlement class); *In re Linerboard Antitrust*

*Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (approving settlement equal to 1.62% of the

settling defendants sales); *In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94-CV-3564,

1995 WL 723175, at *1 (E.D. Pa. Dec. 4, 1995) (approving settlement greater than 3.5% of

---

[20]    The result achieved "is a major factor to consider in making a fee award."  *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained")); *see also In re King Resources Co. Securities Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("[T]he amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client."); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990)).

sales); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement equal to 0.2% of relevant sales).

        2.       *The settlement's non-monetary benefits.*

The Partial Settlement also provides substantial non-monetary benefits in the form of cooperation agreements with the Settling Defendants.  Under these agreements, Settling Defendants agree to use their best efforts to assist the Class in pursuing Class Claims,[21] including (a) furnishing potentially relevant documents or other items in their custody, possession, or control; (b) making any current director, officer, or employee who has been interviewed by any domestic or foreign governmental entity available (i) for interview with Class Counsel and/or with experts retained to work on the Class' behalf; (ii) to provide declarations or affidavits that are reasonably necessary to prosecute the remaining claims; (iii) for depositions by Class Counsel, and (iv) for testimony at trial; (c) using best efforts to make any former director, officer, or employee who has been interviewed by any domestic or foreign governmental entity available (i) for interview with Class Counsel and/or with experts retained to work on the Class' behalf; (ii) to provide declarations or affidavits that are reasonably necessary to prosecute the remaining claims; (iii) for depositions by Class Counsel, and (iv) for testimony at trial; (d) producing qualified representatives to establish the prerequisites for authenticating documents and records; and (e) meeting with Class Counsel to provide background information relating to the antitrust violations at issue.  *See* Gerstein Aff. ¶ 38.

These cooperation agreements will substantially benefit Class Members by making evidence and proof of the conspiracy and its effects available more quickly and efficiently than

---

[21]     "Class Claims" means claims by Settlement Class Members arising from their purchases of Marine Hose in the United States.

would be the case without the agreements, considering that most Settling Defendants are foreign nationals or foreign entities who are not subject to the same discovery processes as United States persons or entities.  In short, the cooperation agreements will help strengthen the case against the substantial non-settling defendants and reduce the time and costs associated with litigating and pursing recoveries via the remaining through jury trial to a judgment or settlement.

   3.     *The absence of objections and the Class support.*

On October 19, 2009, individual notices of the Partial Settlement were mailed to Class members; a case site was established on the internet on or about October 1, 2009.[22]  The notice informed potential Class members that Class Counsel would seek fees of up to 33% of the Partial Settlement Fund, reimbursement of expenses, and incentive awards for the named plaintiff(s).  In addition, as ordered by the Court,[23] notice was published in *The Wall Street Journal* on October 28, 2009, and in *Offshore Magazine* in the issue that became available for purchase on November 20, 2009.[24]

The deadline for objections is December 15, 2009.  To date, no class members have objected to the requested award of fees and expenses.  *See* Gerstein Aff. ¶ 40.  The lack of objections, particularly in a class consisting of sophisticated business entities is a "rare phenomenon."  *In re Rite Aid Corp. Securities Litig.,* 396 F.3d 294, 305 (3d Cir. 2005).  When a class is comprised of sophisticated business entities that can be expected to oppose any request for attorneys' fees they find unreasonable, the lack of objections (at least to date) "indicates the

---

[22]     See Affidavit of Michelle M. La Count (Exh. 3 to Gerstein Aff.) ¶¶ 9, 15.

[23]     *Second Amended Order Granting Class Certification and Appointment of Class Counsel and Preliminary Approval of Proposed Amended Settlements* (D.E. 547) at ¶14, Oct. 16, 2009.

