UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Master Docket No. 08-MDL-1888-GRAHAM/TURNOFF

IN RE: MARINE HOSE ANTITRUST
LITIGATION
_____/

THIS DOCUMENT RELATES TO:
ALL ACTIONS
_____/

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENTS WITH (1) MANULI RUBBER
INDUSTRIES S.p.A, MANULI OIL & MARINE (U.S.A.) INC.,
FRANCESCO SCAGLIA AND VAL M. NORTHCUTT; AND (2)
SUMITOMO RUBBER INDUSTRIES, LTD. AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiffs, on behalf of themselves and a Class of direct purchasers of Marine Hose

(defined below), have entered into settlement agreements (the "Settlement Agreements") with

Defendants Manuli Rubber Industries, S.p.A., Manuli Oil & Marine (U.S.A.) Inc., and Francesco

Scaglia and Val M. Northcutt ("the Individuals") (collectively "Manuli"), and with Sumitomo

Rubber Industries, Ltd. ("Sumitomo")(collectively "the Settling Defendants").[1]

Under the Settlement Agreements[2] entered into with Settling Defendants, (attached

hereto as Exhibits A and B, respectively), each Settling Entity Defendant has agreed to make a

cash payment of up to 34% of estimated United States sales during the Settlement Class Period.

Manuli has agreed to pay $4.5 million to the Class. Sumitomo has agreed to pay $250,000.

_____

[1] All defined terms herein have the same meaning as in the respective Settlement Agreements
unless otherwise noted.

[2] "Settlement Agreements" and "Settlements" refer throughout to the settlement agreements that
are being filed concurrently with this motion.

In addition, all of the Settling Defendants[3], (including the Individuals), have agreed to cooperate extensively with Plaintiffs in connection with Plaintiffs' continued prosecution of the litigation against the non-settling Defendants.

Plaintiffs now move the Court to enter a Preliminary Approval Order: (1) finding that the proposed settlements with Manuli and Sumitomo are sufficiently fair, reasonable and adequate to allow dissemination of notice of the Settlements to the proposed Settlement Class; (2) appointing Plaintiffs' Co-Lead Counsel as counsel for the Settlement Class; (3) establishing a date for a hearing on final approval of the proposed settlements; (4) approving the proposed forms of mailed notice and published summary notice of the proposed Settlements and of a litigation class; (5) approving the proposed notice plan and directing that notice be disseminated; (6) establishing a deadline for filing papers in support of final approval of the proposed Settlements; (7) establishing a deadline for filing any objections to the proposed Settlements by Settlement Class members; and (8) establishing a deadline for Settlement Class members to exclude themselves from the proposed Settlements and/or the litigation class.  Plaintiffs herewith submit a Proposed Preliminary Approval Order, Proposed Notice of Settlement and Litigation, Proposed Summary Notice of Settlement and Litigation, and a Proposed Rule 54(b) Final Judgment Order as Exhibits C through F respectively.[4]

At this juncture, the Court need only determine whether the proposed settlements are sufficiently fair, reasonable and adequate to allow notice to be disseminated.  Plaintiffs submit

---

[3] The term "Settling Entity Defendants" refers collectively to Manuli, and Sumitomo.

[4] Settlement Class members that have already submitted a claim form pursuant to Plaintiffs' previous settlements need not submit a second claim form. All class members' previous claim forms will be used to allocate their settlement proceeds.  If any class member has not submitted a claim form or elects to change their previous claim form, they may contact the claims administrator for an additional claim form. By utilizing this abbreviated process, the cost of notice will be reduced.

that the proposed settlements satisfy the required standards, and respectfully request that the Court authorize dissemination of notice pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and establish a schedule for final approval of the proposed settlements with Defendants.

