IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**MASTER DOCKET NO. 08-MDL-1888-GRAHAM/TURNOFF**

|  |  |
|---|---|
| In re MARINE HOSE ANTITRUST LITIGATION | ) ) ) ) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) ) ) |

**DEFENDANTS SAIAG, S.P.A. AND COMITAL SAIAG, S.P.A.'S
MOTION FOR SUMMARY JUDGMENT, STATEMENT OF
<u>UNDISPUTED FACTS AND INCORPORATED MEMORANDUM OF LAW</u>**

**Table of Contents**

I. INTRODUCTION ................................................................................................................ 1

II. SUMMARY JUDGMENT EVIDENCE ............................................................................. 2

III. STATEMENT OF UNDISPUTED FACTS ........................................................................ 2

IV. MEMORANDUM OF LAW ............................................................................................... 5

    A. The Factual Record Does Not Contain Any Evidence Showing that
       SAIAG or Comital SAIAG Participated in the Alleged Conspiracy ................................. 5

    B. Plaintiffs May Not Rely Upon a Mere Parent-Subsidiary Relationship
       to Satisfy Their Burden Against SAIAG and Comital SAIAG ........................................ 7

       1. There is No Evidence to Support a Veil-Piercing Theory ........................................... 8

       2. Plaintiffs Have Not Shown that SAIAG or Comital
          SAIAG Directed ITR's Participation in the Conspiracy ............................................. 9

V. CONCLUSION .................................................................................................................. 11

## Table of Authorities

                        **Page**

**Cases**

*Arnold Chevrolet LLC v. Tribune Co.*,
   418 F. Supp. 2d 172 (S.D.N.Y. 2006). ................................................................................. 9

*Baker v. McDonald's Corp.*,
   686 F. Supp. 1474 (S.D. Fla. 1987), *aff'd*, 865 F.2d 1272 (11th Cir. 1988),
   *cert. denied*, 493 U.S. 812 (1989) .................................................................................... 7

*Carroll v. Neumann*,
   204 F. Supp. 2d 1344 (S.D. Fla. 2002) ................................................................................ 5

*Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*,
   262 F. Supp. 2d 1334 (S.D. Fla. 1999) ............................................................................... 9

*Graham v. State Farm Mut. Ins. Co.*,
   193 F.3d 1274 (11th Cir. 1999)........................................................................................... 5

*Harvest Food Group, Inc. v. Newport Int'l of Tierra Verde, Inc.*,
   No. 08-80681, 2008 U.S. Dist. LEXIS 95943 (S.D. Fla. Nov. 17, 2008) ................................. 8

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
   566 F. Supp. 2d 363 (M.D. Pa. 2008)................................................................................. 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-1827, 2009 U.S. Dist. LEXIS 17792 (N.D. Cal. Mar. 3, 2009) .................................... 9

*Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*,
   162 F.3d 1290 (11th Cir. 1998)........................................................................................... 8

*Lamonica v. Safe Hurricane Shutters, Inc.*,
   No. 07-61295, 2008 U.S. Dist. LEXIS 75408 (S.D. Fla. Sept. 23, 2008) ............................... 7

*Martin v. Thermo Electron Corp.*,
   No. 99-2547, 2001 U.S. Dist. LEXIS 24812 (S.D. Fla. Jan. 17, 2001).................................... 9

*Molenda v. Hoechst Celanese Corp.*,
   60 F. Supp. 2d 1294 (S.D. Fla. 1999),
   *aff'd*, 21 F.3d 600 (11th Cir. 2000) .................................................................................... 9

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ........................................................................................................... 8

**Statutes**

15 U.S.C. § 1................................................................................................................... 2, 10

**Rules**

Federal Rule of Civil Procedure Rule 56(c) ............................................................................ 5

ii

Defendants SAIAG, S.p.A. ("SAIAG") and Comital SAIAG, S.p.A. ("Comital SAIAG") respectfully submit this motion for summary judgment and would show the Court the following:

## I.

## **INTRODUCTION**

The basis for this motion for summary judgment is straightforward. Summary judgment should be granted as to defendants SAIAG and Comital SAIAG because plaintiffs have adduced no evidence during discovery that either of these entities participated in the price-fixing conspiracy which is the basis of plaintiffs' complaint.[1] Plaintiffs' failure to develop any evidence comes on the heels of their inability to allege in the complaint any acts by SAIAG and Comital SAIAG in furtherance of the claimed conspiracy.

