**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**MASTER DOCKET NO. 08-MDL-1888-GRAHAM/TURNOFF**

————————————————————— x
                                              )
**IN RE MARINE HOSE ANTITRUST**                )
**LITIGATION (NO. II)**                        )
—————————————————————        )
                                              )
**THIS DOCUMENT RELATES TO:**                  )
                                              )
**ALL ACTIONS**                                )
                                              )
————————————————————— x

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
**PROPOSED SETTLEMENT WITH PIRELLI & C, S.p.A. AND PIRELLI ITALA, S.p.A.**
<u>**AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**</u>

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I.   BACKGROUND .......................................................................................................... 2

II.  SUMMARY OF SETTLEMENT TERMS ................................................................... 6

     A.   Cooperation ....................................................................................................... 6

     B.   Release .............................................................................................................. 6

     C.   The Proposed Settlement Does Not Affect the Non-Settling
          Defendants' Joint and Several Liability for the Alleged Conspiracy ............... 7

     D.   Stipulation to Class Certification ...................................................................... 7

     E.   The Settlement Amount .................................................................................... 8

III. PROPOSED TIMETABLE ........................................................................................... 8

IV.  THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR,
     REASONABLE AND ADEQUATE TO AUTHORIZE DISSEMINATION
     OF NOTICE TO THE CLASS ..................................................................................... 9

     A.   Governing Standards ........................................................................................ 9

     B.   The Proposed Settlement Is Fair and Within The Range of Possible
          Approval ......................................................................................................... 11

V.   NOTICE TO THE CLASS .......................................................................................... 12

     A.   The Settlement Class ...................................................................................... 12

VI.  CONCLUSION ........................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adams v. S. Farm Bureau Life Ins. Co.*,
  493 F.3d 1276 (11th Cir. 2007)...................................................................................................13

*In re Ampicillin Antitrust Litig.*,
  82 F.R.D. 652 (D.D.C. 1979)......................................................................................................12

*In re Armored Car Antitrust Litig.*,
  472 F. Supp. 1357 (N.D. Ga. 1979) ............................................................................................11

*Axelrod v. Saks & Co.*,
  Nos. 76-3805, 76-4011, 77-172, 1981 WL 2031 (E.D. Pa. Feb. 23, 1981) ................................11

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984).............................................................................................10, 11

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981).......................................................................................................10

*In re Corrugated Container Antitrust Litig.*,
  MDL No. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ...........................................................12

*Figueroa v. Sharper Image Corp.*,
  517 F. Supp. 2d 1292 (S.D. Fla. 2007) .......................................................................................10

*Fresco v. Auto Data Direct, Inc.*,
  No. 03-61063, 2007 WL 2330895 (S.D. Fla. May 14, 2007) ................................................9, 10

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ..........................................................................................12

*In re Mid-Atlantic Toyota Antitrust Litig.*,
  564 F. Supp. 1379 (D. Md. 1983) .........................................................................................10, 12

*In re Shopping Carts Antitrust Litig.*,
  MDL No. 451, 1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) .........................................................11

*In re Traffic Exec. Ass'n E. R.R.*,
  627 F.2d 631 (2d Cir. 1980)........................................................................................................10

## RULES

Fed. R. Civ. P. 23(e) ......................................................................................................................2, 10

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................................................... 12

Fed. R. Civ. P. 23(e)(1)(C) ....................................................................................................... 10

## OTHER AUTHORITIES

THE MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.632 (2004) .............................................. 9

LOOP LLC and Bayside Rubber & Products, Inc. (together, "Plaintiffs"), on behalf of themselves and a Class of direct purchasers of Marine Hose[1], have entered into a settlement agreement (the "Settlement Agreement") with Defendants Pirelli & C, S.p.A. and Pirelli Itala, S.p.A., (together, "Pirelli" or "the Settling Defendants").

Under the Settlement Agreement[2] entered into with Settling Defendants, (attached hereto as Exhibit A), Pirelli has agreed to make a cash payment of $2.95 million to the Class.

In addition, Pirelli has agreed to cooperate with Plaintiffs in connection with Plaintiffs' continued prosecution of the litigation against the non-settling Defendants.

