**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Master Docket No. 08-MDL-1888-GRAHAM/TURNOFF**

_____
                                                            :
**IN RE: MARINE HOSE ANTITRUST**          :
**LITIGATION (NO. II)**                            :
_____:
                                                            :
**THIS DOCUMENT RELATES TO:**             :
**ALL ACTIONS**                                    :
_____:

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR FINAL APPROVAL OF PROPOSED SETTLEMENT WITH**
**SAIAG, S.p.A., COMITAL SAIAG, S.p.A. AND CUKI, S.p.A. (f/k/a ITR, S.p.A.)**

Dated:  January 4, 2011

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................................ 1

    A.    The Events Leading to the Litigation............................................................. 1

    B.    The Initial Complaints and the Creation of the MDL...................................... 3

    C.    Class Certification......................................................................................... 4

    D.    Preliminary Approval of the SAIAG Settlement Agreement ......................... 6

III.  SUMMARY OF MATERIAL SETTLEMENT TERMS .................................................... 6

IV.   NOTICE PROVIDED TO CLASS MEMBERS ............................................................. 6

    A.    Notice by Mail and Internet .......................................................................... 7

    B.    Notice by Publication in the *Wall Street Journal* .......................................... 7

V.    THE SAIAG SETTLEMENT AGREEMENT SHOULD BE GIVEN FINAL APPROVAL 8

    A.    Standard for Final Approval of Class Action Settlements.............................. 8

    B.    The SAIAG Settlement Agreement Is the Product of Arm's Length
        Negotiations ................................................................................................. 11

    C.    Analysis of the *Bennett* Factors .................................................................. 12

        1.    Likelihood of Success at Trial and Range of Potential Recovery......................... 12

        2.    Range of Possible Recovery and Point On or Below the Range at Which
            Settlement is Fair, Adequate and Reasonable ...................................... 15

        3.    Complexity, Expense, and Duration of Litigation ................................. 17

        4.    Substance and Amount of Opposition to the Settlement ...................... 19

        5.    Stage of Proceedings at Which Settlement Was Achieved................... 19

        6.    The Opinions of Class Counsel and the Class Representatives ........... 20

        7.    Approval of the SAIAG Settlement Agreement Is in the Best Interests of the
            Class ................................................................................................... 21

VI.   CONCLUSION............................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. S. Farm Bureau Life Ins. Co.*,
  493 F.3d 1276 (11th Cir. 2007) ...................................................................6, 7

*Allapattah Services, Inc. v. Exxon Corp.*,
  No. 91-0986-CIV, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006)............................................10

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002)...................................................................17, 19, 20

*In re Automotive Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d 336 (E.D. Pa. 2007) ...................................................................16

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988)................................................................... passim

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ...................................................................9, 10, 13, 17

*Bennett v. Behring Corp.*,
  96 F.R.D. 343 (S.D. Fla. 1982)...................................................................8

*Borcea v. Carnival Corp.*,
  238 F.R.D. 664 (S.D. Fla. 2006)...................................................................9, 10, 12, 17

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...................................................................9, 16, 17

*In re CP Ships Ltd. Sec. Litig.*,
  578 F.3d 1306 (11th Cir. 2009) ...................................................................10

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)...................................................................11

*Elkins v. Equitable Life Ins. Co. of Iowa*,
  No. 96-296, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998)...................................................................8

*Evans v. Jeff D.*,
  475 U.S. 717 (1986)...................................................................10

*Figueroa v. Sharper Image Corp.*,
  517 F. Supp. 2d 1292 (S.D. Fla. 2007) ...................................................................8, 10, 12, 15

*Fisher Bros., Inc. v. Mueller Brass Co.*,
  630 F. Supp. 493 (E.D. Pa. 1985) ...................................................................16

*Francisco v. Numismatic Guaranty Corp. of Am.*,
  No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008)......................................17, 19

*In re Linerboard Antitrust Litig.*,
  321 F. Supp. 2d 619 (E.D. Pa. 2004) ...................................................................................16

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 1298 (S.D. Fla. 2005) ............................................................................ passim

*Meijer, Inc. v. 3M*,
  No. Civ. A. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006)......................................16

*Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*,
  381 U.S. 311 (1965)............................................................................................................21

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950). .........................................................................................................6, 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .........................................................................................12

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ..............................................................................................11

*Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*,
  546 F. Supp. 1 (N.D. Ohio 1982)..........................................................................................9

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) ...............................................................10, 12, 15, 17

*In re Plastic Tableware Antitrust Litig.*,
  No. 94-CV-3564, 1995 WL 723175 (E.D. Pa. Dec. 4, 1995).................................................16

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) ..............................................................................................10

*In re Shell Oil Refinery*,
  155 F.R.D. 552 (E.D. La. 1993)...........................................................................................12

*Smith v. Crystian*,
  91 F. App'x 952 (5th Cir. 2004) ............................................................................................9

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) ........................................................................ passim

*In re Train Derailment Near Amite La.*,
  No. MDL 1531, 2006 WL 1561470 (E.D. La. May 24, 2006).................................................9

*Turner v. Murphy Oil USA, Inc.*,
    472 F. Supp. 2d 830 (E.D. La. 2007) ................................................................................11