[24]     See Affidavit of Michelle M. La Count at ¶¶ 16 and 17.

appropriateness of the [fee] request." *Cimarron Pipeline Construction, Inc. v. Nat'l Council on Compensation Ins.*, Nos. CIV 89-822-T, CIV 89-1186-T, 1993 WL 355466, *2 (W.D. Okla. June 8, 1993); *In re Sequoia Systems, Inc. Sec. Litig.*, Civ. A. No. 93-11331-WD, 1993 WL 616694, *1 (D. Mass. September 10, 1993) (finding "influential" the fact that no class member had objected to the fee request of one-third); *In re M.D.C. Holdings Securities Litig.*, No. CV89-0090 E (M), 1990 WL 454747, *10 n.5 (S.D. Cal. Aug. 30, 1990) (lack of objections "is significant since the class includes sophisticated financial institutions . . . who have counsel available to advise and represent them and submit objections to either the settlement or the fees and expenses"). Courts have reasoned that favorable responses by sophisticated Class members is persuasive, since those class members are capable, independent of the assistance of Class Counsel, of evaluating the reasonableness of all aspects of a class action settlement. *See*, *e.g.*, *Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1374 (D. Minn. 1985).

    4.    *The economics involved in prosecuting a class action and the risk of nonpayment.*

    The determination of a reasonable fee for Class Counsel must include consideration of the contingent nature of the fee, the equally contingent outlay of substantial out-of-pocket sums by Class Counsel, and the fact that the risk of failure and nonpayment in a class action are extremely high.[25] Numerous cases recognize that attorneys' risk is "perhaps the foremost factor" in determining an appropriate fee award. *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla., 2007) (quoting *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 54 (2d Cir. 2000) (citation omitted)); *accord Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir.

---

[25]    Although Class Counsel successfully reached a Partial Settlement, this result could not be counted on at the outset. The relevant risks must be evaluated from the standpoint of plaintiff's counsel at the time they commenced the suit and not retroactively with the benefit of hindsight.

1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."), *overruled on other grounds by International Woodworkers of Am. v. Champion Intern. Corp.*, 790 F.2d 1174, 1175 (5th Cir. 1986); *see also Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *York v. Alabama State Bd. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result.").

In *Behrens v. Wometco Enter., Inc.* 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), the court noted that contingency arrangements were nearly indispensable in class actions:

> A contingency fee arrangement often justifies an increase in the award of attorneys' fees.  This rule helps assure that the contingency fee arrangement endures.  If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id*. (citations omitted) at 548.  *See also, In re Sunbeam*, 176 F. Supp. 2d at 1335.

The contingencies upon which success in this case rested were decidedly uncertain. Class Counsel undertook comprehensive, time-consuming discovery, obtaining and reviewing well over one-and-a-half million pages of documents.  As the case proceeded, Class Counsel undertook substantial additional risk, expending tens of thousands of hours investigating Class's claims, participating in thirteen depositions, interviewing numerous cooperating witnesses in the U.S., Italy and the U.K., including incarcerated witnesses in two countries, retaining and working

with expert witnesses, briefing numerous dispositive and discovery motions, moving for class certification, and managing multiple rounds of settlement negotiations.

In addition, success before a jury in complex litigation is highly unpredictable: "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). The risk of succeeding at trial on liability issues is significant enough. However, the history of antitrust litigation is replete with cases in which plaintiffs succeeded at trial on liability, but recovered no damages or very small damages at trial or after appeal. *See, e.g.*, *United States Football League v. National Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335 (2d Cir. 1988); *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1166-67 (7th Cir. 1983), (remanding judgment for new trial and damages). *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated on other grounds*, 417 U.S. 156 (1974), illustrates the risks faced by Class Counsel. *Eisen* was brought as an antitrust class action. After two trips to the Second Circuit and one to the Supreme Court, plaintiffs and the putative class and their counsel recovered nothing. Accordingly, the financial risks borne by Class Counsel fully support the appropriateness of the fee requested.