## I.

## BACKGROUND

This litigation commenced in May 2007 with the filing on behalf of direct purchasers of "Marine Hose"[5], five antitrust class action lawsuits against Dunlop, Trelleborg, Yokohama, Parker, Bridgestone and several individual defendants, among others. Plaintiffs allege that Defendants violated Section 1 of the Sherman Act, 15 U.S.C. §1, by engaging in a conspiracy to fix, raise, maintain and/or stabilize the price of Marine Hose purchased in the United States from at least 1985 to 2007. Plaintiffs contend that, as a result of the conspiracy, Plaintiffs and the other members of the Class were injured, as the result of having paid artificially inflated prices for Marine Hose.

On May 2, 2007, the U.S. Department of Justice ("DOJ") announced that eight executives from the United Kingdom, France, Italy and Japan had been arrested in Houston and San Francisco and charged for their role in a conspiracy to fix prices, rig bids and allocate markets and customers for United States sales of Marine Hose. Also on May 2, 2007, a criminal complaint was unsealed in the Miami Division of this Court against four executives: Defendant

---

[5] "Marine Hose", as defined in the Settlement Agreements, means "a flexible rubber hose and ancillary products used to, among other things, transport oil between offshore operations, ships, terminals, refineries, buoys and storage tanks." For purposes of the proposed settlements, "Marine Hose" does not include hose, hydraulic hose or industrial hose. Manuli Agreement ¶ 6, Sumitomo Agreement ¶ 6.

Peter Whittle, owner of Defendant PW Consulting (Oil & Marine) Ltd.; Defendant Jacques Cognard, oil and marine manager of Trelleborg Industrie S.A. in France; and former Dunlop employees Defendants Bryan Allison (managing director) and David Brammar (sales and marketing director).

The DOJ also announced that a separate criminal complaint was filed on May 1, 2007 in the Fort Lauderdale Division of this Court against four other executives: Defendant Christian Caleca, president of the Industrial Hose Business Unit of Trelleborg Industrie S.A. in France; Defendant Giovanni Scodeggio, a business unit manager at Parker ITR S.r.l. in Italy; Defendant Francesco Scaglia, a product manager at Defendant Manuli Rubber Industries S.p.A. in Italy; and Defendant Misao Hioki, an executive involved in the sale of Marine Hose for Bridgestone Corporation in Japan. According to the criminal complaints, the charged executives participated in the conspiracy at various times during the period from at least 1999 to the date of the complaints.

Simultaneous with the May 2 arrests, agents of the Defense Criminal Investigative Service ("DCIS") of the Department of Defense's Office of Inspector General executed search warrants at locations throughout the United States. Competition authorities abroad, including the Office of Fair Trading in the U.K., the European Commission and the Japanese Fair Trade Commission, also raided the alleged conspirators' offices in Europe and Japan.

According to the affidavit filed in support of the criminal complaint charging Whittle, Allison, Brammar and Cognard, the conspirators met in locations such as Key Largo, Florida, Houston, Texas, Bangkok and London. At these meetings, the conspirators discussed and agreed to the rules for implementing their price-fixing, bid-rigging and allocation scheme. They also

kept agendas and detailed minutes of cartel meetings, and devised code names to conceal their involvement and communications.

According to court papers, Whittle, the cartel coordinator, collected approximately $300,000 a year, with each conspirator paying him about $50,000.  The conspirators allegedly provided Whittle with information about upcoming Marine Hose jobs, and Whittle then designated which conspirator would win the job, referring to the winning conspirator as the "champion."  The affidavit filed in support of the complaint charging Caleca, Scodeggio, Scaglia and Hioki alleges that members of the cartel met as recently as May 1, 2007 in a hotel in Houston, Texas for the purpose of carrying out the conspiracy.