ITR is the entity within the SAIAG corporate family that was engaged in the marine hose business from 1993 until 2002. Neither SAIAG nor Comital SAIAG was engaged in this business. Indeed, Comital SAIAG was not even formed until 2004, *after* ITR was sold to a different company, Parker-Hannifin.

Plaintiffs may not rely upon any arguments regarding whether ITR participated in the conspiracy to establish that SAIAG and Comital SAIAG were involved the conspiracy. The undisputed facts of this case do not indicate that ITR was a mere instrumentality of SAIAG or Comital SAIAG, and that SAIAG or Comital SAIAG engaged in improper conduct through the use of ITR -- both of which must be shown to succeed on a veil-piercing theory. Nor have plaintiffs demonstrated that the conspiracy was organized by SAIAG or Comital SAIAG at the

---

[1] All references herein to the "complaint" refer to the *Corrected Second Amended Consolidated Class Action Complaint*, which was filed with this Court on June 12, 2009 (Dkt. No. 490), and is the operative complaint in this action.

parent level and implemented at the subsidiary level by ITR. Accordingly, summary judgment in favor of SAIAG and Comital SAIAG is appropriate.

## II.

## SUMMARY JUDGMENT EVIDENCE

Plaintiffs have failed to develop any evidence that SAIAG or Comital SAIAG participated in the conspiracy and, therefore, cannot sustain their burden of proof that these entities violated Section 1 of the Sherman Act, 15 U.S.C. § 1.

Plaintiffs have also failed to develop any evidence which would permit a piercing of the corporate veil of ITR to implicate SAIAG or Comital SAIAG as culpable parties. The only evidence regarding the corporate relationship between and among SAIAG, Comital SAIAG and ITR is contained in Defendants Comital SAIAG, S.p.A., SAIAG, S.p.A. and ITR, S.p.A.'s Responses and Objections to Plaintiffs' Requests for Admissions, dated December 28, 2009 and annexed hereto as **Exhibit A** (the "Responses to Requests for Admission"), and certain excerpts from the deposition of Mr. Massimo Pancamo, the 30(b)(6) representative of SAIAG, Comital SAIAG and ITR, which are annexed hereto as **Exhibit B** (the "Pancamo Transcript" or "Pancamo Tr.").

## III.

## STATEMENT OF UNDISPUTED FACTS

1. Defendant SAIAG was a corporation organized and existing under the laws of Italy. (Responses to Requests for Admission No. 1.)

2. In 1993, Finag, S.A. ("Finag") was an entity related to Defendant SAIAG. (Pancamo Tr. 37:22 - 38:3.)

3. In October 1993, Finag purchased 100 percent of the shares of Defendant ITR from Inversiones Miraflores, S.A., which was an entity related to the Pirelli group of companies. (Pancamo Tr. 38:24 - 39:10; 264:6 - 264:21.)

4. At that time, the sale of marine hose was one component of Defendant ITR's business. (Pancamo Tr. 36:12 - 36:22.)

5. After acquiring 100 percent of the shares of Defendant ITR, Finag transferred a portion of these shares to Defendant SAIAG. (Pancamo Tr. 42:19 - 43:4; 43:25 - 44:4.)

6. By 1995, Defendant SAIAG owned 100 percent of the shares of Defendant ITR. (Pancamo Tr. 45:3 - 45:20.)

7. In late 2001, Defendant ITR made a capital contribution of certain assets to a new company called ITR Rubber, S.r.L. ("ITR Rubber"). (Pancamo Tr. 54:15 - 55:4.) These contributed assets included the marine hose business. (Pancamo Tr. 54:15 - 55:13.)

8. In January 2002, the outstanding shares of ITR Rubber were purchased by an entity related to the Parker-Hannifin Corporation ("Parker"). (Pancamo Tr. 55:4 - 55:13.)

9. Accordingly, for most of the period of October 1993 through January 2002, Defendant SAIAG owned 100 percent of the shares of Defendant ITR. (Pancamo Tr. 42:19 - 43:4; 43:25 - 44:4; 45:3 - 45:20; 264:6 - 264:21.)