Plaintiffs now move the Court to enter a Preliminary Approval Order: (1) finding that the proposed settlement with Pirelli is sufficiently fair, reasonable and adequate to allow dissemination of notice of the Settlement to the proposed Settlement Class; (2) appointing Plaintiffs' Co-Lead Counsel as counsel for the Settlement Class; (3) establishing a date for a hearing on final approval of the proposed settlement; (4) approving the proposed forms of mailed notice and published summary notice of the proposed Settlement; (5) approving the proposed notice plan and directing that notice be disseminated; (6) establishing a deadline for filing papers in support of final approval of the proposed Settlement; (7) establishing a deadline for filing any objections to the proposed Settlement by Settlement Class members; and (8) establishing a deadline for Settlement Class members to exclude themselves from the proposed Settlement. Plaintiffs herewith submit a Proposed Preliminary Approval Order, Proposed Notice of

---

[1] All defined terms herein have the same meaning as in the Settlement Agreement (defined below) unless otherwise noted.

[2] "Settlement Agreement" and "Settlement" refer throughout to the settlement agreement that is being filed concurrently with this motion.

Settlement and Litigation, Proposed Summary Notice of Settlement and Litigation, and a Proposed Rule 54(b) Final Judgment Order as Exhibits B through E respectively.[3]

At this juncture, the Court need only determine whether the proposed settlement is sufficiently fair, reasonable and adequate to allow notice to be disseminated. Plaintiffs submit that the proposed settlement satisfies the required standards, and respectfully request that the Court authorize dissemination of notice pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and establish a schedule for final approval of the proposed settlement with Pirelli.

**I.    BACKGROUND**

This litigation commenced in May 2007 with the filing on behalf of direct purchasers of "Marine Hose," five antitrust class action lawsuits against Dunlop, Trelleborg, Yokohama, Parker, Bridgestone and several individual defendants, among others. Plaintiffs allege that Defendants violated Section 1 of the Sherman Act, 15 U.S.C. §1, by engaging in a conspiracy to fix, raise, maintain and/or stabilize the price of Marine Hose purchased in the United States from at least 1985 to 2007. Plaintiffs contend that, as a result of the conspiracy, Plaintiffs and the other members of the Class were injured, as the result of having paid artificially inflated prices for Marine Hose.

On May 2, 2007, the U.S. Department of Justice ("DOJ") announced that eight executives from the United Kingdom, France, Italy and Japan had been arrested in Houston and San Francisco and charged for their role in a conspiracy to fix prices, rig bids and allocate markets and customers for United States sales of Marine Hose. Also on May 2, 2007, a criminal

---

[3] Settlement Class members that have already submitted a claim form pursuant to Plaintiffs' previous settlements need not submit a second claim form. All class members' previous claim forms will be used to allocate their settlement proceeds. If any class member has not submitted a claim form or elects to change their previous claim form, they may contact the claims administrator for an additional claim form. By utilizing this abbreviated process, the cost of notice will be reduced.

complaint was unsealed in the Miami Division of this Court against four executives: Defendant Peter Whittle, owner of Defendant PW Consulting (Oil & Marine) Ltd.; Defendant Jacques Cognard, oil and marine manager of Trelleborg Industrie S.A. in France; and former Dunlop employees Defendants Bryan Allison (managing director) and David Brammar (sales and marketing director).

The DOJ also announced that a separate criminal complaint was filed on May 1, 2007 in the Fort Lauderdale Division of this Court against four other executives: Defendant Christian Caleca, president of the Industrial Hose Business Unit of Trelleborg Industrie S.A. in France; Defendant Giovanni Scodeggio, a business unit manager at Parker ITR S.r.l. in Italy; Defendant Francesco Scaglia, a product manager at Defendant Manuli Rubber Industries S.p.A. in Italy; and Defendant Misao Hioki, an executive involved in the sale of Marine Hose for Bridgestone Corporation in Japan. According to the criminal complaints, the charged executives participated in the conspiracy at various times during the period from at least 1999 to the date of the complaints.

Simultaneous with the May 2 arrests, agents of the Defense Criminal Investigative Service ("DCIS") of the Department of Defense's Office of Inspector General executed search warrants at locations throughout the United States. Competition authorities abroad, including the Office of Fair Trading in the U.K., the European Commission and the Japanese Fair Trade Commission, also raided the alleged conspirators' offices in Europe and Japan.