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ........................................................................................17

*Warren v. City of Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1988) ...............................................................................20

## RULES, REGULATIONS & STATUTES

Federal Rules of Civil Procedure
    Rule 23(a) .........................................................................................................................5
    Rule 23(b)(3) .....................................................................................................................5
    Rule 23(e) ......................................................................................................................6, 9
    Rule 23(f) ........................................................................................................................14

15 U.S.C. §1 ................................................................................................................................4

28 U.S.C. § 1407 ........................................................................................................................4

## OTHER AUTHORITIES

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1797.5 (3d ed. 2005) .........................................................................................10

MANUAL FOR COMPLEX LITIGATION § 21.61 (4th ed. 2004) ......................................................10

Plaintiffs LOOP LLC and Bayside Rubber & Products, Inc. ("Plaintiffs"), on behalf of themselves and in their representative capacity on behalf of the Class, submit this memorandum in support of their Motion for Final Approval of Proposed Settlement with SAIAG, S.p.A.; Comital SAIAG, S.p.A.; and Cuki, S.p.A. (f/k/a ITR, S.p.A.) (collectively, "SAIAG Defendants" or "Settling Defendants").[1]  For the reasons that follow, the Court should grant Plaintiffs' Motion for Final Approval of Proposed Settlement and enter a Final Judgment Order reflecting the final approval of the settlement.  *See* Proposed Rule 54(b) Final Judgment Order, attached hereto as Exhibit 1.

I.      **INTRODUCTION**

Plaintiffs respectfully move for final approval of the proposed settlement with the SAIAG Defendants totaling $3 million ("SAIAG Settlement Agreement"), on the grounds that it is fair, reasonable and adequate.  Plaintiffs executed the SAIAG Settlement Agreement with the SAIAG Defendants on October 25, 2010.  On November 19, 2010, this Court entered an Order granting preliminary approval of the SAIAG Settlement Agreement.  [D.E. 687].  The final fairness hearing is set for February 18, 2011.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

A.      **The Events Leading to the Litigation**

Unbeknownst to the members of the Class, the dominant global producers of Marine Hose were operating a price-fixing cartel for decades before it was detected and shut down by competition authorities throughout the world.  On May 2, 2007, the U.S. Department of Justice ("DOJ") announced that eight executives of Marine Hose manufacturers from the United Kingdom, France, Italy, and Japan had been arrested in Houston and San Francisco and charged

---

[1] All defined terms herein have the same meaning as in the Settlement Agreement unless otherwise noted.

for their role in a conspiracy to fix prices, rig bids, and allocate markets and customers in the sale of Marine Hose in the United States.  On the same day, a criminal complaint was unsealed in the Miami Division of this Court against four individuals: Defendant Peter Whittle, the owner of Defendant PW Consulting (Oil & Marine) Ltd.; Defendant Jacques Cognard, Oil and Marine manager of Defendant Trelleborg Industrie S.A.; and former Dunlop employees and Defendants Bryan Allison and David Brammar, Dunlop's former Managing Director, and Dunlop's former Sales and Marketing Director, respectively.

The DOJ announced a separate criminal complaint on May 1, 2007, in the Ft. Lauderdale Division of this Court against four additional individuals: Defendant Christian Caleca, President of the Industrial Hose Business Unit of Trelleborg Industrie S.A.; Defendant Giovanni Scodeggio, a business unit manager at Defendant Parker ITR S.r.l.; Defendant Francesco Scaglia, a product manager at defendant Manuli Rubber Industries S.p.A.; and Defendant Misao Hioki, Marine Hose sales executive for Defendant Bridgestone Corporation.  According to these criminal complaints, the individual Defendants participated in a conspiracy to fix prices, rig bids, and allocate markets and customers in the sale of Marine Hose in the United States at various times during the period from – at the latest – 1999 through the date of the complaints.

Simultaneous with the May 2, 2007 arrests, agents of the Defense Criminal Investigative Service ("DCIS") of the Department of Defense's Office of the Inspector General ("DOD") executed search warrants at locations throughout the United States.  Various authorities abroad, including the Office of Fair Trading in the United Kingdom, the European Commission, and the Japanese Fair Trade Commission, also raided Defendants' offices in Europe and Japan. According to the affidavit filed in support of the criminal complaint charging Whittle, Allison, Brammar, and Cognard, the conspirators met in locations throughout the United States and

abroad, such as Key Largo, Houston, Bangkok and London to discuss their price-fixing, bid-rigging, and allocation scheme.  The conspirators kept agendas and detailed minutes of the their meetings, employing code names to conceal their involvement in communications related to the conspiracy.

According to the affidavits filed in support of the criminal complaints, Defendant Whittle acted as the conspiracy's coordinator and was paid some $300,000 a year for his role, with each conspirator paying him approximately $50,000. Whittle, based on information provided to him by the conspirators about upcoming Marine Hose bids, would determine which of the conspirators would win certain contracts.  Whittle designated the winner of the bid as the "champion."  The affidavit filed in support of the complaint charging Caleca, Scodeggio, Scaglia, and Hioki alleges that members of the cartel met for the purpose of carrying out the conspiracy as recently as May 1, 2007, in a Houston hotel.