> 5.  *The time required to reach settlement, and the labor required to prosecute the case.*

Class Counsel have expended nearly 30,000 hours and advanced over $1 million in expenses on this matter. *See* Gerstein Aff. at ¶ 57. It is reasonable that, over the course of years, so much time would have been spent on these complex cases "particularly given the excellent counsel of Defendants and their contested nature." *Varacallo v. Massachusetts Mut. Life Ins.*

*Co.*, 226 F.R.D. 207, 253 (D.N.J. 2005).  As detailed in the Gerstein and Engel Affidavits, from the pre-complaint investigation through the briefing supporting the Partial Settlement, Class Counsel expended an enormous amount of time, energy, and resources litigating this case, and those expenditures were reasonably incurred.

      6.      *The novelty, difficulty, complexity, and duration of the litigation.*

Courts have found that an antitrust class action is "arguably the most complex action to prosecute.  The legal and factual issues involved are always numerous and uncertain in outcome." *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003) (quoting *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000)) (internal citations and quotation marks omitted); *see also In re Shopping Carts Antitrust Litig.*, MDL No. 451, 1983 WL 1950 *7 (S.D.N.Y. Nov. 18, 1983) ("antitrust price fixing actions are generally complex, expensive and lengthy").

In this case, the legal and factual issues and defenses arising from the Foreign Trade Antitrust Improvements Act multiplied the complexity.  As the Court recognized, the FTAIA is a complex, still-developing body of law, in which precedential guidance from the Eleventh Circuit is largely absent. *Omnibus Order on Motions to Dismiss* (D.E. 346) at 8, Jan. 29, 2009. Although Class Counsel maintain the case is absolutely meritorious on liability, damages and class certification, the defenses interposed by Defendants from day one created substantial hurdles and obstacles that Plaintiffs were required to overcome to succeed in the case. *See* Gerstein Aff. ¶¶ 19-30.

Those legal and factual uncertainties were compounded by the procedural complications caused by the "numerous international defendants with an equally large number of defense counsel," *Order re: Plaintiff's Unopposed Motion Requesting Pretrial Planning and Scheduling*

*Conference* (D.E. 116) at 2, May 16, 2008, which led the Court to appoint both a Special Master

and defense liaison counsel, in addition to the work of U.S. Magistrate Judge William C.

Turnoff.  And they were further compounded by the pendency of criminal and administrative

investigations and charges against cartel members around the world.

> 7.    *Class Counsel's experience, reputation, and ability, and the skill and efficiency with which they prosecuted this action.*

Class Counsel include some of the preeminent antitrust firms in the country, with decades

of experience in prosecuting and trying complex actions.[26] As detailed above and in the Gerstein

Affidavit, Class Counsel's experience and skill are amply evidenced by Class Counsel's

effective prosecution of this action, including the highly favorable Partial Settlement achieved.[27]

This skill resulted in the denials on Defendants' motions to dismiss; the granting of class

certification; the granting of LOOP's motion to intervene; the granting of Plaintiff's motion for

preliminary approval of the Partial Settlement; discovery victories that helped elicit substantial

evidence and testimony favorable to the Class' case; and complex, hard-fought settlement

negotiations.

Finally, in assessing the quality of representation by the Class Counsel, the Court should

also consider the quality of the opposition.  *See Camden I,* 946 F.2d at 772 n.3; *Johnson,* 488

---

[26]    The background, experience, accomplishment, and qualifications of Class Counsel are included in the Gerstein Affidavit as Exhibits A-S thereto.

[27]    *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) (class counsel "showed their effectiveness . . . through the favorable cash settlement they were able to obtain"); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (awarding 30% fee on $111 million settlement and stating that "the most significant factor in this case is the quality of the representation, as measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, and the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel") (internal quotations omitted).

F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).  In this case, opposing

counsel were not only numerous, but were drawn from the ranks of the best international,

national, and south Florida firms, with deep experience in antitrust defense.  *See* Gerstein Aff.  ¶

41.