On June 12, 2009, based on facts ascertained during discovery, Plaintiffs filed their Second Amended Complaint, adding allegations that Sumitomo participated in the aforementioned conspiracy. [D.E. 490]. Specifically, Plaintiffs alleged that Sumitomo participated in cartel meetings for the purpose of carrying out the conspiracy, was assigned the code designation "A-3" in communications regarding the conspiracy and agreed with other members of the conspiracy to adopt a price list that would govern all sales of Marine Hose. *Id.* Plaintiffs alleged that Sumitomo was a participant in the conspiracy from at least 1985 until least 1995. *Id.*

Since May 2007, twelve (12) of the conspirators have pleaded guilty or agreed to plead guilty to participating in a Marine Hose antitrust conspiracy, including, Trelleborg Industrie, S.A.S.; Dunlop Oil & Marine Ltd.; Manuli Rubber Industries SpA; Parker ITR S.r.L.; Robert L. Furness; Charles Gillespie; Bryan Allison; David Brammar; Peter Whittle; Christian Caleca; Jacques Cognard and Misao Hioki.  Yokohama is in the DOJ's amnesty program.

On January 14, 2010, this Court issued an order granting final approval of settlements with Dunlop Oil & Marine Ltd., Bryan Allison and David Brammar (collectively, "Dunlop"), Trelleborg Industrie, S.A., Jacques Cognard and Christian Caleca (collectively, "Trelleborg"), The Yokohama Rubber Co., Ltd. ("Yokohama"), Parker Hannifin Corporation, Parker ITR S.r.l., and Giovanni Scodeggio (collectively, "Parker"), Bridgestone Corporation, Bridgestone Industrial Products America, Inc., and Misao Hioki (collectively, "Bridgestone"), Robert Furness ("Furness"), Charles Gillespie ("Gillespie"), and Peter Whittle and PW Consulting (collectively, "Whittle"). [D.E. 562].

Settlement negotiations with Manuli began in 2007 and were conducted by Plaintiffs' Co-Lead Counsel and Manuli's counsel, the law firms of Sullivan & Cromwell LLP and Richman Greer PA. Settlement negotiations with Sumitomo began in 2009 and were conducted by Plaintiffs' Co-Lead Counsel and Sumitomo's counsel, the law firm of Shearman & Sterling LLP. All such negotiations continued and concluded with the execution of the respective Settlement Agreements attached hereto.  The negotiations, conducted by experienced and able counsel, were lengthy, vigorous and at all times conducted at arm's-length.

As part of each settlement negotiation with the Defendants, Plaintiffs' Counsel considered certain information concerning each Settling Defendant's participation in the alleged antitrust violations that was, in the view of Plaintiffs' Counsel, sufficient to enable them to evaluate the fairness, reasonableness and adequacy of the proposed settlements.

## II.

## SUMMARY OF SETTLEMENT TERMS COMMON TO BOTH AGREEMENTS

### A.      Cooperation

The Settlement Agreements require each Entity Defendant to pay the settlement amounts,

set forth *supra*, and require Settling Defendants to cooperate extensively with Settlement Class

Counsel in connection with the prosecution of Plaintiffs' claims against the remaining

Defendants and any Defendant subsequently added to the litigation. This cooperation is detailed

in each settlement agreement as follows: Section H, ¶¶ 27-42 of the Manuli Agreement; and

Section H, ¶¶ 29-40 of the Sumitomo Agreement. The cooperation provisions for both Settling

Entity Defendants generally include the agreement to:

- furnish documents or other items potentially relevant to Plaintiffs' claims in each Settling Individual Defendant's possession, custody, or control;

- make themselves available for interviews with Settlement Class Counsel;

- make themselves available for the provision of declarations and affidavits;

- make themselves (or use reasonable efforts to make themselves) available for depositions by Settlement Class Counsel;

- make themselves (or use reasonable efforts to make themselves) available for trial testimony (for Manuli), or to permit Plaintiffs to use deposition testimony as trial evidence (for Sumitomo);

- have their counsel meet with Settlement Class Counsel to provide background relating to the alleged antitrust violations.