10. However, during that period, the marine hose business was operated by Defendant ITR, not by SAIAG or any other entity. (Pancamo Tr. 36:12 - 37:11.)

11. In 2004, Defendant SAIAG and Comital, S.p.A. were merged into Cortiplast, S.p.A. ("Cortiplast"). (Pancamo Tr. 34:12 - 34:16; 45:22 - 46:9.)

12. After this merger, the newly-formed company became Defendant Comital SAIAG.  (*Id.*)

13. Accordingly, Defendant Comital SAIAG did not exist until after Defendant ITR's marine hose business was purchased by Parker.  (Pancamo Tr. 34:12 - 34:16; 45:22 - 46:9; 54:15 - 55:13.)

14. On January 1, 2010, the entity formerly known as ITR changed it name to Cuki, S.p.A.  (Pancamo Tr. 36:7 - 36:10.)[2]

15. The record does not contain any facts tending to show that SAIAG or Comital SAIAG directed, organized or participated in the antitrust conspiracy which forms the basis of the complaint herein.

16. Nor does the record contain any facts that ITR was a mere instrumentality of SAIAG or Comital SAIAG and that these entities engaged in conspiratorial conduct through the use of ITR.

---

[2]  On April 26, 2010, plaintiffs filed a *Motion to Amend by Interlineation Corrected Second Amended Consolidated Class Action Complaint to Update Corporate Name of Defendant ITR, S.p.A. to Cuki, S.p.A.*  (Dkt. No. 579.)  This motion is *sub judice*.  Accordingly, the instant motion refers only to ITR.

4

## IV.

## MEMORANDUM OF LAW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). On a motion for summary judgment, a movant can meet its burden "by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." *Carroll v. Neumann*, 204 F. Supp. 2d 1344, 1349 (S.D. Fla. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986)). "'The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322). An application of this legal standard demonstrates that both SAIAG and Comital SAIAG are entitled to judgment as a matter of law.

**A.   The Factual Record Does Not Contain Any Evidence Showing that SAIAG or Comital SAIAG Participated in the Alleged Conspiracy**

The evidentiary record is clear that ITR -- and not SAIAG or Comital SAIAG -- was the entity that operated the marine hose business. (Pancamo Tr. 36:12 - 37:11.) As to SAIAG, the record reveals only that it owned 100 percent of the outstanding stock of ITR during most of the period of October 1993 through January 2002. (Pancamo Tr. 42:19 - 43:4; 43:25 - 44:4; 45:3 - 45:20.) Absent from the record, however, is any evidence that SAIAG had any role

in the claimed conspiracy to fix the price of marine hose, either by directing the actions of ITR, or by itself participating in meetings or other discussions in furtherance of the conspiracy. Similarly, as to Comital SAIAG, the record is clear that Comital SAIAG was not created until 2004, when SAIAG and Comital, S.p.A. were merged into Cortiplast, and Cortiplast changed its name to Comital SAIAG. (Pancamo Tr. 34:12 - 34:16; 45:22 - 46:9.) As with SAIAG, the record is devoid of any evidence that Comital SAIAG (or any of the entities through which it was formed) participated, directed or otherwise had any role in the claimed price-fixing conspiracy.

This void in the record is no surprise, as it reflects the absence of allegations in plaintiffs' complaint. Plaintiffs did not allege that any employee of either entity agreed at a meeting to play some role in the conspiracy. Nor did plaintiffs name any employees of either SAIAG or Comital SAIAG as defendants. Indeed, plaintiffs did not even include the most basic allegation that SAIAG or Comital SAIAG joined the conspiracy and played some role in it.

This is plaintiffs' third opportunity to demonstrate that it can sustain a claim against SAIAG and Comital SAIAG. In plaintiffs' First Amended Consolidated Class Action Complaint, plaintiffs did not assert any allegations as to SAIAG and Comital SAIAG's participation in the alleged conspiracy. On January 28, 2009, this Court granted SAIAG, Comital SAIAG and ITR's motion to dismiss plaintiffs' First Amended Consolidated Class Action Complaint, with leave to replead. (Omnibus Order on Motions to Dismiss; Dkt. No. 346 at pp. 30-31; 33.) Despite having an opportunity to include specific allegations against SAIAG and Comital SAIAG in the Second Amended Consolidated Class Action Complaint, plaintiffs again failed to include any allegations against these entities. Although SAIAG and Comital SAIAG argued that the failure to include new allegations against SAIAG and Comital SAIAG

6

was fatal under the law of the case doctrine, this Court found that the complaint "survives the standard of plausibility as against SAIAG and Comital SAIAG *at the motion to dismiss stage*." (Order on Motions to Dismiss Second Amended Class Action Complaint; Dkt. No. 463 at p. 7) (emphasis added).