According to the affidavit filed in support of the criminal complaint charging Whittle, Allison, Brammar and Cognard, the conspirators met in locations such as Key Largo, Florida, Houston, Texas, Bangkok and London. At these meetings, the conspirators discussed and agreed to the rules for implementing their price-fixing, bid-rigging and allocation scheme. They also

kept agendas and detailed minutes of cartel meetings, and devised code names to conceal their involvement and communications.

According to court papers, Whittle, the cartel coordinator, collected approximately $300,000 a year, with each conspirator paying him about $50,000. The conspirators allegedly provided Whittle with information about upcoming Marine Hose jobs, and Whittle then designated which conspirator would win the job, referring to the winning conspirator as the "champion." The affidavit filed in support of the complaint charging Caleca, Scodeggio, Scaglia and Hioki alleges that members of the cartel met as recently as May 1, 2007 in a hotel in Houston, Texas for the purpose of carrying out the conspiracy.

On June 12, 2009, based on facts ascertained during discovery, Plaintiffs filed their Corrected Second Amended Complaint, adding allegations that Pirelli and its predecessors participated in the aforementioned conspiracy. [D.E. 490]. Specifically, Plaintiffs alleged that Pirelli and its predecessors participated in cartel meetings for the purpose of carrying out the conspiracy. *Id.* Plaintiffs alleged that co-conspirator Romano Pisciotti participated in the cartel to fix prices and allocate the market for Marine Hose while employed by Pirelli and its predecessors. *Id.*

Since May 2007, twelve (12) of the conspirators have pleaded guilty or agreed to plead guilty to participating in a Marine Hose antitrust conspiracy, including, Trelleborg Industrie, S.A.; Dunlop Oil & Marine Ltd.; Manuli Rubber Industries S.p.A.; Parker ITR S.r.l.; Robert L. Furness; Charles Gillespie; Bryan Allison; David Brammar; Peter Whittle; Christian Caleca; Jacques Cognard and Misao Hioki. Defendant The Yokohama Rubber Company Ltd. is in the DOJ's amnesty program.

4

On January 14, 2010, this Court issued an order granting final approval of settlements with Dunlop Oil & Marine Ltd., Bryan Allison and David Brammar (collectively, "Dunlop"), Trelleborg Industrie, S.A., Jacques Cognard and Christian Caleca (collectively, "Trelleborg"), The Yokohama Rubber Co., Ltd. ("Yokohama"), Parker Hannifin Corporation, Parker ITR S.r.l., and Giovanni Scodeggio (collectively, "Parker"), Bridgestone Corporation, Bridgestone Industrial Products America, Inc., and Misao Hioki (collectively, "Bridgestone"), Robert L. Furness ("Furness"), Charles Gillespie ("Gillespie"), and Peter Whittle and PW Consulting (collectively, "Whittle").  [D.E. 562].  On May 6, 2010, the Court issued an order preliminarily approving settlements with Defendants Manuli Rubber Industries, S.p.A., Manuli Oil & Marine (USA) Inc., Francesco Scaglia and Val M. Northcutt (collectively, "Manuli"), and Sumitomo Rubber Industries, Ltd.  The Court is scheduled to conduct a Final Approval Hearing in connection with these settlements on August 19, 2010.  [D.E. 582].

Settlement discussions with Pirelli began before May 2009 and were conducted by Plaintiffs' Co-Lead Counsel and Pirelli's counsel, the law firm of Weil, Gotshal & Manges LLP. All such negotiations continued and concluded with the execution of the Settlement Agreement attached hereto.  The negotiations, conducted by experienced and able counsel, were lengthy, vigorous and at all times conducted at arm's-length.

As part of each settlement negotiation with Pirelli, Plaintiffs' Counsel considered certain information concerning Pirelli's participation in the alleged antitrust violations that was, in the view of Plaintiffs' counsel, sufficient to enable them to evaluate the fairness, reasonableness and adequacy of the proposed settlement.