Since May 2007, thirteen of the conspirators, including Defendants Parker ITR S.r.l., Trelleborg Industrie, S.A., Dunlop Oil & Marine Ltd., Manuli Rubber Industries SpA, Robert L. Furness, Charles Gillespie, Bryan Allison, David Brammar, Peter Whittle, Christian Caleca, Jacques Cognard, and Misao Hioki, have pleaded guilty or have agreed to plead guilty to participating in the Marine Hose antitrust conspiracy.  Defendant Yokohama is in the DOJ's amnesty program.

**B.    The Initial Complaints and the Creation of the MDL**

This litigation was commenced beginning in May 2007 with the filing of five antitrust class actions against Dunlop, Trelleborg, Yokohama, Parker, Bridgestone, Manuli and several individual defendants, among others (collectively, "Defendants") on behalf of direct purchasers

of "Marine Hose."[2]  Plaintiffs alleged that Defendants violated Section 1 of the Sherman Act, 15 U.S.C. §1, by engaging in a conspiracy to fix, raise, maintain and/or stabilize the prices of Marine Hose purchased in the United States from at least 1985 to 2007.  Plaintiffs claimed that, as a result of the conspiracy, they and the other members of the proposed class were injured by paying noncompetitive and artificially inflated prices for Marine Hose.

Of the five class actions that began this litigation, four were filed in the Southern District of Florida, and one was filed in the Southern District of New York.  Because multiple cases with common questions of fact were pending in different federal districts, the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel") was asked to determine whether these cases should be centralized for pretrial purposes.  On January 23, 2008, pursuant to 28 U.S.C. § 1407, the MDL Panel ordered the pending cases be centralized in the Southern District of Florida because the cases involved common questions of fact and arose from common allegations that Defendants engaged in a global conspiracy to fix prices, rig bids, and allocate markets for Marine Hose and related products.  The MDL Panel selected this Court as it would better serve the convenience of the parties and witnesses and would promote the just and efficient conclusion of the litigation.

## C.    Class Certification

Plaintiffs' motion for class certification was opposed by certain Defendants.  The Court overruled these Defendants' objections and granted Plaintiffs' Motion on August 4, 2009.

---

[2] "Marine Hose," as defined in the Proposed Settlement, means "a flexible rubber hose and ancillary products used to, among other things, transport oil between offshore operations, ships, terminals, refineries, buoys and storage tanks." For purposes of the Proposed Settlement, "Marine Hose" does not include dredge hose, hydraulic hose or industrial hose.  SAIAG Settlement Agreement ¶ 6.

Overall, the Court held that Plaintiffs met their burden for class certification under Fed. R. Civ. P. 23(a) and 23(b)(3).  Specifically, the Court concluded that certification of the class was proper under Rule 23(a) because: (1) the number and geographic dispersion of the class members would have made joinder impracticable; (2) the several common questions of law and fact stemmed from the Defendants' alleged engagement in the same antitrust conspiracy; (3) the claims arose from the same event or pattern and were based on the same legal theory; and (4) the proposed class counsel were capable of adequately representing the class.  The Court further held that class certification was proper under Rule 23(b)(3) because questions of law or fact common to the members of the class predominated over any questions affecting only individual members and a class action would be superior to other available methods for fair and efficient adjudication of the controversy.

In its October 16, 2009 Second Amended Order granting class certification and granting preliminary approval of the Partial Settlement reached with certain other defendants in this case[3] [D.E. 547], the Court certified the following class:

> All persons and entities (excluding Defendants, their predecessors, parents, subsidiaries, affiliates, and co-conspirators and the United States Department of Defense) who purchased Marine Hose in the United States directly from one or more of the Defendants or any of their predecessors, parents, subsidiaries, or affiliates at any time during the period from January 1, 1985 to and including March 24, 2008.

---

[3] These settlements were given final approval on January 14, 2010 [D.E. 562].  In addition, a second round of settlements between the Class and Defendants Manuli and Sumitomo were finally approved on August 20, 2010 [D.E. 643] and a third settlement between Plaintiffs and Pirelli & C, S.p.A. and Pirelli Itlala, S.p.A. was finally approved on November 15, 2010 [D.E. 686].

### D.    Preliminary Approval of the SAIAG Settlement Agreement

On November 1, 2010  Plaintiffs moved for preliminary approval of the SAIAG

Settlement Agreement.  The Court granted Plaintiffs' motion on November 19, 2010 [D.E. 687].

The Court considered the terms of the proposed settlement and found it sufficiently fair,

reasonable and adequate to warrant preliminary approval and dissemination of notice to the

Settlement Class.

In preliminarily approving the SAIAG Settlement Agreement, the Court ordered Class

Counsel to cause a notice of proposed settlement of class action with the Settling Defendants and

hearing on settlement approval to be mailed to all members of Class within 14 days of the Order.

Class Counsel was further ordered to cause notice to be published at least once at a readily

accessible web address and publish a summary notice in the Wall Street Journal.

## III.    SUMMARY OF MATERIAL SETTLEMENT TERMS

Pursuant to the SAIAG Settlement Agreement, the SAIAG Defendants have paid $3

million into a Settlement Fund for the benefit of the Class.  SAIAG Settlement Agreement ¶ 18.