       8.     *Awards in similar cases and in the private market for complex, contingent litigation.*

     A comparison with the attorneys' fees awarded in similar cases—and with fees awarded

in cases from this Circuit and District—further confirms the fairness and reasonableness of the

requested fee.  For example, in *Gutter v. E.I. Dupont De Nemours & Co.,* 95-2152-CIV-GOLD,

2003 U.S. Dist. LEXIS 27238, *12 (S.D. Fla. May 30, 2003), Judge Gold awarded plaintiffs a 33

1/3% fee award, finding it "fair and reasonable."   *See, e.g., Waters v. Int'l Precious Metals*

*Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) (approving 33 1/3% award); *Allapattah Services*

*Inc. v. Exxon Corp.,* 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (awarding 31 1/3%)*; In re*

*Managed Care Litig. (Cigna)*, No. 00-1334-MDL-MORENO (S.D. Fla. Feb. 2, 2004) (awarding

35.5%); *In re Managed Care Litig. (Aetna),* Master File No. 00-1334-MD-Moreno, 2003 WL

22850070 *6 (S.D. Fla. Oct. 24, 2003) (awarding 35.5%); *Bakalor v. Integrated Communication*

*Network, Inc.*, 96-2021-CIV-KING (S.D. Fla. 1997) (awarding 33 1/3%);  *Tapken v. Brown,*

Case No. 90-0691-CIV-Marcus (S.D. Fla. 1995) (awarding 33%);  *In re Home Shopping*

*Network Sec. Litig.,* Case No. 87-428-T-13(A) (M.D. Fla. 1991) (awarding 33%).  As the

Eleventh Circuit stated in *Camden I*: "[t]he majority of common fund fee awards fall between

20% to 30% of the fund."  946 F.2d at 774.  The court also observed that "an upper limit of 50%

of the fund may be stated as a general rule, although even larger percentages have been

awarded."  *Id.* at 774-75.  In *Ressler v. Jacobson*, 149 F.R.D. 651, 655 (M.D. Fla. 1992), Judge

Nimmons, Jr. reviewed fee awards in similar case citing, among other cases, *Zinman v. Avemco*

*Corp.*, No. 75-1254, 1978 WL 5686 *1-2 (E.D. Pa. Jan. 18, 1978) (fee equal to 50% of

recovery); *Howes v. Atkins*, 668 F. Supp. 1021, 1027 (E.D. Ky. 1987) (fee not to exceed 40% of

recovery);  *Bello v. Integrated Resources, Inc.*, No. 88 Civ. 1214 (CSH), 1990 WL 200670 *3

(S.D.N.Y. Dec. 4, 1990) ("[t]raditionally, courts in this Circuit and elsewhere have awarded fees

in the 20%-50% range in class actions.").

 In addition, surveys conducted by National Economic Research Associates, an economics

consulting firm, in 1995 and 1996 of fee awards in class actions further support the petition here.

Using data from 433 securities class actions, the study reports the following: "Regardless of case

size, *fees average approximately 32 percent of the settlement*."  Denise N. Martin, Vinita M.

Juneja, Todd S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and

Settlements in Shareholder Class Actions?* at 12-13 (NERA Nov. 1996) (emphasis added).

Another study released in 1996 focused on class actions in four federal district courts: the

Southern District of Florida, the Northern District of California, the Eastern District of

Pennsylvania, and the Northern District of Illinois.  The Federal Judicial Center Study reported

findings very similar to the NERA study: "*Median rates ranged from 27% to 30%*.  Most fee

awards in the study were between 20% and 40% of the gross monetary settlement."  Thomas E.

Willging, Laural L. Hooper, and Robert J. Niemic, *Empirical Study of Class Actions in Four

Federal District Courts: Final Report to the Advisory Committee on Civil Rules* at 69 (Federal

Judicial Center 1996) (emphasis added).