## B.   <u>Release</u>

Upon the Effective Date and in consideration of each Settling Defendant's payment and

compliance with the cooperation provisions of its respective Settlement Agreement, the

Releasees (as defined in ¶ 7 of each Settling Entity Defendant's Agreement) shall be completely

released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and

causes of action, damages, liabilities of any nature, including without limitation costs, expenses,

penalties, and attorneys' fees, whether class, individual, or otherwise in nature, that Releasors (as

defined in ¶ 8 of each Settling Entity Defendant's Agreement), or any of them, ever had, now

1690077.1

has, or hereafter can, shall, or may have directly, representatively, derivatively or in any other capacity against the Releasees or any of them, whether known or unknown, suspected or unsuspected, in law or equity concerning the pricing, selling, discounting, marketing, manufacturing or distribution of Marine Hose based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the Complaints filed by Plaintiff against the Settling Defendants regarding Marine Hose which arise under any United States federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. (the "Released Claims") provided, however, that nothing in the Settlement Agreements shall release: (1) any claims made by purchasers who are solely indirect purchasers of Marine Hose as to such indirect purchases; (2) claims for any product defect, breach of contract, or similar claims relating to Marine Hose; or (3) claims under laws other than those of the United States for other than Class Claims.  Manuli Agreement ¶17, and Sumitomo Agreement ¶ 17.

C.    **The Proposed Settlements Do Not Affect the Non-Settling Defendants' Joint and Several Liability for the Alleged Conspiracy**

The settlement with each Settling Defendant does not settle or compromise any claim by Plaintiffs or any Class Member against any Defendant or alleged co-conspirator or entity other than the Releasees.  Plaintiffs and Class Members specifically reserve all of their rights against other Defendants or alleged co-conspirators not explicitly released in the Settlement Agreements.[6] Manuli Agreement ¶ 44, and Sumitomo Agreement ¶ 42.

---

[6] The remaining Defendants in this litigation are Pirelli Itala, S.p.A, Pirelli Treg, S.p.A., Pirelli & C, S.p.A., ITR, S.p.A., SAIAG, S.p.A., and Comital SAIAG, S.p.A.

**D.**    **Stipulation to Class Certification**

The Settlement Agreements provide that the parties stipulate that the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied with respect to the settlements, subject to Court approval, and that the following Settlement Class shall be certified for settlement purposes with respect to the Settlement Agreements[7]:

> All persons and entities (excluding Defendants, their predecessors, parents, subsidiaries, affiliates, and co-conspirators and the United States Department of Defense) who purchased Marine Hose in the United States directly from one or more of the Defendants or any of their predecessors, parents, subsidiaries, or affiliates at any time during the period from and including January 1, 1985 to and including March 24, 2008.

Manuli Agreement ¶ 12, and Sumitomo Agreement ¶ 12.

At this time, Plaintiffs are seeking the Court's preliminary approval of the Settlement Agreements and authorization to disseminate notice to members of the proposed Settlement and Litigation Classes.

## III.

## SUMMARY OF OTHER SETTLEMENT TERMS

**A.**    **Manuli Settlement**

      **1.**    **The Settlement Amount**

Pursuant to the Manuli Settlement Agreement, Manuli has paid $4.5 million into a Settlement Fund for the benefit of the Class. Manuli Agreement ¶ 18. Manuli placed the Settlement Fund in escrow, where it is invested in United States Government Treasury obligations, and all interest earned on the $4.5 million shall become and remain a part of the

---

[7] This Court previously certified this class for litigation purposes and on January 14, 2010, for settlement papers with certain other Defendants.

Settlement Fund. Manuli Agreement ¶ 18.   Prior to the Effective Date of the Settlement Agreement, Settlement Class Counsel are authorized to make reasonable disbursements from the Settlement Fund for the purpose of publishing and mailing notice to the proposed Settlement Class, and to defray other expenses in connection with the administration of the Settlement. Settlement Agreement ¶ 21.

### 2.       Right to Withdraw

Paragraph 19 of the Settlement Agreement provides that if the amount of sales of Marine Hose to members opting out of the Settlement Class exceeds the amount set forth in a separate letter agreement between Settlement Class Counsel and counsel for Manuli, then Manuli shall have the right to withdraw from the settlement.   The letter agreement is highly confidential and will be provided to the Court for review *in camera* if so requested.