Now, upon the completion of fact discovery, it is obvious that plaintiffs cannot sustain their burden of demonstrating that SAIAG and Comital SAIAG participated in the conspiracy in any manner. Thus, this litigation is now at the stage where dismissal as to these defendants is appropriate. Where it is clear at the close of fact discovery that, based on the evidence, a plaintiff cannot satisfy its burden of proof, summary judgment in favor of the defendant is appropriate. *See Lamonica v. Safe Hurricane Shutters, Inc.*, No. 07-61295, 2008 U.S. Dist. LEXIS 75408, at *14 (S.D. Fla. Sept. 23, 2008) ("Here, the parties have completed discovery and are on the eve of trial. At this stage the non-moving party must prove the essential elements of its case for which it has the burden of proof at trial, otherwise, summary judgment is warranted."); *Baker v. McDonald's Corp.*, 686 F. Supp. 1474, 1479 (S.D. Fla. 1987) ("[I]f, after the completion of discovery, there is a complete failure of proof with regard to an essential element of the plaintiff's claim, summary judgment is appropriate."), *aff'd*, 865 F.2d 1272 (11th Cir. 1988), *cert. denied*, 493 U.S. 812 (1989).

B. **Plaintiffs May Not Rely On a Mere Parent-Subsidiary Relationship to Satisfy Their Burden Against SAIAG and Comital SAIAG**

Because the factual record does not contain any evidence that SAIAG or Comital SAIAG participated in the conspiracy, plaintiffs must prove that either: (1) SAIAG and Comital SAIAG are liable on a veil-piercing theory because ITR was a "mere instrumentality" of SAIAG and Comital SAIAG, and these entities engaged in improper conduct through the use of ITR; or

7

(2) the conspiracy was organized by SAIAG and Comital SAIAG and carried out by ITR. The record contains no such facts.

### 1. There is No Evidence to Support a Veil-Piercing Theory

Plaintiffs may not rely upon a veil-piercing theory to claim that SAIAG or Comital SAIAG are liable for the actions of ITR based upon SAIAG's mere ownership interest in ITR. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks and citation omitted).

Thus, plaintiffs must present evidence to justify piercing the corporate veil to hold SAIAG or Comital SAIAG liable for the actions of ITR. "A party seeking to pierce the corporate veil and hold a parent corporation liable for the actions of its subsidiary must prove: (1) that the subsidiary was a 'mere instrumentality' of the parent, and (2) that the parent engaged in 'improper conduct' through its organization or use of the subsidiary." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320-21 (11th Cir. 1998).

Plaintiffs have not developed *any* evidence -- not to mention legally sufficient evidence -- that ITR was a mere instrumentality of SAIAG or Comital SAIAG. Even if such evidence were present, which it is not, the record contains no facts showing that SAIAG or Comital SAIAG engaged in improper conduct through its use of ITR. The mere fact that SAIAG owned 100 percent of the stock of ITR, and that SAIAG later merged with other companies to become Comital SAIAG, cannot support a veil piercing theory of liability. *See Harvest Food Group, Inc. v. Newport Int'l of Tierra Verde, Inc.*, No. 08-80681, 2008 U.S. Dist. LEXIS 95943, *9 n.1 (S.D. Fla. Nov. 17, 2008) (holding that a veil-piercing claim against a parent entity based upon the acts of its subsidiary cannot stand solely on the basis of its status as the parent entity).