5

## II. SUMMARY OF SETTLEMENT TERMS

### A. Cooperation

The Settlement Agreement requires Pirelli to pay the settlement amounts, set forth supra, and requires Pirelli to cooperate extensively with Settlement Class Counsel in connection with the prosecution of Plaintiffs' claims against the remaining Defendants. This cooperation is detailed in the Settlement Agreement as follows: Section H, ¶¶ 27-41 of the Pirelli Agreement. The cooperation provisions for Pirelli generally include the agreement to:

- furnish documents or other items potentially relevant to Plaintiffs' claims in Pirelli's possession, custody, or control;

- make itself available for interviews with Settlement Class Counsel;

- make itself available for the provision of declarations and affidavits;

- make itself (or use reasonable efforts to make themselves) available for depositions by Settlement Class Counsel;

- make itself (or use reasonable efforts to make itself) available for trial testimony;

- have its counsel meet with Settlement Class Counsel to provide background relating to the alleged antitrust violations.

### B. Release

Upon the Effective Date and in consideration of Pirelli's payment and compliance with the cooperation provisions of the Settlement Agreement, the Releasees (as defined in ¶ 7 of the Settlement Agreement) shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action, damages, liabilities of any nature, including without limitation costs, expenses, penalties, and attorneys' fees, whether class, individual, representative or otherwise in nature, that Releasors (as defined in ¶ 8 of the Settlement Agreement), or any of them, ever had, now has, or hereafter can, shall, or may have directly, representatively, derivatively or in any other capacity against the Releasees or any of

6

them, whether known or unknown, suspected or unsuspected, in law or equity concerning the pricing, selling, discounting, marketing, manufacturing or distribution of Marine Hose based in whole or in part on the facts, occurrences, transactions, or other matters alleged in the Complaints filed by Plaintiffs against Pirelli or any of the other Defendants regarding Marine Hose which arise under any United States federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 et seq . (the "Released Claims") provided, however, that nothing in the Settlement Agreement shall release: (1) any claims made by purchasers who are solely indirect purchasers of Marine Hose as to such indirect purchases; (2) claims for any product defect, breach of contract, or similar claims relating to Marine Hose; or (3) claims under laws other than those of the United States for other than Class Claims. Pirelli Agreement, ¶ 17.

### C. The Proposed Settlement Does Not Affect the Non-Settling Defendants' Joint and Several Liability for the Alleged Conspiracy

The Settlement Agreement does not settle or compromise any claim by Plaintiffs or any Class member against any Defendant or alleged co-conspirator or entity other than the Releasees. Plaintiffs and Class members specifically reserve all of their rights against other Defendants or alleged co-conspirators not explicitly released in the Settlement Agreement.[4] *Id.* ¶ 43.

### D. Stipulation to Class Certification

The Settlement Agreement provides that the parties stipulate that the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied with respect to the

---

[4] The remaining Defendants in this litigation are Cuki, S.p.A. (f/k/a ITR, S.p.A.), SAIAG, S.p.A., and Comital SAIAG, S.p.A.

7

settlements, subject to Court approval, and that the following Settlement Class shall be certified for settlement purposes with respect to the Settlement Agreement:[5]

> All persons and entities (excluding Defendants, their predecessors, parents, subsidiaries, affiliates, and co-conspirators and the United States Department of Defense) who purchased Marine Hose in the United States directly from one or more of the Defendants or any of their predecessors, parents, subsidiaries, or affiliates at any time during the period from and including January 1, 1985 to and including March 24, 2008.

*Id.* ¶ 12.

At this time, Plaintiffs are seeking the Court's preliminary approval of the Settlement Agreement and authorization to disseminate notice to members of the proposed Settlement Class.

### E. The Settlement Amount

Pursuant to the Settlement Agreement, Pirelli has paid $2.95 million into a Settlement Fund for the benefit of the Class. *Id.* ¶ 18. Pirelli placed the Settlement Fund in escrow, where it is invested in United States Government Treasury obligations, and all interest earned on the $2.95 million shall become and remain a part of the Settlement Fund. *Id.* ¶ 22. Prior to the Effective Date of the Settlement Agreement, Settlement Class Counsel are authorized to make reasonable disbursements from the Settlement Fund for the purpose of publishing and mailing notice to the proposed Settlement Class, and to defray other expenses in connection with the administration of the Settlement. *Id.* ¶ 21.