## IV.    NOTICE PROVIDED TO CLASS MEMBERS

Rule 23(e) of the Federal Rules of Civil Procedure mandates that reasonable notice of a

class action settlement must be given to all class members.  Notice must be "reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of the action

and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &

Trust Co.*, 339 U.S. 306, 314 (1950).  Notice must provide "information reasonably necessary to

make a decision [whether] to remain a class member and be bound by the final judgment."

*Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1287 (11th Cir. 2007).   To satisfy notice

requirements, "it is not only necessary that the notice reach the parties affected but that it convey

the required information." *Id.* at 1285-86.  Therefore, the steps taken in distribution of notice

must constitute "the best notice practicable under the circumstances." *Id.* at 1287. Because due process requires that proper notice be given to affected parties, "when notice is a person's due, process which is a mere gesture is not due process." *Mullane,* 339 U.S. at 315. However actual receipt of notice by each individual that would be bound by the adjudication of the class action is not required. *Adams*, 493 F. 3d at 1287. The forms of notice given in connection with the approval of the proposed Settlement constitute the most reasonable forms of providing notice to members of this particular Class. As discussed below, Plaintiffs have complied with their duties to provide notice.

### A.    Notice by Mail and Internet

In its Order Granting Preliminary Approval of Proposed Settlement, this Court ordered Class Counsel to cause a Notice of Proposed Class Action and Settlement of Class Action with the SAIAG Defendants and Hearing on Settlement Approval ("Notice"), to be sent via first-class mail within 14 days of the entry of the Order to all members of the Class who can be identified using reasonable efforts and to any persons who request the Notice and claim form. In compliance with this Court's Order, Class Counsel caused the Notice and claim form to be mailed to the members of the Class via first-class mail, postage prepaid. In further compliance with this Court's Order, Class Counsel posted a copy of the Notice on the Internet. The website is a readily accessible web address and is identified in all Notices that Class Counsel caused to be mailed to Class members.

### B.    Notice by Publication in the *Wall Street Journal*

In addition, Class Counsel published the summary notice once in the national edition of *The Wall Street Journal* on December 9, 2010.

## V.    THE SAIAG SETTLEMENT AGREEMENT SHOULD BE GIVEN FINAL APPROVAL

### A.    Standard for Final Approval of Class Action Settlements

Settlement of complex class action litigation is clearly favored by courts, is in the public interest, and is greatly preferable to the expense and likely duration of protracted litigation, which would include, *inter alia*, further briefing, depositions, expert preparation, trial, and possible appeals.  *See*, *e.g*., *Figueroa v. Sharper Image Corp*., 517 F. Supp. 2d 1292, 1319 (S.D. Fla. 2007) ("there exists 'an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.'").  *See also Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 538 (S.D. Fla. 1988) ("When exercising its discretion, a court should always review the proposed settlement in light of the strong judicial policy that favors settlements.  Litigants should be encouraged to determine their respective rights between themselves.  This policy has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice ….") (internal citations and quotations omitted); *Bennett v. Behring Corp*., 96 F.R.D. 343, 348 (S.D. Fla. 1982) ("[I]t has been repeatedly recognized that settlements are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits.") (internal quotations omitted) ; *Elkins v. Equitable Life Ins. Co. of Iowa*, No. 96-296, 1998 WL 133741, at *27 (M.D. Fla. Jan. 27, 1998) ("The federal courts have long recognized that compromises of disputed claims are favored by the courts.  Particularly in class action suits, there is an overriding public interest in favor of settlement.") (internal citations and quotations omitted).

The Court should review the applicable factors through the prism that the law favors settlements and that a presumption is made in favor of the settlements' fairness absent contrary evidence. *Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004). The public interest favoring settlement is especially apparent in the class action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocketing expenses. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *In re Train Derailment Near Amite La.,* No. MDL 1531, 2006 WL 1561470, at *11 (E.D. La. May 24, 2006) ("But for amicable resolution of this class action by compromise . . . its disposition would almost certainly have been a complicated, lengthy, and exceedingly expensive enterprise ….").

"Rule 23(e) of the Federal Rules of Civil Procedure requires that a settlement or compromise of a class action be approved by the district court." *Bennett v. Behring Corp.*, 737 F.2d 982, 985 (11th Cir. 1984). The Eleventh Circuit's interpretation of Rule 23(e) is that "[a] proposed settlement action should be approved as long as it is 'fair, adequate and reasonable and it is not the product of collusion between the parties.'" *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 672 (S.D. Fla. 2006) (quoting *Bennett*, 737 F.2d at 986).

Courts are not expected "to convert settlement hearings into trial on the merits" or "mini-trials." *Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 6 (N.D. Ohio 1982) ("While proponents of the settlement bear the burden of proving that the proposal should be approved, they should not be required to stage a mini-trial on the merits, the event which settlement aims to preclude") (internal citation and quotations omitted, quoting *In re Armored Car Antitrust Litig.*, 472 F. Supp. 1357, 1367 (N.D. Ga. 1979), *aff'd in part, rev'd in part on other grounds*, 645 F.2d 488 (5th Cir. 1981)).