 The requested fees also reflect the market rate in other complex, contingent litigation.  In

private litigation, "attorneys regularly contract for contingent fees between 30% and 40%

directly with their clients."  *See Pinto*, 513 F. Supp. 2d at 1341 (citing  *Phemister v. Harcourt

Brace Jovanovich, Inc.*, No. 77 C 39, 1984 WL 21981 *15 (N.D. Ill. Sept. 14, 1984)

("Contingent fee arrangements in non-class action damage lawsuits are the simple method of paying the attorney a percentage of what is recovered for the client.  The more the recovery, the more the fee.  The percentages agreed on vary, with one-third being particularly common."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial)).  These percentages are the prevailing market rates throughout the United States for contingent representation.

And the percentage method of awarding fees in class actions "is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients."  *Pinto*, 513 F. Supp. 2d at 1340.  Individual clients often recognize that they lack the expertise or time to monitor their attorneys' performance.  Thus, they select a compensation formula—the contingent fee—that automatically aligns their attorneys' interest with their own.

**C.    A lodestar cross-check confirms the reasonableness of the requested fee.**

In this circuit, the lodestar is used as a crosscheck.  *See Waters*, 190 F.3d at 1298 ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison.").  Class counsel have expended over twenty-five thousand hours investigating the allegations, reviewing documents, propounding and taking discovery, and negotiating and documenting this settlement.  While the lodestar method is not the rule in this Circuit and counsel request a percentage award, an analysis of the time spent on this matter illustrates the fairness of the proposed fee.

The aggregate lodestar for class counsel is $12,539,403.75.  On a lodestar basis, the requested fee of $7,134,123.40 plus interest is materially less than the actual billing value of the attorneys' time.  In a pre-*Camden I* case in this District, Judge King performed both methods of analysis and gathered cases on the range of fee awards under either method and noted that lodestar multiples in large and complicated class actions range from 2.26 to 4.5, while "three appears to be average."  *Behrens v. Wometco Enter., Inc.,* 118 F.R.D. 534, 549 (S.D. Fla. 1988). In fact, cases with much higher multipliers have been found reasonable in other class actions. *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (awarding 25% fee representing 4.5-8.5 multiplier); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 169 (S.D.N.Y. 1991) (8.74 multiplier).  Therefore, the requested fees are more than reasonable in light of the time and labor involved.

## II.     Class Counsel's expenses were reasonable and were necessarily incurred to achieve the benefit obtained.

It is well-settled that counsel who have created a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses reasonably incurred in creating the fund.  *Waters*, 190 F.3d at 1298 ("Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefited the class.") (quoting *In re Agent Orange Product Liab. Litig.*, 818 F.2d 226, 238 (2d Cir. 1987)).  Expenses are compensable when the particular costs are of the type billed by attorneys to paying clients in the marketplace. *See*, *e.g.*, *Harris v. Marhofer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover . . . those out-of-pocket expenses that 'would normally be charged to a fee paying client.'").

Class Counsel's expenses of $1,119,461.07, as detailed in declarations A through S, appear as exhibits to the Gerstein Affidavit, and reflect the costs expended to prosecute this

litigation, including expert fees; costs associated with computerized research and creating an

electronic document database; travel and lodging expenses; copying and reproduction costs; the

costs for court reporters and deposition transcripts; and translation costs and filing fees.

Reimbursement of similar expenses is routinely permitted.  *See*, *e.g.*, *Oh v. AT&T Corp.*, 225

F.R.D. 142, 154 (D.N.J. 2004) (finding the following expenses to be reasonable: "(1) travel and

lodging, (2) local meetings and transportation. (3) depositions, (4) photocopies, (5) messengers

and express services, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court,

and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a mediator").

The categories of expenses for which Class Counsel seek reimbursement here are the type of

expenses routinely charged to hourly fee-paying clients.