### B.       Sumitomo Settlement

### 1.       The Settlement Amount

Pursuant to the Sumitomo Settlement Agreement, Sumitomo has paid $250,000 into a Settlement Fund for the benefit of the Class.   Sumitomo Settlement ¶¶ 9, 19.   Sumitomo placed the Settlement Fund in escrow, where it was invested in United States Government Treasury obligations, and all interest earned on the $250,000 shall become and remain a part of the Settlement Fund.   Sumitomo Settlement ¶ 10.   Prior to the Effective Date of the Settlement Agreement, Settlement Class Counsel are authorized to make reasonable disbursements from the Settlement Fund for the purpose of publishing and mailing notice to the proposed Settlement Class, and to defray other expenses in connection with the administration of the Settlement. Settlement Agreement ¶ 23.

### 2.       Right to Withdraw

Paragraph 21 of the Sumitomo Settlement provides that if the amount of sales of Marine Hose to members opting out of the Settlement Class exceeds the amount set forth in a separate letter agreement between Settlement Class Counsel and counsel for Sumitomo, then Sumitomo shall have the right to withdraw from the settlement.  The letter agreement is highly confidential and will be provided to the Court for review *in camera* if so requested.

## IV.

## **PROPOSED TIMETABLE**

The proposed Preliminary Approval Order sets forth a procedure and schedule for disseminating notice to the Settlement Class and final approval of the proposed settlements. Plaintiffs' Co-Lead Counsel proposes the following schedule:

(1)    Notice to be mailed and posted on the internet approximately (14) days following the date of the Preliminary Approval Order[8];

(2)    Summary Notice to be published once in the national edition of The Wall Street Journal within ten (10) days after the Notice is mailed[9];

(3)    Ten days (10) before the date fixed by this Court for the hearing on final approval of the Settlement Agreements, Settlement Class Counsel shall cause to be filed with the Clerk of this Court affidavits or declarations of the person(s) under whose general direction the mailing and publication of the Notice and Summary Notice were made in accordance with the Preliminary Approval Order;

(4)    A hearing before the Court on final approval of the Settlement Agreements ("Final Approval Hearing") to be scheduled within approximately ninety (90) days of the date on which the Notice is mailed, or as the Court's schedule permits;

---

[8] Plaintiffs also request that notice of the litigation class be combined with the Notice of Settlement with Manuli and Sumitomo, and considered on the same timetable. Plaintiffs will file a motion contemporaneously herewith.

[9] In their prior settlements, Plaintiffs also published notice in Offshore Magazine. However, due to the fact that the significant number of class members were identified pursuant to the prior settlement Notices in this case, to the adequacy of the proposed notice program and to the expense and delay associated with publishing in Offshore Magazine, Plaintiffs do not propose to publish notice in that publication for these settlements.

(5)     All papers in support of final approval of the Settlement Agreements to be filed thirty (30) days prior to the Final Approval Hearing;

(6)     Any requests for exclusion from the Settlement Class must be postmarked by forty-five (45) days prior to the Final Approval Hearing; and

(7)     Any objections to the Settlement Agreements must be filed with the Court and served on Settlement Class Counsel and counsel for Settling Defendants within forty-five (45) days prior to the Final Approval Hearing.

## V.

### THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE AND ADEQUATE TO AUTHORIZE DISSEMINATION OF NOTICE TO THE CLASS

**A.      Governing Standards**

The Manual For Complex Litigation (Fourth) §21.632 (2004), provides a framework for the Court's preliminary evaluation of a proposed class action settlement:

> Review of a proposed class action settlement generally involves two hearings.  First counsel submit the proposed terms of settlement and the Judge makes a preliminary fairness evaluation . . .  The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the fairness hearing.