Because plaintiffs have failed to present evidence justifying piercing the corporate veil as to SAIAG and Comital SAIAG, summary judgment is appropriate. *See, e.g.*, *Martin v. Thermo Electron Corp.*, No. 99-2547, 2001 U.S. Dist. LEXIS 24812, at *13-16 (S.D. Fla. Jan. 17, 2001) (granting summary judgment to parent company because plaintiff failed to present sufficient evidence to warrant piercing the corporate veil to hold the parent liable for the acts of its subsidiary or to hold the parent individually liable); *Molenda v. Hoechst Celanese Corp.*, 60 F. Supp. 2d 1294, 1300 (S.D. Fla. 1999) (granting summary judgment to defendant corporation where there was insufficient evidence to warrant holding defendant liable for the acts of a distinct corporation that is related only by virtue of a common parent), *aff'd*, 21 F.3d 600 (11th Cir. 2000); *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1359 (S.D. Fla. 1999) (granting summary judgment in favor of parent corporation where plaintiffs failed to provide evidence to support, among other theories, that the subsidiary was the mere instrumentality of the parent).

### 2. Plaintiffs Have Not Shown that SAIAG or Comital SAIAG Directed ITR's Participation in the Conspiracy

A parent company "cannot be held liable . . . merely because a viable Sherman Act claim has been asserted against its subsidiary." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 375-76 (M.D. Pa. 2008) (internal quotation marks omitted). Thus, "in the antitrust context, . . . absent allegations of anticompetitive conduct by the parent, there is no basis for holding a parent liable for the alleged antitrust violations of its subsidiary." *Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 178 (S.D.N.Y. 2006).

In those cases in which a court found that antitrust liability may stem from a parent-subsidiary relationship, it was because the parent company directed its subsidiary to implement the conspiracy. For example, in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-

1827, 2009 U.S. Dist. LEXIS 17792, at *13-14 (N.D. Cal. Mar. 3, 2009), the alleged antitrust conspiracy "was organized at the highest level of the defendant organizations" and was "implemented by subsidiaries and distributors within the corporate family . . . ." *Id.* Moreover, the individual participants in meetings "entered into agreements on behalf of, and reported . . . meetings and discussions to, their respective corporate families." *Id.* at *14 (internal quotation marks and citation omitted).

Here, plaintiffs have adduced no proof as to the liability of SAIAG or Comital SAIAG other than the mere fact of the parent-subsidiary relationship between SAIAG and ITR. (Pancamo Tr. 42:19 - 43:4; 43:25 - 44:4; 45:3 - 45:20.)  And there is no evidence that SAIAG or Comital SAIAG directed ITR to participate in the conspiracy, or that SAIAG or Comital SAIAG organized the conspiracy while relying upon ITR for its implementation.

Based upon the foregoing, plaintiffs have failed to meet their burden of proof on their claim against SAIAG and Comital SAIAG for anticompetitive conduct in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Accordingly, summary judgment as to SAIAG and Comital SAIAG is appropriate.

V.

## CONCLUSION

Based upon the foregoing, summary judgment should be granted on behalf of SAIAG and Comital SAIAG.

Dated: July 29, 2010

                                                Respectfully Submitted,

                                          By:     /s/ Susan E. Trench
                                                 Susan E. Trench
                                                 Florida Bar No. 253804
                                                 GOLDSTEIN, TANEN & TRENCH, P.A.
                                                 One Biscayne Tower, Suite 3700
                                                 Two South Biscayne Boulevard
                                                 Miami, FL 33131-1804
                                                 Telephone: (305) 374-3250
                                                 Facsimile: (305) 374-7632
                                                 Email: strench@gttpa.com

                                        CURTIS, MALLET-PREVOST,
                                          COLT & MOSLE LLP
                                             Joseph D. Pizzurro (*pro hac vice*)
                                             Nancy E. Delaney (*pro hac vice*)
                                             Timothy N. McCabe (*pro hac vice*)
                                             101 Park Avenue
                                             New York, NY 10178
                                             Telephone: (212) 696-6000
                                             Facsimile: (212) 697-1559

                                      *Attorneys for Defendants SAIAG, S.p.A,*
                                      *Comital SAIAG, S.p.A. and ITR, S.p.A.*

**CERTIFICATE OF SERVICE**

I HEREBY certify that on July 29, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record or *pro se* parties identified on the Mailing Information System for Case 08-MDL-1888.  Counsel of record currently identified on the Mailing Information System list to receive e-mail notices for this case are served via Notices of Electronic Filing generated by CM/ECF.  Counsel of record who are not on the Mailing Information list to receive e-mail notices for this case have been served via U.S. mail.

    /s/ Susan E. Trench
    Susan E. Trench

8038439