### III. PROPOSED TIMETABLE

The proposed Preliminary Approval Order sets forth a procedure and schedule for disseminating notice to the Settlement Class and final approval of the proposed settlement. Plaintiffs' Settlement Class Counsel proposes the following schedule:

---

[5] This Court previously entered its Second Amended Order certifying this Class for litigation purposes on October 16, 2009. [D.E. 547].

8

    (1)    Notice to be mailed and posted on the internet approximately (14) days following the date of entry of the Preliminary Approval Order;

    (2)    Summary Notice to be published once in the national edition of *The Wall Street Journal* within ten (10) days after the Notice is mailed;

    (3)    Ten days (10) before the date fixed by this Court for the hearing on final approval of the Settlement Agreement, Settlement Class Counsel shall cause to be filed with the Clerk of this Court affidavits or declarations of the person(s) under whose general direction the mailing and publication of the Notice and Summary Notice were made in accordance with the Preliminary Approval Order;

    (4)    A hearing before the Court on final approval of the Settlement Agreement ("Final Approval Hearing") to be scheduled within approximately ninety (90) days of the date on which the Notice is mailed, or as the Court's schedule permits;

    (5)    All papers in support of final approval of the Settlement Agreement to be filed thirty (30) days prior to the Final Approval Hearing;

    (6)    Any requests for exclusion from the Settlement Class must be postmarked by forty-five (45) days prior to the Final Approval Hearing; and

    (7)    Any objections to the Settlement Agreement must be filed with the Court and served on Settlement Class Counsel and counsel for Pirelli within forty-five (45) days prior to the Final Approval Hearing.

## IV. THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE AND ADEQUATE TO AUTHORIZE DISSEMINATION OF NOTICE TO THE CLASS

### A. Governing Standards

THE MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.632 (2004), provides a framework for the Court's preliminary evaluation of a proposed class action settlement:

> Review of a proposed class action settlement generally involves two hearings. First counsel submit the proposed terms of settlement and the Judge makes a preliminary fairness evaluation . . . The Judge must make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and the date of the fairness hearing.

*See also Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). A court's authorization to disseminate notice constitutes its recognition that the

9

settlement is within the range of possible approval. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007). As one court noted, dissemination of notice "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980). *See also Fresco*, 2007 WL 2330895, at *4 ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, [if] there is probable cause' to notify the class of the proposed settlement.") (internal quotations omitted).

A proposed settlement falls within the "range of possible approval" under Rule 23(e) where there is a conceivable basis for presuming that the proposed settlement will meet the more rigorous standards applied for final approval. The standard for final approval of a class action settlement is whether the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(C); *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984).

When authorizing the dissemination of notice, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable, and adequate." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983). That determination must await the final hearing where the fairness, reasonableness and adequacy of the settlement is assessed under the factors set forth in *Bennett v. Behring Corp.*, *supra*.[6]

---

[6] The "Bennett Factors" that a court considers on a motion for final approval of a class settlement as "fair, reasonable and adequate" include: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.
*(continued ... )*

### B. The Proposed Settlement Is Fair and Within The Range of Possible Approval

The Settlement Agreement reached here is the product of extensive negotiations, which unfolded over a period of some 15 months and concluded only after Plaintiffs obtained information, including transaction data, sufficient to allow Plaintiffs' counsel to evaluate the Settlement Agreement. Further, the guilty pleas and related criminal trial have provided additional substantive information about the alleged conspiracy. The negotiations were conducted by Plaintiffs' counsel and by Pirelli's counsel. Nothing in the course of the negotiations or the substance of the Settlement Agreement presents any ground to doubt their fairness.

The Settlement Agreement requires Pirelli to make a cash payment of $2.95 million. This cash portion of the settlement reflects both the consideration of facts independently determined by Plaintiffs' counsel in their discovery and investigation, representations made and information provided by Pirelli and independently obtained by Settlement Class Counsel, and reflect a meaningful recovery. The settlement amount represents 23% of the estimated Marine Hose sales in the United States by the Pirelli Defendants during the Settlement Class Period – an excellent result and higher percentages than in settlements approved in other antitrust price-fixing class actions. *See, e.g., In re Shopping Carts Antitrust Litig.*, MDL No. 451, 1983 WL 1950, at *9 (S.D.N.Y. Nov. 18, 1983) (settlement representing 5.5% of sales approved); *Axelrod v. Saks & Co.*, Nos. 76-3805, 76-4011, 77-172, 1981 WL 2031, at *1 (E.D. Pa. Feb. 23, 1981) (recovery equal to 3.7% of total sales); *In re Armored Car Antitrust Litig.*, 472 F. Supp. 1357, 1368 (N.D. Ga. 1979) (recovery of less than 4% of sales).