The merits of the case are not at issue during the settlement review process, otherwise, a primary goal of settlement – to avoid the risk, expense and delay of trial – would be thwarted. *Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983) (citing *Young v. Katz,* 447 F.2d 431, 433 (5th Cir. 1971)).  The court is also limited in that it may not make unilateral modifications or alterations to the proposed settlement, but rather may only accept or reject the agreement as a whole.  *See Evans v. Jeff D.,* 475 U.S. 717, 726-27 (1986); *see also* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1797.5 at n.9 (3d ed. 2005); MANUAL FOR COMPLEX LITIGATION § 21.61 (4th ed. 2004).  The Court may not resolve contested issues of fact or law, but instead should be concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation.

The court's first step is to determine whether a settlement was negotiated in good faith and that it was not the product of fraud or collusion.  *Figueroa*, 517 F. Supp. 2d at 1321.  Once it has been determined that the settlement was negotiated in good faith, the court must determine whether the settlement is fair, adequate, and reasonable.  This requires consideration of the following factors:  (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point at or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and the amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved.  *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1317-18 (11th Cir. 2009) (citing *Bennett*, 737 F.2d at 986).  *See also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1379-80 (S.D. Fla. 2007) (Seitz, J.) (applying *Bennett* factors in determining if settlement is fair, adequate, and reasonable); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-0986-CIV, 2006 WL

1132371, at *10-11 (S.D. Fla. Apr. 7, 2006) (Gold, J.) (same); *Borcea,* 238 F.R.D. at 672-73

(same); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314-15 (S.D. Fla. 2005) (Altonaga,

J.) (same).  All of these factors need not weigh in favor of the settlement; courts are to weigh the

totality of these factors in light of the particular circumstances of the case.  *See D'Amato v.*

*Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).  Further, "[i]n assessing these factors, the Court

should be hesitant to substitute … her own judgment for that of counsel."  *Lipuma*, 406 F. Supp.

2d at 1315 (quoting *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991)).

### B.    The SAIAG Settlement Agreement Is the Product of Arm's Length Negotiations

When a court reviews an otherwise private consensual agreement, such review "must be

limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

of fraud or overreaching by, or collusion between, the negotiating parties."  *Officers for Justice*

*v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Further, "a

presumption exists that settlement negotiations were conducted properly in the absence of

collusion if the terms of the proposed settlement are demonstrably fair."  *Turner v. Murphy Oil*

*USA, Inc.*, 472 F. Supp. 2d 830, 846 (E.D. La. 2007) (citing *In re Corrugated Container*

*Antitrust Litig.,* 643 F.2d 195, 212 (5th Cir. 1981)).

Here, experienced counsel for the parties negotiated the settlement at arm's length.  The

arm's length settlement negotiations took place over the course of approximately one year and

the SAIAG Settlement Agreement was achieved only after an arduous court-ordered mediation

that lasted a full day and further post-mediation negotiations that resulted in a settlement on the

eve of trial.  The negotiations were hard fought, both in the preliminary stages and as a written

settlement agreement was hammered out over numerous drafts.  Class Counsel received detailed

analyses from their expert witness economists Nathan Associates in connection with the

negotiation of the settlement amount, in light of potential damages recoverable from the SAIAG Defendants arising from their sales of Marine Hose in the U.S.  Settlement discussions involved complicated issues, and included in-person meetings and telephone conferences.  Class Counsel were able to effectively and critically evaluate the case and propriety of settlement with the SAIAG Defendants as a result of the extensive discovery that was conducted throughout this litigation.  Moreover, through the lengthy settlement negotiations, the parties gained a firm understanding of each others' positions and the arguments that others intended to assert in connection with further litigation.

As a result, it is clear that the SAIAG Settlement Agreement is the result of fair and reasonable negotiations.  Indeed, Class Counsel, who have extensive experience in antitrust cases and the prosecution of complex class action litigation in general, have made a considered judgment that the SAIAG Settlement Agreement is not only fair, reasonable and adequate but an excellent result for the Class.  Their opinion is entitled to "great weight."  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").  As a result, the SAIAG Settlement Agreement is entitled to a strong presumption of fairness.

C.   **Analysis of the *Bennett* Factors**

The *Bennett* factors support granting final approval of the proposed Settlement.  Here, "[i]t [is] proper to take the bird in the hand instead of a prospective flock in the bush."  *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993).

1.   **Likelihood of Success at Trial and Range of Potential Recovery**

Of all the *Bennett* factors, likelihood of success at trial is "by far the most important." *Figueroa*, 517 F. Supp. 2d at 1323.  "Where a substantial question exists regarding the likelihood

of success at trial, this factor weighs in favor of approving a proposed class action settlement."

*Perez*, 501 F. Supp. 2d at 1380 (citing *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1330-31

(S.D. Fla. 2001)).  Courts are not to engage in a claim-by-claim evaluation, but rather "evaluate

the proposed settlement in its totality."  *Borcea*, 238 F.R.D. at 673 (citing *Wal-Mart Stores, Inc.*

*v. Visa, U.S.A., Inc.*, 396 F.3d 96, 106-07 (2d Cir. 2005)).  In general, the court is to weigh the

likelihood of success on the merits against the amount and form of relief contained in the

settlement.  *Lipuma*, 406 F. Supp. 2d at 1319.