### III.     Incentive awards for the named plaintiff(s) are appropriate and reasonable.

Under the common fund theory, class representatives are entitled to additional

compensation for their efforts (including document production and deposition appearances) that

made possible the creation of a common fund for the benefit of all class members.  *See Hainey v.*

*Parrott*, No. 1:02-CV-733, 2007 WL 3308027, at *5 (S.D. Ohio Nov. 6, 2007); *In re Dun &*

*Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (approving

incentive awards of $35,000 to $55,000 out of $18 million common fund).  Numerous courts,

including this one, have found it appropriate to specially reward named class plaintiffs for the

benefits they have conferred.  *See*, *e.g., Pinto*, 513 F. Supp. 2d  at 1344; *Allapattah Servs., Inc.,*

454 F. Supp. 2d at 1218-19 (S.D. Fla. 2006).   In *In re SmithKline Beckman Corp. Sec. Litig.*,

751 F. Supp. 525 (E.D. Pa. 1990), the court, in approving special awards to class representative

plaintiffs, noted:

> …the Court agrees that special awards to the class representatives are appropriate.
> First, they have rendered a public service by contributing to the vitality of the

federal Securities Acts.  "Private litigation aids effective enforcement of the securities laws because private plaintiffs prosecute violations that might otherwise go undetected due to the SEC's limited resources."  Second, the named plaintiffs, through their vigilance, have conferred a monetary benefit on a large class of purchasers of SmithKline common stock.

*Id*. at 535 (citations omitted).  *Accord Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa.

1985) (incentive awards of $20,000 to each of two plaintiffs); *Enterprise Energy Corp. v.*

*Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) ($50,000 to each

class representative, aggregate award of $300,000).

Here, Plaintiffs respectfully request the Court to approve an incentive award of $50,000

to Plaintiff and Class Representative Bayside Rubber and Products, Inc.  for its demonstrated and

continuing service to the Class.  Bayside has taken an active role in the case from the outset,

including consulting with Class Counsel concerning the Marine Hose industry, responding to

discovery requests and producing documents, sitting for a deposition (which was scheduled four

times), monitoring the case and consulting regularly with counsel, submitting multiple affidavits,

and enduring vigorous opposition from Defendants, particularly Manuli.[28]

## CONCLUSION

Under the relevant Eleventh Circuit factors, the requested fee of 33% of the Partial

Settlement Fund is fair and reasonable: the Partial Settlement provides substantial monetary and

non-monetary recovery to the Class; to date no objections to the Partial Settlement have been

received, an early indication of support from the Class; Class Counsel incurred the risk of non-

payment and sustained the litigation during more than two years of complex litigation, which

they managed with skill and care; the requested fee is in line with fees awarded in similar cases;

and the lodestar incurred confirms the fee's reasonableness.

---

[28]     Class Counsel may seek an incentive award for Plaintiff and Class Representative LOOP, LLC, who recently intervened in the case, at a later stage in the litigation.

Plaintiffs respectfully ask the Court to award a fee of 33% of the Partial Settlement Fund (with interest), reimbursement of litigation expenses, and an incentive award to Bayside Rubber and Products of $50,000 for its service as Class Representative.

Respectfully submitted this 27th day of November, 2009.

/s/ Adam M. Moskowitz\
Adam M. Moskowitz\
Fla. Bar No. 984280\
KOZYAK TROPIN &  THROCKMORTON,\
P.A.\
2525 Ponce de Leon, 9th Floor\
Coral Gables, Florida 33134\
305.372.1800

Co-Counsel for the Class on the Brief

Gregory P. Hansel\
Fla. Bar No. 607101\
Randall B. Weill\
PRETI, FLAHERTY, BELIVEAU\
  & PACHIOS, LLP\
One City Center\
P.O. Box 9546\
Portland, ME 04112

Hollis L. Salzman\
Fla. Bar No. 947751\
LABATON SUCHAROW LLP\
140 Broadway\
New York, NY 10005

Bruce E. Gerstein\
GARWIN, GERSTEIN & FISHER, LLP\
1501 Broadway\
Suite 1416\
New York, NY 10036

Co-Lead Counsel for the Class