*See also Fresco v. Auto Data Direct, Inc.* No., 03-61063, 2007 WL 2330895, * 4 (S.D. Fla. May 14, 2007).  A court's authorization to disseminate notice constitutes its recognition that the settlement is within the range of possible approval.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981); *Figueroa v. Sharper Image Corp.*  517 F.Supp.2d 1292, 1299 (S.D. Fla. 2007).  As one court noted, dissemination of notice "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Assoc.-Eastern R.R*, 627 F.2d 631, 634 (2d Cir. 1980).  *See also Fresco*, 2007 WL 2330895 at *4 ("'A proposed settlement should

12

be preliminarily approved if it 'is within the range of possible approval or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement'") (internal quotations omitted).

A proposed settlement falls within the "range of possible approval" under Rule 23(e) where there is a conceivable basis for presuming that the proposed settlement will meet the more rigorous standards applied for final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(C); *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984).

When authorizing the dissemination of notice, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983). That determination must await the final hearing where the fairness, reasonableness and adequacy of the settlement is assessed under the factors set forth in *Bennett v. Behring Corp.*, *supra*.[10] As notice of a settlement is routinely sent to proposed settlement class members before a litigation class is certified, Plaintiff asks the court to make certain preliminary findings regarding the proposed settlement class so that notice can be

---

[10]   The "*Bennett* Factors" that a court considers on a motion for final approval of a class settlement as "fair, reasonable and adequate" include:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

disseminated.  *See e.g., In re Air Cargo Antitrust Litig.* 1:06-md-01775-JG-VVP, D.E. 732 . Plaintiffs also ask the Court for permission to combine notice of the litigation class with the notice of settlement.

### B.   The Proposed Settlements Are Fair and Within The Range of Possible Approval

The Settlement Agreements reached here are the product of extensive negotiations, which unfolded over a period of years and concluded only after Plaintiffs obtained information, including transaction data, from the Settling Defendants sufficient to allow Plaintiffs' counsel to evaluate the respective Agreements.  Further, the guilty pleas and related criminal trial have provided additional substantive information about the alleged conspiracy.  The negotiations were conducted by Plaintiffs' counsel and by the Settling Defendants' respective litigation counsel. Nothing in the course of the negotiations or the substance of the proposed Settlement Agreements presents any ground to doubt their fairness.

The Agreements require the Settling Entity Defendants to make cash payments of $250,000 and $4.5 million.  These cash settlement amounts reflect both the consideration of facts independently adduced by Plaintiffs' Counsel in their discovery and investigation, representations made and information provided by Settling Entity Defendants and independently obtained by Plaintiffs' Co-Lead Counsel, and reflect a meaningful recovery.[11]  The settlement amount with Manuli, for example, represents 34% of its estimated Marine Hose sales in the United States during the Settlement Class Period – an excellent result and higher percentages than in settlements approved in other antitrust price-fixing class actions.  *See, e.g., In re*

---

[11] Sumitomo represented and Plaintiffs' investigation confirmed that it did not have United States sales during the class period. Thus the Sumitomo settlement is a favorable outcome for the class.

1690077.1

*Shopping Carts Antitrust Litig.*, MDL No. 451, 1983 WL 1950, at *9 (S.D.N.Y. Nov. 18, 1983) (settlement representing 5.5% of sales approved); *Axelrod v. Saks & Co.*, Nos. 76-3805, 76-4011, 77-172, 1981 WL 2031, at *1 (E.D. Pa. Feb. 23, 1981) (recovery equal to 3.7% of total sales); *In re Armored Car Antitrust Litig.*, 472 F. Supp. 1357 (N.D. Ga. 1979) (recovery of less than 4% of sales).