---

*( … continued)*
*Bennett*, 737 F.2d at 986.

Another important aspect of the Settlement Agreement is the substantial cooperation to which Pirelli has agreed.  Because the remaining Comital SAIAG defendants purchased the Marine Hose business from Pirelli in October 1993, Pirelli's cooperation will be particularly useful in prosecuting the litigation.  The cooperation provisions of the Settlement Agreement provide a "substantial benefit" to the Class.  *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("The provision of such [cooperation] is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement."); *see also Mid-Atlantic Toyota*, 564 F. Supp. at 1386 ("[T]he commitment . . . defendants have made to cooperate with plaintiffs will certainly benefit the classes, and is an appropriate factor for a court to consider in approving a settlement"); *In re Corrugated Container Antitrust Litig.*,  MDL No. 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981) ("The cooperation clauses constituted a substantial benefit to the class."); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (discussing cooperation provisions, which were "invaluable to the plaintiffs," as a significant factor in approving the settlement).  The cooperation provisions of the Settlement Agreement here provide just such a substantial benefit to the Class.

V.      **NOTICE TO THE CLASS**

   A.      **The Settlement Class**

Federal Rule of Civil Procedure 23(e)(1)(B) provides that "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposed settlement." Plaintiffs propose providing individual, mailed notice to the extent practicable.  The Notice will be mailed, First Class and postage prepaid, to all persons and entities who have been identified by the Defendants in this litigation, as direct purchasers of Marine Hose in the United States from any defendant in this case during the Settlement Class Period.  In addition, many Class members have already submitted claims forms and will have the opportunity to participate in this

Settlement as well. The Notice will also be posted on the internet. The Summary Notice will be published once in the national edition of *The Wall Street Journal*.

Plaintiffs believe that the content and proposed method of dissemination of the Notice fulfills the requirements of Federal Rule of Civil Procedure 23(e)(1)(B) and due process. *See generally Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1285-88 (11th Cir. 2007). The Notice apprises Settlement Class members of the material settlement terms, and outlines the procedures (and related deadlines) for any Settlement Class member who desires to exclude themselves from the Settlement Agreement or object to the terms. The Notice also informs Settlement Class members of the date and place of the Final Approval Hearing. Further, the mailed Notice will advise the Settlement Class members that, in connection with the approval of the Settlement Agreement, Settlement Class Counsel will ask the Court for attorneys' fees, and reimbursement of litigation expenses.

## VI. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that Plaintiffs' Motion for Preliminary Approval of the Proposed Settlement with Defendants Pirelli & C, S.p.A. and Pirelli Itala, S.p.A. be granted, and that the Court permit notice of the Settlement Class to be issued.

Dated: August 6, 2010                                       Respectfully submitted,

*/s/ Hollis L. Salzman*
Hollis L. Salzman
Gregory Asciolla
William V. Reiss
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

13

hsalzman@labaton.com
gasciolla@labaton.com
wreiss@labaton.com

Gregory P. Hansel
Randall Weill
PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112
Telephone: (207) 791-3000
Facsimile: (207) 791-311 I
ghansel@preti.com
rweill@preti.com

Bruce E. Gerstein
Ephraim R. Gerstein
Dan Litvin
GARWIN GERSTEIN & FISHER LLP
1501 Broadway
Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Facsimile: (212) 764-6620
bgerstein@garwingerstein.com
egerstein@garwingerstein.com
dlitvin@garwingerstein.com

*Plaintiffs' Co-Lead Counsel and Proposed Settlement Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2010, I electronically filed the foregoing to be served via the Court's ECF system on all parties registered for electronic filing in *In re Marine Hose Antitrust Litigation* (No. II), Master Docket No. 08-MD-1888(DLG)(WT).

>
> */s/ Hollis L. Salzman*
> Hollis L. Salzman