      The first *Bennett* factor weighs in favor of approving the SAIAG Settlement Agreement.

While Plaintiffs have been confident throughout the course of this litigation that they could

prevail at trial, a favorable result is by no means guaranteed if this litigation were to proceed

through trial and possibly numerous appeals.

      Uncertainties weigh heavily in favor of settlement.  *See Sunbeam*, 176 F. Supp. 2d at

1330; *see Bennett*, 737 F.2d at 986-87.  In *Sunbeam*, where the issue of causation posed a

"significant hurdle" for class plaintiffs to overcome, the court found the "substantial question as

to the likelihood of complete success at trial" favored approving the proposed settlement.

*Sunbeam,* 176 F. Supp. 2d at 1330-31.

      Here, despite this Court's favorable ruling on class certification, the disputed issues of

causation and damages still remain, as well as the substantial and uncertain practical challenges

of the SAIAG defendants' ability to pay, the difficulty of collecting a U.S. judgment in Italy, and

the potential significant resulting delays in making a cash recovery for the Class.

      It bears repeating that Plaintiffs are confident in their case, but that is no guarantee of

success.  For example, although Plaintiffs obtained summary judgment against ITR, S.p.A. (f/k/a

Cuki, S.p.A.) as to its liability under Section 1 of the Sherman Act for its participation in the

conspiracy to fix prices and allocate markets for the sale of Marine Hose in the United States, and even if Plaintiffs were to establish at trial liability under Section 1 of the Sherman Act as to Comital SAIAG, S.p.A. and SAIAG, S.p.A., Plaintiffs would still have to prove that the agreement caused overcharges.  If the jury were to determine that some other factor caused price increases, Plaintiffs may not be entitled to recovery.

Even if Plaintiffs were able to establish causation, they would nonetheless have to prove damages, an equally contested issue in this litigation, in order to receive a monetary award under the Clayton Act.  Absent the proposed SAIAG Settlement Agreement, Plaintiffs face the significant risk of recovering an amount significantly less than that provided by the settlement, or even nothing, because the amount of damages could vary significantly depending on various factors, including whether Plaintiffs can prove the extent of overcharges, if any.

As such, the outcome of a trial on the merits is plainly uncertain, as illustrated by the acquittal of Defendants Northcutt and Scaglia in their trial in the related criminal case in West Palm Beach.  Adverse findings at trial could eliminate Plaintiffs' ability to recover anything. There is a risk that, even if Plaintiffs were to obtain a favorable outcome on liability at trial, they might be awarded an amount that is less than the $3 million figure that the instant proposed settlement provides.  Furthermore, as the SAIAG Defendants might well appeal any decision in favor of Plaintiffs – indeed as they have already done with their attempted Rule 23(f) appeal of class certification – Plaintiffs face the risk that it may take years before they recover and collect the first dollar.  The potential difficulty of collecting a judgment is exacerbated by the fact that the SAIAG Defendants are international corporations located in Italy.

In light of the highly contentious issues of causation and damages in this case, there is no guarantee that a trial on the merits will result in a reasonable recovery for each Class member.

By contrast, through the SAIAG Settlement Agreement, Class Counsel have obtained an immediate and certain recovery of $3 million for the Class.

Thus, as the outcome of a trial on the merits is far from certain, the first *Bennett* factor weighs in favor of granting final approval of the SAIAG Settlement Agreement.

### 2.    Range of Possible Recovery and Point On or Below the Range at Which Settlement is Fair, Adequate and Reasonable

The second and third *Bennett* factors are "easily combined" and are usually analyzed together. *Figueroa*, 517 F. Supp. 2d at 1326 (citing *Behrens*, 118 F.R.D. at 541); *Lipuma*, 406 F. Supp. 2d at 1322. First, a district court must "determine the appropriate standard of damages (in order to calculate the range of recovery), and then determine where in this range of recovery a fair, adequate and reasonable settlement amount lies." *Perez*, 501 F. Supp. 2d at 1380-81. While there is a possibility that Plaintiffs might prevail at trial and win a significant monetary award, Plaintiffs also face the risk that they will receive nothing after trial and may have to overcome numerous appeals.

Plaintiffs believe that the amount of aggregate damages recoverable by the Class before trebling are probably in the eight figure range. Conversely, the SAIAG Defendants will contend that Plaintiffs' damages are zero because Plaintiffs cannot prove causation and damages to the Class. This Court has recognized that "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery" and "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens,* 118 F.R.D. at 542 (citations omitted) (proposed settlement of $.20 a share of desired recovery of $3.50 a share is not indicative of an inadequate compromise); *Sunbeam*, 176 F. Supp. 2d at 1332 ("the fact that this settlement gives the class members the immediate and concrete opportunity to share in a large pecuniary sum, the proposed

settlement of $110 million [where the highest estimate of aggregate damages was $1.1031 billion] appears to fall well within the range of what is fair, adequate, and reasonable").