Another important aspect of the Settlement Agreements is the substantial cooperation to which all Settling Defendants have agreed.  Such cooperation components in early settlements such as these help facilitate a more prompt and efficient resolution of this action, and may trigger additional settlements sooner than might otherwise occur.  Therefore, the cooperation provisions of the Agreements here provide a "substantial benefit" to the class.  *See In re Linerboard Antitrust Litigation*, 292 F. Supp. 2d 631, 643  (E.D. Pa. 2003) ("The provision of such [cooperation] is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement."); *see also Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) ("[T]he commitment … defendants have made to cooperate with plaintiffs will certainly benefit the classes, and is an appropriate factor for a court to consider in approving a settlement"); *In re Corrugated Container*, M.D.L. 310, 1981 WL 2093, at * 16 (S.D. Tex. June 4, 1981) ("The cooperation clauses constituted a substantial benefit to the class."); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (discussing cooperation provisions, which were "invaluable to the plaintiffs," as a significant factor in approving the settlement). The cooperation provisions of the Settlement Agreements here provide just such a substantial benefit to the class.

## VI.

## <u>NOTICE TO THE CLASS</u>

15

A.  <u>The Settlement Class</u>

Federal Rule of Civil Procedure 23(e)(1)(B) provides that "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposed settlement." Plaintiff proposes providing individual, mailed notice to the extent practicable.  The Notice will be mailed, First Class and postage prepaid, to all persons and entities who have been identified by the Settling Defendants, and the other entity Defendants to the extent provided voluntarily or by Court Order, as direct purchasers of Marine Hose in the United States from Defendants in this case during the Settlement Class Period. In addition, many class members have already submitted claims forms and will have the opportunity to participate in these settlements as well. The Notice will also be posted on the internet.  The Summary Notice will be published once in the national edition of <u>The Wall Street Journal</u>.

Plaintiff believes that the content and proposed method of dissemination of the Notice fulfills the requirements of Federal Rule of Civil Procedure 23(e)(1)(B) and due process.  *See generally Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1285-88 (11th Cir. 2007).  The Notice apprises Settlement Class Members of the material settlement terms, and outlines the procedures (and related deadlines) for any Settlement Class Members who desire to exclude themselves from the Settlement Agreements or object to their terms.  The Notice also informs Settlement Class Members of the date and place of the Final Approval Hearing.  Further, the mailed Notice will advise the Settlement Class Members that, in connection with the approval of these Settlements, Settlement Class Counsel will ask the Court for attorneys' fees, reimbursement for already incurred out-of-pocket litigation expenses, an incentive award for LOOP LLC of $50,000, and for permission to create a fund to defray future litigation expenses, up to $250,000, from the Settlement Funds.  Litigation expenses include, but are not limited to,

16

costs for economic experts, document copying and depositions.  Courts have not only granted requests for reimbursement of past expenses, but also have permitted the creation of funds to be used to pay future litigation expenses.  *E.g., In re Microcrystalline Cellulose Antitrust Litig.*, Master File No. 01-CV-111, MDL No. 1402 (E.D. Pa., June 15, 2005) (granting plaintiffs' counsel's request to use up to $2.5 million of a settlement fund to pay litigation expenses against the remaining defendant).

B.   The Litigation Class

When a court certifies a class under Rule 23(b)(3), notice must be served on all class members who can be identified through reasonable efforts. Fed. R. Civ. P. 23(c)(2)(B). Class members who can be identified through reasonable efforts must be notified that they may request exclusion from the action and thereby preserve their opportunity to press their claim separately or that they may remain in the class and be bound by the outcome. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Adams*, 493 F.3d at 1285-88; *Brannon v. Household Int'l Inc.*, 2007 WL 1578298, at * 1 n.1 (9th Cir. June 1, 2007) (rejecting the argument "that actual notice is required or that individually tailored notice is required."); *In re NASDAQ Market-Makers Antitrust Litig.*, 1999 WL 395407, at *2 n.3 (S.D.N.Y. June 15, 1999) (no requirement to notify each and every class member individually).

Plaintiffs' proposed plan of Notice to the litigation class should be approved by this Court because it complies with the Federal Rules of Civil Procedure and the requirements of due process. In compliance with Rule 23(c)(2)(B), both the proposed long form notices and the summary notices state the details of the action, including the Class definition; the rights of Class members to enter an appearance through counsel if the Class members so desire; the rights of Class members to stay in the action or request exclusion, including when and how members may

Master Docket No. 08-MDL-1888-GRAHAM/TURNOFF

elect to be excluded from the Class; and the binding effect of a Class judgment on Class members under Rule 23(c)(3).