The Class, which is comprised of at least sixty distinct business entities, will share in the $3 million cash proposed settlement, net of attorneys' fees and expenses. This amount represents 22.1% of the SAIAG Defendants estimated gross United States sales during the Settlement Class Period. This percentage falls within a range of reasonableness when viewed in the context of other percentages in antitrust class action settlements. *See e.g.*, *In re Automotive Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007) (approving settlement fund equal to approximately 1.5% of defendants Sherwin-Williams and PPG's sales of automotive refinishing paint for the four years during the Class Period in which it had its highest sales totals); *Meijer, Inc. v. 3M*, No. Civ. A. 04-5871, 2006 WL 2382718, at *16 (E.D. Pa. Aug. 14, 2006) (approving settlement fund equal to approximately 2% of defendant 3M's sales to the settlement class); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (approving settlement equal to 1.62% of the settling defendants sales); *In re Plastic Tableware Antitrust Litig.*, No. 94-CV-3564, 1995 WL 723175, at *1 (E.D. Pa. Dec. 4, 1995) (approving settlement greater than 3.5% of sales); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement equal to 0.2% of relevant sales).

Here, under the SAIAG Settlement Agreement, the Class stands to receive a $3 million recovery from Settling Defendants; thus, both the range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable weigh in favor of approving the Settlement. The second and third *Bennett* factors support granting final approval of the SAIAG Settlement Agreement.

16

### 3.    Complexity, Expense, and Duration of Litigation

"The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Behrens*, 118 F.R.D. at 543.  In addition, "[i]n these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources." *Cotton*, 559 F.2d at 1331. "Complex litigation can occupy the court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Borcea*, 238 F.R.D. at 674 (quoting *Woodward v. NOR-AM Chem. Co.*, No. 94-0780, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996)) (internal quotation marks and alteration omitted).

When considering the complexity, expense and duration of litigation, "[t]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise of the mere possibility of relief in the future, after protracted and extensive litigation." *Id.*  Certain factors that courts consider when evaluating this factor include the costs of experts and technical consultants, *Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124, at *10 (S.D. Fla. Jan. 31, 2008), the likelihood of an appeal, *Perez*, 501 F. Supp. 2d at 1381, and the court's resources and time necessary to try the case, *Borcea*, 238 F.R.D. at 674.  In particular, "[c]lass actions [ ] have the well-deserved reputation as being most complex," and the instant case is no exception.  *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *Sunbeam*, 176 F. Supp. 2d at 1329; *see also*, *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Bennett*, 737 F.2d at 986; *Behrens*, 118 F.R.D. at 538; *Cotton*, 559 F.2d at 1331.

Courts must balance a proposed settlement against the enormous time and expense of achieving a potentially more favorable result through further litigation.  *Sunbeam*, 176 F. Supp.

2d at 1332 (more than three years of complex litigation before settlement reached); *Behrens*, 118 F.R.D. at 543 (over two years of hard-fought litigation prior to settlement).

As detailed above, Plaintiffs would have significant legal and factual hurdles to overcome in order to successfully prosecute their claims against Defendants not to mention the risk associated with collection of judgment against foreign Defendants located in Italy.  While Class Counsel believe that Plaintiffs' evidence and experts are more persuasive than Defendants' evidence and any experts they may retain, there is no guarantee that Plaintiffs will prevail at trial. Moreover, there is no assurance that, even if the jury found the conspiracy caused some overcharges, the jury would find that the overcharges are as extensive or go back as far in time as Plaintiffs claim they do, which would reduce a potential damage award significantly.  These complexities make it clear that the $3 million recovery is within the range of reasonableness.

While Class Counsel believe they have developed persuasive evidence to refute these defenses – as shown by the magnitude of the proposed settlements achieved – there is no assurance that Plaintiffs' claims against Settling Defendants would have succeeded at trial.  Even if Plaintiffs were to prevail, the victory would most definitely be at considerable expense after a protracted trial and possible lengthy appeals.

If the SAIAG Settlement Agreement was not reached, the parties would certainly pursue trial and possible post-trial motions after entry of judgment, all of which would cost both sides a great deal.  Even if Plaintiffs were to prevail at trial, appeals of the verdict could drag on for several years before Class members saw any of the benefits of the judgment.  Moreover, collection of a judgment against the foreign SAIAG Defendants would be both timely and costly and there is no assurance that Plaintiffs would be successful.  Approval of the SAIAG Settlement Agreement that Class Counsel and the SAIAG Defendant's counsel have negotiated will result in

a swift resolution to this complex, costly, and already protracted litigation.  For these reasons, the third *Bennett* factor weighs in favor of final approval of the SAIAG Settlement Agreement.