Notice to Class members by first class mail, publication in print media, including newspapers and periodicals, and publication on websites are methods of notice that have been approved by numerous courts, including this Court in this case. *See, e.g., 5 Moore's Federal Practice* (3d Ed. 2003) at 26.63[8][a], 23.63[8][b]; *Adams*, 493 F.3d at 1285-88; *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (approving "notice by publication" as a "reasonable method of informing class members of the pending class action and the [] settlement."); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 252-53 (D. Del. 2002) (approving class action notice of settlement where class members were contacted by first class mail and consumers were provided with notice by publication of the summary notice in newspapers and magazines); *Henry v. Sears Roebuck & Co.*, 1999 WL 33496080, at *4 (N.D. Ill. July 23, 1999) (court directed class action settlement notice be mailed by first class mail to all class members that could be identified and that the summary notice be published twice in the national edition of *USA Today*) (citing the following cases with approval: *White v. Nat'l Football League*, 822 F. Supp. 1389, 1400 (D. Minn. 1993) (notice by mail to identified class members and publication once in *USA Today* "clearly satisfied both Rule 23 and due process requirements"), *aff'd*, 41 F.3d 402 (8th Cir. 1994), *cert. denied sub nom. Jones v. National Football League*, 515 U.S. 1137 (1995); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (approving as reasonable notice by third-class mail to identified class members and publication twice in the national edition of *USA Today*); *In re Michael Milken and Assocs. Secs. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice by mail to identified class members and publication in *USA Today*)).

18

As with the previous settlements in this litigation, Plaintiffs have retained AB Data, Ltd., an experienced claims administrator to administer the proposed plan of notice and have taken the necessary steps to ensure that it satisfies Rule 23 and due process.

## VIII.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully requests that Plaintiffs' Motion for Preliminary Approval of Proposed Settlements with Defendants Manuli Rubber Industries, S.p.A., Manuli Oil & Marine (U.S.A.), Inc., and Francesco Scaglia and Val M. Northcutt, and with Sumitomo Rubber Industries, Ltd. be granted, and that the Court permit notice of the litigation class to be issued in the same manner and on the same timetable of the notice of settlements.

Dated: April 22, 2010                          Respectfully submitted,


                                               */s/  Hollis L. Salzman*

                                               Hollis L. Salzman
                                               Gregory Asciolla
                                               William V. Reiss
                                               LABATON SUCHAROW LLP
                                               140 Broadway
                                               New York, NY 10005

                                               Gregory P. Hansel
                                               Randall Weill
                                               PRETI, FLAHERTY, BELIVEAU
                                                 & PACHIOS, LLP
                                               One City Center
                                               P.O. Box 9546
                                               Portland, ME 04112

                                               Bruce E. Gerstein
                                               Ephraim R. Gerstein
                                               Dan Litvin

Master Docket No. 08-MDL-1888-GRAHAM/TURNOFF

GARWIN GERSTEIN & FISHER LLP
1501 Broadway
Suite 1416
New York, NY 10036

*Plaintiffs' Co-Lead Counsel and Proposed
Settlement Class Counsel*

Master Docket No. 08-MDL-1888-GRAHAM/TURNOFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing (NEF) generated by CM/ECF or in some other authorized manner for those counsel or parties identified on the attached Service List in the manner specified who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/ Hollis L. Salzman</u>

Hollis L. Salzman

21

Master Docket No. 08-MDL-1888-GRAHAM/TURNOFF

List of counsel or parties not authorized to receive electronically Notices of Electronic Filing.

David G. Meyer
Howrey LLP
550 S Hope Street
Suite 1100
Los Angeles, CA 90071

Richard A. Koffman
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW
Suite 500 West Tower
Washington, DC 20005-3934

Robert Furness (Terminated)
2701 NE 8 Street
Pompano Beach, FL 33062