### 4. Substance and Amount of Opposition to the Settlement

"In determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an important factor." *Lipuma*, 406 F. Supp. 2d at 1324.  If the objectors are a low percentage of the class, this demonstrates that the settlement is reasonable; however, if the percentage of objectors is high, this indicates that the settlement may not be fair and reasonable. *Id.*

Pursuant to the Court's November 19, 2010 Order granting preliminary approval of the SAIAG Settlement Agreement [D.E. 687], members of the settlement Class may object to the terms of the SAIAG Settlement Agreement no later than thirty (30) days before the final hearing. Plaintiffs' motion for final approval of the SAIAG Settlement Agreement is also due forty-five (45) days before the final hearing.  As of the filing of this motion, Class Counsel have received no objections to the SAIAG Settlement Agreement.[4]

### 5. Stage of Proceedings at Which Settlement Was Achieved

Courts evaluate the stage of the proceedings at which settlement was achieved in order to ensure that the parties are at a proper juncture and have sufficient information to settle. *Ass'n for Disabled Americans*, 211 F.R.D. at 470.  Class Counsel must have "sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation." *Francisco*, 2008 WL 649124, at *11.  The fact that "the case ha[s] progressed to a point where each side [i]s well aware of the other side's position and the merits thereof … weighs in favor of

---

[4] Notably, there were no objections to any of the three rounds of prior settlements, which the Court finally approved on January 14, 2010, August 20, 2010 and November 15, 2010  [D.E. 562, D.E. 643, D.E. 686].

the Court finding the proposed settlement to be fair, adequate, and reasonable." *Sunbeam*, 176 F. Supp. 2d at 1332 (settlement reached shortly before trial was approved); *Ass'n for Disabled Americans,* 211 F.R.D. at 470 (settlement reached after extensive discovery and settlement negotiations was approved); *Behrens*, 118 F.R.D. at 544 (settlement reached after several months of discovery and settlement negotiations was approved).

The SAIAG Settlement Agreement was reached on the eve of trial after several motions to dismiss Plaintiffs' claims were denied, extensive discovery of millions of pages of documents had occurred, over a dozen depositions were completed and Plaintiffs motion for summary judgment as to Cuki, S.p.A.'s liability was granted.  This gave both Plaintiffs and Settling Defendants ample opportunity to weigh the potential costs and risks of trial.  The risks to Plaintiffs are detailed *supra*.  Settling Defendants were faced with a certified Class with a strong liability case supported by documentary evidence and a number of criminal guilty pleas.  The settling parties made a reasoned decision that settlement would be in their mutual best interest. This factor also weighs in favor of granting final approval of the proposed Settlement.

### 6.      The Opinions of Class Counsel and the Class Representatives

Courts give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation."  *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988).  Class Counsel believe that the SAIAG  Settlement Agreement is fair, adequate, and reasonable.  Class Counsel for this case are Labaton Sucharow LLP, Preti, Flaherty, Beliveau & Pachios LLP and Garwin, Gerstein & Fisher LLP, all of whom have extensive experience in complex antitrust class action cases.  As discussed above, Class Counsel negotiated the SAIAG Settlement Agreement at arm's-length after having access to the key documents and witnesses and independently analyzing all relevant considerations.

7.      **Approval of the SAIAG Settlement Agreement Is in the Best Interests of the Class**

As demonstrated *supra*, the application of the *Bennett* factors here, demonstrates that the SAIAG Settlement Agreement is fair, adequate and reasonable, and should be approved by this Court.

The SAIAG Settlement Agreement is in the best interests of the Class in that it provides a significant monetary recovery to the Class in compensation for the overcharges it has incurred. Pursuant to the proposed plan of allocation, the $3 million settlement amount, net of attorneys' fees and litigation expenses, subject to Court approval, is to be distributed *pro rata* to all Class members who timely submit a valid claim based on their proportion of purchases from Defendants.   This settlement will also serve to deter similar anti-competitive conduct by others in the marketplace. *See Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311, 318 (1965) ("Congress has expressed its belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws.").

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to grant their Motion for Final Approval of the SAIAG Settlement Agreement, and enter a Final Judgment Order reflecting final approval.  To do so would serve the best interests of the Class and is consistent with the strong public policy favoring settlement of antitrust class actions.

Dated:  January 4, 2011                       Respectfully submitted,

                                              */s/ Robert C. Josefsberg*
                                              PODHURST ORSECK, P.A.
                                              City National Bank Building
                                              25 West Flagler Street, Suite 800
                                              Miami, FL 33130
                                              Telephone: (305) 358-2800
                                              Facsimile: (305) 358-2382
                                              Robert C. Josefsberg

21

Florida Bar No. 040856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr.
Florida Bar No. 503800
vdiaz@podhurst.com
Alexander Rundlet
Florida Bar No. 0692301
arundlet@podhurst.com

*Counsel for Plaintiffs*

**And**

Hollis L. Salzman
Florida Bar No. 947751
Gregory S. Asciolla
William V. Reiss
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
hsalzman@labaton.com
gasciolla@labaton.com
wreiss@labaton.com

Gregory P. Hansel
Florida Bar No. 607101
Randall B. Weill
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112
Telephone: (207) 791-3000
Facsimile: (207) 791-311 I
ghansel@preti.com
rweill@preti.com

Ephraim R. Gerstein
Daniel Litvin
GARWIN, GERSTEIN & FISHER, LLP
1501 Broadway
Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Facsimile: (212) 764-6620

22

egerstein@garwingerstein.com
dlitvin@garwingerstein.com

*Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2011, I electronically filed the foregoing document with the Clerk of the Court using *CM/ECF*.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing (NEF) generated by *CM/ECF* or in some other authorized manner for those counselor parties who are not authorized to receive electronically Notices of Electronic Filing.

 */s/ Alexander Rundlet*
Alexander Rundlet
Fla. Bar No. 0692301